1   Peter G. McAllen (State Bar No. 107416)
    JONES DAY
2   555 S. Flower St., 50th Floor
    Los Angeles, CA 90071
3   Telephone:   (213) 489-3939
    Facsimile:   (213) 243-2539
4   E-mail:      pmcallen@jonesday.com

5   Tobias S. Keller  (State Bar No. 151445)
    JONES DAY
6   555 California Street, 26th Floor
    San Francisco, CA  94104-1500
7   Telephone:  (415) 626-3939
    Facsimile:   (415) 875-5700
8   E-mail:      tkeller@jonesday.com

9   Attorneys for Plaintiff
    PUBLIC UTILITY DISTRICT NO. 2 OF
10  GRANT COUNTY, WASHINGTON

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15  PUBLIC UTILITY DISTRICT NO. 2 OF        Case No. C 07-03243 JSW
    GRANT COUNTY, WASHINGTON
16                                          Chapter 11 Case
                  Plaintiff.
17                                          Bankr. Case No. 01-30923 DM
        vs.
18                                          **PUBLIC UTILITY DISTRICT
    PACIFIC GAS AND ELECTRIC                NO. 2 OF GRANT COUNTY
19  COMPANY                                 WASHINGTON'S
                                            MEMORANDUM OF POINTS
20                Defendant.                AND AUTHORITIES IN
                                            SUPPORT OF MOTION FOR
21                                          (I) WITHDRAWAL OF
                                            REFERENCE OF PROOF OF
22                                          CLAIM AND (II) TRANSFER
                                            OF VENUE THEREOF TO THE
23                                          UNITED STATES DISTRICT
                                            COURT FOR THE EASTERN
24                                          DISTRICT OF WASHINGTON**

25                                          Date:       October 12, 2007
                                            Time:       9:00 a.m.
26                                          Courtroom: 2, 17th Floor
                                            Judge:      Hon. Jeffrey S. White
27

28

─────────────────────────────────────────────────────────
**MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE**

1

2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................... 1

II.     ISSUES PRESENTED .............................................................................. 1

III.    STATEMENT OF FACTS ........................................................................ 2

        A.      History Of The FERC Refund Proceedings .......................................... 3

        B.      The Ninth Circuit Appeals From The FERC Refund Proceedings ...... 5

        C.      Proceedings In Eastern District Of Washington ................................. 8

        D.      The Debtors' Bankruptcy Case and the Grant Claim .......................... 9

        E.      The California Contract Litigation ...................................................... 11

IV.     REQUEST TO WITHDRAW THE REFERENCE ...................................... 12

        A.      Efficient Use of Judicial Resources .................................................... 13

        B.      Delay and Costs to the Parties ........................................................... 16

        C.      Uniformity of Bankruptcy Administration ......................................... 16

        D.      Prevention of Forum Shopping .......................................................... 16

        E.      Other Related Factors ........................................................................ 17

V.      REQUEST TO TRANSFER VENUE TO THE WASHINGTON
        DISTRICT COURT ............................................................................... 18

        A.      Interests of Justice ............................................................................. 20

        B.      Convenience of Parties ....................................................................... 22

VI.     CONCLUSION ...................................................................................... 22

1

# TABLE OF AUTHORITIES

2

**Page**

3

## <u>CASES</u>

4

*A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.),*
   227 B.R. 311 (Bankr. N.D.Ala. 1998) ...................................................................20

5

*Big Rivers Elec. Corp.,*
   182 B.R. at 755....................................................................................................13

6

*Bonneville Power Admin. v. Fed. Energy Regulatory Comm'n,*
   422 F.3d 908 (9th Cir. 2005)...........................................................................passim

7

8

*Congress Credit Corp. v. AJC Int'l, Inc.,*
   42 F.3d 686 (1st Cir. 1994) .................................................................................13

9

*Crown Controls, Inc. v. Smiley,*
   110 Wash. 2d 695 (1988) .......................................................................................8

10

11

*Daewoo Motor America, Inc. v. Gulf Ins. Co.,*
   302 B.R. 308 (C.D. Cal. 2003)......................................................................12, 18

12

*In re Big Rivers Elec. Corp.,*
   182 B.R. 751 (W.D. Ky. 1995) ..........................................................................13

13

14

*In re Com 21,*
   2005 WL 1606357 (N.D.Cal.) .............................................................................17

15

*In re Enron Power Marketing, Inc.,*
   2003 WL 68036 (S.D.N.Y.)..................................................................................12

16

17

*In re Enviro-Scope Corp.,*
   57 Bankr. 1005 (E.D. Pa. 1985).........................................................................13

18

*In re Sevko, Inc.,*
   1992 U.S. Dist. LEXIS 6830 (N.D. Ill. May 19, 1992) .......................................14

19

20

*In re Spillane,*
   884 F.2d 642 (1st Cir. 1989) ...............................................................................19

21

*JCC Capital Corp. v. Fisher (In re JCC Capital Corp.),*
   147 B.R. 349 (Bankr. S.D.N.Y. 1992) ................................................................19

22

23

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000)...............................................................................20

24

*Lara v. Casimiro (In re Casimiro),*
   2006 WL 1581897 (E.D. Cal.)............................................................................17

25

26

*LTV Steel Co., Inc. v. City of Buffalo (In re Chateaugay Corp.),*
   Nos. CIV. H-95-2241, CIV. H-00-1216, CIV. H-00-1569, 2002 WL 484950
   (S.D.N.Y. 2002) ..................................................................................................14

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*LTV Steel Co., Inc. v. The City of Buffalo, New York (In re Chateaugay Corp.),*
No. 00-9429, 2002 U.S. Dist. LEXIS 5318 (S.D.N.Y. Mar. 29, 2002) ............... 13

*Massey v. Genco,*
1996 U.S. Dist. LEXIS 13794 (E.D. La. Sep. 19, 1996) ...................................... 14

*Mirant Corp. v. The Southern Co.,*
337 B.R. 107 (N.D.Tex. 2006) .............................................................................. 21

*Oliner v. Kontrabecki (In re Central European Industrial Development Co., LLC),*
2006 WL 3646789 (N.D.Cal.) ............................................................................... 17

*Pacific Gas and Electric Co. v. Arizona Electric Power Cooperative, Inc.,*
Case No. BC369141 (filed April 9, 2007) ............................................................ 11

*PRG-Schultz USA, Inc. v. Gottschalks, Inc.,*
2005 WL 2649206 (N.D.Cal.) ............................................................................... 20

*Pub. Util. Dist. No. 2 of Grant County, Washington v. California Indep. Sys.*
*Operator Corp.,*
Case No. CV-04-129-JLQ (filed Apr. 22, 2004) ................................................... 8

*San Diego Gas & Elec. Co.,*
102 FERC ¶ 61,317 (2003) (the "March 26, 2003 Order") ................................... 4

*San Diego Gas & Elec. Co.,*
105 FERC ¶ 61,066, at ¶ 177 (2003) (the "October 16, 2003 Order") .................. 4

*San Diego Gas & Elec. Co.,*
109 FERC ¶ 61,218 (2004) .................................................................................... 4

*San Diego Gas & Elec. Co.,*
Docket Nos. EL00-95-081 and EL00-98-069 ....................................................... 3

*San Diego Gas & Elec. Co.,*
96 FERC ¶ 61,120 (2001) (the "July 25, 2001 Order"),
*order on clarification and reh'g,* 97 FERC ¶ 61,275 (2001) (the "December 19,
2001 Order") .......................................................................................................... 3

*Security Farms v. Int'l Bhd. of Teamsters,*
124 F.3d 999 (9th Cir. 1997) .......................................................................... 12, 17

*Smolker v. Home Savings Termite Control, Inc. (In re TIG Insurance Co.),*
264 B.R. 661 (Bankr. C.D.Cal. 2001) ................................................................... 20

*United States v. Kaplan,*
146 B.R. 500 (D. Mass. 1992) .............................................................................. 12

*United States v. Miller,*
2003 U.S. Dist. LEXIS 24884 ............................................................................... 13

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3    *United States v. Oncology Assocs., P.C. (In re Equimed, Inc.),*
     2000 WL 1074304 (D. Md. July 24, 2000)............................................................13

4

5    *Wedtech Corp. v. London, M.D. (In re Wedtech Corp.),*
     81 B.R. 237 (S.D.N.Y. 1987).......................................................................13, 14

6                 **STATUTES**

7    28 U.S.C. § 1404..........................................................................................19, 22

8    28 U.S.C. § 1404(a) .....................................................................................18, 20

9    28 U.S.C. § 1412..........................................................................................18, 22

10    28 U.S.C. § 157(b)(1) .........................................................................................18

11    28 U.S.C. § 157(b)(2)(B) ....................................................................................18

12    28 U.S.C. § 157(c) ..............................................................................................17

13    28 U.S.C. § 157(d)................................................................................12, 17, 22

14    Fed. Powers Act § 201(f), 16 U.S.C. § 824.(f)......................................................6, 7

15    Fed. Powers Act § 205, 16 U.S.C. § 824d............................................................6, 7

16    Fed. Powers Act § 206, 16 U.S.C. § 824e ............................................................6, 7

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

1

**I.    INTRODUCTION**

2
3
4
5

    This Memorandum is filed in support of Public Utility District No. 2 of Grant County, Washington's ("Grant") Motion for (I) Withdrawal of the Reference of Proof of Claim and (II) Transfer of Venue Thereof to the United States District Court for the Eastern District of Washington (docket no. 1) (the "Motion").

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

    Grant filed its proof of claim number 7864 (the "Grant Claim") in the chapter 11 bankruptcy case of Pacific Gas and Electric Company (the "Debtor") almost five years ago and has waited patiently while the Federal Energy Regulatory Commission ("FERC") and the Ninth Circuit examined and reexamined whether Grant's sales of electric energy to the California Independent System Operator Corporation (the "ISO") at the height of California's power crises in November and December 2000, which form the basis for the Grant Claim, might be subject to FERC's price mitigation authority.  The Ninth Circuit has now conclusively determined that FERC does not have jurisdiction over the sales underlying the Grant Claim.  Accordingly, it is time for the proceedings to determine the liquidated allowed amount of the Grant Claim to move forward, and the appropriate forum for those proceedings is the United States District Court for the Eastern District of Washington (the "Washington District Court"), where Grant initiated a civil action more than three years ago against the ISO and certain other utilities relating to the electricity sales underlying the Grant Claim.[1]  That is the only forum that currently has all the necessary parties present and is the forum where these issues can be resolved in the most efficient and expeditious manner.

23

**II.    ISSUES PRESENTED**

24

    There are two issues to be decided in this matter:

25
26
27
28

    [1] Grant is seeking to withdraw the reference and transfer venue solely to liquidate the allowed amount of the Grant Claim by consolidating the claim in the action pending in Washington District Court.  The ultimate satisfaction of the allowed Grant Claim would remain subject to the terms and conditions of the Plan of Reorganization as confirmed by the United States Bankruptcy Court for the Northern District of California (the "California Bankruptcy Court").

-1-

1    1.    Whether this Court should withdraw the reference pursuant to
2  28 U.S.C. § 157(d) for the liquidation of the Grant Claim from the California
3  Bankruptcy Court to this Court, so that such liquidation may be transferred to the
4  Washington District Court where it can be consolidated with a civil action already
5  pending there that involves all the parties necessary to resolve the claim and related
6  issues.

7    2.    Whether this Court, if it determines to withdraw the reference for the
8  liquidation of the Grant Claim from the California Bankruptcy Court to this Court,
9  should transfer venue pursuant to 28 U.S.C. §§ 1412 and 1404(a) from this Court to
10  the Washington District Court where the Grant Claim can be consolidated with a
11  civil action already pending there that involves all the parties necessary to resolve
12  the claim and related issues.

13  **III.    STATEMENT OF FACTS**

14    Grant is a municipal corporation that owns and operates certain power plants
15  in the State of Washington.  [Declaration of Tim J. Culbertson ("Culbertson
16  Decl."), ¶¶ 2, 3.]  Grant provides, on a retail basis, electric energy to its consumer
17  owners in Grant County, Washington.  [*Id.*, ¶ 4.]  From time to time, Grant has
18  electric energy surplus to the needs of its consumer owners, and sells that surplus
19  on a wholesale basis.  [*Id.*, ¶ 5.]

20    At the height of the California electric energy crisis, during November and
21  December 2000, Grant responded to emergency requests from the ISO to sell
22  specified quantities of surplus energy.  [*Id.*, ¶¶ 11, 12.]  Grant delivered all of the
23  electric energy that it sold to the ISO during November and December 2000 to the
24  Malin substation in southern Oregon.  [*Id.*, ¶ 11.]  Arrangement for further
25  transportation into California was the ISO's responsibility.

26    The Grant Claim in the Debtor's chapter 11 bankruptcy case in the California
27  Bankruptcy Court arises out of these sales of wholesale electric energy that were
28  initiated by the ISO, acting as agent for various principals including Southern

-2-

1  California Edison Company ("SCE"), San Diego Gas & Electric Company

2  ("SDG&E"), and the Debtor (collectively, the "California Utilities"). In total, the

3  California Utilities, through their agent, the ISO, purchased in excess of $18 million

4  worth of wholesale electric energy from Grant. [*Id.*, ¶ 22.] To date, Grant has not

5  been paid for the majority of the electric energy that it sold to the ISO. [*Id.*, ¶ 22.]

6      **A.    History Of The FERC Refund Proceedings.**

7          To fully understand the Grant Claim, it is necessary to review the

8  transactions that gave rise to the claim and the proceedings at FERC that have

9  complicated the resolution of the claim. In 2000, FERC began an inquiry into the

10  reasonableness of electric energy rates charged in the markets operated by the ISO

11  and the California Power Exchange Corporation ("CalPX") during California's

12  electric energy crises in 2000 and 2001. *See generally San Diego Gas & Electric*

13  *Co. v. Sellers of Energy and Ancillary Services into Markets Operated by the*

14  *California Independent System Operator and the California Power Exchange*, and

15  *Investigation of Practices of the California Independent System Operator and the*

16  *California Power Exchange*, Docket Nos. EL00-95-000 and EL00-98-000,

17  respectively (the "FERC Refund Proceedings"). Grant is a party to the FERC

18  Refund Proceedings.

19          As part of the FERC Refund Proceedings, FERC ordered that certain

20  transactions that occurred between October 2000 and June 2001 are subject to a

21  price mitigation plan, which will result in refunds to California purchasers. *See San*

22  *Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 (2001) (the "July 25, 2001 Order"),

23  *order on clarification and reh'g*, 97 FERC ¶ 61,275 (2001) (the "December 19,

24  2001 Order").

25          In the July 25, 2001 and December 19, 2001 Orders, FERC held that sales by

26  governmental entities, such as Grant — which under the Federal Power Act are not

27  generally subject to FERC jurisdiction — would be subject to the mitigation plan.

28  The July 25, 2001 Order also initiated an evidentiary proceeding to establish a

-3-

1    record with regard to the mitigation plan and determine the refunds owed pursuant

2    to the plan.  On March 26, 2003, FERC issued an Order on the evidentiary

3    proceeding.  *San Diego Gas & Elec. Co.*, 102 FERC ¶ 61,317 (2003) (the

4    "March 26, 2003 Order").  Although Grant had attempted to show that its sales to

5    the ISO did not fit within the parameters of the mitigation methodology, neither the

6    Administrative Law Judge nor the Commission itself addressed Grant's evidence or

7    arguments.  As a result, under the March 26, 2003 Order, Grant's transactions were

8    subjected to price mitigation even though FERC had no jurisdictional basis to do

9    so.

10          Grant sought a rehearing of the March 26, 2003 Order, arguing that, based on

11    the circumstances of Grant's sales to the ISO, FERC improperly subjected Grant to

12    price mitigation.  *See San Diego Gas & Elec. Co.*, Docket Nos. EL00-95-081 and

13    EL00-98-069, Request for Rehearing of Public Utility District No. 2 of Grant

14    County, Washington (filed Apr. 24, 2003).

15          On October 16, 2003, FERC granted Grant's request for rehearing, thereby

16    excluding Grant's November and December 2000 sales of electric energy from its

17    price mitigation orders.  *San Diego Gas & Elec. Co.*, 105 FERC ¶ 61,066, at ¶ 177

18    (2003) (the "October 16, 2003 Order").  No party requested rehearing of the

19    determinations in the October 16, 2003 Order concerning Grant's sales to the ISO.

20          Subsequently, FERC reversed the holding in the October 16, 2003 Order that

21    Grant's sales into California were not subject to FERC's price mitigation authority,

22    ultimately ruling on November 23, 2004, that Grant's transactions with the ISO

23    during the relevant period were subject to price mitigation.  *San Diego Gas & Elec.*

24    *Co.*, 109 FERC ¶ 61,218 (2004).  Among other things, FERC's November 23, 2004

25    Order concluded that the transactions at issue in the Grant Claim are subject to

26    FERC's jurisdiction.  *Id.* at ¶¶ 55-69, 70-72.

27          Grant sought review of FERC's November 23, 2004 Order by petition to the

28    United States Court of Appeals for the Ninth Circuit.  In the appeal, Grant contends

-4-

1  that the FERC's November 23, 2004 Order wrongly classified sales of the nature

2  and type as those made by Grant as "out-of-market" or "OOM" transactions, which

3  are subject to the ISO tariffs and FERC's price mitigation plan, rather than short-

4  term, bilateral agreements, which are not.  This issue is unique to Grant and a

5  handful of other energy sellers who are similarly situated.[2]  Grant's petition to the

6  Ninth Circuit is still pending.

7      **B.    The Ninth Circuit Appeals From The FERC Refund Proceedings.**

8         Grant's appeal at the Ninth Circuit is not the only appeal to come out of the

9  FERC Refund Proceedings that bears on the current action.  In the action styled

10  *Bonneville Power Admin. v. Fed. Energy Regulatory Comm'n*, 422 F.3d 908 (9th

11  Cir. 2005), the Ninth Circuit was asked to decide — and indeed did decide — that

12  governmental entities, such as Grant, are not subject to FERC's refund authority.

13  (The *Bonneville* appeal was taken from FERC's July 25, 2001 and December 19,

14  2001 decisions discussed in Section II.A above.)  Although Grant was not a party to

15  the *Bonneville* appeal, and the *Bonneville* appeal did not purport to overturn the

16  FERC's November 23, 2004 Order, this decision nevertheless conclusively

17  determined that — regardless of whether Grant's sales were OOM sales or short-

18  term, bilateral transactions — Grant, as a governmental entity, is not subject to

19  FERC's price mitigation authority.

20         The Ninth Circuit did not mince words in rejecting FERC's assertion of

21  jurisdiction over governmental entities such as Grant.  In summarizing its holding,

22  the court said this:

23         The FPA's requirement that all rates for wholesale sales of electric energy

24         must be "just and reasonable" – the basis of the refund orders – applies only

25         to "public utilities" and makes no reference, specific or otherwise, to non-

26  _____
   [2] *I.e.*, entities who are not market participants in the ISO or CalPX wholesale
   energy markets and who never signed Scheduling Coordinator or Participating
27  Generator Agreements that would incorporate the tariffs that govern those markets,
   but who nevertheless made isolated sales of electric energy to the ISO and/or
28  CalPX during the power crisis.

1    public utilities.  FPA § 205 (16 U.S.C. § 824d).  Similarly, FERC's authority

2    to investigate rates and to order refunds is limited to any rate collected by

3    "any public utility"; the statute carries no reference to non-public utilities.

4    FPA § 206 (16 U.S.C. § 824e).  The FPA also unambiguously states that the

5    provisions of subchapter II, which is the basis of FERC's refund authority, do

6    not apply to governmental entities "unless such provision makes specific

7    reference thereto."  FPA §  201(f) (16 U.S.C. § 824.(f)).  No reference is

8    found in the statute.  Consequently, we grant the petition and set aside

9    FERC's orders related to the 2000 and 2001 spot market to the extent the

10    orders subject the governmental entities and non-public utilities to FERC's

11    refund authority under FPA subchapter II.

12  422 F.3d at 911 (footnote omitted).  Later in the opinion, the court reiterated the

13  broad statutory exemptions from FERC jurisdiction for governmental entities such

14  as Grant:

15    FERC's rate jurisdiction under § 205 and its refund jurisdiction under

16    § 206 expressly apply only to public utilities, again reinforcing the

17    definitional and scope provisions of the statutory scheme.  For example,

18    § 205's requirement that all rates for sales of electric energy must be "just

19    and reasonable" applies only to public utilities and includes no specific

20    reference to governmental entities as would be required to escape the broad

21    exemption in § 201(f). . . .

22    Notably, FERC's authority under §§ 206(a) and (b) to investigate rates

23    and to order refunds for unjust and unreasonable rates is limited to "any rate,

24    charge, or classification, demanded, observed, charged, or collected by *any*

25    *public utility* for any transmission or sale subject to the jurisdiction of the

26    Commission"; again, no specific reference is made to governmental entities

27    or non-public utilities.

28

-6-

1    *Id*. at 918 (emphasis in original; citations omitted).  The court's conclusion is

2    unambiguous:

3        [T]he retroactive imposition of a market price that effects a refund

4        responsibility is a regulatory action that falls outside of FERC's jurisdiction

5        with respect to non-public utilities and governmental entities. . . . In sum, the

6        text and structure of the FPA are unambiguous:  *Chevron* deference is not

7        due where FERC's authority to order refunds under § 206(b) is specifically

8        limited to "public utilities" and no explicit reference to governmental entities

9        is made in § 206(b), as required by § 201(f).

10   *Id*. at 920.

11       Although the Ninth Circuit decided *Bonneville* in September 2005, it did not

12   issue its mandate in the case until April 5, 2007.  *Bonneville Power Admin. v. Fed.*

13   *Energy Regulatory Comm'n*, 9th Cir. No. 02-70262, *et al*., Judgment in Lieu of

14   Mandate (April 5, 2007).  In the interim, the Ninth Circuit granted the ISO and the

15   California Utilities (the "California Parties") two consecutive extensions of time to

16   petition for rehearing.  *See, e.g*., *Bonneville Power Admin. v. Fed. Energy*

17   *Regulatory Comm'n*, No. 02-70262, *et al*., Order Denying California Parties'

18   Motion to Extend Settlement Time-Out Period in Bonneville, at p. 2 (Oct. 23, 2006)

19   ("With respect to the Bonneville decision, the court twice has extended the time for

20   parties to file motions for rehearing.").  The court's October 23, 2006 Order

21   required petitions for panel rehearing and/or rehearing en banc to be filed no later

22   than November 13, 2006.  (*Id.*)  Following the submission of petitions for panel

23   rehearing and rehearing en banc by the California Parties, the court issued an order

24   denying both petitions on March 7, 2007.  *See Bonneville Power Admin. v. Fed.*

25   *Energy Regulatory Comm'n*, No. 02-70262, *et al.*, Order Re: Petition for Reh'g and

26   Reh'g En Banc (Mar. 7, 2007).  Finally, on March 28, 2007, the court denied the

27   motion of the California Parties to further stay the issuance of the mandate pending

28   the filing of a petition for a writ of certiorari to the United States Supreme Court.

*See Bonneville Power Admin. v. Fed. Energy Regulatory Comm'n*, No. 02-70262, *et al.*, Order Denying California Parties' Motion to Stay the Mandate (Mar. 28, 2007).

### C.    Proceedings In Eastern District Of Washington.

On April 22, 2004, Grant initiated an action against the ISO in the Washington District Court seeking payment for the over $18 million worth of wholesale electric energy that it sold to the ISO in November and December of 2000. *Pub. Util. Dist. No. 2 of Grant County, Washington v. California Indep. Sys. Operator Corp.*, Case No. CV-04-129-JLQ (filed Apr. 22, 2004). At the time Grant filed that action, the ISO had never identified the specific principals on whose behalf it now claims to have been acting as agent when it purchased electric energy from Grant. [Declaration of Peter G. McAllen ("McAllen Decl."), ¶ 2.] Later, however, on December 2, 2005, the California Utilities served their "Claim for Damages" on Grant. In that document, the California Utilities claimed to have purchased electric energy from Grant through the ISO and asserted entitlement to "refunds." [*Id.*, ¶ 4.] Armed with those admissions, Grant joined SCE and SDG&E as defendants in the Washington action on the grounds they are jointly and severally liable for some or all of the outstanding balance that is owed to Grant by their agent, the ISO. *See Crown Controls, Inc. v. Smiley*, 110 Wash. 2d 695, 706 (1988) (agent and undisclosed principal are jointly and severally liable).

Although the Debtor is among the formerly undisclosed principals that are liable for the ISO's debt, the Debtor was not named as a defendant in the Washington District Court litigation. Rather, Grant had filed the Grant Claim in the Debtors' chapter 11 case with respect to the Debtor's liability for the electricity sales to the ISO on the Debtor's behalf.[3] [McAllen Decl., ¶ 8.] The Motion

---

[3] In fact, Grant was prohibited from naming the Debtor directly as a defendant in the Washington District Court because of the anti-suit discharge injunction under the terms of the plan of reorganization that was approved by the California Bankruptcy Court on December 22, 2003 (the "Plan of Reorganization").

1  requests that this Court transfer the Grant Claim to the Washington District Court

2  so that it may be heard in conjunction with the lawsuit against the parties that are

3  co-liable for the electricity sales.

4       By orders dated June 17, 2004 and December 29, 2004, the Washington

5  District Court stayed the action brought there by Grant pending FERC's final

6  decision on whether Grant's sales of electric energy to the ISO were subject to

7  FERC jurisdiction.  Once the Ninth Circuit issued its mandate in the *Bonneville*

8  decision, however, concluding that government entities like Grant are not subject to

9  price mitigation, it became appropriate for the Washington District Court action to

10  proceed against the ISO, SCE, SDG&E, and (pursuant to this Motion) the Debtor.

11  Accordingly, on June 7, 2007, Grant filed a motion in the Washington District

12  Court seeking to lift the stay and to proceed with the lawsuit there.  On July 26,

13  2007, the Washington District Court granted that motion, finding no need to further

14  delay the action in light of the Ninth Circuit's decision.  [McAllen Decl., ¶ 7 &

15  Ex. F.]

16       **D.    The Debtors' Bankruptcy Case and the Grant Claim.**

17       As indicated above, Grant was prevented from naming the Debtor as a

18  defendant in the Washington District Court action against the ISO and the other

19  California Utilities because of the Debtor's chapter 11 bankruptcy filing.

20       The Debtor filed a voluntary petition for relief under chapter 11 of the

21  Bankruptcy Code on April 6, 2001 in the California Bankruptcy Court.  On or about

22  August 31, 2001, Grant filed the Grant Claim in the Debtor's chapter 11 case on

23  account of the electricity sold to the ISO on behalf of the Debtor and the other

24  California Utilities.  On December 22, 2003, the California Bankruptcy Court

25  entered an order confirming the Debtors' Plan of Reorganization.

26       Sections 9.5 and 9.6 of the Plan of Reorganization contain discharge and

27  injunction provisions that prohibit any party from commencing or continuing any

28  action with respect to any claim that arose prior to the Debtor's bankruptcy, other

than in accordance with the terms of the Plan of Reorganization.  As indicated above, this discharge injunction prohibited Grant from directly naming the Debtor as a defendant in the Washington District Court proceeding, but Grant still was free to pursue the Grant Claim in the California Bankruptcy Court.

To date, the California Bankruptcy Court has not taken any action with respect to the Grant Claim.  On February 6, 2004, the Debtor filed a motion with the California Bankruptcy Court seeking to extend the time for the Debtor to object to the Grant Claim and certain other claims.  Specifically, the Debtor sought to extend the time to object to the "ISO, PX and Generator Claims," including the Grant Claim, until such time as the claims become allowed under the terms of the Plan of Reorganization.[4]  The Debtor justified this extension on the grounds that virtually all of the issues that would be subject to the Debtor's objection to the ISO, PX and Generator Claims would be resolved through FERC's ruling in the FERC Refund Proceedings.  Grant objected to the requested extension because it believed that FERC did not have jurisdiction over the Grant Claim, which ultimately the Ninth Circuit confirmed in its *Bonneville* decision.

Because the Ninth Circuit had not yet ruled at the time with respect to FERC's jurisdiction, Grant consented to the entry of an order by the California Bankruptcy Court on April 1, 2004 extending the time for the Debtor to object to the ISO, PX and Generator Claims until 90 days after the ISO, PX and Generator Claims become allowed pursuant to the Plan of Reorganization, although such objection to claims was to be "solely so that their allowance or disallowance on the claims docket in [the Debtor's] Chapter 11 Case conforms to the Allowed amount of such Claims as determined by FERC in the FERC Refund Proceedings."  In addition, Paragraph 13 of the California Bankruptcy Court's order specifically

---

[4] ISO, PX and Generator Claims are defined in the Plan of Reorganization as claims "against the Debtor arising from amounts due to the ISO, PX and various power generators based on the purchase of electricity or ancillary services by the Debtor in markets operated by the PX and the ISO."

1  states that the claim objection extension was without prejudice to the right of Grant
2  to seek adjudication of the Grant Claim without regard to the pendency or status of
3  the FERC Refund Proceedings as to any other creditor.

4      To date, the Grant Claim remains inactive in the California Bankruptcy
5  Court.  [McAllen Decl., ¶ 12.]

6      **E.    The California Contract Litigation**

7      In the wake of the *Bonneville* decision, on March 16 and 21, 2006,
8  respectively, the California Utilities and the California Electricity Oversight Board
9  (the "California EOB") filed a pair of lawsuits in the United States District Court
10  for the Eastern District of California against Grant and a number of other
11  governmental entities.  As to Grant, the complaints in those lawsuits sought
12  "refunds" relating to the electricity sales from Grant to the ISO.  As to all of the
13  other defendants, the complaints sought refunds for other transactions that had
14  nothing to do with Grant.  On March 16, 2007, the court dismissed both lawsuits for
15  lack of federal question jurisdiction.  Shortly thereafter, on April 9, 2007, the
16  California Utilities and the California EOB filed a virtually identical complaint
17  against Grant and many of the same other defendants in the Superior Court of
18  California for the County of Los Angeles.  *Pacific Gas and Electric Co. v. Arizona*
19  *Electric Power Cooperative, Inc.,* Case No. BC369141 (filed April 9, 2007).  As to
20  Grant, this new state-court complaint again seeks "refunds" for the electricity sales
21  from Grant to the ISO, and, again, as to all other defendants it seeks "refunds"
22  relating to other transactions that have nothing to do with Grant.  Because the
23  claims asserted against Grant in that complaint are already the subject of the lawsuit
24  in the Washington District Court, because Grant is not properly joined in the
25  California lawsuit, and because Grant is not subject to personal jurisdiction in the
26  California state court, Grant is filing motions on August 3, 2007 to (i) sever and
27  stay the California action as to Grant in favor of the prior action in the Washington
28  District Court, and (ii) quash summons for lack of personal jurisdiction.  Pursuant

1   to a briefing and hearing scheduling order entered by the California state court,

2   those motions will be briefed in August and September 2007, with a hearing on

3   September 21, 2007.  [McAllen Decl., ¶ 16 & Ex. P.]

4   **IV.    REQUEST TO WITHDRAW THE REFERENCE**

5            In order to transfer the Grant Claim to the Washington District Court to be

6   consolidated with the action pending there against the ISO and the other California

7   Utilities, Grant requests at the outset that reference with respect to the liquidation of

8   the Grant Claim be withdrawn.  Pursuant to 28 U.S.C. § 157(d), a district court may

9   for cause shown withdraw, in whole or in part, any case or proceeding referred

10  under section 157, on its own motion or the timely motion of any party.  The Ninth

11  Circuit has said that a court should consider the following factors in deciding

12  whether there is "cause" to withdraw the reference:

13          (i) the efficient use of judicial resources;

14          (ii) the delay and costs to the parties;

15          (iii) uniformity of bankruptcy administration;

16          (iv) the prevention of forum shopping; and

17          (v) other related factors.

18  *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997).

19          "Other related factors" that a court may consider in determining whether

20  cause exists to withdraw the reference include:

21          (i) whether the proceeding is core or non-core;

22          (ii) whether the claim is legal or equitable; and

23          (iii) whether the claim is triable by a jury.

24  *See, e.g., Daewoo Motor America, Inc. v. Gulf Ins. Co. (In re Daewoo Motor*

25  *America, Inc.),* 302 B.R. 308, 310 (C.D. Cal. 2003) (*citing In re Enron Power*

26  *Marketing, Inc.,* 2003 WL 68036, *6 (S.D.N.Y.)).

27          The requisite cause may be found "if one or more of these factors is present."

28  *United States v. Kaplan*, 146 B.R. 500, 504 (D. Mass. 1992).  In fact, no one factor

-12-

1  is determinative, as a court may withdraw the reference even if a proceeding falls

2  within a bankruptcy court's core jurisdiction.  *See, e.g., United States v. Miller,*

3  2003 U.S. Dist. LEXIS 24884, at *14 (ordering withdrawal of reference of core

4  proceeding because withdrawal would not negatively affect administration of

5  bankruptcy case); *LTV Steel Co., Inc. v. The City of Buffalo, New York (In re*

6  *Chateaugay Corp.),* No. 00-9429, 2002 U.S. Dist. LEXIS 5318, at *20 (S.D.N.Y.

7  Mar. 29, 2002) ("Even where a bankruptcy proceeding involves 'core' claims, courts

8  frequently exercise their discretion to withdraw the reference if the bankruptcy

9  action involves common questions of law and fact with a pending district court

10 action.").  When each of these factors is considered, it is evident that the reference

11 with respect to the liquidation of the Grant Claim should be withdrawn.

12          **A.     Efficient Use of Judicial Resources.**

13          One of the most important factors courts consider in determining whether to

14 withdraw the reference to the bankruptcy court is judicial efficiency.  In fact, courts

15 have found that this factor alone can be sufficient to provide cause to withdraw the

16 reference.  *See, e.g., In re Enviro-Scope Corp.,* 57 Bankr. 1005, 1008-09 (E.D.

17 Pa. 1985) (holding that judicial economy is sufficient cause for permissive

18 withdrawal); *accord United States v. Oncology Assocs., P.C. (In re Equimed, Inc.),*

19 2000 WL 1074304, at *3-4 (D. Md. July 24, 2000) (same); *In re Big Rivers Elec.*

20 *Corp.,* 182 B.R. 751, 755 (W.D. Ky. 1995) (same); *Wedtech Corp. v. London, M.D.*

21 *(In re Wedtech Corp.),* 81 B.R. 237, 239 (S.D.N.Y. 1987) (where proceeding in

22 bankruptcy involves common issues of law and fact with case pending in district

23 court, "the overlapping of acts, transactions and issues in the two cases . . . is good

24 cause for withdrawal of the reference and consolidation with the district court

25 proceeding.").  It is well established that where there is a pending district court

26 action that shares common issues of fact with an action in a bankruptcy court, the

27 reference should be withdrawn so that the matters can be consolidated.  *See, e.g.,*

28 *Congress Credit Corp. v. AJC Int'l, Inc.,* 42 F.3d 686 (1st Cir. 1994) (finding that

-13-

1    withdrawing reference was proper to consolidate proceedings in forum where

2    jurisdiction over both actions existed); *LTV Steel Co., Inc. v. City of Buffalo (In re*

3    *Chateaugay Corp.),* Nos. CIV. H-95-2241, CIV. H-00-1216, CIV. H-00-1569, 2002

4    WL 484950 (S.D.N.Y. 2002) (stating that "courts frequently exercise their

5    discretion to withdraw the reference if the bankruptcy action involves common

6    questions of law and fact with a pending district court action"); *Massey v. Genco,*

7    1996 U.S. Dist. LEXIS 13794, at *9 (E.D. La. Sep. 19, 1996) (stating that the

8    "overlapping of facts, transactions and issues militates in favor of withdrawal of the

9    reference"); *Big Rivers Elec. Corp.,* 182 B.R. at 755 (withdrawing reference to

10   consolidate proceeding with pending action in district court involving common

11   issues of fact); *Wedtech,* 81 B.R. at 239-40 (withdrawal of fraudulent conveyance

12   action involving common issues with pending district court action); *In re Sevko,*

13   *Inc.,* 1992 U.S. Dist. LEXIS 6830, at *7-10 (N.D. Ill. May 19, 1992) (withdrawal

14   was proper when two proceedings involving the same core of facts, but different

15   parties, were pending in both bankruptcy and non-bankruptcy forums).

16          With respect to the Grant Claim, there is no doubt that judicial efficiency will

17   be served by withdrawing the reference so that the liquidation of the claim may be

18   transferred to Washington District Court and consolidated with the action pending

19   there.  As described above, the action currently pending in Washington District

20   Court is based on the same operative facts as the Grant Claim — the electricity

21   sales to the ISO on behalf of the California Utilities during November and

22   December 2000.  More importantly, the Washington District Court action, unlike

23   the claim proceedings in the California Bankruptcy Court, has all the necessary

24   parties, including the ISO, SCE, SDG&E, and, if this Court grants the relief

25   requested in this Motion, the Debtor, that are needed to resolve the issues regarding

26   the liability for the electricity sales.  It would be absurd and a complete waste of

27   judicial resources to have the Washington District Court determine the liability of

28   the ISO, SCE and SDG&E with respect to the electricity sales from Grant and then

-14-

1   have the California Bankruptcy Court decide the exact same issues separately in

2   connection with the Grant Claim.  Moreover, there would be considerable risk of

3   duplication of efforts and inconsistent results if the Grant Claim proceeds separately

4   in the California Bankruptcy Court.  It would be far more efficient to have the

5   claims against the ISO and all of the California Utilities heard in a single forum in

6   the Washington District Court.

7        Also, as indicated above, the Debtor has not even objected to the Grant

8   Claim yet in its chapter 11 case, so the California Bankruptcy Court has not taken

9   any steps to attempt to adjudicate the claim; nor does it have any particular

10  familiarity with the facts and circumstances underlying the Grant Claim.

11  Accordingly, there would not be wasted efforts on the part of the California

12  Bankruptcy Court if the reference with respect to the liquidation of the Grant Claim

13  is withdrawn and transferred to the Washington District Court.

14       In fact, even the Debtor has taken steps that indicate that the California

15  Bankruptcy Court is not the appropriate forum to resolve the issues surrounding the

16  sales of electricity that form the basis for the Grant Claim.  As described in

17  Section II.E above, on March 16, 2006, almost two years after Grant filed suit in the

18  Washington District Court, the Debtor, SCE, and the California EOB commenced

19  an action in the United States District Court for the Eastern District of California

20  seeking purported "refunds" from Grant and others for the very same electricity

21  sales that underlie the Grant Claim.[5]  On March 16, 2007, the federal court

22  dismissed the complaint for lack of subject matter jurisdiction.  The California

23  Utilities and California EOB appealed that dismissal to the Ninth Circuit, but they

24  also filed an identical complaint in California state court.  These actions make clear

25  that the Debtor believes that the issues regarding the electricity sales underlying the

26  Grant Claim are best decided outside the California Bankruptcy Court.

27  _____

28       [5] SDG&E filed an identical complaint on March 21, 2006.

-15-

1    **B.    Delay and Costs to the Parties.**

2    For the same reasons that it would be an efficient use of judicial resources to

3    withdraw the reference, the factor of delay and cost to the parties heavily favors the

4    withdrawal of the reference so that the Grant Claim can be transferred to the

5    Washington District Court.  By allowing the reference to be withdrawn for the

6    liquidation of the Grant Claim and transferred to the Washington District Court,

7    Grant will only be required to prosecute its claim once, in a proceeding where all

8    the relevant parties are present, rather than being forced to litigate it in two separate

9    proceedings, with the resulting duplication of efforts and risks of inconsistent

10    judgments.

11    **C.    Uniformity of Bankruptcy Administration.**

12    The factor of uniformity of bankruptcy administration is not applicable in the

13    analysis of whether the Grant Claim should be withdrawn from the California

14    Bankruptcy Court.  As described above, the Debtor's Plan of Reorganization was

15    confirmed long ago, so the withdrawal of the reference to determine the allowed

16    amount of the Grant Claim will have no detrimental impact on the administration of

17    the Debtor's chapter 11 case.  In fact, it will increase the efficiency of liquidating

18    the claim.  Moreover, to Grant's knowledge, no ISO, PX or Generator Claims have

19    been resolved to date by the California Bankruptcy Court.  Rather, some claims

20    have been resolved in the FERC proceedings in the context of settlements.  Even

21    the Debtor is attempting to have claims relating to the sale of electricity resolved

22    outside the California Bankruptcy Court, through its California state court lawsuit.

23    Accordingly, there is no uniform bankruptcy administration purpose that would be

24    served by keeping the Grant Claim in the California Bankruptcy Court.

25    **D.    Prevention of Forum Shopping.**

26    This Motion is not an exercise in forum shopping by Grant.  Grant is not

27    seeking to avoid the California Bankruptcy Court and has no reason to do so given

28    that there have been no proceedings or substantive rulings in the bankruptcy court

-16-

1    on the Grant Claim to date. *See, e.g., Lara v. Casimiro (In re Casimiro),* 2006

2    WL 1581897, at \*5 (E.D. Cal.) (finding that the plaintiffs' attempt to withdraw the

3    reference of an adversary proceeding from the bankruptcy court was not the result

4    of forum shopping, because "there has been no substantive ruling from the

5    bankruptcy court which would give Plaintiffs any indication as to whether that

6    court might tend to be favorable or unfavorable to their claims."). Rather, Grant is

7    simply trying to have the Grant Claim withdrawn and transferred to the Washington

8    District Court where there is already an action pending with all the necessary

9    parties and which is the most appropriate venue to resolve the issues underlying the

10    Grant Claim.

11         **E.**     **Other Related Factors.**

12         In addition to the factors specifically laid out by the Ninth Circuit in the

13    *Security Farms* case, courts will often look to several other factors in determining

14    whether cause exists to withdraw the reference pursuant to 28 U.S.C. § 157(d). For

15    example, courts will typically examine whether the proceeding is core or non-core,

16    and whether any parties have the right to a jury trial. Pursuant to section § 157(c),

17    bankruptcy courts may not conduct jury trials in non-core proceedings where the

18    parties have withheld consent to the final judgment by the bankruptcy court. As a

19    result, courts feel compelled to withdraw the reference in such situations. *See*

20    *Oliner v. Kontrabecki (In re Central European Industrial Development Co., LLC),*

21    2006 WL 3646789, at \*1 (N.D.Cal.) (noting that if a matter is a non-core

22    proceeding and a party has properly demanded a jury trial, "the Court *must*

23    withdraw the reference.") (emphasis in original); *In re Com 21,* 2005 WL 1606357,

24    at \*11 (N.D.Cal.) ("While the first four enumerated [*Security Farms*] factors favor

25    resolution of the malpractice claim in bankruptcy court, because defendants have a

26    right to a jury trial, have not waived that right, and have not consented to a jury trial

27    before the bankruptcy court, the court finds that it must withdraw the reference.").

28    But just because a matter is a core proceeding and there is no right to a jury trial,

1  the court may still find cause to withdraw the reference based on the remaining

2  factors.  *See Daewoo*, 302 B.R. at 310 ("Whether the claim is core or non-core is

3  not dispositive of the motion to withdraw, but is merely a factor to consider.").

4         Because the Grant Claim involves the allowance or disallowance of a claim

5  against the Debtor's estate, it is a core proceeding pursuant to 28 U.S.C.

6  § 157(b)(2)(B).  Accordingly, the California Bankruptcy Court would have the

7  authority under section 157(b)(1) to hear the Grant Claim and make a final

8  determination with respect to its allowance.  However, just because the bankruptcy

9  court has the authority to hear and determine a matter, it does not mean that the

10 bankruptcy court should, in fact, hear and determine such matter.  In viewing all of

11 the *Security Farms* factors in this case, they weigh heavily in favor of withdrawing

12 the reference to allow the Grant Claim to be transferred to the Washington District

13 Court where an action is already pending that would resolve the Grant Claim in a

14 consistent and efficient manner with all of the relevant parties present and all of the

15 evidence conveniently accessible.

16 **V.    REQUEST TO TRANSFER VENUE TO THE WASHINGTON**

17      **DISTRICT COURT**

18        Assuming that this Court finds it appropriate to withdraw the reference from

19 the California Bankruptcy Court with respect to the liquidation of the Grant Claim,

20 Grant requests that this Court then transfer venue of the Grant Claim to the

21 Washington District Court so that the claim can be consolidated with the action

22 pending there.

23        Two different federal statutes dictate transfer of venue to the Washington

24 District Court.  28 U.S.C. § 1412 provides:  "A district court may transfer a case or

25 proceeding under title 11 to a district court for another district, in the interest of

26 justice or for the convenience of the parties."  In addition, 28 U.S.C. § 1404(a)

27 provides:  "For the convenience of parties and witnesses, in the interest of justice, a

28

-18-

1   district court may transfer any civil action to any other district or division where it

2   might have been brought."

3         Despite the different statutes, the factors courts consider in determining a

4   motion under section 1404(a) are the same as those considered in deciding a motion

5   under section 1412.  *In re Spillane*, 884 F.2d 642, 645 n.4 (1st Cir. 1989) (stating

6   there is "little reason for distinguishing between the two statutes"); *JCC Capital*

7   *Corp. v. Fisher (In re JCC Capital Corp.)*, 147 B.R. 349, 356 (Bankr. S.D.N.Y.

8   1992) ("The factors courts consider in determining a motion under section 1404(a)

9   are the same as those considered in deciding a motion under section 1412.").  The

10  essential difference between the two is that section 1404 permits transfer of venue

11  only to a venue in which the suit originally could have been brought (which is met

12  in this case).  Section 1412 contains no such restriction.[6]

13        In evaluating whether to transfer venue of an action, courts will consider both

14  the "interests of justice" prong and the "convenience of the parties" prong set forth

15  in sections 1404 and 1412.  In evaluating the "interests of justice" prong, the court

16  will consider the following factors:

17        (i) economics of estate administration;

18        (ii) location of pending bankruptcy;

19        (iii) judicial efficiency;

20        (iv) ability to receive a fair trial;

21        (v) state's interests in having local controversies decided within its borders,

22  by those familiar with its laws;

23        (vi) enforceability of any judgment rendered; and

24        (vii) plaintiff's choice of forum.

25  _____

26        [6] In addition, the text of section 1404 seems to require that the movant show
    that transfer is warranted "in the interest of justice" <u>and</u> "for the convenience of
27  parties and witnesses," whereas section 1412 is in the disjunctive making transfer
    appropriate if it is "in the interest of justice" <u>or</u> "for the convenience of the parties."
28  The case law does not appear to consider this distinction, however.

1   With respect to the "convenience of the parties" prong, the court will look at the

2   following factors:

3           (i) location of plaintiff and defendant;

4           (ii) ease of access to necessary proof;

5           (iii) convenience of witnesses;

6           (iv) availability of subpoena power for unwilling witnesses; and

7           (v) expense related to obtaining witnesses.

8   *See Smolker v. Home Savings Termite Control, Inc. (In re TIG Insurance Co.),*

9   264 B.R. 661, 668 (Bankr. C.D.Cal. 2001) (*citing A.B. Real Estate, Inc. v. Bruno's,*

10  *Inc. (In re Bruno's, Inc.),* 227 B.R. 311, 324-25 (Bankr. N.D.Ala. 1998)).

11          The Ninth Circuit has adopted a similar set of factors in evaluating venue

12  transfer requests pursuant to 28 U.S.C. § 1404(a), which include the following:

13  (i) the location where the relevant agreements were negotiated and executed; (ii) the

14  state that is most familiar with the governing law; (iii) the plaintiff's choice of

15  forum; (iv) the respective parties' contacts with the forum; (v) the contacts relating

16  to the plaintiff's cause of action in the chosen forum; (vi) the differences in the

17  costs of litigation in the two forums; (vii) the availability of compulsory process to

18  compel attendance of unwilling non-party witnesses; and (viii) the ease of access to

19  sources of proof.  *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th

20  Cir. 2000); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.,* 2005 WL 2649206, at *2

21  (N.D.Cal.) (identifying the *Jones* factors).

22          **A.    Interests of Justice.**

23          Transferring venue of the Grant Claim to the Washington District Court

24  certainly would serve the interests of justice.  As described above, the Washington

25  District Court action has been pending for over three years, and all of the parties

26  relevant to the determination of liability for the electricity sales that Grant made to

27  the ISO in November and December 2000 would be parties to that action should

28  this Court grant this Motion to withdraw the reference and transfer venue.  As such,

1    the Washington District Court is the one current forum that can hear this dispute

2    with all parties present.  For example, the ISO, SCE, and SDG&E are not parties to

3    the proceedings on the Grant Claim in the California Bankruptcy Court, and Grant

4    is not properly joined and not subject to personal jurisdiction in the California state

5    court action commenced by the California Utilities.  Accordingly, judicial economy

6    would be greatly served by transferring the liquidation of the Grant Claim to the

7    Washington District Court.

8        In addition, the federal courts in Washington have an interest in resolving

9    these disputes, and Grant's choice to bring them in Washington should be

10   respected.  At base, Grant's claims against the ISO and the California Utilities are

11   simple breach of contract and related claims under Washington state law.  Grant is

12   resident in Washington, and a substantial portion of the transactions underlying the

13   Grant claim — *i.e.*, the contract formation and performance by Grant — took place

14   in Washington.  Therefore, a Washington court should resolve these matters.

15       The location of the Debtors' bankruptcy should be given little weight in these

16   circumstances.  First, because the Plan of Reorganization has already been

17   confirmed, the resolution of the Grant Claim will have no detrimental effect on the

18   administration of the Debtor's chapter 11 case.  *See, e.g., Mirant Corp. v. The*

19   *Southern Co.,* 337 B.R. 107, 124 (N.D.Tex. 2006) ("Any [presumption in favor of

20   venue in the home bankruptcy court] in this case has been significantly weakened,

21   if not entirely destroyed, by the circumstances that this is now post-confirmation

22   litigation.").  Second, and more importantly, the Debtor itself has indicated by its

23   actions that the California Bankruptcy Court is not the appropriate forum to resolve

24   the issues surrounding the electricity sales from Grant by filing its own suit in

25   California state court, almost three years after the Washington District Court action

26   was commenced.

27

28

1    There can be no assertion that either forum would affect the ability of the

2  parties to receive a fair trial or enforce any judgment rendered, so those factors are

3  neutral for the venue transfer analysis.

4    Given the judicial resources that would be saved by having the entire dispute

5  regarding Grant's electricity sales heard in a single forum with all parties present, in

6  a jurisdiction where these sales were originated and performed, there is little doubt

7  that the interests of justice would be served by transferring venue of the liquidation

8  of the Grant Claim to the Washington District Court.

9    **B.    Convenience of Parties.**

10    The Washington District Court is certainly at least as convenient to the

11  parties as this Court or any other court to resolve the liquidated amount of the Grant

12  Claim.  As described above, the bulk of the transactions underlying the Grant Claim

13  took place in Washington, from the formation of the contract to performance by

14  Grant.  Moreover, all of Grant's evidence and witnesses relevant to this dispute are

15  located in Ephrata, Washington.  [Culbertson Decl., ¶ 2.]  It would be unreasonably

16  (and unnecessarily) burdensome, inconvenient, and expensive for Grant and its

17  witnesses to travel to California to appear in and litigate this matter in light of the

18  high costs required for air travel and the strain of having employees spend time

19  away from their normal business duties and responsibilities.

20    Accordingly, the convenience of the Washington District Court, combined

21  with the fact that it is the only forum in which all of the relevant and necessary

22  parties are properly participating, strongly support transfer of venue for the

23  liquidation of the Grant Claim.

24  **VI.    CONCLUSION**

25    For all of the foregoing reasons, Grant respectfully requests that this Court

26  withdraw the reference pursuant to 28 U.S.C. § 157(d) for the liquidation of the

27  Grant Claim from the California Bankruptcy Court to this Court and transfer venue

28  pursuant to 28 U.S.C. §§ 1404 and 1412 for such liquidation proceedings from this

-22-

1    Court to the Washington District Court so that the claim may be consolidated with

2    the action pending there.

3

     Dated:  August 3, 2007                    Respectfully submitted,
4

5
                                               By: /s/ Peter G. McAllen
6                                                   Peter G. McAllen, CA SB#107416

7                                              Attorneys for Claimant
                                               PUBLIC UTILITY DISTRICT NO. 2
8                                              OF GRANT COUNTY
                                               WASHINGTON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE**