**EXHIBIT B**

# HellerEhrman LLP

December 2, 2005

<div style="text-align:right">
Marie L. Fiala<br>
Marie.Fiala@hellerehrman.com<br>
Direct +1.415.772.6527<br>
Direct Fax +1.415.772.1763<br>
Main +1.415.772.6000<br>
Fax +1.415.772.6268<br>
<br>
13779.0092
</div>

*Via Express Mail*

Grant County PUD Commissioners
P.O. Box 878
Ephrata, WA 98823

Dear Commissioners:

    Enclosed please find a claim for damages by Pacific Gas and Electric Company, Southern California Edison Company, San Diego Gas & Electric Company, and the California Electricity Oversight Board, pursuant to R.C.W. 4.96.010 - .020. Although this claim does not appear to be subject to the presentment statute, we are providing this notice as a courtesy to you.

<div style="margin-left:50%">
Very truly yours,

*Marie L. Fiala /LDH*

Marie L. Fiala
</div>

Enclosure

Heller Ehrman LLP   333 Bush Street   San Francisco, CA 94104-2878   www.hellerehrman.com

Anchorage   Beijing   Hong Kong   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle
Silicon Valley   Singapore   Washington, D.C.

Exhibit A            13

1
2
3
4
5
6
7
8
9

| | |
|---|---|
| Pacific Gas and Electric Company, Southern California Edison Company, San Diego Gas & Electric Company, California Electricity Oversight Board,<br><br>Claimants,<br><br>v.<br><br>Public Utility District No. 2 of Grant County,<br><br>Defendant. | **CLAIM FOR DAMAGES**<br>(R.C.W. 4.96.010-.020) |

To the Commissioners of Public Utility District No. 2 of Grant County:

You are hereby notified that the following claimants, referred to herein as the "California Parties," claim damages from Public Utility District No. 2 of Grant County ("Grant County PUD"):

- Pacific Gas and Electric Company ("PG&E"), 77 Beale Street, P. O. Box 7442, San Francisco, CA 94120;

- Southern California Edison Company ("SCE"), 2244 Walnut Grove Avenue, P. O. Box 800, Rosemead, CA 91770;

- San Diego Gas & Electric Company ("SDG&E"), 8330 Century Park Court, San Diego, CA 92123; and

- California Electricity Oversight Board ("EOB"), 707 L Street, Suite 1250, Sacramento, CA 95814.

The California Parties' claim arises out of Grant County PUD's sales of power from May 1, 2000 through June 20, 2001 in wholesale markets operated by the California Independent System Operator Corporation ("ISO") and California Power Exchange Corporation ("PX") under tariffs filed with the Federal Energy Regulatory Commission ("FERC"). FERC has determined that sellers in those markets charged rates that were unjust, unreasonable and unlawful and has modified the tariffs governing those markets to adjust downward the rates that sellers, including Grant County PUD, were entitled to charge for those sales. Grant County PUD is now contractually obligated to reimburse the California Parties for the difference between the rates that Grant County PUD charged and the revised lawful rates under FERC's modification of the tariffs. Amounts recovered by the California Parties will flow to California ratepayers in the manner determined by the California Public Utilities Commission.

1. **The ISO and PX Markets**

At all relevant times, the terms and conditions of Grant County PUD's sales were specified in tariffs governing the ISO and PX markets. Pursuant to the tariffs, rates for wholesale sales in the ISO and PX markets were set through auctions conducted by the ISO and PX on an hourly or more frequent basis. The ISO tariff also authorized the ISO to procure power outside the auction process when necessary to maintain reliability. The tariffs were filed with and subject to the exclusive jurisdiction of FERC, and required each participant in the ISO and PX markets to comply with and abide by all rules, conditions and provisions of those markets' respective tariffs. By voluntarily electing to sell power in the ISO and PX markets, Grant County PUD agreed to be bound by the provisions of the ISO and PX tariffs and FERC's regulation and modification thereof, including FERC's orders adjusting the rates sellers could lawfully charge for sales in those markets.

Pursuant to the Federal Power Act, FERC regulates wholesale sales of electric power in order to, among other things, ensure that the rates charged are just, reasonable and lawful. FERC

15

has exclusive authority to regulate the terms and conditions of power sales made under the ISO and PX tariffs, including the responsibility to ensure that all rates charged by sellers in the ISO and PX markets are just, reasonable and lawful, and to recalculate and adjust such rates for prior periods if FERC determines that the rates charged were not just, reasonable and lawful. The ISO and PX tariffs provide that parties retain the right to petition FERC to review rates charged under the tariff and provide for recalculation of charges and resettlement of the accounts of buyers and sellers under the tariffs where FERC determines that rates should be adjusted.

2. **The Power Crisis**

Beginning in May 2000, the rates charged by sellers in the ISO and PX markets rose dramatically and sellers continued to demand unprecedented high prices for over a year. All sellers, including Grant County PUD, sold power at those extremely high rates by operation of the pricing provisions of the ISO and PX tariffs. The power crisis had severe negative effects on the stability and financial integrity of PG&E, SCE, and SDG&E ("the California IOUs"), and imposed crippling costs on ratepayers of the California IOUs, including businesses throughout the state.

The first ratepayer impacts were felt in the San Diego area, because SDG&E rates in the summer of 2000 provided for immediate direct pass-through of the increased wholesale power costs to ratepayers. Residents and businesses alike suffered. By January 2001, PG&E and SCE amassed crippling debt in order to finance the costs of buying electricity, costs they were unable to immediately pass through to ratepayers. PG&E and SCE became unable to pay the PX for power purchases, and could no longer find sellers willing to sell them power to serve their millions of retail customers. California ratepayers experienced rolling blackouts and near-continuous power emergencies. The PX market was forced to cease operations entirely on January 30, 2001. The State of California was forced to step in to buy power to serve retail customers throughout the territories served by the California IOUs. In 2001, unrelenting high prices caused the state's two largest IOUs, PG&E and SCE, to become insolvent. The power crisis ultimately ended when FERC imposed must-offer requirements on power generators and wholesale price caps on wholesale sellers of energy across all western states effective June 20, 2001.

16

The bulk of the costs of the crisis have been and are being passed through to and paid by the residential and commercial ratepayers of the California IOUs. The cost of paying off those charges is included in current rates assessed to customers of the California IOUs.

3. **The California Parties' Attempts to Obtain Relief From FERC**

On August 2. 2000. when it became clear that the extremely high wholesale prices were not returning to the lower levels that had prevailed historically. SDG&E filed a complaint with FERC, requesting that FERC investigate the markets and correct rates on a forward basis. and correct the rates received by all sellers for past sales to the extent FERC determined that sellers had charged unjust and unreasonable or otherwise unlawful rates. FERC Docket No. EL00-95. PG&E, SCE and the EOB intervened in the proceeding on August 14, 2002. Grant County PUD also was a party to the FERC proceedings.

In response to the California Parties' complaint, FERC commenced an investigation into the sellers' rates. In an order issued July 25, 2001 (the "Refund Order"), FERC ruled that sellers of power in the ISO and PX markets (including Grant County PUD) had sold power at unjust, unreasonable and unlawful rates, and that the rates charged in the ISO and PX markets should be adjusted. In lieu of the pricing formula previously provided in the ISO and PX tariffs, FERC established a new pricing formula to determine the adjusted rates (the "Mitigated Market Clearing Price" or "MMCP"). and ordered the ISO and PX to recalculate the rates sellers should have received. and to charge sellers — and refund or credit to buyers — all amounts sellers had received in excess of the recalculated rates during the FERC-ordered refund period. FERC interpreted the Federal Power Act as limiting the time period for which FERC could order such refunds to the period from October 2. 2000 through June 20, 2001 (the "Refund Period"). even though comparably high prices had prevailed in the ISO and PX markets since May 2000. The ISO and PX have commenced the recalculation of the accounts of all sellers and buyers in the ISO and PX markets to reflect the revised rates for the Refund Period in accordance with the Refund Order.

In May 2002, evidence became available that Enron had manipulated the ISO and PX markets throughout the power crisis. In response, FERC propounded discovery requests to all sellers in the ISO and PX markets regarding market manipulation. On August 23, 2002, the Ninth Circuit Court of Appeals directed FERC to provide a similar opportunity to the California Parties to adduce evidence of market manipulation. As a result of the Ninth Circuit's order, the California Parties conducted extensive discovery from late 2002 to early 2003 of sellers in the ISO and PX markets, including Grant County PUD. That discovery provided evidence of a pattern of manipulation involving numerous sellers into the ISO and PX markets. Further information on the FERC proceedings is available in the FERC record for Dockets Nos. EL00-95 and EL00-98.

Certain governmental entities, including Grant County PUD, appealed the Refund Order (and FERC's December 19, 2001 Order on Rehearing) to the Ninth Circuit Court of Appeals. On September 6, 2005, the Ninth Circuit ruled that FERC's power to enforce payment of refunds under the Federal Power Act did not extend to governmental entities, including Grant County PUD. The Court further clarified, however, that its decision was without prejudice to any rights that the market purchasers (such as the California Parties) may have to bring claims under the operative tariffs and other contracts directly against the governmental entities to recover from those entities the amounts they received, or claim the right to receive, as sellers in excess of FERC-adjusted rates. *Bonneville Power Administration v. Federal Energy Regulatory Commission,* 422 F.3d 908 (9th Cir. 2005).

This claim is based on the identical facts that were at issue in the proceedings at FERC and in the Ninth Circuit on the California Parties' complaint: the sellers' (including Grant County PUD's) receipt and retention of rates for sales of wholesale power in the ISO and PX markets that are now unlawful and unauthorized under the ISO and PX tariffs. The California Parties have at all times acted reasonably and in good faith in seeking relief at FERC and in asserting this claim.

18

4. **Description of Claims**

Upon FERC's adjustment of the rates charged and received by sellers in the ISO and PX markets, including Grant County PUD, the adjusted rates became the only lawful and authorized rates for those sales under the applicable tariffs. Grant County PUD became contractually obligated to reimburse purchasers for the difference between the rates Grant County PUD initially charged in its sales in the ISO and PX markets and the lower FERC-adjusted lawful rates. Grant County PUD has consistently taken the position that it has no obligation to refund or credit to buyers the difference between the initial rates Grant County PUD charged and the lawful rates as ultimately determined by FERC. In stark contrast, for transactions in which it was a buyer, Grant County PUD seeks to pay only the lower adjusted rates determined by FERC.

Causes of action for damages or other monetary relief that the California Parties may assert include, but are not limited to, the following: breach and repudiation of contract obligations; unjust enrichment arising from contract; money had and received; and contractual and equitable indemnification. The California Parties will also seek pre-judgment and post-judgment interest, and such other relief as may be appropriate.

The California Parties seek reimbursement from Grant County PUD for Grant County PUD's sales during the following periods:

   a.   **The FERC-Ordered Refund Period: October 2, 2000 – June 20, 2001**

The California Parties are entitled to recover from Grant County PUD for its overcharges in the ISO and PX markets from October 2, 2000 through June 20, 2001, the period for which FERC has already revised the permissible rates for sales in those markets under the applicable tariffs. The amount to which the California Parties are entitled is being calculated by the ISO and PX, and is estimated to be approximately $15.6 million, without consideration of any amounts Grant County PUD may claim it is entitled to offset against that liability.

   b.   **The Summer Period: May 1, 2000 – October 1, 2000**

19

The California Parties are seeking an order from FERC finding that the rates charged by sellers in the ISO and PX markets from May 1, 2000 through October 1, 2000 (the "Summer Period") were unlawful. The prices that prevailed in the ISO and PX markets during the summer period were comparable to the prices during the refund period. FERC concluded that it would not grant relief for the Summer Period, however, and the California Parties have appealed that ruling to the Ninth Circuit Court of Appeals. A controversy has arisen in that Grant County PUD has denied that it has any liability to the California Parties for any monetary relief FERC may assess for the Summer Period. The California Parties seek a ruling that at such time as FERC finds that the rates charged by sellers during the Summer Period were unlawful, the California Parties will be entitled to recover from Grant County PUD the difference between the rates charged by Grant County PUD and the lawful rates as ultimately determined by FERC.

**5. Decision**

Claimants request a final decision on this claim.

**6. Notices**

All notices and other communications with regard to this claim should be directed to the counsel listed on the following pages.

DATED: Dec. 1, 2005

Respectfully submitted,

PACIFIC GAS AND ELECTRIC COMPANY

Stan Berman
Lisa D. Hardie
Peggy J. Williams
Heller Ehrman LLP
701 Fifth Ave., Suite 6100
Seattle, WA 98104

Marie L. Fiala
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94101

Joshua Bar-Lev
Kermit R. Kubitz
Pacific Gas and Electric Company
77 Beale Street, B30A
Post Office Box 7442
San Francisco, CA 94120

*Attorneys for*
*Pacific Gas and Electric Company*

21

DATED: November 30, 2005

Respectfully submitted,

SOUTHERN CALIFORNIA EDISON COMPANY

By: /s/ Russell C. Swartz
Russell C. Swartz
Its Assistant General Counsel

Richard L. Roberts
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036

Russell C. Swartz
Michael D. Mackness
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, California 91770

*Attorneys for*
*Southern California Edison Company*

DATED: 11/30, 2005        Respectfully submitted,

SAN DIEGO GAS & ELECTRIC COMPANY

Steven D. Davis
Senior Vice President and Chief Financial Officer
San Diego Gas & Electric Company
8330 Century Park Court, CP33A
San Diego, CA 92123

DATED: November 30, 2005

Respectfully submitted,

CALIFORNIA ELECTRICITY OVERSIGHT BOARD

*[signature: Victoria Kolakowski]*

Erik N. Saltmarsh, Chief Counsel
Victoria S. Kolakowski,
Acting Assistant Chief Counsel
California Electricity Oversight Board
770 L Street, Suite 1250
Sacramento, CA 95814

*Attorneys for California Electricity Oversight Board*