1  to indemnify CAN Insurance Companies in connection with issuance of Surety Bond No.

2  159267371 issued on behalf of the Debtor for Workers' Compensation, (c) the Indemnity Agreement

3  by PG&E Corporation, dated April 7, 2000, to indemnify Kemper Insurance Companies in

4  connection with issuance of Surety Bond No. 955006 issued on behalf of the Debtor for Workers'

5  Compensation, (d) the Indemnity Agreement by PG&E Corporation, dated April 7, 2000, to

6  indemnify Travelers Insurance, as successor to Reliance Insurance Company, in connection with

7  issuance of Surety Bond No. B1686191 issued on behalf of the Debtor for Workers' Compensation,

8  and (e) the Indemnity Agreement by PG&E Corporation, dated April 7, 2000, to indemnify

9  Firemen's Fund Insurance Company in connection with issuance of Surety Bond No. 11133362811

10  issued on behalf of the Debtor for Workers' Compensation.

11         1.2    Interpretation; Application of Definitions and Rules of Construction. Wherever

12  from the context it appears appropriate, each term stated in either the singular or the plural shall

13  include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter

14  gender shall include the masculine, feminine and neuter. Unless otherwise specified herein, all

15  section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of,

16  Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder" and other

17  words of similar import refer to the Plan as a whole and not to any particular section, subsection or

18  clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy

19  Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but

20  that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy

21  Code. The headings in the Plan are for convenience of reference only and shall not limit or

22  otherwise affect the provisions of the Plan.

23                          ARTICLE II

24      **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, ORDINARY**
     **COURSE LIABILITIES, PROFESSIONAL COMPENSATION AND**

25        **REIMBURSEMENT CLAIMS, AND PRIORITY TAX CLAIMS**

26         2.1    Administrative Expense Claims. Except as otherwise provided herein, including

27  Section 2.2 (with respect to Professional Compensation and Reimbursement Claims) and Section 6.4

28  hereof (with respect to cure amounts owed in respect of executory contracts and unexpired leases

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   assumed by the Debtor-in-Possession), (i) all requests for allowance and payment of any

2   Administrative Expense Claim arising on or before the Confirmation Date shall be filed no later than

3   the date that is thirty (30) days after the Confirmation Date, and (ii) all requests for allowance and

4   payment of any Administrative Expense Claim arising after the Confirmation Date and on or before

5   the Effective Date shall be filed no later than the date that is thirty (30) days after the Effective Date.

6   Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense

7   Claim agrees to a less favorable treatment, and except as otherwise provided herein, including

8   Section 2.2 (with respect to Professional Compensation and Reimbursement Claims) and Section 6.4

9   hereof (with respect to cure amounts owed in respect of executory contracts and unexpired leases

10  assumed by the Debtor-in-Possession), (i) each holder of an Allowed Administrative Expense Claim

11  arising on or before the Confirmation Date shall receive Cash in an amount equal to such Allowed

12  Administrative Expense Claim on the later of the Effective Date and the date such Administrative

13  Expense Claim becomes an Allowed Administrative Expense Claim, or as soon as practicable

14  thereafter, or on such other date as may be ordered by the Bankruptcy Court; and (ii) each holder of

15  an Allowed Administrative Expense Claim arising after the Confirmation Date and on or before the

16  Effective Date shall receive Cash in an amount equal to such Allowed Administrative Expense

17  Claim on the later of the date that is 90 days after the Effective Date and the date such

18  Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon as

19  practicable thereafter, or on such other date as may be ordered by the Bankruptcy Court. Except as

20  provided under applicable non-bankruptcy law or certain agreements with the Debtor approved by

21  the Bankruptcy Court and which are incorporated into and made a part of the Plan, Post-Petition

22  Interest will not be paid on Allowed Administrative Expense Claims.

23      2.2   Professional Compensation and Reimbursement Claims. The holders of

24  Professional Compensation and Reimbursement Claims shall file their respective final applications

25  for allowances of compensation for services rendered and reimbursement of expenses incurred

26  through the Confirmation Date by no later than the date that is ninety (90) days after the

27  Confirmation Date, or such other date as may be fixed by the Bankruptcy Court. If granted by the

28  Bankruptcy Court, such award shall be paid in full in such amounts as are Allowed by the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   Bankruptcy Court either (a) on the date such Professional Compensation and Reimbursement Claim

2   becomes an Allowed Professional Compensation and Reimbursement Claim, or as soon as

3   practicable thereafter, or (b) upon such other terms as may be mutually agreed upon between such

4   holder of an Allowed Professional Compensation and Reimbursement Claim and the Debtor.

5        2.3    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority

6   Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment,

7   each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement,

8   satisfaction and discharge of its Allowed Priority Tax Claim, including Post-Petition Interest, Cash

9   in an amount equal to such Allowed Priority Tax Claim plus accrued and unpaid Post-Petition

10  Interest thereon on the later of the Effective Date and the date such Priority Tax Claim becomes an

11  Allowed Priority Tax Claim, or as soon as practicable thereafter.

12       2.4    Ordinary Course Liabilities.  Ordinary Course Liabilities shall be paid in full and

13  performed by the Debtor in the ordinary course of business in accordance with the terms and subject

14  to the conditions of any agreements governing, instruments evidencing or other documents relating

15  to such transactions and pursuant to applicable law, without the necessity of the filing of an

16  Administrative Expense Claim.  Except as provided under such agreements, instruments and

17  documents or applicable non-bankruptcy law, Post-Petition Interest will not be paid on any Ordinary

18  Course Liabilities.  Any disputed Ordinary Course Liabilities shall be determined, resolved, or

19  adjudicated, as the case may be, in a manner as if the Chapter 11 Case had not been commenced

20  (except that, under sections 365 and/or 1123(b)(2) of the Bankruptcy Code, contractual provisions,

21  accelerations and defaults eliminated or rendered unenforceable by such sections shall remain

22  eliminated or unenforceable), and shall survive the Effective Date as if the Chapter 11 Case had not

23  been commenced.  In the event of a disputed Ordinary Course Liability, the Debtor shall be liable in

24  the amount or in the manner determined by a Final Order or by a binding award, agreement or

25  settlement; provided, however, that the Debtor shall preserve all rights and defenses respecting any

26  Ordinary Course Liability that exists under applicable law.  All disputed Ordinary Course Liabilities

27  shall be determined and liquidated under applicable non-bankruptcy law in the administrative or

28  judicial tribunal in which they are pending as of the Effective Date or, if no such action is pending

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction. In light

2  of the unimpaired pass-through treatment of Ordinary Course Liabilities hereunder, the Reorganized

3  Debtor waives the discharge of section 1141(d) of the Bankruptcy Code as to any Ordinary Course

4  Liability.

5                                ARTICLE III

6             CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

7             Claims against and Equity Interests in the Debtor, other than Administrative Expense

8  Claims, Professional and Reimbursement Claims and Priority Tax Claims, are classified for all

9  purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| Class | Claim/Interest | Status |
|-------|----------------|--------|
| 1 | Other Priority Claims | Unimpaired |
| 2 | Other Secured Claims | Unimpaired |
| 3a | Secured Claims Relating to First and Refunding Mortgage Bonds | Impaired |
| 3b | Secured Claims Relating to PC-Related Mortgage Bonds | Impaired |
| 4a | Mortgage Backed PC Bond Claims | Impaired |
| 4b | MBIA Insured PC Bond Claims | Unimpaired |
| 4c | MBIA Claims | Impaired |
| 4d | Letter of Credit Backed PC Bond Claims | Unimpaired |
| 4e | Letter of Credit Bank Claims | Impaired |
| 4f | Prior Bond Claims | Unimpaired |
| 4g | Treasury PC Bond Claims | Unimpaired |
| 5 | General Unsecured Claims | Impaired |
| 6 | ISO, PX and Generator Claims | Unimpaired[2] |

[2]The Proponents believe that Classes 6 and 7 are unimpaired by the Plan, and such Classes are
accordingly so classified. However, the Proponents understand that certain holders of Class 6 and/or
Class 7 Claims believe that Class 6 and/or Class 7 Claims are impaired by the Plan. Accordingly, to
avoid any delay in the confirmation process, as a precautionary measure holders of Class 6 and Class
7 Claims will be solicited to vote on the Plan and their votes will be tabulated, so that in the event
any such holders object to confirmation of the Plan based on the classification of their Claims as
unimpaired and the Bankruptcy Court sustains such objection, the results of their votes will be
known for purposes of applying the confirmation standard under section 1129(a)(8) of the

                                                              ( . . . continued)

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

| Class | Claim/Interest | Status |
|---|---|---|
| 7 | ESP Claims | Unimpaired[2] |
| 8 | Environmental, Fire Suppression, Pending Litigation and Tort Claims | Unimpaired |
| 9 | QUIDS Claims | Unimpaired |
| 10 | Workers' Compensation Claims | Unimpaired |
| 11 | Preferred Stock Equity Interests | Unimpaired |
| 12 | Common Stock Equity Interests | Unimpaired |

## ARTICLE IV

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1     Payment of Interest.  Allowed Claims shall include amounts owed with respect to the period prior to the Petition Date and applicable interest accrued and unpaid during such period. Except as otherwise provided herein, holders of Allowed Claims shall also be paid in Cash accrued and unpaid interest on such Allowed Claims from the Petition Date through the Effective Date ("Post-Petition Interest").  Except as otherwise provided herein, including Exhibit B attached hereto, any Post-Petition Interest shall be calculated and paid at the lowest non-default rate and in accordance with the terms specified in the applicable statute, indenture or instrument governing such Allowed Claim or, if no such instrument exists or the applicable instrument does not specify a non-default rate of interest, Post-Petition Interest shall be calculated and paid on such Allowed Claim at the Federal Judgment Rate.  Except as provided under applicable non-bankruptcy law or certain agreements with the Debtor approved by the Bankruptcy Court and which are incorporated into and made a part of the Plan, Post-Petition Interest will not be paid on the following Allowed Claims: Administrative Expense Claims, Environmental, Fire Suppression, Pending Litigation and Tort Claims, and Workers' Compensation Claims.

---

(. . . continued)
Bankruptcy Code.  Accordingly, allowing the holders of Class 6 and Class 7 Claims to vote is without prejudice to the Proponents' position that these Classes are unimpaired, and the Proponents reserve the right to contest any objection to the unimpaired status of Classes 6 and 7.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

4.2    Timing of Payments and Distributions.

(a) Pursuant to an Order entered by the Bankruptcy Court on April 9, 2001

authorizing the interim use of Cash collateral, and an Order entered by the Bankruptcy Court on May

9, 2001 approving a stipulation for the use of Cash collateral between the Debtor and the trustee for

the First and Refunding Mortgage Bonds, as subsequently amended, the Debtor has paid and will

continue to pay Post-Petition Interest to the holders of Allowed Claims in Classes 3a, 3b and 4a.  In

addition, the Debtor will make payments of Post-Petition Interest that has accrued and is unpaid on

and after the Initial Calculation Date and through the last day of the last calendar quarter ending

prior to the Effective Date, in arrears, in quarterly installments (or in the case of such first quarter

following the Initial Calculation Date, for holders of Allowed Claims for which February 28, 2002 is

the Initial Calculation Date, the four month period from March 1, 2002 to June 30, 2002) as follows:

(x) on the first Business Day of the next calendar quarter to the holders of Allowed Claims in Class

5 for Senior Indebtedness, the holders of Allowed Southern San Joaquin Power Authority Bond

Claims and the holders of Allowed Claims in Classes 4c, 4f, 4g and 9, and (y) within thirty (30) days

following the end of the calendar quarter, to the remaining holders of Allowed Claims in Class 5 and

the holders of Allowed Claims in Classes 1, 2, 6 and 7. Any Post-Petition Interest that accrues

during the period commencing on the first day of the calendar quarter in which the Effective Date

occurs and ending on the Effective Date will be paid on the Effective Date.

(b) Pursuant to an Order entered by the Bankruptcy Court on November 26, 2002

approving a stipulation between the Debtor and MBIA, the Debtor continues to pay Post-Petition

Interest to the holders of Allowed MBIA Claims (Class 4c), but beginning December 1, 2002,

converted to semi-annual payments of Post-Petition Interest on June 1 and December 1 of each year

in accordance with the terms of the applicable loan documents.

(c) Pursuant to an Order entered by the Bankruptcy Court on April 9, 2002

approving the Debtor's execution and performance under an agreement with the Letter of Credit

Issuing Banks entitled "Summary of Terms with Respect to Forbearance and Proposed Revised

Treatment of Letter of Credit Bank Claims in the Plan of Reorganization" and pursuant to an Order

entered by the Bankruptcy Court on June 17, 2002 approving the Debtor's execution and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1  performance under the "First Amended and Restated Summary of Terms With Respect to

2  Forbearance and Proposed Revised Treatment of Letter of Credit Bank Claims in the Plan of

3  Reorganization," the Debtor has made and will continue to make certain payments to the Letter of

4  Credit Issuing Banks and to the holders of Allowed Claims in Class 4e prior to the Effective Date, as

5  set forth in such agreements and in Section 4.11 hereof.

6  (d) Except as set forth in Sections 4.2(a) and 4.2(b) above and except to the

7  extent a holder of an Allowed Claim or Equity Interest has otherwise been paid all or a portion of

8  such holder's Allowed Claim or Equity Interest prior to the Effective Date, each of the distributions

9  specified in this Article IV with respect to each Allowed Claim or Equity Interest shall (i) occur on

10  the later of the Effective Date and the date such Allowed Claim or Equity Interest becomes an

11  Allowed Claim or Equity Interest, or as soon as practicable thereafter, and (ii) be in full and

12  complete settlement, satisfaction and discharge of such Allowed Claim or Equity Interest.

13  (e) Nothing in the Plan shall affect the right of reconsideration set forth in

14  section 502(j) of the Bankruptcy Code.  Any Claims that become Allowed Claims following

15  reconsideration by the Bankruptcy Court shall be treated in the same manner as Allowed Claims in

16  the same Class.

17  4.3    Class 1 - Other Priority Claims.

18  (a) Distributions.  Each holder of an Allowed Other Priority Claim, if any exist,

19  shall be paid Cash in an amount equal to such Allowed Claim.

20  (b) Impairment and Voting.  Class 1 is unimpaired by the Plan.  Each holder of

21  an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not

22  entitled to vote to accept or reject the Plan.

23  4.4    Class 2 - Other Secured Claims.

24  (a) Distributions/Reinstatement of Claims.  Each holder of an Allowed Other

25  Secured Claim shall, at the option of the Debtor, (i) be reinstated and rendered unimpaired in

26  accordance with section 1124(2) of the Bankruptcy Code or (ii) be paid Cash in an amount equal to

27  such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim

28  required to be paid pursuant to section 506(b) of the Bankruptcy Code and in accordance with the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  terms specified in the applicable statute, indenture or instrument governing such Allowed Other

2  Secured Claim.

3  　　　　　(b) <u>Impairment and Voting</u>.  Class 2 is unimpaired by the Plan.  Each holder of

4  an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan and is not

5  entitled to vote to accept or reject the Plan.

6  　　　　4.5　　<u>Class 3a - Secured Claims Relating to First and Refunding Mortgage Bonds</u>.

7  　　　　　(a) <u>Allowance</u>.  The Secured Claims Relating to First and Refunding Mortgage

8  Bonds shall be Allowed Secured Claims Relating to First and Refunding Mortgage Bonds in the

9  amount of approximately $2,653,000,000[3] plus accrued and unpaid pre-petition interest on such

10  amount, plus Allowed Claims in the amount of all unpaid fees and expenses of the related First and

11  Refunding Mortgage Bond trustee accrued through the Petition Date under the terms of the

12  Mortgage, plus:

13  　　　　　　　(i)　　with respect to the following series of First and Refunding

14  Mortgage Bonds, a prepayment premium payable in cash upon the Effective Date as follows:  a

15  1.0000% premium with respect to the 8.800% First and Refunding Mortgage Bonds Series 91A due

16  May 1, 2024, a 0.1000% premium with respect to the 5.875% First and Refunding Mortgage Bonds

17  Series 93E due October 1, 2005, a 0.0250% premium with respect to the 6.25% First and Refunding

18  Mortgage Bonds Series 93G due March 1, 2004 and a 1.0000% premium with respect to the 7.05%

19  First and Refunding Mortgage Bonds Series 93H due March 1, 2024,

20  　　　　　　　(ii)　 with respect to all other series of redeemable First and Refunding

21  Mortgage Bonds as to which the redemption period commences prior the Effective Date, any

22  prepayment premium provided under the First and Refunding Mortgage Bonds that applies to

23  prepayment of such First and Refunding Mortgage Bonds on or prior to the Effective Date, which

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

―――――――

24  　　　　　[3]This $2,653,000 total includes approximately $234,000,000 in First and Refunding Mortgage

25  Bonds owned in treasury by the Debtor as of the date hereof.  All or any portion of such treasury
bonds owned by the Debtor that remain outstanding may be cancelled on or reasonably promptly

26  prior to the Effective Date pursuant to the treatment of such treasury bonds specified in Section
4.5(b) hereof.  Prior to the Effective Date, the Debtor shall not sell any such treasury bonds,

27  provided that the Debtor may use any portion of such treasury bonds (and effect the cancellation
thereof) for the purpose of meeting its sinking fund or similar obligations under the Mortgage.

28

1    shall be payable in Cash, and

2                    (iii)    with respect to all other series of redeemable First and Refunding

3    Mortgage Bonds as to which the redemption period commences subsequent to the Effective Date, a

4    prepayment premium equal to the premium that would apply at the commencement of such

5    redemption period, shall be payable in Cash;

6                    provided, however, that Allowed Secured Claims Relating to First and Refunding

7    Mortgage Bonds shall not include any other prepayment premium or penalties associated with the

8    repayment of First and Refunding Mortgage Bonds; and provided further, that no prepayment

9    premium will be paid on any series of First and Refunding Mortgage Bonds that matures in

10   accordance with its terms prior to the Effective Date if the Allowed Secured Claims on such series

11   of First and Refunding Mortgage Bonds are paid on or about the maturity date thereof.

12                   (b) Distributions.   Except as provided in the next sentence, each holder of an

13   Allowed Secured Claim Relating to First and Refunding Mortgage Bonds shall be paid Cash in an

14   amount equal to such Allowed Secured Claim.   As to all First and Refunding Mortgage Bonds

15   owned in treasury by the Debtor that remain outstanding, the Debtor's Allowed Secured Claim

16   pertaining to such First and Refunding Mortgage Bonds may, in lieu of payment thereof in Cash

17   pursuant to the preceding sentence, be satisfied and discharged by the cancellation of such First and

18   Refunding Mortgage Bonds reasonably promptly prior to the Effective Date.

19                   (c) Liens.   All existing Liens securing the Allowed Secured Claims Relating to

20   First and Refunding Mortgage Bonds shall be extinguished as of the Effective Date.

21                   (d) Impairment and Voting. . Class 3a is impaired by the Plan.  Each holder of an

22   Allowed Secured Claim Relating to First and Refunding Mortgage Bonds is entitled to vote to

23   accept or reject the Plan.

24           4.6    Class 3b - Secured Claims Relating to PC-Related Mortgage Bonds.

25                   (a) Allowance.   The Claims of the PC-Related Mortgage Bonds trustee with

26   respect to payment of principal, prepayment premium, if any, and interest on the PC-Related

27   Mortgage Bonds shall be deemed contingent Claims, and the Claims of the PC-Related Mortgage

28   Bonds trustee with respect to all other amounts that may become due and owing by the Debtor under

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

the terms of the Mortgage, including unpaid fees and expenses of the PC-Related Mortgage Bonds

trustee accrued through the Petition Date under the terms of the Mortgage, shall be deemed Allowed

Secured Claims.[4]

       (b) <u>Distributions</u>.

             (i)    If none of the New Money Notes are secured on the Effective

Date, then each series of PC-Related Mortgage Bonds shall be replaced with New Mortgage Bonds.

In such event, each holder of a PC-Related Mortgage Bond shall be paid an amount in Cash equal to

any and all accrued and unpaid interest owed to such holder in respect of such PC-Related Mortgage

Bond in accordance with the terms thereof to and including the last scheduled interest payment date

preceding the Effective Date.

             (ii)    If any of the New Money Notes are secured on the Effective Date,

then with respect to each series of PC-Related Mortgage Bonds securing a series of Mortgage

Backed PC Bonds redeemed in accordance with Section 4.7(b)(ii) hereof, each holder of an

Allowed Secured Claim relating to such series of PC-Related Mortgage Bonds shall be paid Cash in

an amount equal to such Allowed Claim.

       (c) <u>Liens</u>.  If any of the New Money Notes are secured on the Effective Date, all

existing Liens securing the Allowed Secured Claims Relating to PC-Related Mortgage Bonds shall

be extinguished as of the Effective Date.

       (d) <u>Impairment and Voting</u>.  Class 3b is impaired by the Plan.  Each holder of an

Allowed Secured Claim Relating to PC-Related Mortgage Bonds is entitled to vote to accept or

reject the Plan.

---

[4]With respect to each series of Mortgage Backed PC Bonds, in order to secure and provide for the repayment of the respective Bond Loan, the Debtor issued and delivered to the Bond Trustee its PC-Related Mortgage Bonds, of like principal amount, maturity, interest rate and redemption provisions as the related series of Mortgage Backed PC Bonds.  Under the terms of the respective PC Bond Documents related to the Mortgage Backed PC Bonds, the Debtor is obligated to repay principal and interest on the respective Bond Loan only to the extent that such payments are not timely provided for by the payment of principal and interest on the respective PC-Related Mortgage Bonds.  Funds received by the Bond Trustee as the payment of Class 3b Allowed Claims will be applied by the Bond Trustee to satisfy a like amount of Class 4a Allowed Claims.  Accordingly, the estimate of $345 million is the aggregate amount of all Allowed Claims in Classes 3b and 4a.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
*A Professional Corporation*

4.7    Class 4a - Mortgage Backed PC Bond Claims.

(a) Allowance.  The Mortgage Backed PC Bond Claims shall be deemed Allowed Secured Claims in the amount of $345,000,000,[5] plus accrued and unpaid pre-petition interest on such amount, plus prepayment premium, if any, plus Allowed Claims in the amount of all unpaid fees and expenses of the related Issuer and Bond Trustee accrued through the Petition Date under the terms of the applicable PC Bond Documents.

(b) Distributions.

(i)    If none of the New Money Notes are secured on the Effective Date, then:

(A)    Each series of Mortgage Backed PC Bonds, and each of the PC Bond Documents relating thereto, shall be renewed and remain outstanding.  To the extent such payments are not made or provided for by the payment of Class 3b Claims to or for the benefit of the Bond Trustee, each holder of a Mortgage Backed PC Bond shall be paid Cash in an amount equal to any and all accrued and unpaid interest owed to such holder in respect of such Mortgage Backed PC Bond in accordance with the terms thereunder to and including the last scheduled interest payment date preceding the Effective Date.  All unpaid fees and expenses of the Issuer and Bond Trustee due and owing under the applicable Loan Agreements shall also be paid in Cash.

(B)    On or prior to the Effective Date, with respect to each series of Mortgage Backed PC Bonds that will remain outstanding after the Effective Date, the Reorganized Debtor, the Issuer and Bond Trustee shall receive an opinion of the original bond counsel to the effect that the transactions set forth herein with respect to each series of Mortgage Backed PC Bonds and the execution and delivery of any releases, amendments or other agreements in connection therewith will not, in and of themselves, cause interest on such series of Mortgage Backed PC Bonds to become includable in the gross income of the holders thereof for federal income tax purposes.

(ii)    If any of the New Money Notes are secured on the Effective Date,

---

[5] See footnote 4.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    then all of the Mortgage Backed PC Bonds shall, at the option of the Reorganized Debtor with

2    respect to each series of Mortgage Backed PC Bonds, be (A) redeemed in accordance with their

3    terms and each holder of an Allowed Secured Claim relating to such series of Mortgage Backed PC

4    Bonds shall be paid Cash in an amount equal to such Allowed Claim, or (B) to the extent permitted

5    under the terms of the Indenture, purchased in lieu of redemption or otherwise in accordance with

6    their terms, and each holder of a Mortgage Backed PC Bond of such series will be paid a purchase

7    price in Cash for its Mortgage Backed PC Bond(s) in an amount equal to its Allowed Secured Claim

8    with respect to such Mortgage Backed PC Bond(s), provided that, in connection with any such

9    purchase of the Mortgage Backed PC Bonds on the Effective Date, the Reorganized Debtor shall

10    cause the PC-Related Mortgage Bonds securing such outstanding Mortgage Backed PC Bonds (and

11    the Mortgage pursuant to which such PC-Related Mortgage Bonds were issued) to be released and

12    cancelled.   The Reorganized Debtor may, among other things, at its option, fund the redemption or

13    purchase price of Mortgage Backed PC Bonds tendered for redemption or purchase on the Effective

14    Date in accordance with the terms hereof from remarketing proceeds received from the sale and

15    remarketing of such bonds or from the proceeds of the issuance and sale of refunding bonds, which

16    remarketed or refunding bonds may at the option of the Reorganized Debtor, be secured by, among

17    other things, contingent notes issued under the same indenture as the New Money Notes and ranking

18    *pari passu* therewith in accordance with the provisions of Section 7.2 hereof.

19                    (c) Impairment and Voting.  Class 4a is impaired by the Plan.  Each holder of an

20    Allowed Mortgage Backed PC Bond Claim is entitled to vote to accept or reject the Plan.

21             4.8   Class 4b—MBIA Insured PC Bond Claims.

22                    (a) Allowance.  The MBIA Insured PC Bond Claims shall be deemed Allowed

23    MBIA Insured PC Bond Claims in the amount of $200,000,000, plus accrued and unpaid pre-

24    petition interest on such amount, plus Allowed Claims in the amount of all unpaid fees and expenses

25    of the related Issuer and Bond Trustee accrued through the Petition Date under the terms of the

26    applicable PC Bond Documents.

27                    (b) Distributions.  The MBIA Insured PC Bonds, and each of the PC Bond

28    Documents relating thereto, shall remain outstanding.  The Loan Agreement and the PC Bond

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  Documents related to the MBIA Insured PC Bonds will be reinstated and rendered unimpaired in

2  accordance with section 1124 of the Bankruptcy Code. Each holder of a MBIA Insured PC Bond

3  shall be paid Cash in an amount equal to any and all accrued and unpaid interest owed to such holder

4  in respect of such MBIA Insured PC Bond in accordance with the terms of the respective MBIA

5  Insured PC Bond, to and including the last scheduled interest payment date preceding the Effective

6  Date. All unpaid fees and expenses of the Issuer and Bond Trustee due and owing under the

7  applicable Loan Agreement shall also be paid in Cash.

8           (c) _Impairment and Voting_. Class 4b is unimpaired by the Plan. Each holder of

9  an Allowed MBIA Insured PC Bond Claim is conclusively presumed to have accepted the Plan and

10  is not entitled to vote to accept or reject the Plan.

11        4.9    Class 4c—MBIA Claims.

12           (a) _Allowance_. The Claims of MBIA with respect to payments that may become

13  due by the Debtor under the terms of the MBIA Reimbursement Agreement as reimbursement for

14  payments made by MBIA under the PC Bond Insurance Policy shall be deemed contingent Claims,

15  and the Claims of MBIA for any and all other accrued and unpaid amounts due by the Debtor under

16  the MBIA Reimbursement Agreement, including any and all amounts due by the Debtor as

17  reimbursement of amounts paid by MBIA under the PC Bond Insurance Policy to the Bond Trustee

18  for the payment of interest on the MBIA Insured PC Bonds shall be deemed Allowed MBIA Claims.

19           (b) _Distributions_. Each holder of an Allowed MBIA Claim shall be paid Cash

20  equal to its pro rata share of the aggregate amount paid by MBIA to the Bond Trustee with respect to

21  the payment of interest on the MBIA Insured PC Bonds during the period from the Petition Date to

22  and including the last scheduled interest payment date preceding the Effective Date, together with its

23  pro rata share of all other amounts due and owing to MBIA under the terms of the MBIA

24  Reimbursement Agreement through the Effective Date, including any accrued and unpaid interest

25  due on such amounts to the extent provided in the MBIA Reimbursement Agreement at the non-

26  default rate. In addition, (i) if any of the New Money Notes are secured on the Effective Date, the

27  Reorganized Debtor will deliver to MBIA, or for the benefit of MBIA, a contingent note issued

28  under the same indenture as the New Money Notes and ranking _pari passu_ therewith, in an amount

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    equal to the aggregate outstanding principal amount of the MBIA Insured PC Bonds as additional

2    security for the Reorganized Debtor's obligations under the MBIA Reimbursement Agreement after

3    the Effective Date, and (ii) if none of the New Money Notes are secured on the Effective Date but at

4    least twenty-five percent (25%) of the aggregate principal amount of the credit facilities established

5    pursuant to the first sentence of Section 7.3 hereof are secured on the Effective Date, the

6    Reorganized Debtor will deliver to MBIA, or for the benefit of MBIA, a contingent note issued

7    under the same indenture as the New Mortgage Bonds and ranking *pari passu* therewith, in an

8    amount equal to the aggregate outstanding principal amount of the MBIA Insured PC Bonds as

9    additional security for the Reorganized Debtor's obligations under the MBIA Reimbursement

10   Agreement after the Effective Date.  Principal amounts under any contingent note issued pursuant to

11   the preceding sentence shall be payable only to the extent that the Reorganized Debtor has failed to

12   satisfy its obligations under the MBIA Reimbursement Agreement to reimburse MBIA for any

13   payments made by MBIA pursuant to the PC Bond Insurance Policy for the payment of the principal

14   of the MBIA Insured PC Bonds.  Such contingent note shall accrue interest on any principal amount

15   then due and payable thereunder at a rate equal to the interest rate which accrues on any outstanding

16   reimbursement obligations of the Reorganized Debtor under the MBIA Reimbursement Agreement.

17   Any payments made under such contingent note shall be deemed to satisfy the Reorganized Debtor's

18   obligations under the MBIA Reimbursement Agreement.

19          (c)  Impairment and Voting.  Class 4c is impaired by the Plan.  Each holder of an

20   Allowed MBIA Claim is entitled to vote to accept or reject the Plan.

21          4.10   Class 4d—Letter of Credit Backed PC Bond Claims.

22          (a)  Allowance.  The Letter of Credit Backed PC Bond Claims shall be deemed

23   Allowed Letter of Credit Backed PC Bond Claims in the amount of $613,550,000, plus accrued and

24   unpaid pre-petition interest on such amount, plus Allowed Claims in the amount of all unpaid fees

25   and expenses of the related Issuer and Bond Trustee accrued through the Petition Date under the

26   terms of the applicable PC Bond Documents.

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1        (b) <u>Distributions</u>. Each series of Letter of Credit Backed PC Bonds, and each of

2    the PC Bond Documents relating thereto, shall remain outstanding. Each of the Loan Agreements

3    and the PC Bond Documents related to the Letter of Credit Backed PC Bonds will be reinstated and

4    rendered unimpaired in accordance with section 1124 of the Bankruptcy Code. Each holder of a

5    Letter of Credit Backed PC Bond shall be paid Cash in an amount equal to any and all accrued and

6    unpaid interest owed to such holder in respect of such Letter of Credit Backed PC Bond in

7    accordance with the terms thereof to and including the last scheduled interest payment date

8    preceding the Effective Date. All unpaid fees and expenses of the Issuer and Bond Trustee due and

9    owing under the applicable Loan Agreement will also be paid in Cash.

10        (c) <u>Impairment and Voting</u>. Class 4d is unimpaired by the Plan. Each holder of

11    an Allowed Letter of Credit Bank Claim is conclusively presumed to have accepted the Plan and is

12    not entitled to vote to accept or reject the Plan.

13        4.11    <u>Class 4e—Letter of Credit Bank Claims</u>.

14        (a) <u>Allowance</u>. The Letter of Credit Bank Claims with respect to payments that

15    may become due by the Debtor under the terms of each of the Reimbursement Agreements as

16    reimbursement for amounts drawn under the Letters of Credit shall be deemed contingent Claims in

17    an amount equal to the outstanding Stated Amount of each of the Letters of Credit, and Letter of

18    Credit Bank Claims for any and all other accrued and unpaid amounts due by the Debtor under each

19    of the Reimbursement Agreements, including any and all amounts due by the Debtor as

20    reimbursement of amounts paid by a Letter of Credit Issuing Bank under its Letter of Credit to the

21    Bond Trustee for the payment of interest on the related Letter of Credit Backed PC Bonds, shall be

22    deemed Allowed Letter of Credit Bank Claims.

23        (b) <u>Distributions</u>.

24            (i)    With respect to each Letter of Credit Issuing Bank, until the earlier

25    of (x) the Effective Date, (y) the date the respective Letter of Credit is terminated or the stated

26    amount thereof is permanently reduced, or (z) the date that any of the related series of Letter of

27    Credit Backed PC Bonds are redeemed, to the extent that the Debtor has not reimbursed the

28    applicable Letter of Credit Issuing Bank and the applicable Banks, if any, for drawings made on the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   related Letter of Credit with respect to the payment of interest on the related series of Letter of

2   Credit Backed PC Bonds to the extent provided in the respective Reimbursement Agreement, each

3   holder of an Allowed Letter of Credit Bank Claim shall be paid Cash in an amount equal to its pro

4   rata share of the aggregate amount paid by the respective Letter of Credit Issuing Bank to the

5   respective Bond Trustee under the terms of the applicable Letter of Credit with respect to the

6   payment of the interest on the Letter of Credit Backed PC Bonds to which such Letter of Credit

7   Bank Claim relates during the period from the Petition Date to and including the last scheduled

8   interest payment date on such Letter of Credit Backed PC Bonds preceding the Effective Date. Each

9   holder of an Allowed Letter of Credit Bank Claim will also be paid Cash in an amount equal to its

10  pro rata share of all other amounts then due and owing to the respective Letter of Credit Issuing

11  Bank and the applicable Banks, if any, under the terms of the respective Reimbursement Agreement

12  (other than for reimbursement of drawings on the respective Letter of Credit) through the Effective

13  Date, including, without limitation, interest at the interest rate due on such amounts to the extent

14  provided in the respective Reimbursement Agreements and any due and owing Forbearance,

15  Extension and Letter of Credit Fees (as hereinafter defined) through the Effective Date, and the

16  reasonable fees and expenses of unrelated third-party professionals retained by the Letter of Credit

17  Issuing Banks, to the extent incurred subsequent to the Petition Date in the Chapter 11 Case.

18              (ii)    On the Effective Date one of the following shall occur with respect

19  to each series of Letter of Credit Backed PC Bonds and its respective Letter of Credit, at the option

20  of the Debtor separately for each series of Letter of Credit Backed PC Bonds:

21              (A)    Purchase Option. The respective series of Letter of Credit

22  Backed PC Bonds shall be called for mandatory tender in accordance with the terms of the

23  respective Indenture and shall be purchased by the respective Bond Trustee through a draw on the

24  related Letter of Credit and, at the option of the respective Letter of Credit Issuing Bank, shall either

25  be registered in the name of the respective Letter of Credit Issuing Bank or in the name of the Debtor

26  subject to a first lien security interest in favor of the respective Letter of Credit Issuing Bank to

27  additionally secure the obligations of the Debtor under the related Reimbursement Agreement. On

28  the Effective Date, to the extent that the Letter of Credit Issuing Bank and the Banks have not been

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    reimbursed therefor, the Letter of Credit Issuing Bank will receive Cash in an amount equal to the

2    sum of (i) the interest portion of the purchase price of the tendered Letter of Credit Backed PC

3    Bonds paid out of a draw on the respective Letter of Credit, and (ii) the aggregate amount paid by

4    the respective Letter of Credit Issuing Bank to the respective Bond Trustee under the terms of the

5    applicable Letter of Credit with respect to the payment of the interest on the respective Letter of

6    Credit Backed PC Bonds during the period from and after June 27, 2002 to and including the last

7    scheduled interest payment date on such Letter of Credit Backed PC Bonds preceding the Effective

8    Date, together with interest at the non-default rate due on such amounts to the extent provided in the

9    respective Reimbursement Agreement.  On the Effective Date, the Letter of Credit Issuing Bank

10   shall transfer the related Letter of Credit Backed PC Bonds in the aggregate original principal

11   amount as set forth on Exhibit C attached hereto to the Debtor or its assignee free and clear of all

12   liens.  On the Effective Date, the Letter of Credit Issuing Bank will receive (i) Cash in an amount

13   equal to the principal portion of the purchase price of the tendered Letter of Credit Backed PC Bonds

14   paid out of a draw on the respective Letter of Credit, and (ii) a fee (the "Purchase Option Incentive

15   Fee") in an amount equal to 0.4% of the principal portion of the purchase price of the tendered Letter

16   of Credit Backed PC Bonds paid out of a draw on the respective Letter of Credit.

17                           (B)   Remarketing Option.  The respective series of Letter of

18   Credit Backed PC Bonds shall be called for mandatory tender in accordance with the terms of the

19   respective Indenture and shall be purchased by the respective Bond Trustee through a draw on the

20   related Letter of Credit.  The Debtor will then either (i) provide or cause to be provided to the

21   respective Bond Trustee an alternative "Credit Facility" pursuant to the terms of the respective

22   Indenture in lieu of the existing Letter of Credit, or (ii) obtain the consent of the Issuer to remarket

23   the respective series of Letter of Credit Backed PC Bonds without credit enhancement in accordance

24   with the terms of the applicable Indenture.  In either event the respective series of Letter of Credit

25   Backed PC Bonds shall be remarketed, at par, in accordance with the terms of the Indenture and the

26   other PC Bond Documents.  In such event, on the Effective Date, the Letter of Credit Issuing Bank

27   will receive, to the extent that the Letter of Credit Bank has not been reimbursed therefor (i) from the

28   Debtor, Cash in an amount equal to the sum of (A) the interest portion of the purchase price of the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  tendered Letter of Credit Backed PC Bonds paid out of a draw on the respective Letter of Credit, and

2  (B) the aggregate amount paid by the respective Letter of Credit Issuing Bank to the respective Bond

3  Trustee under the terms of the applicable Letter of Credit with respect to the payment of the interest

4  on the respective Letter of Credit Backed PC Bonds during the period from and after June 27, 2002

5  to and including the last scheduled interest payment date on such Letter of Credit Backed PC Bonds

6  preceding the Effective Date, together with interest at the non-default rate due on such amounts to

7  the extent provided in the respective Reimbursement Agreement, (ii) from the Debtor, a fee (the

8  "Remarketing Option Incentive Fee") in an amount equal to either (1) 0.5% of the aggregate

9  principal amount of the respective Letter of Credit Backed PC Bonds remarketed on the Effective

10  Date the payment of the principal of and interest on which are secured by either a replacement Letter

11  of Credit, with a term of not less then one year from the Effective Date, delivered to the Trustee in

12  accordance with the terms of the respective Indenture upon terms acceptable to the Debtor or an

13  extension of the existing Letter of Credit delivered to the Trustee in accordance with the terms of the

14  respective Indenture upon terms acceptable to the Debtor, or (2) 0.4% of the aggregate principal

15  amount of the respective Letter of Credit Backed PC Bonds remarketed on the Effective Date the

16  payment of the principal of and interest on which are not secured by such a Letter of Credit, and

17  (iii) from the Bond Trustee, an amount equal to the principal portion of the purchase price of the

18  tendered Letter of Credit Backed PC Bonds paid out of a draw on the respective Letter of Credit,

19  which amount shall be paid from the remarketing proceeds of the respective Letter of Credit Backed

20  PC Bonds in accordance with the terms of the respective Indenture.

21        (C)  No Bonds Option.  With respect to each Letter of Credit

22  Issuing Bank and the related Banks, if any, in the event that neither the Purchase Option nor the

23  Remarketing Option, as applicable, can be consummated or the respective series of Letter of Credit

24  Backed PC Bonds are redeemed on or prior to the Effective Date as the result of the expiration of the

25  respective Letter of Credit or otherwise, then at the option of the Debtor separately for each Letter of

26  Credit Bank Claim and Reimbursement Agreement either:

27        (i)  On the Effective Date, the Letter of Credit Issuing

28  Bank will receive Cash in an amount equal to the sum of (A) the principal portion of the redemption

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   price of the redeemed Letter of Credit Backed PC Bonds paid out of a draw on the respective Letter

2   of Credit (the "Principal Reimbursement") and (B) any and all accrued and unpaid interest owing to

3   the Letter of Credit Issuing Bank in respect of such Principal Reimbursement, at a fluctuating rate of

4   interest, in accordance with the terms of the applicable Reimbursement Agreement; or

5                                              (ii)   On the Effective Date, the Letter of Credit Issuing

6   Bank shall sell, transfer and assign to the Debtor or its assignee, without recourse, all of the Letter of

7   Credit Issuing Bank's and the related Banks' rights, title and interest in the applicable Letter of

8   Credit Bank Claim and Reimbursement Agreement, including, but not limited to, the right to receive

9   repayment of the Principal Reimbursement in the aggregate principal amount as set forth on

10  Exhibit C attached hereto, together with the right to receive payment of interest thereon as set forth

11  in the amended Reimbursement Agreement, free and clear of all liens.  On the Effective Date, the

12  Debtor or its assignee shall purchase from the Letter of Credit Issuing Bank and the related Banks, if

13  any, all of their rights, title and interest in the applicable Letter of Credit Bank Claim and

14  Reimbursement Agreement for a purchase price in Cash in an amount equal to the sum of (A) the

15  respective Principal Reimbursement and (B) any and all accrued and unpaid interest owing to the

16  Letter of Credit Issuing Bank in respect of such Principal Reimbursement, at a fluctuating rate of

17  interest, in accordance with the terms of the applicable Reimbursement Agreement.

18                                      In addition to the foregoing with respect to the No Bond

19  Option, if (i) the Letter of Credit Issuing Bank maintains its Letter of Credit outstanding in the stated

20  amount set forth on Exhibit C attached hereto through the Effective Date and does not provide the

21  Trustee with notice of default under its Reimbursement Agreement or non-reinstatement of its Letter

22  of Credit or take any other action which would result in the redemption, either in whole or in part, of

23  the outstanding Letter of Credit Backed PC Bonds without the prior written consent of the Debtor,

24  and (ii) the Letter of Credit Issuing Bank and each of the related Banks, if any, take all action

25  reasonably required by the Debtor to keep the Letter of Credit Backed PC Bonds outstanding and to

26  facilitate either the Purchase Option or the Remarketing Option, as applicable, including, without

27  limitation, giving direction to the Trustee, providing commercially reasonably indemnification to the

28  Issuer and Trustee, and using their best efforts to consummate the proposed amendments to the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    terms of the Letter of Credit Backed PC Bonds as set forth in the LC Bank Agreement (as hereinafter

2    defined) and to consummate either the Purchase Option or the Remarketing Option as applicable, so

3    as to maintain for the Debtor the benefits of the tax-exempt financing provided by the related series

4    of Letter of Credit Backed PC Bonds, then, on the Effective Date (A) in the event that the Letter of

5    Credit Backed PC Bonds were redeemed prior to the Effective Date for reasons beyond the control

6    of the Letter of Credit Issuing Bank, the Letter of Credit Issuing Bank will receive from the Debtor, a

7    fee in an amount equal to 0.05% of the principal portion of the redemption price of the redeemed

8    Letter of Credit Backed PC Bonds paid out of a draw on the respective Letter of Credit, and (B) in

9    the event that the Letter of Credit Backed PC Bonds are redeemed on the Effective Date for reasons

10   beyond the control of the Letter of Credit Issuing Bank, the Letter of Credit Issuing Bank will

11   receive from the Debtor, a fee (the "No Bonds Option Fee") in an amount equal to 0.10% of the

12   principal portion of the redemption price of the redeemed Letter of Credit Backed PC Bonds paid

13   out of a draw on the respective Letter of Credit.

14                        (iii)    Pursuant to the terms of an agreement among the Debtor and each

15   of the Letter of Credit Issuing Banks (the "LC Bank Agreement") that was approved by order of the

16   Bankruptcy Court entered on June 17, 2002, the Letter of Credit Issuing Banks have agreed, among

17   other things and subject to certain conditions, to (A) maintain each of the Letters of Credit

18   outstanding in the stated amounts set forth on Exhibit C attached hereto, (B) not provide the Trustee

19   with notice of any default under any of the Reimbursement Agreements or non-reinstatement of any

20   of the Letters of Credit or take any other action which would result in the mandatory tender or

21   redemption, either in whole or in part, of any of the outstanding Letter of Credit Backed PC Bonds

22   without the prior written consent of the Debtor, and (C) extend the expiration date of each of the

23   Letters of Credit to the first Business Day subsequent to the one (1)-year anniversary of the

24   expiration date of each Letter of Credit existing as of the Petition Date; provided, however, that each

25   Letter of Credit Issuing Bank is only obligated to undertake or refrain from undertaking those actions

26   set forth in clauses (A) and (B) immediately above until the earlier of (i) the last interest payment

27   date on the related series of Letter of Credit Backed PC Bonds immediately preceding the expiration

28   date of such Letter of Credit, as such expiration date shall be extended in accordance with the terms

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   of the LC Bank Agreement, or (ii) the occurrence of a "Termination Event" (as such term is defined

2   in the LC Bank Agreement). In consideration for such forbearance and other actions by the Letter of

3   Credit Issuing Banks, the Debtor shall, subject to certain terms and conditions as set forth in the LC

4   Bank Agreement, pay to each Letter of Credit Issuing Bank, (1) during the period from and after

5   June 17, 2002 and continuing until July 1, 2002, quarterly, in arrears, the Letter of Credit fee as set

6   forth in the respective Reimbursement Agreement (the "Original Letter of Credit Fee"), together

7   with an amount equal to the positive difference, if any, of an amount per annum equal to two percent

8   (2%) of the Stated Amount of the Letter of Credit, less the Original Letter of Credit Fee, which total

9   fee accrues from and after December 1, 2001 and until July 1, 2002, and has been payable on the

10   same dates as are set forth for payment of Letter of Credit Fees in the applicable Reimbursement

11   Agreement, and (2) during the period from and after July 1, 2002 and continuing until the Effective

12   Date, quarterly, in arrears, the Original Letter of Credit Fee, together with an amount equal to the

13   positive difference, if any, of an amount per annum equal to three percent (3%) of the Stated

14   Amount of the Letter of Credit, less the Original Letter of Credit Fee, which total fee accrues from

15   and after July 1, 2002 until the Effective Date, and shall be payable on the same dates as are set forth

16   for payment of Letter of Credit Fees in the applicable Reimbursement Agreement (the Original

17   Letter of Credit Fee together with such additional sums being hereinafter referred to collectively as

18   the "Forbearance, Extension and Letter of Credit Fees"). Additionally, pursuant to the terms of the

19   LC Bank Agreement, the Debtor has agreed, among other things and subject to certain conditions, to

20   pay to Deutsche Bank AG New York Branch an agency fee in the amount of $250,000, which fee

21   was paid by the Debtor on June 18, 2002.

22         (c) Impairment and Voting. Class 4e is impaired by the Plan. Each holder of an

23   Allowed Letter of Credit Bank Claim is entitled to vote to accept or reject the Plan.

24        4.12   Class 4f—Prior Bond Claims.

25         (a) Allowance. The Prior Bond Claims shall be deemed Allowed Prior Bond

26   Claims in the amount of $453,550,000, plus any and all other accrued and unpaid amounts due by

27   the Debtor under the terms of each of the Prior Reimbursement Agreements; provided, however, that

28   each Allowed Prior Bond Claim shall be paid in the amount necessary to render it unimpaired as set

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    forth herein.

2    (b) Distributions.  Each Allowed Prior Bond Claim will be reinstated and

3    rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.  On the Effective

4    Date one of the following shall occur with respect to each Prior Reimbursement Agreement and all

5    of the Allowed Prior Bond Claims arising with respect thereto:

6    (i)    Each holder of an Allowed Prior Bond Claim shall be paid Cash in

7    an amount equal to  (A) the outstanding Reimbursement Obligation, or portion thereof, owing to

8    such holder, (B) any and all accrued and unpaid interest owing to such holder in respect of such

9    Reimbursement Obligation or applicable portion thereof at a fluctuating rate of interest in

10    accordance with the terms of the applicable Reimbursement Agreement, and (C) all other amounts

11    due and owing to the respective holder of an Allowed Prior Bond Claim under the terms of the

12    respective Prior Reimbursement Agreement, through the Effective Date.

13    (ii)    Alternatively, upon the written request of the Debtor, with the

14    prior written consent of the respective Prior Letter of Credit Issuing Bank, the related Banks and

15    each of the other holders of Allowed Prior Bond Claims related thereto, each such holder of an

16    Allowed Prior Bond Claim shall be paid Cash in an amount equal to (A) any and all accrued and

17    unpaid interest owing to such holder in respect of the Reimbursement Obligation or applicable

18    portion thereof owing to such holder at a fluctuating rate of interest in accordance with the terms of

19    the applicable Reimbursement Agreement, and (B) all other amounts (other than the Reimbursement

20    Obligation or applicable portion thereof) due and owing to the respective holder of an Allowed Prior

21    Bond Claim under the terms of the respective Prior Reimbursement Agreement, through the

22    Effective Date.  On the Effective Date, the applicable Prior Letter of Credit Issuing Bank, the related

23    Banks and any other holders of Allowed Prior Bond Claims related thereto shall sell, transfer and

24    assign to the Debtor or its assignee, all of the Prior Letter of Credit Issuing Bank's, the related

25    Banks' and the related Allowed Prior Bond Claim holders' rights, title and interest in the applicable

26    Prior Reimbursement Agreement, including, but not limited to, the right to receive repayment of the

27    related Reimbursement Obligation, together with the right to receive payment of interest thereon as

28    set forth in the applicable Prior Reimbursement Agreement, free and clear of all Liens.  In such

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   event, on the Effective Date, the Debtor or its assignee shall purchase from the Prior Letter of Credit

2   Issuing Bank, the related Banks and the holders of the related Allowed Prior Bond Claims, all of

3   their rights, title and interest in the applicable Prior Reimbursement Agreement for a purchase price

4   in Cash in an amount equal to the respective Reimbursement Obligation. All of the documents

5   related to the transfer and sale of rights under the Prior Reimbursement Agreement shall be in form

6   and content satisfactory to the Debtor, the Prior Letter of Credit Issuing Bank, the related Banks and

7   each of the other holders of Allowed Prior Bonds Claims related thereto.

8           (c) <u>Impairment and Voting</u>. Class 4f is unimpaired by the Plan. Each holder of

9   an Allowed Prior Bond Claim is conclusively presumed to have accepted the Plan and is not entitled

10  to vote to accept or reject the Plan.

11          4.13    Class 4g—Treasury PC Bond Claims.

12          (a) <u>Allowance</u>. The Treasury PC Bond Claims shall be deemed Allowed

13  Treasury PC Bond Claims in the amount of $80,770,000, plus accrued and unpaid pre-petition

14  interest on such amount, plus Allowed Claims in the amount of all unpaid fees and expenses of the

15  related Issuer and Bond Trustee accrued through the Petition Date under the terms of the applicable

16  PC Bond Documents.

17          (b) <u>Distributions</u>. Each series of Treasury PC Bonds shall remain outstanding.

18  Each of the Loan Agreements and the PC Bond Documents related to the Treasury PC Bonds will be

19  reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code. The

20  Debtor's obligations under the PC Bond Documents related to the Treasury PC Bonds shall be the

21  obligation of the Reorganized Debtor. Each holder of a Treasury PC Bond shall be paid Cash in an

22  amount equal to any and all accrued and unpaid interest owed to such holder in respect of such

23  Treasury PC Bond in accordance with the terms thereof to and including the last scheduled interest

24  payment date preceding the Effective Date. All unpaid fees and expenses of the Issuer and Bond

25  Trustee due and owing under the applicable Loan Agreement shall also be paid in Cash.

26          (c) <u>Impairment and Voting</u>. Class 4g is unimpaired by the Plan. Each holder of

27  an Allowed Treasury PC Bond Claim is conclusively presumed to have accepted the Plan and is not

28  entitled to vote to accept or reject the Plan.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    4.14    Class 5—General Unsecured Claims.

2    (a) Distributions.  Each holder of an Allowed General Unsecured Claim shall be

3    paid Cash in an amount equal to such Allowed Claim (which shall include pre-petition interest only

4    to the extent not previously paid).

5    (b) Impairment and Voting.  Class 5 is impaired by the Plan.  Each holder of an

6    Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

7    4.15    Class 6—ISO, PX and Generator Claims.

8    (a) Distributions.  Each holder of an Allowed ISO, PX and Generator Claim

9    shall be paid Cash in an amount equal to such Allowed Claim (which shall include pre-petition

10    interest only to the extent not previously paid).

11    (b) Impairment and Voting.  Class 6 is unimpaired by the Plan.  Each holder of

12    an Allowed ISO, PX and Generator Claim is conclusively presumed to have accepted the Plan and is

13    not entitled to vote to accept or reject the Plan[6]

14    (c) Disputed ISO, PX and Generator Claims.  As of the date hereof, all ISO, PX

15    and Generator Claims are Disputed.  The Debtor agrees that for purposes of determining the amount

16    of Allowed ISO, PX and Generator Claims that are not resolved consensually by settlement, the

17    Debtor will prosecute the FERC Refund Proceedings only before the FERC or any Court to which an

18    appeal from the FERC order may be taken, and will not attempt to obtain a determination of such

19    matters before the Bankruptcy Court, except (i) in connection with establishing the aggregate

20

---

21    [6]Although the Proponents believe that Class 6 is unimpaired and that the holders of Class 6
Claims therefore are not entitled to vote on the Plan, as a precautionary measure the Proponents as
22    part of the solicitation process will be supplying ballots to and seeking the votes of the holders of
Class 6 Claims that would be entitled vote on the Plan if Class 6 were impaired, and the votes of
23    such holders of Class 6 Claims will be tabulated and available so as not to delay the confirmation
process if the Bankruptcy Court determines that Class 6 is impaired. See footnote 2 supra. The
24    following holders of ISO,  PX and Generator Claims would be entitled to vote to accept or reject the
Plan if Class 6 were impaired, and accordingly the following holders of ISO, PX and Generator
25    Claims will be supplied ballots as part of the solicitation process:  (i) each holder of an Allowed
ISO, PX and Generator Claim, and (ii) each holder of an ISO, PX and Generator Claim that is
26    Disputed and that has been temporarily allowed pursuant to the Bankruptcy Court's Order Re
Debtor's Motion For Temporary Allowance Of Claims of Certain Electricity Generators And
27    Disallowance of Claims Of California Power Exchange For Plan Voting Purposes filed in the
Chapter 11 Case on June 17, 2002.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   amount of Allowed Claims for purposes of evaluating the feasibility of the Plan, and the aggregate

2   amount necessary to fund adequately the Disputed Claims escrow, and (ii) to the extent the Debtor

3   has an objection based on a matter that is not the subject matter of the FERC Refund Proceedings.

4   Nothing herein precludes the Debtor from asserting in the Bankruptcy Court or in any other forum

5   any other defense or objection to any ISO, PX and Generator Claims.

6       4.16    Class 7—ESP Claims.

7           (a) Distributions.  Each holder of an Allowed ESP Claim shall be paid Cash in

8   an amount equal to such Allowed Claim (which shall include pre-petition interest only to the extent

9   not previously paid).

10          (b) Impairment and Voting.  Class 7 is unimpaired by the Plan.  Each holder of

11  an Allowed ESP Claim is conclusively presumed to have accepted the Plan and is not entitled to

12  vote to accept or reject the Plan.[7]

13      4.17    Class 8—Environmental, Fire Suppression, Pending Litigation and Tort Claims.

14          (a) Distributions.  Subject to Section 4.17(b), each Allowed Environmental, Fire

15  Suppression, Pending Litigation and Tort Claim shall be satisfied in full in the ordinary course of

16  business at such time and in such manner as the Reorganized Debtor is obligated to satisfy such

17  Allowed Claim under applicable law.  Except as provided under applicable non-bankruptcy law,

18  Post-Petition Interest will not be paid on Allowed Environmental, Fire Suppression, Pending

19  Litigation and Tort Claims.

20          (b) Liquidation of Environmental, Fire Suppression, Pending Litigation and Tort

21  Claims. All Environmental, Fire Suppression, Pending Litigation and Tort Claims are Disputed

22  Claims and shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the

24      [7]Although the Proponents believe that Class 7 is unimpaired and that the holders of Class 7
25  Claims therefore are not entitled to vote on the Plan, as a precautionary measure the Proponents as
    part of the solicitation process will be supplying ballots to and seeking the votes of the holders of
    Class 7 Claims, and the votes of holders of Class 7 Claims will be tabulated and available so as not
26  to delay the confirmation process if the Bankruptcy Court determines that Class 7 is impaired. See
    footnote 2 supra. The following holders of  Class 7 Claims will be supplied ballots as part of the
27  solicitation process:  (i) each holder of an Allowed ESP Claim, and (ii) each holder of an ESP Claim
    that is Disputed and that has not been disallowed pursuant to a Final Order of the Bankruptcy Court.
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    Chapter 11 Case had not been commenced (except that, under sections 365 and/or 1123(b)(2) of the

2    Bankruptcy Code, contractual provisions, accelerations and defaults eliminated or rendered

3    unenforceable by such sections shall remain eliminated or unenforceable, and the stay shall remain

4    in place for any Environmental, Fire Suppression, Pending Litigation and Tort Claims as to which

5    section 365 and/or 1123(b)(2) of the Bankruptcy Code are applicable) and shall survive the Effective

6    Date as if the Chapter 11 Case had not been commenced and, upon the determination, resolution or

7    adjudication of any such Claim as provided herein, such Claim shall be deemed to be an Allowed

8    Environmental Claim, Allowed Fire Suppression Claim, Allowed Pending Litigation Claim or

9    Allowed Tort Claim, as the case may be, in the amount or in the manner determined by a Final Order

10   or by a binding award, agreement or settlement; provided, however, that in addition to the Debtor's

11   preservation of all rights and defenses respecting any Environmental Claim, Fire Suppression Claim,

12   Pending Litigation Claim or Tort Claim that exist under applicable non-bankruptcy law, (i) any

13   rejection, avoidance, recovery, or other power or defense available to the Debtor under sections 365,

14   510 (except subordination), 542, 543, 544, 545, 547, 548, 549, 550, 553 or 724 of the Bankruptcy

15   Code is preserved, except with respect to any Environmental Order, and (ii) the Debtor may object

16   under section 502 of the Bankruptcy Code to any Environmental Claim, Fire Suppression Claim,

17   Pending Litigation Claim or Tort Claim on the ground that (A) such Environmental Claim, Fire

18   Suppression Claim, Pending Litigation Claim or Tort Claim was not timely asserted in the

19   Chapter 11 Case, (B) such Environmental Claim, Fire Suppression Claim, Pending Litigation Claim

20   or Tort Claim is subject to any power or defense reserved in clause (i) of this sentence and/or is

21   disallowable under section 502(d) of the Bankruptcy Code, or (C) such Environmental Claim, Fire

22   Suppression Claim, Pending Litigation Claim or Tort Claim is disallowable under section 502(e) of

23   the Bankruptcy Code, to the extent such section is relied on to ensure that there is no duplication in

24   the Claim of an allegedly subrogated claimant, on the one hand, and the underlying claimant whose

25   Claim allegedly gave rise to the subrogated claim, on the other.  Subject to the foregoing, all

26   Environmental, Fire Suppression, Pending Litigation and Tort Claims shall be determined and

27   liquidated under applicable non-bankruptcy law in the administrative or judicial tribunal in which

28   they are pending as of the Effective Date or, if no such action is pending on the Effective Date, in

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    any administrative or judicial tribunal of appropriate jurisdiction (other than the Bankruptcy Court).

2    To effectuate the foregoing, the entry of the Confirmation Order shall, effective as of the Effective

3    Date, constitute a modification of any stay or injunction under the Bankruptcy Code that would

4    otherwise preclude the determination, resolution or adjudication of any Environmental Claims, Fire

5    Suppression Claims, Pending Litigation Claims or Tort Claims, except for any Environmental

6    Claim, Fire Suppression Claim, Pending Litigation Claim or Tort Claim arising out of the exercise

7    by the Debtor, as Debtor-in-Possession, of any rejection, avoidance, recovery or other power or

8    defense available to it pursuant to any one or more of sections 365, 510 (except subordination), 542,

9    543, 544, 545, 547, 548, 549, 550, 553 or 724 of the Bankruptcy Code, except with respect to any

10    Environmental Order.  Nothing contained in this Section 4.17(b) will constitute or be deemed to

11    constitute a waiver or release of any (i) claim, right or Cause of Action that the Debtor or the

12    Reorganized Debtor may have against any Person or Governmental Entity in connection with or

13    arising out of any Environmental, Fire Suppression, Pending Litigation and Tort Claims, including,

14    but not limited to, any rights under section 157(b) of title 28, United States Code, or (ii) defense in

15    any action or proceeding in any administrative or judicial tribunal, including, but not limited to, with

16    respect to the jurisdiction of such administrative or judicial tribunal, except a defense to a Claim that

17    was timely asserted in the Chapter 11 Case and that constitutes an Environmental Claim, a Fire

18    Suppression Claim, a Pending Litigation Claim or a Tort Claim, where such defense is based on the

19    discharge of section 1141(d) of the Bankruptcy Code.  In light of the unimpaired pass-through

20    treatment of Environmental Claims, Fire Suppression Claims, Pending Litigation Claims and Tort

21    Claims hereunder, the Reorganized Debtor waives the discharge of section 1141(d) of the

22    Bankruptcy Code as to any Claim that was timely asserted in the Chapter 11 Case and that

23    constitutes an Environmental Claim, a Fire Suppression Claim, a Pending Litigation Claim or a Tort

24    Claim.

25            As to any consent decree, injunction, cleanup and abatement order or any other

26    administrative or judicial order or decree binding upon the Debtor and in effect as of the Effective

27    Date (whether originating before or after the Petition Date) that pertains to any environmental matter

28    described in clauses (a) through (c) of the definition of Environmental Claims herein (each an

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   "Environmental Order"), each such Environmental Order, regardless of whether it constitutes or is

2   characterized as an Environmental Claim, shall also survive the Effective Date as if the Chapter 11

3   Case had not been commenced, shall not be discharged under section 1141(d) of the Bankruptcy

4   Code, and shall not otherwise be adversely affected by the Chapter 11 Case (except for any objection

5   to such Environmental Claim based on the contention that such Environmental Order is an

6   Environmental Claim that was not timely asserted in the Chapter 11 Case).

7            (c) Impairment and Voting.  Class 8 is unimpaired by the Plan.  Each holder of

8   an Allowed Environmental, Fire Suppression, Pending Litigation and Tort Claim is conclusively

9   presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

10           4.18    Class 9—QUIDS Claims.

11           (a) Allowance.  The QUIDS Claims shall be deemed Allowed QUIDS Claims in

12   the amount of $300,000,000, plus accrued and unpaid pre-petition interest on such amount.

13           (b) Distributions.  Each holder of an Allowed QUIDS Claim shall be paid Cash

14   in an amount equal to such Allowed Claim.

15           (c) Impairment and Voting.  Class 9 is unimpaired by the Plan.  Each holder of

16   an Allowed QUIDS Claim is conclusively presumed to have accepted the Plan and is not entitled to

17   vote to accept or reject the Plan.

18           4.19    Class 10—Workers' Compensation Claims.

19           (a) Distributions.  Each Allowed Workers' Compensation Claim arising prior to

20   the Petition Date shall be satisfied in full in the ordinary course of business at such time and in such

21   manner as the Reorganized Debtor is obligated to satisfy such Allowed Claim under applicable law.

22   Post-petition Workers' Compensation Claims are treated as Ordinary Course Liabilities herein and

23   shall receive the same pass-through treatment as Workers' Compensation Claims arising prior to the

24   Petition Date.  Except as provided under applicable non-bankruptcy law, Post-Petition Interest will

25   not be paid on any Workers' Compensation Claims.  Nothing in the Plan shall affect (i) the rights of

26   any surety or the Parent with respect to the Workers' Compensation Indemnity Agreements, (ii) the

27   rights of the parties to object to the existence of such rights, (iii) the subrogation rights, to the extent

28   applicable or available, of any surety of pre-petition or post-petition Workers' Compensation

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

PLAN OF REORG.  DATED JULY 31, 2003, AS MOD. NOVEMBER 6, 2003 AND DECEMBER 19, 2003

1  Claims, or (iv) the rights of the Debtor to object, pursuant to the Bankruptcy Code, to the existence

2  of any such subrogation rights.

3          (b) Impairment and Voting. Class 10 is unimpaired under the Plan. Each holder

4  of an Allowed Workers' Compensation Claim is conclusively presumed to have accepted the Plan

5  and is not entitled to vote to accept or reject the Plan.

6      4.20    Class 11 - Preferred Stock Equity Interests.

7          (a) Treatment. Each holder of a Preferred Stock Equity Interest shall retain its

8  Preferred Stock in the Reorganized Debtor and shall be paid in Cash any dividends and sinking fund

9  payments accrued in respect of such Preferred Stock through the last scheduled payment date prior to

10  the Effective Date.

11          (b) Impairment and Voting. Class 11 is unimpaired under the Plan. Each holder

12  of a Preferred Stock Equity Interest is conclusively presumed to have accepted the Plan and is not

13  entitled to vote to accept or reject the Plan.

14      4.21    Class 12 - Common Stock Equity Interests.

15          (a) Treatment. Each holder of a Common Stock Equity Interest shall retain its

16  Common Stock in the Debtor.

17          (b) Impairment and Voting. Class 12 is unimpaired by the Plan. Each holder of

18  an Allowed Common Stock Equity Interest is conclusively presumed to have accepted the Plan and

19  is not entitled to vote to accept or reject the Plan.

20

21                      ARTICLE V

22      **PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE
       PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND**
23      **UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND
       EQUITY INTERESTS**
24

25      5.1    Voting of Claims and Equity Interests. Each holder of record as of the Voting

26  Record Date of an Allowed Claim or Equity Interest in an Impaired Class of Claims or Equity

27  Interests set forth in Article IV hereof shall be entitled to vote separately to accept or reject the Plan

28  with regard to each Impaired Class of Claims or Equity Interests. If the Debtor objects to a Claim,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   the Claim becomes a Disputed Claim. A Disputed Claim is not entitled to vote on the Plan unless

2   the Debtor or the holder of the Disputed Claim obtains an order of the Bankruptcy Court temporarily

3   allowing the amount of the Disputed Claim for voting purposes. If the Debtor does not object to a

4   Claim prior to the date on which the Disclosure Statement and the Ballot are transmitted to creditors

5   for voting, the holder of such Claim will be permitted to vote on the Plan in the full amount of the

6   Claim as filed.

7         5.2    Elimination of Vacant Classes. Any Class of Claims that is not occupied as of

8   the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily

9   allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of

10   voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the

11   Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

12         5.3    Nonconsensual Confirmation. If any Impaired Class of Claims or Equity

13   Interests entitled to vote shall not accept the Plan by the requisite statutory majorities provided in

14   section 1126(c) of the Bankruptcy Code, each of the Proponents reserves the right to amend the Plan

15   in accordance with Section 11.11 hereof or to undertake to have the Bankruptcy Court confirm the

16   Plan under section 1129(b) of the Bankruptcy Code, or both.

17         5.4    Method of Distributions under the Plan.

18         (a) Disbursing Agent. All distributions under the Plan shall be made by the

19   Debtor as Disbursing Agent or such other Entity designated by the Debtor as Disbursing Agent. A

20   Disbursing Agent shall not be required to provide any bond, surety or other security for the

21   performance of its duties, unless otherwise ordered by the Bankruptcy Court; and, in the event that a

22   Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond, surety

23   or other security shall be borne by the Debtor. Distributions on account of Allowed Claims under

24   any indentures shall be made to the respective indenture trustees in accordance with Bankruptcy

25   Rule 3021, and such indenture trustees shall serve as the Distribution Agents under the respective

26   indentures. Each indenture trustee shall, in turn, administer the distribution to the holders of the debt

27   issued under the applicable indenture in accordance with the terms of such indenture. The

28   reasonable fees and expenses of each indenture trustee incurred on or after the Effective Date in

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation