1  connection with the distributions described in this subparagraph (a), including the reasonable fees

2  and expenses of the indenture trustee's professionals and agents, shall be paid by the Reorganized

3  Debtor without further application to or order of the Bankruptcy Court.

4  (b) Distributions to Holders as of the Distribution Record Date.

5  (i)  Subject to Bankruptcy Rule 9010, all distributions under the Plan

6  shall be made (A) to the holder of each Allowed Claim or Equity Interest at the address of such

7  holder as listed on the Debtor's Bankruptcy Schedules as of the Distribution Record Date, unless the

8  Debtor has been notified in writing of a change of address, including, without limitation, by the

9  filing of a timely proof of Claim or Equity Interest by such holder that provides an address for such

10  holder different from the address reflected on the Debtor's Bankruptcy Schedules, or (B) pursuant to

11  the terms of a particular indenture of the Debtor or in accordance with other written instructions of a

12  trustee under such indenture.

13  (ii)  As of the close of business on the Distribution Record Date, the

14  claims register and records of the stock transfer agent shall be closed, and there shall be no further

15  changes in the record holder of any Claim or Equity Interest. The Debtor shall have no obligation to

16  recognize any transfer of any Claim or Equity Interest occurring after the Distribution Record Date.

17  The Debtor shall instead be authorized and entitled to recognize and deal for all purposes of the Plan

18  with only those record holders stated on the claims register or the records of the stock transfer agent

19  as of the close of business on the Distribution Record Date.

20  (c) Distributions of Cash. Any payment of Cash made by the Debtor pursuant to

21  the Plan shall, at the Debtor's option, be made by check drawn on a domestic bank or wire transfer.

22  (d) Timing of Distributions. Except as otherwise set forth in the Plan, payments

23  and distributions to holders of Allowed Claims or Equity Interests on the Effective Date shall be

24  made on the Effective Date, or as soon as practicable thereafter. Any payment or distribution

25  required to be made under the Plan on a day other than a Business Day shall be made on the next

26  succeeding Business Day.

27  (e) Allocation of Plan Distributions. All distributions in respect of Allowed

28  Claims shall be allocated first to the portion of such Claims representing interest (as determined for

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1   federal income tax purposes), second to the original principal amount of such Claims (as determined

2   for federal income tax purposes), and any excess to the remaining portion of such Claims.

3               (f) Unclaimed Distributions. All distributions under the Plan that are unclaimed

4   for a period of one (1) year after distribution thereof shall be deemed unclaimed property under

5   section 347(b) of the Bankruptcy Code and revested in the Debtor, and any entitlement of any holder

6   of any Claim or Equity Interest to such distributions shall be extinguished and forever barred.

7               (g) Escrow for Disputed Claims.

8                   (i)    General Treatment. On the Effective Date (or as soon as

9   practicable thereafter), and after making all distributions required to be made on the Effective Date,

10  the Reorganized Debtor shall establish one or more separate escrows, each of which shall be

11  administered in accordance with the terms hereof and pursuant to the direction of the Bankruptcy

12  Court, and shall deposit or segregate into such escrow account(s) sufficient Cash to make

13  distributions in respect of Disputed Claims; provided, however, that this provision shall not apply to

14  Environmental Claims, Fire Suppression Claims, Pending Litigation Claims, Tort Claims and

15  Workers' Compensation Claims. The amount to be deposited into such escrow by the Reorganized

16  Debtor shall be determined by the Bankruptcy Court no later than the Effective Date pursuant to a

17  reasonably noticed motion; provided, however, that the escrowed amount for Class 6 Claims shall be

18  at least $1.6 billion absent further order of the Bankruptcy Court. No distributions from the

19  escrow(s) shall be made until such Disputed Claims have been Allowed or otherwise resolved by the

20  Bankruptcy Court and any such distributions shall be made in accordance with the terms hereof.

21  From and after the Effective Date, the Cash reserved for such Disputed Claim will earn interest at

22  the same rate as if such Cash had been invested in either (i) money market funds consisting primarily

23  of short-term U.S. Treasury securities or (ii) obligations of or guaranteed by the United States of

24  America or any agency thereof, at the option of the Debtor, until the Disputed Claim becomes an

25  Allowed Claim; provided, however that a Disputed ESP Claim or a Disputed ISO, PX and Generator

26  Claim shall earn interest through the date of payment in accordance with Exhibit B hereto to the

27  extent it becomes an Allowed Claim as set forth herein. A Disputed ISO, PX and Generator Claim

28  shall become an Allowed Claim on the date designated by FERC when payments are to be made on

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   account of ISO, PX and Generator Claims, pursuant to an unstayed order in the FERC Refund

2   Proceedings; provided, however, that if no date is designated in such order, a Disputed ISO, PX and

3   Generator Claim shall automatically become an Allowed Claim forty-five (45) days after the

4   issuance of such order, provided such order has not been stayed. To the extent a Disputed Claim

5   becomes an Allowed Claim, such Allowed Claim will be satisfied in the manner as all other

6   Allowed Claims of the same Class. In addition, the holder of such a Disputed Claim will earn Post-

7   Petition Interest.

8             (ii)    Termination of Escrow(s). The escrow(s) shall be terminated by

9   the Reorganized Debtor when all distributions and other dispositions of the property of such escrow

10   account have been made in accordance with this Plan. If any property remains in an escrow account

11   after all Disputed Claims for which such escrowed property is being held have been resolved and

12   distributions made in respect thereof, such property shall revert to and become the property of

13   Reorganized Debtor. In determining the aggregate amount necessary to fund any escrow account(s),

14   the Debtor may deposit the estimated allowable amount of any Disputed Claim, as determined by the

15   Bankruptcy Court. Any such escrow(s) established pursuant to this Section 5.4 shall be subject to

16   the continuing jurisdiction of the Bankruptcy Court.

17             (iii)    Additional Cash. Any deficiency in the amount of Cash deposited

18   into the escrow(s) shall not limit the obligation of the Reorganized Debtor to satisfy Disputed

19   Claims which subsequently become Allowed Claims. In the event that the amount of Cash

20   deposited into the escrow(s) is insufficient to make the required payment upon a Disputed Claim

21   becoming an Allowed Claim, the Reorganized Debtor will pay the holder of such Allowed Claim the

22   Cash necessary to satisfy the shortfall.

23         5.5    Objections to and Resolution of Administrative Expense Claims, Claims and

24   Ordinary Course Liabilities. Except as to applications for allowance of compensation and

25   reimbursement of Professional Compensation and Reimbursement Claims under sections 330 and

26   503 of the Bankruptcy Code, the Debtor shall, on and after the Effective Date, have the exclusive

27   right to make and file objections to Administrative Expense Claims and Claims. Except as to

28   applications for allowance of compensation and reimbursement of Professional Compensation and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   Reimbursement Claims under sections 330 and 503 of the Bankruptcy Code, on and after the

2   Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve or

3   withdraw any objections to Administrative Expense Claims and Claims, and compromise, settle or

4   otherwise resolve Disputed Administrative Expense Claims, Disputed Claims and Ordinary Course

5   Liabilities without the approval of the Bankruptcy Court.  Unless otherwise ordered by the

6   Bankruptcy Court, (a) all objections to Claims (except for Administrative Expense Claims) shall be

7   filed and served upon the holder of the Claim as to which the objection is made (and, as applicable,

8   upon the Debtor and the Committee) as soon as is practicable, but in no event later than the Effective

9   Date, (b) all objections to Administrative Expense Claims arising on or before the Confirmation

10  Date shall be served and filed upon the holder of the Administrative Expense Claim as to which the

11  objection is made (and, as applicable, upon the Debtor and the Committee) as soon as is practicable,

12  but in no event later than ninety (90) days after the Effective Date; and (c) all objections to

13  Administrative Expense Claims arising after the Confirmation Date and on or before the Effective

14  Date shall be served and filed upon the holder of the Administrative Expense Claim as to which the

15  objection is made (and, as applicable, upon the Debtor and the Committee) as soon as is practicable,

16  but in no event later than one hundred eighty (180) days after the Effective Date.

17          5.6     Payment of Trustees', Issuer's and Certain Bank Fees.  To the extent allowed by

18  law and any underlying agreement, any unpaid fees and expenses accrued through the Confirmation

19  Date (except for any unpaid fees and expenses previously disallowed by the Bankruptcy Court) of

20  the Bond Trustees and the trustees under the Mortgage, and various indentures, including, but not

21  limited to, the Southern San Joaquin Valley Power Authority Agreement (acting in their capacities

22  as trustees and, if applicable, acting in their capacities as disbursing agents), the Issuer of the PC

23  Bonds and their respective professionals, and Bank of America, N.A., in its capacity as

24  administrative agent under the Revolving Line of Credit (including such administrative agent's

25  attorney's fees), shall be paid by the Debtor within ten (10) days after the Confirmation Date.  Any

26  such fees and expenses accruing after the Confirmation Date shall be payable as provided in the

27  applicable agreement providing for such payment, or, in the case of Bank of America, N.A., in its

28  capacity as administrative agent under the Revolving Line of Credit, at least quarterly.  Upon

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  payment of such fees and expenses, such Persons shall be deemed to have released their Liens

2  securing payment of their fees and expenses for all fees and expenses accrued through the Effective

3  Date.

4      5.7    Cancellation of Existing Securities and Agreements.  On the Effective Date, the

5  notes, bonds, debentures and all other debt instruments evidencing any Claim (and any indentures

6  and other agreements related thereto), including Administrative Expense Claims, other than those

7  that are reinstated and rendered unimpaired or renewed and extended pursuant to Article IV hereof,

8  or renewed and remain outstanding pursuant to Article IV hereof, respectively, shall be deemed

9  cancelled without further act or action under any applicable agreement, law, regulation, order or rule

10  and the obligations of the Debtor under the agreements and indentures governing such Claims, as the

11  case may be, shall be discharged.  Notwithstanding the foregoing, the indentures for any of the

12  Debtor's debt securities shall be deemed to survive the Effective Date solely to effectuate

13  distributions to be made to holders of debt securities thereunder as provided in the Plan, and to

14  enforce against such distributions the rights, duties, charging liens and administrative functions of

15  the indenture trustees as provided in the respective indentures.  Nothing in the Plan shall be deemed

16  to impair, waive or discharge any indenture trustees' rights, liens and priorities, or any other rights of

17  the indenture trustee under the respective indentures(s), against the distributions to the holders of

18  debt securities thereunder.  The Common Stock and Preferred Stock representing Equity Interests

19  shall remain outstanding.  Holders of notes, bonds, debentures and any and all other debt instruments

20  evidencing any Claim shall not be required to surrender such instruments.

21                    ARTICLE VI

22        **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

23      6.1    Assumption or Rejection of Executory Contracts and Unexpired Leases.

24  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and

25  unexpired leases that exist between the Debtor and any Person or Governmental Entity shall be

26  deemed assumed by the Debtor as of the Effective Date, except for any executory contract or

27  unexpired lease (i) that has been assumed or rejected pursuant to a Final Order entered prior to the

28  Confirmation Date, (ii) as to which a motion for approval of the rejection of such executory contract

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  or unexpired lease has been filed and served prior to the Confirmation Date that results in a Final

2  Order or (iii) that is set forth in Schedule 6.1 to the Plan Supplement; provided, however, that the

3  Debtor reserves the right, on or prior to the conclusion of the confirmation hearing, to amend

4  Schedule 6.1 to the Plan Supplement to delete any executory contract or unexpired lease therefrom

5  or add any executory contract or unexpired lease thereto, in which event such executory contract(s)

6  or unexpired lease(s) shall be deemed to be assumed by the Debtor or rejected, as the case may be, as

7  of the Effective Date.  The Debtor will give notice of any such amendment to each counterparty to

8  any executory contract the status of which is changed as a result of the amendment (i.e., any

9  executory contract which is to be assumed or rejected as a result of the amendment).  In the event

10  that the counterparty opposes such proposed amendment, the Debtor will make all reasonable efforts

11  to provide such counterparty a reasonable opportunity under the circumstances to object prior to

12  confirmation of the Plan and, to the extent that such counterparty had the right to vote on the Plan, or

13  became entitled to vote on the Plan as a result of the amendment to Schedule 6.1, to provide such

14  counterparty a reasonable time to cast a Ballot to accept or reject the Plan, or to amend its Ballot.

15  The listing of a document on Schedule 6.1 to the Plan Supplement shall not constitute an admission

16  by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor

17  has any liability thereunder.  Notwithstanding anything to the contrary, the Debtor waives its right to

18  make amendments pursuant to this Section 6.1 with respect to the assumption of the PG&E-Western

19  Area Power Administration Contract 2948A and related contracts, as described in the Disclosure

20  Statement.

21         6.2     Schedule of Rejected Executory Contracts and Unexpired Leases; Inclusiveness.

22  Each executory contract and unexpired lease listed or to be listed on Schedule 6.1 to the Plan

23  Supplement shall include (i) modifications, amendments, supplements, restatements or other similar

24  agreements made directly or indirectly by any agreement, instrument, or other document that in any

25  manner affects such executory contract or unexpired lease, without regard to whether such

26  agreement, instrument or other document is listed on Schedule 6.1 to the Plan Supplement and

27  (ii) executory contracts or unexpired leases appurtenant to the premises listed on Schedule 6.1 to the

28  Plan Supplement, including, without limitation, all easements, licenses, permits, rights, privileges,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements

2    or vault, tunnel or bridge agreements, and any other interests in real estate or rights in rem relating to

3    such premises to the extent any of the foregoing are executory contracts or unexpired leases, unless

4    any of the foregoing agreements previously has been assumed by the Debtor.

5            6.3    Approval of Assumption or Rejection of Executory Contracts and Unexpired

6    Leases. Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective

7    Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy

8    Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to

9    Section 6.1 hereof, (b) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code,

10    within which the Debtor may assume or reject the unexpired leases of non-residential property

11    specified in Section 6.1 hereof through the date of entry of the Confirmation Order, and (c) the

12    approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the

13    executory contracts and unexpired leases rejected pursuant to Section 6.1 hereof.

14            6.4    Cure of Defaults. Except as may otherwise be agreed by the parties, the Debtor

15    shall cure or provide adequate assurance that the Debtor will promptly cure, as provided in this

16    Section 6.4, any and all defaults within thirty (30) days after the Effective Date with respect to

17    executory contracts and unexpired leases assumed by the Debtor pursuant to Section 6.1 hereof, in

18    accordance with section 365(b)(1) of the Bankruptcy Code. Within thirty (30) days after the

19    Effective Date, the Debtor shall pay, in Cash, (i) all such cure amounts arising prior to the filing of

20    the Chapter 11 Case and (ii) all such cure amounts arising from and after the Petition Date up to (but

21    not including) the date which is sixty (60) days prior to the Effective Date. All such cure amounts

22    arising on or after sixty (60) days prior to the Effective Date shall be treated as Ordinary Course

23    Liabilities. The counterparty shall not be required to file an Administrative Expense Claim or any

24    other Claim with respect to such cure payments.

25            (a)    Notice of Cure and Cure Payment. Within thirty (30) days after the Effective

26    Date, with respect to each executory contract or unexpired lease assumed by the Debtor pursuant to

27    Section 6.1 hereof, the Debtor shall send to each counterparty by United States mail a "Notice of

28    Cure," in a form to be approved by the Bankruptcy Court, to the extent necessary or appropriate,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    which shall (i) identify the applicable contract(s) or lease(s) and (ii) provide contact information for

2    the counterparty to obtain additional information.  Concurrent with such Notice of Cure, the Debtor

3    shall send a check for the cure amount as set forth in the Debtor's books and records; provided

4    however, that no check will be sent if the cure amount is zero.  The Notice shall also indicate, if

5    applicable, that no other cure (monetary or non-monetary) is required under the contract or lease.

6            (b) Dispute Resolution.  In the event that the Debtor shall pay all cure amounts

7    due according to the Debtor's books and records pursuant to this Section 6.4 and the counterparty

8    disagrees that such cure is sufficient to cure all defaults within the meaning of Section 365(b)(1) of

9    the Bankruptcy Code, the counterparty shall notify the Debtor in writing within thirty (30) days of

10   the date of mailing of the Notice of Cure of such dispute (a "Dispute Notice").  The Dispute Notice

11   must contain a statement of the additional cure amount or other cure sought by the counterparty (the

12   "Additional Cure"), a brief description of the reasons that the counterparty believes it is entitled to

13   such Additional Cure, and copies of any documents in support of such Additional Cure.  The Debtor

14   shall respond to such Dispute Notice in writing within sixty (60) days from the date of receipt of

15   such Dispute Notice (a "Dispute Response").  If the Debtor does not respond within such sixty (60)-

16   day period, the Additional Cure will be deemed to be owing by the Debtor and will be paid or

17   otherwise satisfied by the Debtor within thirty (30) days following the end of such sixty (60)-day

18   period.  The counterparty shall have thirty (30) days from the service of the Dispute Response to

19   seek relief from the Bankruptcy Court regarding such dispute.  If the counterparty does not seek such

20   relief within thirty (30) days after the service of the Debtor's Dispute Response, the amount paid, if

21   any, by the Debtor will be deemed the final cure amount and the counterparty shall be forever barred

22   from seeking any additional cure.  In the event that the counterparty timely seeks such relief, within

23   thirty (30) days (or such other time as agreed by the parties) of (i) the entry of a Final Order

24   determining the additional liability of the Debtor, if any, with respect to the cure of the respective

25   contract or lease, or (ii) a final settlement between the parties with respect to such additional

26   liability, the Debtor will pay in Cash or otherwise satisfy such additional liability.  Nothing herein

27   shall prohibit the Debtor from seeking appropriate relief from the Bankruptcy Court with respect to

28   any such cure.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1        6.5   <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts and</u>

2    <u>Unexpired Leases Rejected Pursuant to the Plan</u>. Claims arising out of the rejection of an executory

3    contract or unexpired lease pursuant to Section 6.1 hereof must be properly filed in the Chapter 11

4    Case and served upon the Debtor no later than thirty (30) days after the later of (a) notice of entry of

5    an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of

6    the Confirmation Order and (c) notice of an amendment to Schedule 6.1(a) to the Plan Supplement.

7    All such Claims not filed within such time shall be forever barred from assertion against the Debtor,

8    its estate and its property.

9        6.6   <u>Assumed Indemnification Obligations</u>. The Assumed Indemnification Claims

10    shall, in all respects, irrespective of whether such claims arise under contracts or executory contracts,

11    survive confirmation of the Plan, remain unaffected thereby, and not be discharged irrespective of

12    whether indemnification, defense, reimbursement or limitation is owed in connection with an event

13    occurring before, on or after the Petition Date.

14        6.7   <u>Compensation and Benefit Programs</u>. Except as provided in Section 6.1 hereof,

15    all savings, retirement, health care, severance, performance-based cash incentive, retention,

16    employee welfare benefit, life insurance, disability and other similar plans and agreements of the

17    Debtor are treated as executory contracts under the Plan and shall, on the Effective Date, be deemed

18    assumed by the Debtor in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code,

19    and any defaults thereunder shall be cured as provided in Section 6.4 hereof. With respect to the

20    Pacific Gas and Electric Company Retirement Plan (the "Retirement Plan"), the Debtor affirms and

21    agrees that it is and the Reorganized Debtor will continue to be the contributing sponsor of the

22    Retirement Plan, as defined under 29 U.S.C. § 1301(a)(13) and 29 C.F.R. § 4001.2, or a member of

23    the contributing sponsor's controlled group, as defined under 29 U.S.C. § 1301(a)(14) and 29 C.F.

24    R. § 4001.2. As a contributing sponsor (or member of the controlled group) of the Retirement Plan,

25    the Debtor and the Reorganized Debtor intend to fund the Retirement Plan in accordance with the

26    minimum funding standards under ERISA, 29 U.S.C. § 1802, pay all required Pension Benefit

27    Guaranty Corporation (the "PBGC") insurance premiums, 29 U.S.C. § 1307, and comply with all

28    requirements of the Retirement Plan and ERISA. The Retirement Plan is a defined benefit pension

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  plan insured by the PBGC under Title IV of ERISA, 29 U.S.C. §§ 1301-1461.  The Retirement Plan

2  is subject to the minimum funding requirements of ERISA, 29 U.S.C. § 1082 and section 412 of the

3  Internal Revenue Code, 26 U.S.C. § 412.  No provision of or proceeding within the Debtor's

4  reorganization proceedings, the Plan, nor the Confirmation Order shall in any way be construed as

5  discharging, releasing or relieving the Debtor, the Reorganized Debtor, or any other party in any

6  capacity, from any liability with respect to the Retirement Plan or any other defined benefit pension

7  plan under any law, governmental policy or regulatory provision.  PBGC and the Retirement Plan

8  shall not be enjoined or precluded from enforcing liability resulting from any of the provisions of the

9  Plan or the Plan's confirmation.

10       6.8    Retiree Benefits.  Payments, if any, due to any Person for the purpose of

11  providing or reimbursing payments for retired employees and their spouses and dependents for

12  medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability or

13  death under any plan, fund or program (through the purchase of insurance or otherwise) maintained

14  or established in whole or in part by the Debtor prior to the Petition Date shall be continued for the

15  duration of the period the Debtor has obligated itself to provide such benefits.

16       6.9    Settlement and Stanislaus Commitments.  The obligations under (a) the 1991

17  Settlement Agreement between Northern California Power Agency and the Debtor in an NRC

18  proceeding implementing the Statement of Commitments accompanying the letter from the Debtor

19  to the U.S. Department of Justice of April 30, 1976 ("1991 Settlement Agreement"), (b) the letter

20  from the Debtor to the U.S. Department of Justice of April 30, 1976, to the extent that it represents

21  obligations, a position disputed by the Debtor (the "1976 Letter"), and (c) the antitrust license

22  conditions included in the Diablo Canyon Nuclear Power Plant NRC licenses ("License

23  Conditions") (collectively, the 1991 Settlement Agreement, the 1976 Letter and the License

24  Conditions are referred to as the "Settlement and Stanislaus Commitments") shall remain in effect

25  and pass through the Chapter 11 Case unimpaired and unaffected so that the Debtor and Reorganized

26  Debtor are obligated for the full performance, and shall be liable for the nonperformance, of the

27  Settlement and Stanislaus Commitments.  The 1991 Settlement Agreement is assumed by the

28  Debtor and the Reorganized Debtor under the Plan, and the provisions of that certain Stipulation of

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   City of Palo Alto, Northern California Power Agency and Pacific Gas and Electric Company

2   Regarding the Settlement and Stanislaus Commitments, dated as of February 11, 2002, are

3   incorporated herein.

4       6.10   <u>Franchise Fees and Related Obligations</u>.  The Reorganized Debtor shall continue

5   to pay franchise fees and perform its obligations under franchise agreements and applicable law.

6   ARTICLE VII

7   **IMPLEMENTATION OF THE PLAN**

8       7.1   <u>Commission Settlement Agreement</u>.  The Debtor and the Parent filed a plan of

9   reorganization under Chapter 11 for the Debtor, dated April 19, 2002, as modified by Modifications

10  dated July 9, 2002, October 18, 2002, December 13, 2002, December 26, 2002, February 21, 2003,

11  February 24, 2003 and May 22, 2003 (the "Original PG&E Plan").  On April 15, 2002, the

12  Commission filed a competing plan of reorganization for the Debtor.  Subsequently, the

13  Commission and the Committee filed an amended plan of reorganization under Chapter 11 for the

14  Debtor dated August 30, 2002 and, on November 6, 2002 and December 5, 2002, respectively, a

15  second and third amended plan of reorganization (as amended, the "Commission Plan").  The

16  Bankruptcy Court began trial on the competing plans of reorganization on November 18, 2002.

17  During the trial on the Original PG&E Plan, the Bankruptcy Court on March 4, 2003 entered an

18  order mandating a judicial settlement conference and on March 11, 2003 entered an order staying

19  further confirmation and related proceedings for 60 days to facilitate such mandatory settlement

20  process before the Honorable Randall J. Newsome, Bankruptcy Judge.  On April 23, 2003, at the

21  request of Judge Newsome, the Bankruptcy Court issued orders staying further confirmation and

22  related proceedings respecting the Original PG&E Plan and the Commission Plan for an additional

23  thirty-four (34) days, which stay has been extended indefinitely by the Bankruptcy Court.  As a result

24  of the judicially supervised settlement negotiations, the Settling Parties have agreed to the terms of

25  the Commission Settlement Agreement.   The Commission Settlement Agreement sets forth the

26  terms of a comprehensive settlement among the Settling Parties regarding the restoration of the

27  Debtor to financial health, so that it can pay its debts, including those in existence at the Petition

28  Date, those that it will incur in connection with, or to fund, the Plan, and those that it will incur in

HOWARD<br>RICE<br>NEMEROVSKI<br>CANADY<br>FALK<br>&RABKIN<br><i>A Professional Corporation</i>

1   connection with its future operations, while continuing to provide safe and reliable gas and electric

2   service to its customers at just and reasonable rates.  Pursuant to the Commission Settlement

3   Agreement, the Proponents have filed the Plan.  The Commission Settlement Agreement constitutes

4   an integral and material part of the Plan and is incorporated herein by reference and made a part

5   hereof with the same force and effect as if stated verbatim herein.

6         7.2   New Money Notes; New Mortgage Bonds.

7         (a) Issuance of New Money Notes, New Mortgage Bonds.  On or before the

8   Effective Date, the Reorganized Debtor shall sell and issue new debt securities in the original

9   principal amount of approximately $8.7 billion, the general terms of which are set forth on the

10  Summary of Terms of Debt Securities (the "New Money Notes").  To the extent the amount of

11  Allowed Claims is greater or the amount of the Debtor's Cash available for payment of Claims is

12  lower than the estimates on which the Plan is based, or to the extent that Cash must be used to settle

13  hedge agreements entered into by the Debtor prior to the Effective Date pursuant to Section 7.4

14  below or pursuant to a Bankruptcy Court order an on a noticed motion by the Debtor, the amount of

15  New Money Notes will be increased.  To the extent the amount of Allowed Claims is lower or the

16  amount of the Debtor's Cash available for payment of Claims is greater than the estimates on which

17  the Plan is based (including a reduction of up to $450 million if all or a portion of the payment or

18  purchase of the Reimbursement Obligations under Class 4f are paid in Cash from the proceeds of the

19  issuance and sale of refunding bonds, and a reduction of up to $345 million if none of the New

20  Money Notes are secured on the Effective Date and the New Mortgage Bonds are exchanged for PC-

21  Related Mortgage Bonds), or to the extent the credit facilities or the accounts receivable financing

22  programs described in Section 7.3 below are used to fund the payment of Claims, the amount of

23  New Money Notes will be decreased.  If any of the New Money Notes are secured on the Effective

24  Date, contingent notes (in addition to the contingent notes to be issued to holders of Class 4c

25  Claims) may be issued under the same indenture as the New Money Notes and ranking *pari passu*

26  therewith, as security for obligations of the Reorganized Debtor after the Effective Date, with the

27  amounts under such contingent notes payable only to the extent that the Reorganized Debtor has

28  failed to satisfy the underlying obligation.  If none of the New Money Notes are secured on the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
*A Professional Corporation*

1   Effective Date and the New Mortgage Bonds are exchanged for PC-Related Mortgage Bonds,

2   contingent notes may be issued under the same indenture as the New Mortgage Bonds and ranking

3   *pari passu* therewith, as security for obligations of the Reorganized Debtor after the Effective Date,

4   with the amounts under such contingent notes payable only to the extent that the Reorganized Debtor

5   has failed to satisfy the underlying obligation.

6           (b)  <u>Mechanics of New Money Notes Offering</u>.   Once the registration statement

7   with respect to the New Money Notes has been declared effective by the SEC, the New Money

8   Notes will be priced.  The settlement date for the sale of the New Money Notes by the Reorganized

9   Debtor will be determined in accordance with Securities and Exchange Act rules, and will generally

10  be three (3) Business Days after the pricing of the New Money Notes.  On the settlement date, the

11  gross proceeds from the New Money Notes issuance, together with funds sufficient to pay accrued

12  interest and a redemption premium through the Mandatory Redemption Date (as defined below),

13  will be placed in escrow.  Also on the settlement date, the Debtor will pay any commissions due and

14  owing to the underwriters of the offering of the New Money Notes.  The funds in the escrow shall be

15  released to the Reorganized Debtor on the Effective Date; <u>provided</u>, <u>however</u>,  that if the Effective

16  Date does not occur by the ninetieth (90th) day following the settlement date for the New Money

17  Notes (the "Mandatory Redemption Date"), the New Money Notes will be thereafter mandatorily

18  redeemed and the escrowed  funds will be used to effect such redemption.

19          7.3     <u>Credit Facilities</u>.  As of the Effective Date, the Reorganized Debtor shall

20  establish one or more credit facilities (which may include revolving and term loan credit facilities,

21  and which may be secured in whole or in part) for the purpose of  (i) funding operating expenses and

22  seasonal fluctuations in working capital, (ii) providing letters of credit or other forms of credit

23  support, and (iii) to the extent the Reorganized Debtor determines resort to such credit facilities to be

24  necessary or appropriate to perform the Reorganized Debtor's obligations under the Plan,

25  performing the Reorganized Debtor's obligations under the Plan.  The Reorganized Debtor may also

26  establish one or more customer accounts receivable financing programs for the same purposes

27  specified in the preceding sentence.  In addition, the Reorganized Debtor as of the Effective Date

28  may establish or utilize credit support devices such as surety bonds and credit insurance (which may

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    be secured in whole or in part).

2        7.4    Binding Obligations.  Any obligation entered into by the Reorganized Debtor

3    pursuant to Section 7.2 or Section 7.3 herein shall be a valid obligation, binding upon and

4    enforceable against the Reorganized Debtor by the counterparty or counterparties to such obligation

5    in accordance with the terms and conditions of such obligation.

6        7.5    Hedging.  On or after the Confirmation Date (and, to the extent permitted by the

7    Interest Rate Hedges Order, prior to the Confirmation Date), the Debtor may enter into hedge

8    agreements with commercial and investment banks to reduce the effect to the Reorganized Debtor of

9    an increase in interest rates on the New Money Notes.  Such hedge agreements may include futures

10   contracts, forward contracts, option agreements, swaps, swaptions and other similar contracts

11   designed to limit the risk to borrowers of future interest rate changes, and will or may require that

12   the Debtor provide either cash collateral as credit enhancement (in the case of futures, forwards and

13   swaps) or an upfront cash payment (in the case of options and swaptions), all as more particularly

14   described in the Interest Rate Hedges Motion.  The cash settlement of any such hedge agreement

15   will occur on or before the date set forth in the applicable hedge agreement as authorized pursuant to

16   the Interest Rate Hedges Order.  To the extent such settlement under a hedge agreement occurs prior

17   to the Effective Date and the Debtor has any liabilities to the counterparty on the settlement date, the

18   Debtor shall be the settling party; and to the extent such settlement occurs after the Effective Date

19   and the Debtor has any liabilities to the counterparty on the settlement date, the Reorganized Debtor

20   shall be the settling party.

21       7.6    Corporate Governance.

22       (a) Board of Directors.  The members of the Board of Directors of the Debtor

23   immediately prior to the Effective Date shall serve as the Board of Directors of the Reorganized

24   Debtor on and after the Effective Date.  Each of the members of such Board of Directors shall serve

25   in accordance with the Debtor's Articles of Incorporation or the Debtor's Bylaws, as the same may

26   be amended from time to time.

27       (b) Officers.  The officers of the Debtor immediately prior to the Effective Date

28   shall serve as the officers of the Reorganized Debtor on and after the Effective Date.  Such officers

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1  shall serve in accordance with any employment agreement with the Reorganized Debtor and

2  applicable law.

3           (c) <u>Articles of Incorporation and Bylaws</u>.  The Articles of Incorporation and

4  Bylaws of the Reorganized Debtor shall contain provisions necessary to (i) prohibit the issuance of

5  nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to

6  further amendment of such Articles of Incorporation and Bylaws as permitted by applicable law and

7  (ii) effectuate the provisions of the Plan, in each case without any further action by the shareholders

8  or Board of Directors of the Debtor.

9          7.7    <u>Regulatory Issues</u>.  As of the Effective Date, the Commission shall have

10  approved all of the financings, securities and accounts receivable programs provided for in the Plan,

11  including, without limitation, the New Money Notes, the New Mortgage Bonds, the working capital

12  facilities, the accounts receivable programs and the hedging agreements provided for in the Plan, and

13  no further act, action or approval is or can be required by the Commission as a condition to such

14  financings.

15          7.8    <u>Execution of Commission Settlement Agreement</u>.  Upon approval of the

16  Commission Settlement Agreement by the Commission and the PG&E Proponents, the Settling

17  Parties shall execute the Commission Settlement Agreement.

18  ARTICLE VIII

19  **CONFIRMATION AND EFFECTIVENESS OF THE PLAN**

20          8.1    <u>Conditions Precedent to Confirmation</u>.  The Plan shall not be confirmed by the

21  Bankruptcy Court unless and until the following conditions shall have been satisfied or waived

22  pursuant to Section 8.4 hereof:

23          (a) the Bankruptcy Court shall have entered an order or orders, which may be the

24  Confirmation Order, approving the Plan, authorizing the Debtor to execute, enter into and deliver the

25  Plan, and to execute, implement and take all actions necessary or appropriate to give effect to the

26  transactions contemplated by the Plan;

27          (b) the Bankruptcy Court shall have entered an order or orders, which may be the

28  Confirmation Order, approving and authorizing the execution of, and finding reasonable the terms

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
*A Professional Corporation*

1    and conditions of, the Commission Settlement Agreement;

2    (c) the Confirmation Order shall be, in form and substance, acceptable to the

3    Proponents and the Commission; provided that the Confirmation Order shall:

4    (i)    expressly order the Settling Parties to perform each and all of their

5    respective obligations under the Commission Settlement Agreement, including but not limited to

6    those obligations of the Settling Parties expressly set forth in the Confirmation Order;

7    (ii)    expressly order and state those obligations of the Commission

8    under the Commission Settlement Agreement that the PG&E Proponents request be expressly

9    ordered and stated in the Confirmation Order;

10    (iii)    expressly order and state those obligations of the PG&E

11    Proponents under the Commission Settlement Agreement that the Commission requests be expressly

12    ordered and stated in the Confirmation Order; and

13    (iv)    expressly order that those obligations of the Reorganized Debtor

14    entered into pursuant to Sections 7.2 and 7.3 herein are valid obligations, binding upon and

15    enforceable against the Reorganized Debtor by the counterparty or counterparties to such obligations

16    in accordance with the terms and conditions of such obligations.

17    (d) in connection with the Confirmation Order, the Bankruptcy Court shall have

18    made findings of fact and/or conclusions of law, as applicable, as follows:

19    (i)    the Commission has waived its sovereign immunity and submitted

20    itself to the jurisdiction of the Bankruptcy Court in connection with the enforcement of the

21    Commission Settlement Agreement, the Plan and the Confirmation Order and the determination of

22    the Settling Parties' respective rights under the Commission Settlement Agreement, the Plan and the

23    Confirmation Order;

24    (ii)    because the Commission Settlement Agreement is a material part

25    of the Plan and is expressly attached to and incorporated by reference into the Plan, the Commission

26    Settlement Agreement and the Settling Parties' respective rights and obligations thereunder are fully

27    enforceable by the Bankruptcy Court as material provisions of the Plan the same as if they were set

28    forth verbatim in the Plan;

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1                    (iii)    the Commission Settlement Agreement, and any order entered by

2  the Bankruptcy Court contemplated or required to implement the Plan or the Commission Settlement

3  Agreement upon the Plan and the Commission Settlement Agreement becoming effective, shall be

4  enforceable under federal law;

5                    (iv)    the Commission Settlement Agreement and the Plan, upon

6  becoming effective, and the orders to be entered by the Bankruptcy Court as contemplated under the

7  Commission Settlement Agreement and the Plan, shall be irrevocable and binding upon the Settling

8  Parties and their successors and assigns, notwithstanding any future decisions and orders of the

9  Commission; and

10                 (v)    the Bankruptcy Court has jurisdiction to enforce the Commission

11  Settlement Agreement.

12        8.2    Conditions Precedent to Effectiveness.  The Plan shall not become effective

13  unless and until the following conditions shall have been satisfied or waived pursuant to Section 8.4

14  hereof:

15                (a) the Effective Date shall have occurred on or before March 31, 2004;

16                (b) all actions, documents and agreements necessary to implement the Plan shall

17  have been effected or executed;

18                (c) the Debtor and the Parent shall have received all authorizations, consents,

19  regulatory approvals, rulings, letters, no-action letters, opinions or documents that are determined by

20  the Debtor and the Parent to be necessary to implement the Plan;

21                (d) S&P shall have issued a long-term issuer credit rating for the Reorganized

22  Debtor of not less than BBB-, and Moody's shall have issued an issuer rating for the Reorganized

23  Debtor of not less Baa3.

24                (e) S&P and Moody's shall have issued credit ratings for the New Money Notes

25  of not less than BBB- and Baa3, respectively;

26                (f) The Commission shall have given its Final Approval of the Commission

27  Settlement Agreement on behalf of the Commission;

28                (g) Each of the parties to the Commission Settlement Agreement shall have

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    executed and delivered to one another counterpart copies of the Commission Settlement Agreement;

2             (h) The Commission shall have given its Final Approval for all rates, tariffs and

3    agreements necessary to implement the Plan;

4             (i)  The Commission shall have given its Final Approval for all of the

5    financings, securities and accounts receivable programs provided for in the Plan;

6             (j) the Plan shall not have been modified in a material way, including any

7    modification pursuant to Section 11.11 hereof, since the Confirmation Date; and

8             (k) the Reorganized Debtor shall have consummated the sale of the New Money

9    Notes as contemplated by the Plan.

10           8.3    Effect of Failure of Conditions.  In the event that one or more of the conditions

11   specified in Section 8.2 hereof shall not have occurred or been waived on or before March 31, 2004

12   (or such later date as may be hereafter provided in an amended Section 8.2(a)), (a) the Confirmation

13   Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all

14   holders of Claims and Equity Interests shall be restored to the status quo ante as of the day

15   immediately preceding the Confirmation Date as though the Confirmation Order had never been

16   entered and (d) the Debtor's obligations with respect to Claims and Equity Interests shall remain

17   unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any

18   Claims or Equity Interests by or against the Debtor or any Person or Governmental Entity or to

19   prejudice in any manner the rights of the Debtor or any Person or Governmental Entity in any further

20   proceedings involving the Debtor; provided, however, that the amounts paid pursuant to Section

21   4.2(a) hereof on account of Post-Petition Interest may be recharacterized as a payment upon the

22   applicable Allowed Claims, in the sole discretion of the PG&E Proponents, but the Debtor will not

23   otherwise seek to recover such amounts.

24           8.4    Waiver of Conditions.  The Proponents collectively (but not otherwise) may

25   waive by a writing signed by an authorized representative of each of the Proponents and

26   subsequently filed with the Bankruptcy Court, one or more of the conditions precedent set forth in

27   Sections 8.1 and 8.2 hereof, except that the conditions set forth in Sections 8.2(d), (e), (f), (g), (h)

28   and (i) hereof cannot be waived.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

## ARTICLE IX

### EFFECT OF CONFIRMATION OF PLAN

9.1    <u>Term of Bankruptcy Injunction or Stays</u>.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case under section 105 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect in accordance with the terms of such injunctions.  Unless otherwise provided, the automatic stay provided under section 362(a) of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

9.2    <u>Revesting of Assets</u>.  On the Effective Date, except as otherwise transferred, sold or otherwise provided for in the Plan, the property of the estate of the Debtor shall vest in the Reorganized Debtor.

9.3    <u>Operations Following Effective Date</u>.  From and after the Effective Date, the Reorganized Debtor and its subsidiaries and affiliates may each operate its businesses, and may use, acquire and dispose of property free of any restrictions imposed under the Bankruptcy Code.  As of the Effective Date, all property of the Reorganized Debtor and its subsidiaries and affiliates shall be free and clear of all Liens, claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan.

9.4    <u>Claims Extinguished</u>.  As of the Effective Date, any and all avoidance claims accruing to the Debtor under sections 502(d), 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code and not then pending, shall be extinguished.

9.5    <u>Discharge of Debtor</u>.  The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets or properties.  Except as otherwise provided herein, (a) as of the Confirmation Date, all such Claims against and Equity Interests in the Debtor shall be satisfied, discharged and released in full and (b) all Persons and Governmental Entities shall be precluded from asserting against the Debtor, its successors, or its assets or properties any other or further Claims or Equity Interests based upon any act or omission,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

2        9.6    Injunction.  In addition to and except as otherwise expressly provided herein, the

3    Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or

4    may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on and after the

5    Confirmation Date, from (a) commencing or continuing in any manner any action or other

6    proceeding of any kind with respect to any such Claim or Equity Interest, (b) the enforcement,

7    attachment, collection or recovery by any manner or means of any judgment, award, decree or order

8    against the Reorganized Debtor on account of any such Claim or Equity Interest, (c) creating,

9    perfecting or enforcing any Lien of any kind against the Reorganized Debtor or against the property

10   or interests in property of the Reorganized Debtor on account of any such Claim or Equity Interest,

11   (d) asserting any right of setoff or recoupment of any kind against any obligation due to (or asserting

12   any right of subrogation with respect to any type of claim against) the Reorganized Debtor or against

13   the property or interests in property of the Reorganized Debtor on account of any such Claim or

14   Equity Interest, to the extent and only to the extent such right of setoff, recoupment and/or

15   subrogation is not permitted under applicable law, and (e) commencing or continuing in any manner

16   any action or other proceeding of any kind with respect to any Claims or Causes of Action which are

17   extinguished, dismissed or released pursuant to the Plan.  The injunction shall also enjoin all parties

18   in interest, including, without limitation, all entities who have held, hold or may hold Claims against

19   or Equity Interests in the Debtor, from taking any action in violation of the Confirmation Order.

20   Such injunction shall extend to successors of the Reorganized Debtor and their respective properties

21   and interests in property.  Except as provided by Sections 11.4, 11.6 and 11.7, this Section 9.6 shall

22   not enjoin, bar or otherwise impair the commencement or prosecution of direct personal claims

23   against any Person other than the Reorganized Debtor.

24                              ARTICLE X

25                    **RETENTION OF JURISDICTION**

26        The Bankruptcy Court shall have jurisdiction of all matters arising out of, or related to,

27   the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of

28   the Bankruptcy Code and for, among other things, the following purposes:

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    (a) to hear and determine applications for the assumption or rejection of

2    executory contracts or unexpired leases, if any are pending, and the allowance of cure amounts and

3    Claims resulting therefrom;

4    (b) to hear and determine any and all adversary proceedings, applications and

5    contested matters;

6    (c) to hear and determine any objection to Administrative Expense Claims or,

7    except as provided in Section 4.15(c) hereof, to Claims;

8    (d) to enter and implement such orders as may be appropriate in the event the

9    Confirmation Order is for any reason stayed, revoked, modified or vacated;

10    (e) to issue such orders in aid of execution and consummation of the Plan, to the

11    extent authorized by section 1142 of the Bankruptcy Code;

12    (f) to consider any amendments to or modifications of the Plan, to cure any

13    defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court,

14    including, without limitation, the Confirmation Order;

15    (g) to hear and determine all applications for compensation and reimbursement

16    of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

17    (h) to hear and determine disputes arising in connection with the interpretation,

18    implementation or enforcement of the Commission Settlement Agreement, the Plan and/or the

19    Confirmation Order;

20    (i) to hear and determine proceedings to recover assets of the Debtor and

21    property of the Debtor's estate, wherever located;

22    (j) to hear and determine matters concerning state, local and federal taxes in

23    accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

24    (k) to hear and determine matters concerning the escrow(s), if any, established

25    pursuant to Section 5.4(g) hereof;

26    (l) to hear any other matter not inconsistent with the Bankruptcy Code; and

27    (m) to enter a final decree closing the Chapter 11 Case.

28    The Confirmation Order shall provide that the Chapter 11 Case shall not qualify as "fully

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1  administered" within the meaning of section 350 of the Bankruptcy Code and Rule 3022 of the

2  Federal Rules of Bankruptcy Procedure, and a final decree shall not be entered in the Chapter 11

3  Case, until the later of (i) nine (9) years after the Effective Date, and (ii) the date the Regulatory

4  Asset shall have been fully amortized in the Reorganized Debtor's Retail Electric Rates.

5

6                                    ARTICLE XI

7                         **MISCELLANEOUS PROVISIONS**

8            11.1    <u>Effectuating Documents and Further Transactions</u>.  The Debtor (or the

9  Reorganized Debtor after the Effective Date), the Parent and their respective subsidiaries and

10  affiliates are each authorized to execute, deliver, file or record such contracts, instruments, releases,

11  indentures and other agreements or documents and take such actions as may be necessary or

12  appropriate to effectuate the intent and further evidence the terms and conditions of the Plan and any

13  securities (whether equity, debt, derivative or otherwise) issued pursuant to the Plan.

14            11.2    <u>Corporate Action</u>.  On the Effective Date, all matters provided for under the Plan

15  that would otherwise require approval of the shareholders or Board of Directors of the Debtor shall

16  be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the

17  applicable law of the jurisdiction of incorporation or formation without any requirement of further

18  action by the shareholders or Board of Directors of the Debtor.  On the Effective Date, or as soon as

19  practicable thereafter, the Reorganized Debtor and its respective subsidiaries and affiliates shall, if

20  required, file their articles of incorporation or articles of organization or amended articles of

21  incorporation or amended articles of organization, as appropriate, with the Secretary of State of the

22  jurisdiction of incorporation or formation, as applicable, in accordance with applicable law.

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1   11.3 <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy

2 Code, the issuance, transfer or exchange of notes or the issuance of equity securities under the Plan,

3 the creation of any mortgage, deed of trust or other security interest under the Plan, the making or

4 assignment of any lease or sublease under the Plan, or the making or delivery of any instrument of

5 transfer under the Plan shall not be subject to any stamp, real estate transfer, documentary transfer,

6 mortgage recording or other similar tax.

7   11.4 <u>Mutual Releases Between The PG&E Proponents and the Commission</u>.

8    (a) <u>Release of the Commission by the PG&E Proponents</u>.  On or as soon as

9 practicable after the later of the Effective Date or the date on which the Commission approval of the

10 Commission Settlement Agreement is no longer subject to appeal, the Debtor, the Debtor-in-

11 Possession, the Reorganized Debtor and the Parent each releases the Commission, its present and

12 former commissioners and employees, and the advisors, consultants and professionals of or to the

13 Commission, in each case in their respective capacities as such, from any and all Causes of Action

14 held by or assertable on behalf of the Debtor or the Parent or derivative of the Debtor's or the

15 Parent's rights, that are expressly released, resolved or dismissed pursuant to Paragraphs 9 and 10 of

16 the Commission Settlement Agreement.

17    (b) <u>Release of the PG&E Proponents by the Commission</u>.  On or as soon as

18 practicable after the later of the Effective Date or the date on which the Commission approval of the

19 Commission Settlement Agreement is no longer subject to appeal, the Commission, its present and

20 former commissioners and employees, as well as the advisors, consultants and professionals of or to

21 the Commission, in each case in their respective capacities as such, each releases the Debtor, the

22 Debtor-in-Possession, the Reorganized Debtor and the Parent, in each case in any capacity, from any

23 and all Causes of Action held by or assertable on behalf of the Commission or derivative of the

24 Commission's rights, that are expressly released, resolved or dismissed pursuant to Paragraphs 9 and

25 10 of the Commission Settlement Agreement

26   11.5 <u>Other Releases by the Debtor</u>.  As of the Effective Date, and subject to the

27 release by the Releasees set forth in Section 11.6 below, the Debtor, the Debtor-in-Possession and

28 the Reorganized Debtor, each releases all of the Releasees from any and all Causes of Action held

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   by, assertable on behalf of the Debtor or derivative of the Debtor's rights, in any way relating to the

2   Debtor, the Debtor-in-Possession, the Chapter 11 Case, the Plan, negotiations regarding or

3   concerning the Plan, and the ownership, management and operation of the Debtor and the Debtor-in-

4   Possession, including, without limitation, in the case of Parent, any transactions or transfers between

5   the Parent and the Debtor and any Cause of Action arising under chapter 5 of the Bankruptcy Code

6   or any state fraudulent conveyance statute; provided, however, that the foregoing shall not operate as

7   a waiver of or release from any Causes of Action arising out of any express contractual obligation

8   owing by any former director, officer or employee to the Debtor or any reimbursement obligation of

9   any former director, officer or employee with respect to a loan or advance made by the Debtor to

10   such former director, officer or employee and is not a waiver of or release for any professionals

11   retained in connection with this Chapter 11 Case from claims by their respective clients.

12       11.6   Limited Release by Releasees.  In consideration for the release of the Releasees

13   and other valuable consideration, as of the Effective Date, each of the Releasees, at its option,

14   releases the Debtor, the Debtor-in-Possession,  the Reorganized Debtor, the Parent, and their

15   respective subsidiaries and affiliates, in each case in any capacity, from any and all Causes of Action

16   held by, assertable on behalf of or derivative from such Releasee, in any way relating to the Debtor,

17   the Debtor-in-Possession, the Chapter 11 Case, the Plan, negotiations regarding or concerning the

18   Plan, and the ownership, management and operation of the Debtor and Debtor-in-Possession.  The

19   release by the Debtor, the Debtor-in-Possession and the Reorganized Debtor in Section 11.5 hereof

20   shall be provided only to Releasees who execute and deliver to the Debtor, the Debtor-in-Possession

21   and the Reorganized Debtor a release as provided in this Section 11.6 and in a form acceptable to the

22   Debtor, the Debtor-in-Possession and the Reorganized Debtor.

23       11.7   Exculpation.  As of and subject to the occurrence of the Confirmation Date,

24   (a) the Proponents shall be deemed to have negotiated the Plan in good faith, (b) the Proponents

25   shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the

26   applicable provisions of the Bankruptcy Code, including, without limitation, section 1125(a) of the

27   Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy

28   of disclosure in connection with such solicitation, and (c) the Proponents and each of their respective

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    affiliates, agents, directors, officers, employees, advisors and attorneys shall be deemed to have

2    participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code

3    in the offer and issuance of any securities under the Plan, and therefore, none of the Debtor, the

4    Debtor-in-Possession, the Parent, the Committee or any of their respective members, officers,

5    directors, employees, advisors, professionals or agents shall have or incur any liability to any holder

6    of a Claim or Equity Interest or other party in interest for any act or omission in connection with,

7    related to, or arising out of, the Chapter 11 Case, negotiations regarding or concerning the Plan, the

8    pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan

9    or the property to be distributed under the Plan, except for willful misconduct or gross negligence,

10   and, in all respects, the Debtor, the Debtor-in-Possession, the Parent, the Committee and each of

11   their respective members, officers, directors, employees, advisors, professionals and agents shall be

12   entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the

13   Plan; provided that nothing in this Section 11.7 shall effect a release in favor of any Person other

14   than the Debtor with respect to any debt owed to any Governmental Entity for any liability of such

15   Person arising under (x) the Tax Code, or any state, city or municipal tax code, or (y) the

16   environmental laws of the United States, or any state, city or municipality.

17          11.8    Termination of Committee.  The appointment of the Committee shall terminate

18   on the Effective Date, subject to continuation for specific purposes by a Final Order of the

19   Bankruptcy Court.

20          11.9    Fees and Expenses.

21                  (a) Subject to section 1129(a)(4) and other provisions of the Bankruptcy Code,

22   and subject to the provisions of Paragraph 13d of the Commission Settlement Agreement regarding

23   limitations on the fees of UBS Warburg LLC, in each case to the extent applicable, as of the

24   Confirmation Date the Debtor shall reimburse the Commission for all of its professional fees and

25   expenses incurred in connection with the Debtor's Chapter 11 Case (such fees and expenses of the

26   Commission to include those of Paul, Weiss, Rifkind, Wharton & Garrison LLP, UBS Warburg LLC

27   and Chanin Capital Partners) without the need for any application under section 330 or 503(b) of the

28   Bankruptcy Code.  If it is determined by Bankruptcy Court order that such an application is required

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   for all or any part of such fees and expenses to be reimbursed by the Debtor, then none of the

2   Proponents will object to such application, and the PG&E Proponents shall support such application

3   in a written pleading to be filed with the Bankruptcy Court, and such fees and expenses shall be

4   allowed and treated as Administrative Expense Claims in the amount approved by the Bankruptcy

5   Court. On a monthly basis thereafter, the Debtor shall reimburse the Commission for any and all

6   fees and expenses of professional Persons thereafter reasonably incurred by the Commission directly

7   in connection with the consummation of the Plan.

8         (b) From and after the Confirmation Date and to the Effective Date, the Debtor

9   shall, in the ordinary course of business and without the necessity for any approval by the

10   Bankruptcy Court, pay the reasonable fees and expenses of those professional Persons employed by

11   or on behalf of the Debtor and/or the Debtor's bankruptcy estate by order of the Bankruptcy Court,

12   thereafter incurred, including, without limitation, those fees and expenses incurred in connection

13   with the implementation and consummation of the Plan.

14         11.10  Payment of Statutory Fees. The Debtor or the Reorganized Debtor shall pay on

15   or before the Effective Date any unpaid fees payable on or before the Effective Date pursuant to

16   section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the

17   Confirmation Hearing.  In addition, the Reorganized Debtor shall timely pay all fees payable

18   pursuant to section 1930(a)(6) of title 28 of the United States Code after the Effective Date, until the

19   time the Bankruptcy Court enters a final decree closing the Chapter 11 Case.

20         11.11  Amendment or Modification of the Plan.

21         (a) Amendments or modifications of or to the Plan may be proposed in writing

22   by the Proponents acting collectively at any time prior to the Confirmation Date, provided that the

23   Plan, as amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy

24   Code and the Proponents shall have complied with section 1125 of the Bankruptcy Code. The Plan

25   may be amended or modified by the Proponents acting collectively at any time after the

26   Confirmation Date and before substantial consummation of the Plan, provided that the Plan, as

27   amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code

28   and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as amended or modified,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
*A Professional Corporation*

1    under section 1129 of the Bankruptcy Code and the circumstances warrant such amendments or

2    modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the

3    Plan, as amended or modified, if the proposed amendment or modification does not materially and

4    adversely change the treatment of the Claim of such holder.

5                              (b) The Proponents shall negotiate in good faith with one another and with the

6    Commission in connection with any and all proposed amendments or modifications to the Plan and

7    in connection with any proposed waiver concerning any provision of the Plan, including but not

8    limited to the waiver of any conditions to confirmation of the Plan or the Effective Date of the Plan.

9    No  amendment, modification or waiver shall be made without the express consent of all the

10   Proponents.  If either the PG&E Proponents, acting collectively, or the Committee desire an

11   amendment or modification of or to the Plan or a waiver under the Plan that the other Proponent

12   does not agree to after such negotiation, the PG&E Proponents, acting collectively, or the Committee

13   may propose such amendment, modification or waiver in writing at any time prior to the

14   Confirmation Date, or after the Confirmation Date and before substantial consummation of the Plan,

15.  provided, in each case, that (i) the Plan, as so amended or modified or after giving effect to such

16   waiver, does not materially alter any Settling Party's rights or obligations under the Plan and the

17   Commission Settlement Agreement or the Committee's rights or obligations under the Plan, (ii) the

18   Plan, as so amended or modified or after giving effect to such waiver, satisfies the conditions of

19   sections 1122 and 1123 of the Bankruptcy Code and the PG&E Proponents shall have complied with

20   section 1125 of the Bankruptcy Code, and (iii) the Bankruptcy Court, after hearing on such notice as

21   is provided below, determines that the circumstances warrant such amendment, modification or

22   waiver.  The PG&E Proponents or the Committee, as the case may be, shall only implement such an

23   amendment, modification or waiver pursuant to a Final Order of the Bankruptcy Court obtained after

24   a hearing on not less than ten (10) days' notice to the other Proponent(s), the Commission and the

25   United States Trustee.  A holder of a Claim that has accepted the Plan shall be deemed to have

26   accepted the Plan, as amended or modified or after giving effect to a waiver, if the proposed

27   amendment, modification or waiver does not materially and adversely change the treatment of the

28   Claim of such holder.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*AProfessional Corporation*

1      (c)  If the Commission does not agree with (i) any amendment or modification

2  proposed by the Proponents pursuant to subparagraph (a) of this Section 11.11, (ii) any amendment

3  or modification proposed by the PG&E Proponents collectively or by the Committee pursuant to

4  subparagraph (b) of this Section 11.11, or (ii) any waiver proposed by the Proponents, PG&E

5  Proponents collectively or by the Committee pursuant to subparagraph (b) of this Section 11.11, then

6  in each such case (x) the Proponents or the PG&E Proponents, as the case may be, shall only

7  implement such amendment, modification or waiver pursuant to a Final Order of the Bankruptcy

8  Court obtained after notice and a hearing on not less than ten (10) days' notice to the Commission

9  and the United States Trustee, and (y) the Commission shall retain all rights, remedies, claims and

10  defenses which it may have pursuant to the Commission Settlement Agreement.

11      11.12  Binding Effect.  The Plan shall be binding upon and inure to the benefit of the

12  Proponents, the Reorganized Debtor, their respective subsidiaries and affiliates, the holders of

13  Claims and Equity Interests, all Settling Parties, other parties in interest, and their respective

14  successors and assigns.

15      11.13  Notices.  All notices, requests and demands to or upon the Debtor to be effective

16  shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been

17  duly given or made when actually delivered or, in the case of notice by facsimile transmission, when

18  received and telephonically confirmed, addressed as follows:

19      If to the Debtor:

20      Pacific Gas and Electric Company
        77 Beale Street
21      P.O. Box 7442
        San Francisco, California  94120
22      Attn:  General Counsel
        Telephone:  (415) 973-7000
23      Facsimile:   (415) 973-5320

24      with a copy to:

25      PG&E Corporation
        One Market, Spear Street Tower, Suite 2400
26      San Francisco, California  94105
        Attn:  General Counsel
27      Telephone:  (415) 267-7000
        Facsimile:   (415) 267-7265

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    and:

2    Howard, Rice, Nemerovski, Canady, Falk & Rabkin
    A Professional Corporation
3    Three Embarcadero Center, 7th Floor
    San Francisco, California  94111
4    Attn:  James L. Lopes
    Telephone:  (415) 434-1600
5    Facsimile:  (415) 217-5910

6    and:

7    Dewey Ballantine LLP
    700 Louisiana, Suite 1900
8    Houston, Texas  77002
    Attn:  Alan S. Gover
9    Telephone:  (713) 445-1500
    Facsimile:  (713) 445-1533

10

11    and:

    Weil, Gotshal & Manges LLP
12    767 Fifth Avenue
    New York, New York  10153
13    Attn:  Michael P. Kessler
    Telephone:  (212) 310-8000
14    Facsimile:  (212) 310-8007

15

16    If to the Committee:

17    Milbank, Tweed, Hadley & McCloy LLP
    601 South Figueroa Street, Suite 3000
18    Los Angeles, California  90017
    Attn:  Paul S. Aronzon
19    Telephone:  (213) 892-4000
    Facsimile:  (213) 629-5063

20    If to the Trustee:

21    The Office of the United States Trustee
    250 Montgomery Street, Suite 1000
22    San Francisco, California  94104
    Attn:  Patricia Cutler
23    Telephone:  (415) 705-3333
    Facsimile:  (415) 705-3379

24

25    If to the Commission:

26    California Public Utilities Commission
    505 Van Ness Avenue
27    San Francisco, California  94102
    Attn:  Arocles Aguilar
    Telephone:  (415) 703-2782
28    Facsimile:  (415) 703-2262

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

and:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Attn: Alan W. Kornberg
Telephone: (212) 373-3000
Facsimile: (212) 757 3990

11.14  Governing Law. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflicts of law of such jurisdiction; provided, however, that under all circumstances the Plan, the Commission Settlement Agreement, and any orders of the Bankruptcy Court (including the Confirmation Order) are intended to be enforceable under federal law.

11.15  Withholding and Reporting Requirements. Except as otherwise provided by the Plan, in connection with the consummation of the Plan, the Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

11.16  Preservation of Certain Claims. Except for those claims that are expressly released pursuant to the provisions of the Plan, the Debtor (and after the Effective Date, the Reorganized Debtor) shall retain all claims against third parties of any nature (including, without limitation, all contingent and unliquidated claims, all claims listed on Schedule 11.16, and all claims that are or were discovered after the date hereof), and reserves all rights to pursue any and all such claims in any appropriate forum, either prior to the Effective Date (as to the Debtor) or after the Effective Date (as to the Reorganized Debtor).

11.17  Plan Supplement. The following documents are contained in the Plan Supplement: certain schedules to the Plan, including the schedule of executory contracts and unexpired leases to be rejected pursuant to the terms hereof, and the Schedule of Causes of Action

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    described in Section 11.16 hereof.  The Plan Supplement may be inspected in the office of the Clerk

2    of the Bankruptcy Court during normal court hours or through the "Pacific Gas & Electric Company

3    Chapter 11 Case" link available through the website maintained by the Bankruptcy Court at

4    http://www.canb.uscourts.gov.  In addition, holders of Claims or Equity Interests may obtain a copy

5    of the Plan Supplement upon written request to the Debtor at the address set forth in Section 11.13

6    hereof.

7       11.18   Exhibits/Schedules.  All exhibits and schedules to the Plan, including the Plan

8    Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

9       11.19   Subrogation Rights.  Nothing in the Plan shall affect (a) the subrogation rights of

10   any surety, to the extent applicable or available, which, if available or applicable, shall remain in full

11   force and effect or (b) the rights of the Debtor to object, pursuant to the Bankruptcy Code,

12   to the existence of such subrogation rights.

13   DATED:    December 19, 2003

14

15

16   PACIFIC GAS AND ELECTRIC COMPANY

16   By:  _____
     Roger J. Peters
17   Senior Vice President and General Counsel

18

19   PG&E CORPORATION

20   By:  _____
     Peter A. Darbee
21   Senior Vice President and Chief Financial Officer

22

23   OFFICIAL COMMITTEE OF UNSECURED CREDITORS

24   By:  _____
     Paul S. Aronzon
25   Attorney for Official Committee of
     Unsecured Creditors

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

PLAN OF REORG. DATED JULY 31, 2003, AS MOD. NOVEMBER 6, 2003 AND DECEMBER 19, 2003

1   APPROVED AS TO CONTENT AND FORM:

2

3   HOWARD, RICE, NEMEROVSKI, CANADY,
    FALK & RABKIN, A PROFESSIONAL CORPORATION

4   BY: _____

5   James L. Lopes
    ATTORNEYS FOR DEBTOR AND DEBTOR-IN-
6   POSSESSION

7

8   COOLEY GODWARD LLP

9   BY: _____

    Stephen C. Neal
10  ATTORNEYS FOR DEBTOR AND DEBTOR-IN-
    POSSESSION
11

12  DEWEY BALLANTINE LLP

13

14  BY: _____

    Alan S. Gover
15  ATTORNEYS FOR PG&E CORPORATION

16  WEIL, GOTSHAL & MANGES LLP

17  BY: _____

18  Michael P. Kessler
    ATTORNEYS FOR PG&E CORPORATION
19

20  ORRICK, HERRINGTON & SUTCLIFFE LLP

21  BY: _____

22  Joseph S. Malkin
    ATTORNEYS FOR PG&E CORPORATION
23

24

25

26

27

28

PROFESSOR LAURENCE TRIBE

By: _Laurence Tribe_
by oh
Laurence Tribe
CO-COUNSEL TO PG&E CORPORATION
FOR CONSTITUTIONAL LAW MATTERS

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _Paul S. Aronzon_
by oh
Paul S. Aronzon
ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation