**EXHIBIT I**

**FILED**

FEB - 6 2004

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

1  JAMES L. LOPES (No. 63678)
   JANET A. NEXON (No. 104747)
2  GARY M. KAPLAN (No. 155530)
   HOWARD, RICE, NEMEROVSKI, CANADY,
3      FALK & RABKIN
   A Professional Corporation
4  Three Embarcadero Center, 7th Floor
   San Francisco, California  94111-4024
5  Telephone:   415/434-1600
   Facsimile:   415/217-5910
6
   Attorneys for Debtor and Debtor in Possession
7  PACIFIC GAS AND ELECTRIC COMPANY

8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12  In re                          | Case No. 01-30923 DM

13  PACIFIC GAS AND ELECTRIC        | Chapter 11 Case
    COMPANY, a California corporation,
14                                  | Date:   March 5, 2004
                Debtor.            | Time:   1:30 p.m.
15                                  | Place:  235 Pine Street, 22nd Floor
                                    |         San Francisco, California
16  Federal I.D. No. 94-0742640     | Judge:  Hon. Dennis Montali

17

18

19      NOTICE OF MOTION AND MOTION FOR EXTENSION OF TIME TO OBJECT TO
          CERTAIN PROOFS OF CLAIM AND FOR RELATED RELIEF;
20       MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

21      [SUPPORTING DECLARATION OF KERMIT KUBITZ FILED SEPARATELY]

22

23

24

25

26

27

28

14581

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION                                                1

MEMORANDUM OF POINTS AND AUTHORITIES                          2

I.    INTRODUCTION                                                                  2

II.   FACTUAL BACKGROUND AND DISCUSSION                            3

    A.    General Factual Background                                            3

    B.    The FERC Refund Proceedings And Other FERC
        Proceedings.                                                             6

        1.    The FERC Refund Proceedings                                6

        2.    The Scheduling Coordinator Services Tariff Proceeding      8

        3.    The California-Oregon Transmission Project Proceeding      9

        4.    The PX Chargeback Proceeding                              10

    C.    Claims Affected By Resolution Of The FERC Refund
        Proceedings.                                                             11

        1.    RMR Claims                                                   11

        2.    Claims For Imbalance Energy And Emergency Services      12

        3.    QF Claims                                                    13

    D.    Extension Applicable To Other Portions Of Claims With ISO,
        PX And Generator Claims Component                            15

    E.    Extension Of The Time To Object To Claims Subject To
        Pending Objections And Other Disputed Claims                  15

    F.    The Claims Subject To The Requested Extensions Should Be
        Deemed Disputed Claims Until The Applicable Objection
        Deadline Elapses                                                      16

III.  CONCLUSION                                                                  17

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
_A Professional Corporation_

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 5, 2004 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Dennis Montali, located at 235 Pine Street, 22nd Floor, San Francisco, California, Pacific Gas and Electric Company, the debtor and debtor in possession in the above-captioned Chapter 11 case ("PG&E" or the "Debtor"), will and hereby does move (the "Motion") the Court for entry of an order (1) extending the time for the Debtor to object to certain proofs of claim filed herein, whose allowance is dependent, in whole or in part, on certain proceedings pending before the Federal Energy Regulatory Commission, until after resolution of such proceedings, (2) extending the time for the Debtor to object to claims which are subject to pending objections or otherwise constitute "Disputed Claims" under the Debtor's confirmed Chapter 11 plan as of the time such plan becomes effective, until 30 days after the objections to such claims are resolved or such claims no longer constitute Disputed Claims, and (3) providing certain related relief.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kermit Kubitz ("Kubitz Declaration") filed concurrently herewith, the record of this case and any evidence or argument presented at or prior to the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9014-1(c)(1) of the Bankruptcy Local Rules of the United States District Court for the Northern District of California, any written opposition to the Motion and the relief requested herein must be filed with the Bankruptcy Court and served upon appropriate parties (including counsel for PG&E, the Office of the United States Trustee and the Official Committee of Unsecured Creditors) at least 14 days prior to the scheduled hearing date. If there is no timely opposition to the requested relief, the Court may enter an order granting such relief by default and without further hearing.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On December 22, 2003, this Court entered its order confirming the Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Dated July 31, 2003, As Modified by Modifications Dated November 6, 2003 and December 19, 2003 (the "Plan")[1]. The Effective Date of the Plan has not yet occurred, although Section 8.2 of the Plan reflects that the Effective Date is anticipated to occur by March 31, 2004.

Pursuant to the Plan, unless otherwise ordered by the Bankruptcy Court, the deadline for filing objections to Claims (other than Administrative Expense Claims) is the Effective Date of the Plan. As recognized by the Plan, all ISO, PX and Generator Claims, which are classified in Class 6 under the Plan, constitute Disputed Claims, whose resolution is subject to the FERC Refund Proceedings. The Plan provides that such Claims will become Allowed Claims following resolution of the FERC Refund Proceedings. The Plan further provides that the Debtor will not attempt to obtain a determination by this Court of the matters at issue in the FERC Refund Proceedings, although the Debtor retains the right to bring objections to ISO, PX and Generator Claims before this Court on other grounds. As discussed below, the FERC Refund Proceedings remain pending, and are not expected to be resolved prior to the anticipated Effective Date of the PG&E Plan. Accordingly, presuming that the Plan becomes effective, PG&E seeks an extension of time to object to ISO, PX and Generator Claims (listed on Exhibit 1 attached hereto) until the date that such Claims become Allowed Claims under the Plan.

The Debtor requests a similar extension with respect to numerous other Claims filed against the Debtor (listed on Exhibits 2 and 4 attached hereto) that are expected to be

---

[1] Capitalized terms used herein without definition have the meanings ascribed to them in the Plan.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   affected by the resolution of the FERC Refund Proceedings, and/or are subject to other

2   FERC proceedings, which remain unresolved, as discussed below.

3       In addition, the Debtor requests that the extension apply to the other components

4   of Claims containing ISO, PX and Generator Claims (listed on Exhibit 3 attached hereto),

5   even if those components are not directly affected by the resolution of the FERC Refund

6   Proceedings.[2] In seeking such relief, the Debtor submits that the avoidance of piecemeal

7   litigation is in the best interests of all concerned parties, as well as the Court.

8       The Debtor further seeks an extension of the time for it to object to claims which

9   are subject to pending objections or otherwise constitute Disputed Claims as of the Effective

10  Date, until 30 days after the objections or disputes with respect to such Claims are resolved.

11  This will conserve estate resources by preventing the Debtor from being forced to make

12  potentially unnecessary objections which might otherwise be required if such objections or

13  disputes were not resolved prior to the Effective Date, which is the current deadline for

14  objecting to Claims.

15      Finally, the Debtor requests that the Claims that are subject to the extensions

16  sought herein be deemed Disputed Claims under the Plan until expiration of the period for

17  objecting to such Claims to avoid potentially paying claims that are later disallowed.

18  **II.**

19  **FACTUAL BACKGROUND AND DISCUSSION[3]**

20  **A.**   **General Factual Background**

21      PG&E filed a voluntary petition for relief under Chapter 11 of the Bankruptcy

22  Code on April 6, 2001. A trustee has not been appointed, and PG&E continues to function

23  as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

24

25     [2] For the Court's convenience, Exhibit 5 attached hereto contains a summary of all of
    the Claims listed on Exhibits 1 through 4, including the total claim amount, reductions to
26  such claim amount, the dollar amount of the claim attributable to the FERC proceedings, and
    the dollar amount of the claim that is not affected by the FERC proceedings.
27     [3] The evidentiary basis and support for the facts set forth in this Section are contained
    in the Kubitz Declaration filed concurrently herewith.
28

MOTION FOR EXTENSION OF TIME TO OBJECT TO CERTAIN PROOFS OF CLAIM AND RELATED RELIEF

-3-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    PG&E's Plan was confirmed on December 22, 2003. The Effective Date of the Plan has not

2    yet occurred, although Section 8.2 of the Plan reflects that the Effective Date is anticipated

3    to occur by March 31, 2004.

4            Pursuant to Section 5.5 of the Plan, unless otherwise ordered by the Bankruptcy

5    Court, the deadline for filing objections to claims (other than Administrative Expense

6    Claims) is the Effective Date of the Plan.[4]

7            Under Section 4.15(c) of the Plan, all ISO, PX and Generator (Class 6) Claims[5]

8    constitute Disputed Claims, whose resolution is subject to the FERC Refund Proceedings.

9    (The current status of the FERC Refund Proceedings is discussed below in Section II.B.)

10    The Plan provides that the Debtor will not attempt to obtain a determination by this Court of

11    the matters at issue in the FERC Refund Proceedings, although the Debtor retains the right to

12    bring objections to ISO, PX and Generator Claims before this Court on other grounds.[6]

13    Section 5.4(g)(i) of the Plan further provides that ISO, PX and Generator Claims will

14    become Allowed Claims on the date designated by FERC when payments are to be made on

15    account of ISO, PX and Generator Claims pursuant to an unstayed order in the FERC

16    Refund Proceedings, or if no date is designated in such order, 45 days after the issuance of

17

18        [4] Specifically, Section 5.5 of the Plan provides, in relevant part: "[u]nless otherwise
      ordered by the Bankruptcy Court, (a) all objections to Claims (except for Administrative
19    Expense Claims) shall be filed and served upon the holder of the Claim as to which the
      objection is made (and, as applicable, upon the Debtor and the Committee) as soon as is
20    practicable, but in no event later than the Effective Date . . . ."

21        [5] The Plan defines ISO, PX and Generator Claims as "all Claims against the Debtor
      arising from amounts due to the ISO, PX and various power generators based on purchases
22    of electricity or ancillary services by the Debtor in markets operated by the PX and the ISO."

        [6] In particular, Section 4.15(c) of the Plan provides, in relevant part:
23
          "As of the date hereof, all ISO, PX and Generator Claims are Disputed. The
24        Debtor agrees that for purposes of determining the amount of Allowed ISO, PX
          and Generator Claims that are not resolved consensually by settlement, the
25        Debtor will prosecute the FERC Refund Proceedings only before the FERC or
          any Court to which an appeal from the FERC order may be taken, and will not
26        attempt to obtain a determination of such matters before the Bankruptcy Court,
          except . . . to the extent the Debtor has an objection based on a matter that is not
27        the subject matter of the FERC Refund Proceedings. Nothing herein precludes
          the Debtor from asserting in the Bankruptcy Court or in any other forum any
28        other defense or objection to any ISO, PX and Generator Claims."

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  such order, provided such order has not been stayed.[7]

2      Generally speaking, the Plan provides for payment of Allowed Claims on the

3  later of the Effective Date and the date the Claim becomes an Allowed Claim.[8]  Allowed

4  Claims are defined in the Plan to include claims that are not Disputed Claims.[9]  Disputed

5  Claims under the Plan include Claims or portions thereof that are subject to unresolved

6  objections.[10]  Section 5.4(g)(i) of the Plan provides for the establishment of one or more

7  escrows for certain Disputed Claims for the purpose of setting aside funds to make

8  distributions on such Claims, pending their final resolution.  Section 5.4(g)(i) provides for

9  the accrual of interest on the funds in the Disputed Claim escrow(s) and the payment of

10  interest with respect to Disputed Claims.[11]

---

11   [7] In particular, Section 5.4(g)(i) of the Plan provides, in relevant part:

12   "A Disputed ISO, PX and Generator Claim shall become an Allowed Claim on
     the date designated by FERC when payments are to be made on account of ISO,
13   PX and Generator Claims, pursuant to an unstayed order in the FERC Refund
     Proceedings; provided, however, that if no date is designated in such order, a
14   Disputed ISO, PX and Generator Claim shall automatically become an Allowed
     Claim forty-five (45) days after the issuance of such order, provided such order
15   has not been stayed."

16   [8] Section 4.2(d) of the Plan provides, in relevant part:

17   "[E]ach of the distributions specified in this Article IV with respect to each
     Allowed Claim or Equity Interest shall (i) occur on the later of the Effective Date
     and the date such Allowed Claim or Equity Interest becomes an Allowed Claim
18   or Equity Interest, or as soon as practicable thereafter: . . . ."

19   [9] Section 1.1 of the Plan provides, in relevant part:

20   "Allowed means, with reference to any Claim against or Equity Interest in the
     Debtor . . . any Claim or Equity Interest which is not Disputed . . . ."

21   [10] Section 1.1. of the Plan provides, in relevant part:

22   "Disputed means (a) with reference to any Claim against the Debtor . . . as to
     which the Debtor has interposed a timely objection and/or request for estimation
23   in accordance with section 502(c) of the Bankruptcy Code and/or Bankruptcy
     Rule 3018, which objection and/or request for estimation has not been withdrawn
24   or determined by a Final Order . . . .  A Claim that is Disputed by the Debtor as to
     its amount only shall be deemed Allowed in the amount the Debtor admits owing,
     if any, and Disputed as to the excess."

25   [11] In particular, Section 5.4(g)(i) of the Plan provides, in relevant part:

26   "From and after the Effective Date, the Cash reserved for such Disputed Claim
     will earn interest at the same rate as if such Cash had been invested in either
27   (i) money market funds consisting primarily of short-term U.S. Treasury
     securities or (ii) obligations of or guaranteed by the United States of America or
28                                                          (continued . . . )

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

**B.    The FERC Refund Proceedings And Other FERC Proceedings.**

**1.    The FERC Refund Proceedings**

In response to the unprecedented increase in wholesale electricity prices during 2000 and 2001, FERC held, on November 1, 2000, that prices in the California electric power markets were not just and reasonable. *San Diego Gas & Elec. Co. v. Sellers of Energy*, 93 F.E.R.C. (CCH) ¶61,121 at 61,349-61,350 (Nov. 1, 2000). In addition, on July 25, 2001, FERC held that buyers would be entitled to refunds for power purchased in such markets from October 2, 2000 through June 20, 2001. *San Diego Gas & Elec. Co. v. Sellers of Energy*, 96 F.E.R.C. (CCH) ¶61,120 at 61,513-61,514 (July 25, 2001). The amount of refunds was left to be determined in subsequent FERC proceedings. On December 12, 2002, a FERC administrative law judge ("ALJ") issued an initial decision (the "December 12 Order") finding that energy sellers had overcharged the utilities, the State of California and other buyers from October 2, 2000 through June 20, 2001 by approximately $1.8 billion. *San Diego Gas & Elec. Co. v. Sellers of Energy*, 101 F.E.R.C. ¶63,026 (December 12, 2002).

On March 26, 2003, FERC confirmed most of the ALJ's findings in the December 12 Order, but modified the refund methodology in part. *San Diego Gas & Electric Company et al.*, 102 F.E.R.C. ¶61,317 (2003) (the "March 26 Order"). On October 16, 2003, FERC issued an order affirming, in most respects, the March 26 Order. *San Diego Gas & Electric Company et al.*, 105 F.E.R.C. ¶61,066 (2003) (the "October 16 Order"). The exact calculation of the refunds to be paid by the power sellers will not be determined until the ISO and the PX complete compliance filings to implement the changes required pursuant to the December 12 Order, the March 26 Order and the October 16 Order. Pursuant to the October 16 Order, the ISO and the PX were given a period of five months

( . . . continued)
any agency thereof, at the option of the Debtor, until the Disputed Claim becomes an Allowed Claim . . . . To the extent a Disputed Claim becomes an Allowed Claim, such Allowed Claim will be satisfied in the manner as all other Allowed Claims of the same Class. In addition, the holder of such a Disputed Claim will earn Post-Petition Interest."

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    (*i.e.*, until approximately March 16, 2004) to complete such compliance filings. Such

2    compliance filings by the ISO and the PX are expected to be subject to a number of

3    challenges by interested parties. FERC is then expected to make determinations regarding

4    the amounts owed to and owing by relevant parties, resulting in ascertainment of the

5    Allowed amounts of ISO, PX and Generator Claims. That process is not expected to be

6    completed until at least the latter part of 2004, as discussed below.

7         As a preliminary step to complete its compliance filings, the ISO must process

8    certain preliminary reruns of the relevant data. In a request for rehearing that the ISO filed

9    on December 15, 2003 in the preliminary rerun proceeding, the ISO advised FERC that

10   neither the preliminary rerun nor the refund rerun deadlines established by FERC are likely

11   to be met. In its request for rehearing, the ISO stated that its anticipated suspension of rerun

12   activity would further prolong the ISO's schedule for completing preliminary reruns. ISO

13   Request for Rehearing in Docket No. ER03-746-003, at p. 8. The ISO also noted in its

14   December 15, 2003 request for rehearing that it had previously advised the FERC that it

15   would not be able to meet the FERC's five-month deadline for completing the refund

16   proceeding rerun. *Id.* (citing ISO Request for Rehearing in Docket No. EL00-95, *et al.*, filed

17   November 17, 2003, at pp. 18-19).

18        On February 3, 2004, FERC issued an order on clarification and rehearing on

19   preliminary rerun issues in Docket No. ER03-746-003. *California Independent System*

20   *Operator Corp.*, 106 FERC ¶ 61,099 (2004). In addition to clarifying issues relating to

21   certain preliminary rerun issues, that order also granted the ISO's request to defer a

22   compliance filing due to the "delayed completion of the preparatory re-runs." *Id.* at ¶ 20.

23   FERC required the ISO to begin filing monthly status reports of the preparatory re-runs. As

24   especially relevant here, FERC further required the ISO to report "on a monthly basis the

25   dates that it expects to complete both the preparatory re-runs and settlements and billing

26   process for calculating refunds." *Id.* at 21.

27        Given that the preparatory reruns must be completed to provide a baseline for the

28   refund reruns, it is now apparent that the refund reruns will not be completed by March

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   2004, as originally contemplated by FERC. Even when completed, however, this does not

2   end the process, since the PX, in turn, uses the ISO's rerun data to undertake its own reruns,

3   which are expected to take an additional one or two months. Furthermore, each rerun may

4   give rise to additional disputes by market participants that would trigger dispute resolution

5   procedures under the ISO and/or the PX tariffs. Any such disputes could further delay

6   having final rerun numbers.

7        Once the final reruns are completed and compliance filings are made by the ISO

8   and the PX with FERC, a comment period will be available, after which FERC would rule

9   on the compliance filings. Interested parties may (and are likely to) seek rehearing of

10  FERC's ruling. This process is anticipated to take several additional months.

11       Based on the foregoing, FERC is not expected to make determinations regarding

12  the amounts owed to and owing by relevant parties, resulting in ascertainment of the

13  Allowed amounts of ISO, PX and Generator Claims, until the latter part of 2004 at the

14  earliest, and quite possibly not until 2005. Since most, if not virtually all of the issues which

15  might otherwise be the subject of PG&E's objections to these Claims are likely to be

16  resolved through FERC's ruling in the FERC Refund Proceedings, PG&E submits that it is

17  appropriate to extend the time for objecting to the ISO, PX and Generator Claims listed on

18  Exhibit 1 attached hereto until such Claims become Allowed pursuant to the Plan (*i.e.*, on

19  the date designated by FERC when payments are to be made on account of ISO, PX and

20  Generator Claims pursuant to an unstayed order in the FERC Refund Proceedings, or if no

21  date is designated in such order, 45 days after the issuance of such order, provided such

22  order has not been stayed).

23       **2.    The Scheduling Coordinator Services Tariff Proceeding**

24       Several creditors have filed claims related to the Scheduling Coordinator Services

25  ("SCS") Tariff proceeding pending before FERC (collectively, the "SCS Related Claims"),

26  as listed on Exhibit 2 attached hereto. PG&E commenced the SCS Tariff proceeding at

27  FERC in November 1999 (FERC Docket No. ER00-565-000, et al.). Under the SCS Tariff,

28  PG&E proposes to pass-through certain charges that PG&E receives from the ISO. PG&E

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   incurs these charges in its role as a scheduling coordinator pursuant to the provisions of the

2   FERC-approved ISO Tariff. In January 2000, FERC accepted PG&E's filing, but held

3   hearings in abeyance pending the outcome of a related proceeding. *Pacific Gas and Electric*

4   *Co.*, 90 FERC ¶ 61,010 (2000). FERC reactivated this proceeding in May 2003. *Pacific*

5   *Gas and Electric Co.*, 103 FERC ¶ 61,180 (2003). Since that time, the SCS Tariff

6   proceeding has been bifurcated by the Presiding Administrative Law Judge. Phase 1 of the

7   proceeding addresses liability issues and Phase 2 addresses cost allocation issues. A two-

8   week hearing on Phase 1 was conducted between January 6 and 15, 2004. The parties are

9   currently briefing various issues raised during that hearing and an Initial Decision is

10  expected to be issued by April 19, 2004. Phase 2 is scheduled to commence in April 2004

11  and hearings are expected to begin in December 2004 and will likely last three to four

12  weeks. An Initial Decision in Phase 2 is not expected to be issued until Spring 2005, and a

13  FERC order in this proceeding will likely not be issued before late 2005 or early 2006.

14       Since most of the issues which might otherwise be the subject of PG&E's

15  objections to the SCS Related Claims are likely to be resolved through FERC's ruling in the

16  SCS Tariff proceeding, PG&E submits that it is appropriate to extend the time for objecting

17  to such Claims (listed on Exhibit 2 attached hereto) until 45 days after FERC's issuance of

18  an order in that proceeding, provided such order has not been stayed. (Such extension is

19  analogous to the treatment for ISO, PX and Generator Claims discussed above.)

    **3.    The California-Oregon Transmission Project Proceeding**

21       PG&E has been involved in an ongoing dispute with the ISO as to whether the

22  ISO may properly charge PG&E for certain ISO-incurred costs associated with transmission

23  schedules that flow over the California-Oregon Transmission Project ("COTP"). Under the

24  ISO Tariff, the ISO only has FERC approval to charge for schedules that flow over

25  transmission facilities that are under the ISO's operational control. The COTP is *not* under

26  ISO operational control and never has been. PG&E paid approximately $14 million in

27  COTP-related ISO charges before realizing that the ISO was surreptitiously charging PG&E

28  for such amounts. Once PG&E discovered that the ISO was including these charges,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   inappropriately, in invoices to PG&E, PG&E disputed them and initiated arbitration under

2   the ISO Tariff's alternative dispute resolution ("ADR") provisions. PG&E prevailed in that

3   arbitration, obtaining an arbitration award that directed the ISO to return the amounts

4   inappropriately collected from PG&E. Pursuant to the ADR provisions under the ISO

5   Tariff, the ISO "appealed" the arbitration award to FERC, seeking to reverse the decision as

6   to the $14 million already paid by PG&E, *and* asserting that PG&E owes an additional $36

7   million of COTP-related charges. That appeal has been fully briefed and is currently

8   pending at FERC. It is not known when FERC might issue its decision in this proceeding.

9   The ISO has filed a claim against PG&E relating to the additional COTP-related amounts

10   that it alleges are owed to it by PG&E (the "ISO COTP Claim").

11          Since most, if not virtually all of the issues which might otherwise be the subject

12   of PG&E's objections to the ISO COTP Claim are likely to be resolved through FERC's

13   ruling in the COTP proceeding, PG&E submits that it is appropriate to extend the time for

14   objecting to such Claim (listed on Exhibit 2 attached hereto) until 45 days after FERC's

15   issuance of an order in that proceeding, provided such order has not been stayed. (Such

16   extension is analogous to the treatment for ISO, PX and Generator Claims discussed above.)

17          **4.    The PX Chargeback Proceeding**

18          As discussed in PG&E's Omnibus Objection To PX Charge-Back Claims filed

19   herein on January 28, 2003 (Docket No. 11912), on April 6, 2001, FERC issued an order

20   rescinding certain "PX chargebacks" imposed by the PX on its market participants, finding

21   that the PX chargeback methodology led to unjust and unreasonable results. Certain

22   requests for rehearing of that order were filed, which are still pending. In subsequent orders,

23   FERC has denied requests by certain market participants to obtain the return of chargeback

24   amounts, stating that certain issues are still pending on rehearing, and that nothing should be

25   done until FERC issues further orders, as other proceedings may impact the appropriate

26   resolution.

27          Pursuant to this Court's April 28, 2003 Order Overruling Debtor's Omnibus

28   Objection To PX Charge-Back Claims Without Prejudice (Docket No. 12647), this Court

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    overruled, without prejudice, PG&E's omnibus objection to claims based on PX

2    chargebacks (collectively, the "PX Chargeback Claims"), essentially finding that such

3    objection was premature because the subject claims could be impacted by FERC's ruling in

4    the above-discussed proceedings.  Although FERC has not indicated when it expects to issue

5    a ruling with respect to the issues pending on rehearing, PG&E expects that such ruling will

6    be issued by FERC as part of the resolution of the FERC Refund Proceedings.

7            Accordingly, PG&E submits that it is appropriate to extend the time for objecting

8    to PX Chargeback Claims listed on Exhibit 4 attached hereto until 45 days after FERC's

9    issuance of an order regarding the issues pending on rehearing in the PX chargeback

10   proceeding, provided such order has not been stayed.  (Such extension is analogous to the

11   treatment for ISO, PX and Generator Claims discussed above.)

12       **C.    Claims Affected By Resolution Of The FERC Refund Proceedings.**

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

13           The Debtor requests that the requested extension of the time to object to ISO, PX

14   and Generator Claims also apply to certain Claims which are expected to be affected by the

15   resolution of the FERC Refund Proceedings (collectively, the "FERC Refund Proceeding

16   Related Claims").  These include various Claims whose amount is necessarily based on the

17   appropriate "Market Mitigated Clearing Prices" ("MMCP") which are the subject of the

18   FERC Refunds Proceedings, as described below.

19       **1.    RMR Claims**

20           Several claims have been filed against PG&E based on amounts allegedly due

21   under the claimants' respective Reliability Must Run ("RMR") Agreements (collectively, the

22   "RMR Claims").  Generally speaking, RMR Agreements provide that, when called upon by

23   the ISO, the RMR owner will make energy available in order to maintain acceptable voltage

24   and line loads in the transmission grid.  Pursuant to the RMR Agreements and applicable

25   ISO Tariffs, RMR owners bill the ISO for their RMR services; the ISO reviews such bills

26   and if it accepts them, invoices the transmission-owning utility (here, PG&E) by posting the

27   invoices on the secure ISO website.

28           The market reruns that the ISO is required to undertake in connection with the

1  FERC Refund Proceedings (as discussed in Section II.B.1. above) will affect the

2  "Scheduling Coordinator Credits" ("SC Credits") on the RMR owners' respective invoices,

3  thereby necessarily impacting the amount of the RMR Claims.  In particular, the RMR

4  Agreements provide that either"[a]ny amounts received by or due to Owner's Scheduling

5  Coordinator for Billable MWh and Ancillary Services Delivered in Nonmarket Transactions

6  shall be subtracted from the amount otherwise due under each RMR invoice" (*id.* § 9.1(e)),

7  or "[a]ll amounts received by or due to Owner's Scheduling Coordinator in connection with

8  Market Transactions and Nonmarket Transactions during the Billing Month ('Scheduling

9  Coordinator Revenues') shall be subtracted from the amount otherwise due under each RMR

10  Invoice" (*id.* § 9.1(f)).[12]

11          Thus, the amounts due to the Owner's Scheduling Coordinator are based on the

12  applicable MMCP for electricity and ancillary services.  Pursuant to FERC's March 26

13  Order discussed in Section II.B.1. above, the ISO's market reruns in connection with the

14  FERC Refund Proceedings are expected to result in changes to the applicable MMCP,

15  thereby changing the amount of the SC Credits on the RMR Owners' invoices, and,

16  consequently, the amount owed with respect to the RMR Claims.

17          Accordingly, PG&E submits that it is appropriate to extend the time for objecting

18  to the RMR Claims listed on Exhibit 2 attached hereto consistent with the requested

19  extension of time to object to ISO, PX and Generator Claims (*i.e.*, on the date designated by

20  FERC when payments are to be made on account of ISO, PX and Generator Claims pursuant

21  to an unstayed order in the FERC Refund Proceedings, or if no date is designated in such

22  order, 45 days after the issuance of such order, provided such order has not been stayed).

23          **2.    Claims For Imbalance Energy And Emergency Services**

24          Various claims have been filed against PG&E for "Imbalance Energy," "Energy

25  Sales to PG&E," "Emergency Services" and similar amounts (collectively "Imbalance

26

27          [12] Section 9.1(e) applies if the Unit operates under "Condition 1," while Section 9.1(f)
28  applies if the Unit operates under "Condition 2" pursuant to the RMR Agreement.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  Energy Claims") (as listed on Exhibit 2 attached hereto). Imbalance Energy refers to energy

2  sold to PG&E by power sellers, which PG&E in turn sold into the ISO's imbalance energy

3  market following the collapse of the PX and the markets it operated in mid-January 2001.

4  The Imbalance Energy Claims are based on energy prices that FERC has determined were

5  not just and reasonable in connection with the FERC Refund Proceedings, and has ruled that

6  the appropriate MMCP should be applied to such Imbalance Energy sales. Specifically, in

7  item 5.O. (included in the "Proposed Finding Summarily Adopted") of its March 26 Order,

8  FERC stated:

9  
> "The CAISO should mitigate capacity charges for ancillary services or
> other non-energy charges by applying the MMCP to sales of
10 > imbalance energy and ancillary service sales and their attendant charge
> types."

11 
12     Pursuant to FERC's March 26 Order, the ISO's market reruns in connection with

13  the FERC Refund Proceedings are expected to result in changes to the applicable MMCP,

14  thereby changing the amount owed with respect to the Imbalance Energy Claims.

15  Accordingly, PG&E submits that it is appropriate to extend the time for objecting to the

16  Imbalance Energy Claims listed on Exhibit 2 attached hereto consistent with the requested

17  extension of time to object to ISO, PX and Generator Claims (*i.e.*, on the date designated by

18  FERC when payments are to be made on account of ISO, PX and Generator Claims pursuant

19  to an unstayed order in the FERC Refund Proceedings, or if no date is designated in such

20  order, 45 days after the issuance of such order, provided such order has not been stayed).

21     **3.    QF Claims**

22     Certain "qualifying facilities" ("QFs") have filed claims against PG&E (listed on

23  Exhibit 2 attached hereto) including amounts owed under their respective Power Purchase

24  Agreements ("PPAs") which are calculated based on the "PX day-ahead hourly zonal market

25  clearing price" for a certain period of time (the "QF Claims Based On PX Pricing").

26     Pursuant to FERC's March 26 Order, the ISO and PX market reruns in

27  connection with the FERC Refund Proceedings are expected to result in changes to the

28  applicable MMCP, thereby changing the amount owed with respect to the QF Claims Based

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   On PX Pricing.  Specifically, under PG&E's PPA with Midway-Sunset Cogeneration

2   Company ("Midway"), PG&E was obligated to pay Midway under standard Short Run

3   Avoided Cost ("SRAC") pricing provisions.  During the period covered by this Claim,

4   Midway bid its output directly into the PX and received payment for its output from the PX

5   at the PX day-ahead zonal market clearing price.  To the extent that Midway's revenues

6   from the PX were less than the SRAC amount, PG&E was obligated to make up the

7   difference between the PX and SRAC amounts. To the extent that the PX amount exceeded

8   the SRAC amount, Midway was obligated to pay this excess to PG&E.  Midway's Claim

9   reflects only the SRAC amount for January 2001 since the PX has not yet paid out any

10  amounts for January 2001.  The precise PX price for this period is uncertain and will not be

11  finally determined until the FERC Refund Proceedings are resolved.

12          Georgia-Pacific Corporation ("Georgia Pacific") is a "Switcher QF."  Pursuant to

13  California Public Utilities Commission ("CPUC") Decision No. 99-11-025, issued on

14  November 4, 1999, the CPUC approved a PX-based SRAC energy price to be paid to those

15  QFs that voluntarily elected to receive that price pursuant to California Public Utilities Code

16  Section 390. That decision authorized QFs, upon appropriate notice to the affected utility, to

17  begin receiving the PX's day-ahead hourly zonal market clearing price, subject to later true-

18  up to ensure that "[p]ayment using the interim adopted day-ahead zonal market-clearing

19  price [] not under-compensate nor over-compensate the QFs, compared to the payments we

20  may ultimately adopt in the more comprehensive § 390 proceeding." For deliveries from

21  Switcher QFs, including Georgia Pacific, from January 1, 2001 through January 18, 2001,

22  PG&E capped energy payments at the FERC-mandated $150/MWh level.  Georgia Pacific's

23  Claim includes $300,031.31 in sums stemming from the difference between payments made

24  to it at the $150 per MW soft cap, and payments under the January 2001 posted day-ahead

25  zonal market clearing prices.  However, until the FERC Refund Proceedings are resolved,

26  the proper day-ahead zonal market clearing prices remain undetermined.

27          Thus, the Allowed Amount of the QF Claims Based On PX Pricing cannot be

28  determined until resolution of the FERC Refund Proceedings.  Accordingly, PG&E submits

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  that it is appropriate to deem such Claims as Disputed Claims for a period that is consistent

2  with the extension of time to object to ISO, PX and Generator Claims (*i.e.*, on the date

3  designated by FERC when payments are to be made on account of ISO, PX and Generator

4  Claims pursuant to an unstayed order in the FERC Refund Proceedings, or if no date is

5  designated in such order, 45 days after the issuance of such order, provided such order has

6  not been stayed).

**D.    Extension Applicable To Other Portions Of Claims With ISO, PX And Generator Claims Component**

9  The Debtor further requests that the extension of time to object to Claims

10  containing ISO, PX and Generator Claims apply to all components of such Claims, including

11  those which are not directly affected by the resolution of the FERC Refund Proceedings

12  (collectively, the "Other Component Claims"). Absent such relief, the Debtor may be forced

13  to prematurely file objections to and litigate the Other Component Claims, which generally

14  constitute a relatively minor portion of the applicable Claim, and could potentially be part of

15  a global resolution of such Claim upon determination of the Allowed amount of the ISO, PX

16  and Generator Claims portion following resolution of the FERC Refund Proceedings.

17  The Debtor submits that granting such relief will avoid piecemeal and potentially

18  needless litigation, which is in the best interests of all concerned parties, as well as the

19  Court.

**E.    Extension Of The Time To Object To Claims Subject To Pending Objections And Other Disputed Claims**

22  The Debtor has filed objections to hundreds of Claims in this case, many of

23  which remain pending. The Debtor also intends to file objections to numerous other claims

24  prior to the Effective Date, many of which are not expected to be resolved by the Effective

25  Date. Pursuant to this Court's Order (1) Authorizing Debtor To File Certain Preliminary

26  Omnibus Objections To Claims Without Prejudice To Right To File Subsequent Objections

27  Thereto And (2) Waiving Compliance With Federal Rules Of Civil Procedure 26(a) And (f)

28  In Certain Claims Objection Proceedings," entered herein on January 8, 2002 (Docket No.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   4114), to the extent that a claim is not fully resolved through the determination of the

2   Debtor's "omnibus" objection, the Debtor may file additional objections to such claim on

3   any grounds not included in the omnibus objection. In addition, based on, *inter alia*,

4   stipulations entered into with various creditors and certain Orders issued by this Court, there

5   are currently a number of Disputed Claims which are not expected to become Allowed by

6   the Effective Date, and which may be subject to additional objections.

7         Accordingly, the Debtor seeks an extension of the time for it to object to claims

8   which are subject to pending objections or otherwise constitute Disputed Claims as of the

9   Effective Date, until 30 days after the objections to such Claims are finally resolved or such

10  Claims no longer constitute Disputed Claims. The Debtor submits that this will conserve

11  estate resources by preventing the Debtor from being forced to make potentially unnecessary

12  objections which might otherwise be required if such objections or disputes were not

13  resolved prior to the Effective Date, which is the current deadline for objecting to Claims.

14  **F.    The Claims Subject To The Requested Extensions Should Be Deemed Disputed Claims Until The Applicable Objection Deadline Elapses**

15        In order to effectuate the relief requested herein, the Debtor further requests that

16  all of the Claims that are subject to the extensions sought herein be deemed Disputed Claims

17  under the Plan until expiration of the period for objecting to such Claims.[13] Absent such

18  relief, such Claims could become "Allowed" and accordingly entitled to payment under the

19  Plan, notwithstanding the Debtor's right to file objections to such Claims. In such event, the

20  Debtor would be placed in the difficult position of potentially having to recover payments

21  made to a creditor to the extent a subsequent objection is sustained.

22        The Debtor submits that, in view of the provisions for the accrual of interest on

23  Disputed Claims until such Claims are paid, the relevant claimants will not be prejudiced by

24  this additional relief.

25

26        [13] The Debtor notes that if the requested extension is granted, such treatment will be consistent with the treatment already provided under the Plan with respect to certain such

27  Claims, including the ISO, PX and Generator Claims. That is, the deadline for objecting to such Claims would be the date that such Claims become Allowed pursuant to the Plan.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

## III.

## CONCLUSION

For all of the foregoing reasons, PG&E respectfully requests that the Court make and enter its Order as follows:

1.    Granting the Motion.

2.    Extending the time for PG&E to object to the ISO, PX and Generator Claims listed on Exhibit 1 attached hereto until such Claims become Allowed pursuant to the Plan (*i.e.*, on the date designated by FERC when payments are to be made on account of ISO, PX and Generator Claims pursuant to an unstayed order in the FERC Refund Proceedings, or if no date is designated in such order, 45 days after the issuance of such order, provided such order has not been stayed).

3.    Extending the time for PG&E to object to the RMR Claims and the Imbalance Energy Claims listed on Exhibit 2 attached hereto until the date designated by FERC when payments are to be made on account of ISO, PX and Generator Claims pursuant to an unstayed order in the FERC Refund Proceedings, or if no date is designated in such order, 45 days after the issuance of such order, provided such order has not been stayed.

4.    Extending the time for PG&E to object to the Other Component Claims listed on Exhibit 3 attached hereto until the date designated by FERC when payments are to be made on account of ISO, PX and Generator Claims pursuant to an unstayed order in the FERC Refund Proceedings, or if no date is designated in such order, 45 days after the issuance of such order, provided such order has not been stayed.

5.    Extending the time for PG&E to object to the SCS Related Claims listed on Exhibit 2 attached hereto until 45 days after FERC's issuance of an order in the SC Tariff proceeding, provided such order has not been stayed.

6.    Extending the time for PG&E to object to the ISO COTP Claim (listed on Exhibit 2 attached hereto) until 45 days after FERC's issuance of an order in the COTP proceeding, provided such order has not been stayed.

7.    Extending the time for PG&E to object to the PX Chargeback Claims listed


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   on Exhibit 4 attached hereto until 45 days after FERC's issuance of an order regarding the

2   issues pending on rehearing in the PX chargeback proceeding, provided such order has not

3   been stayed.

4           8.     Extending the time for PG&E to object to claims which are subject to

5   pending objections or otherwise constitute Disputed Claims as of the Effective Date, until 30

6   days after the objections to such Claims are finally resolved or such Claims are no longer

7   Disputed.

8           9.     Providing that QF Claims Based On PX Pricing listed on Exhibit 2 attached

9   hereto shall constitute Disputed Claims until the date designated by FERC when payments

10  are to be made on account of ISO, PX and Generator Claims pursuant to an unstayed order

11  in the FERC Refund Proceedings, or if no date is designated in such order, 45 days after the

12  issuance of such order, provided such order has not been stayed.

13       10.    Providing that the foregoing extensions may be further extended by the

14  Court based upon a subsequent motion filed on or before the applicable deadline.

15       11.    Providing that all of the Claims that are subject to the foregoing extensions

16  shall be deemed Disputed Claims under the Plan until expiration of the applicable period for

17  objecting to such Claims.

18       12.    Granting such other and further relief as may be just and appropriate.

19

20  DATED: February 6, 2004

                                 Respectfully,

21                                   HOWARD, RICE, NEMEROVSKI, CANADY,
                                     FALK & RABKIN

22                                   A Professional Corporation

23

24                                 By: _____

25                                         GARY M. KAPLAN

26                                 Attorneys for Debtor and Debtor in Possession
                               PACIFIC GAS AND ELECTRIC COMPANY

WD 020604/1-1419913/120/1126820/v3

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation