**EXHIBIT M**

HENNIGAN, BENNETT & DORMAN LLP
J. Michael Hennigan      (SBN 59491)
Laura Lindgren           (SBN 82332)
Robert W. Mockler        (SBN 200200)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone  (213) 694-1200
hennigan@hbdlawyers.com
lindgrenl@hbdlawyers.com
mocklerr@hbdlawyers.com

Attorneys for Plaintiff
San Diego Gas & Electric Company

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| SAN DIEGO GAS & ELECTRIC COMPANY, a California corporation, | CASE NO. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR BREACH OF CONTRACT, ANTICIPATORY BREACH OF CONTRACT, UNJUST ENRICHMENT, MONEY HAD AND RECEIVED AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |
| ARIZONA ELECTRIC POWER COOPERATIVE, INC.; CITY OF ANAHEIM, CALIFORNIA; CITY OF AZUSA, CALIFORNIA; CITY OF BANNING, CALIFORNIA; CITY OF BURBANK, CALIFORNIA; CITY OF GLENDALE, CALIFORNIA; CITY OF LOS ANGELES, CALIFORNIA; LOS ANGELES DEPARTMENT OF WATER AND POWER; CITY OF PASADENA, CALIFORNIA; CITY OF RIVERSIDE, CALIFORNIA; CITY OF SANTA CLARA, CALIFORNIA; CITY OF SEATTLE, WASHINGTON; CITY OF VERNON, CALIFORNIA; EUGENE WATER AND ELECTRIC BOARD; MODESTO IRRIGATION DISTRICT; NORTHERN CALIFORNIA POWER AGENCY; PUBLIC UTILITY NO. 2 OF GRANT COUNTY; SACRAMENTO MUNICIPAL UTILITY DISTRICT; SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT; TURLOCK IRRIGATION DISTRICT, | |
| Defendants. | |

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

## DEMAND FOR JURY TRIAL

2   Plaintiff hereby demands a jury trial of all issues properly triable to a jury.

3

4   DATED:  March 21, 2006                HENNIGAN BENNETT & DORMAN LLP
                                          J. Michael Hennigan
5                                         Laura Lindgren
                                          Robert W. Mockler
6

7

8                                         By _____/s/ Laura Lindgren_____
                                                        Laura Lindgren
9

10                                        Attorneys for Plaintiff
                                          San Diego Gas & Electric Company
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF CONTRACT, ETC.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

# COMPLAINT

Plaintiff San Diego Gas & Electric Company files this Complaint and alleges as follows:

## I.    JURISDICTION AND VENUE

1.    Jurisdiction is proper because the claims arise under federal law. 28 U.S.C. § 1331. This action concerns Defendants' violations of obligations under the California Independent System Operator ("Cal ISO") and the California Power Exchange Company ("CalPX") Tariffs, filed with and regulated by the Federal Energy Regulatory Commission ("FERC") under authority of the Federal Power Act. The Tariffs are the equivalent of federal regulations, and claims for their violation present a federal question. The claims require resolution of a contested and substantial issue of federal law as the claims arise out of sales of electric energy in wholesale electric markets that are within the exclusive regulatory jurisdiction of FERC, and Plaintiff seeks recovery for Defendants' breaches of contractual obligations contained in Tariffs filed with and regulated by FERC. The Court has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367 because any such state law claim forms part of the same case or controversy as the federal claims.

2.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, in the County of Sacramento, California. Further, Defendants are subject to personal jurisdiction and are therefore deemed to reside in this district. 28 U.S.C. § 1391.

3.    Jurisdiction and venue are also proper because all parties agreed to be and are bound by the terms of the Cal ISO Tariff and CalPX Tariff. The Cal ISO Tariff includes a provision stating that actions arising out of or relating to the Tariff:

> shall be brought in any court of the State of California
> or any federal court of the United States of America
> located in the State of California. Market Participants

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1       irrevocably waive any objection that they may have

2       now or in the future to said courts in the State of

3       California as the proper and exclusive forum for any

4       legal action or proceeding arising under or related to

5       this ISO Tariff.

6   Cal ISO Tariff, § 20.7.[1]  The CalPX Tariff similarly provides that any legal action or

7   proceeding arising under or relating to the Tariff "shall be brought either in a court of

8   the State of California [or] a federal court of the United States of America located in

9   the State of California."  CalPX Tariff § 19.6.

10      4.      Personal jurisdiction is proper because each of the Defendants made

11  sales of electric power in this district, because this action arises out of Defendants'

12  sales of electric power within this district and because Defendants consented to the

13  jurisdiction of this Court as stated above.

14  **II.    PARTIES**

15      5.      Plaintiff San Diego Gas & Electric Company ("SDG&E"), a California

16  corporation, is a regulated public utility under California and federal law, which

17  provides natural gas and electric service to customers in San Diego and southern

18  Orange Counties.  SDG&E's principal place of business is San Diego, California.

19      6.      Defendant Arizona Electric Power Cooperative, Inc. ("AEPCO") is a

20  rural electric generation and transmission cooperative incorporated in Arizona with its

21  principal place of business in Benson, Arizona.  AEPCO is registered to do business

22  in California.

23      7.      Defendant City of Anaheim, California is a California city.

24      8.      Defendant City of Azusa, California is a California city.

25      9.      Defendant City of Banning, California is a California city.

26  _____

27  [1] The complete current version of the Tariff is a publicly filed document available at
    http://www.caiso.com/1791/1791a8ff1c7d0.html, and is incorporated herein by
28  reference.

1    10.    Defendant City of Burbank, California is a California city.

2    11.    Defendant City of Glendale, California is a California city.

3    12.    Defendant City of Los Angeles, California is a California city.

4    13.    Defendant Los Angeles Department of Water and Power is a municipal

5    utility and a proprietary department of Defendant City of Los Angeles.

6    14.    Defendant City of Pasadena, California is a California city.

7    15.    Defendant City of Riverside, California is a California city.

8    16.    Defendant City of Santa Clara, California is a California city.

9    17.    Defendant City of Seattle, Washington is a city in the State of

10   Washington.

11   18.    Defendant City of Vernon, California is a California city.

12   19.    Defendant Eugene Water and Electric Board is a municipal utility

13   located in Eugene, Oregon.

14   20.    Defendant Modesto Irrigation District is a California irrigation district

15   located in Modesto, California.

16   21.    Defendant Northern California Power Agency is a California agency

17   located in Roseville, California.

18   22.    Defendant Public Utility No. 2 of Grant County ("Grant County PUD")

19   is a municipal electric utility located in Ephrate, Washington.

20   23.    Defendant Sacramento Municipal Utility District is a municipal electric

21   utility located in Sacramento, California.

22   24.    Defendant Salt River Project Agricultural Improvement and Power

23   District ("Salt River Project") is an agricultural improvement district located in the

24   State of Arizona.

25   25.    Defendant Turlock Irrigation District is a California irrigation district

26   located in Turlock, California.

27   **III.    SUMMARY OF CASE**

28   26.    This case results from Defendants' refusal to return overcharges to

-3-

1   SDG&E for sales of electric energy from May 1, 2000 through June 20, 2001, in

2   wholesale markets operated by Cal ISO and CalPX and regulated by FERC.  FERC,

3   which has jurisdiction over rates for wholesale power sales, has determined that the

4   markets operated by the Cal ISO and CalPX during this period were dysfunctional

5   and flawed, resulting in rates that were unjust, unreasonable and unlawful by all

6   sellers.  Pursuant to its authority under the Federal Power Act, FERC ordered the rates

7   for sales from October 2, 2000 through June 20, 2001 adjusted and reduced.  As a

8   result of FERC's modification of the rates under the Tariffs for all sellers into the Cal

9   ISO and CalPX markets, Defendants, who agreed to be bound by the Tariffs, are now

10  contractually obligated to reimburse SDG&E for the difference between the rates

11  Defendants charged and the lawful, corrected rates established by FERC.

12      27.    SDG&E is also entitled to a declaration that Defendants are obligated to

13  pay to SDG&E the difference between rates charged by Defendants and the lawful

14  rates as ultimately determined by FERC (i) for sales during the period from May 1,

15  2000 through October 1, 2000; and (ii) for certain non-spot sales during the period

16  from October 2, 2000 through June 20, 2001.

17      28.    Following its determination of the lawful rates for spot market sales from

18  October 2, 2000 through June 20, 2001, FERC ordered sellers of electricity, including

19  both public utilities and non-public utilities (i.e., governmental entities), to refund the

20  amounts charged in excess of the just and reasonable rates.  Defendants, however,

21  objected to FERC's refund order, claiming that FERC does not have jurisdiction to

22  require governmental entities to pay refunds.  The Ninth Circuit, while affirming

23  FERC's jurisdiction to set and adjust the rates under the Cal ISO and CalPX Tariffs,

24  agreed that FERC lacked jurisdiction to order governmental utilities such as

25  Defendants to refund overcharges.  The Ninth Circuit noted that SDG&E and other

26  parties may pursue contractual claims based on FERC's orders and adjusted prices.

27      29.    SDG&E thereafter submitted claims to each Defendant seeking recovery

28  of amounts paid in excess of the adjusted rates established or to be established by

1  FERC. Each Defendant subsequently rejected (or, under applicable law, is deemed to

2  have rejected) those claims, and this action followed to enforce Defendants'

3  obligations to return the overcharges.

4  **IV.  FACTUAL BACKGROUND**

5      **A.    Cal ISO and CalPX**

6          30.    In 1996, California enacted Assembly Bill 1890 ("AB 1890") to

7  deregulate and restructure its electricity markets. As part of deregulation, California

8  created two non-profit public benefit corporations to manage the electricity market,

9  the Cal ISO and the CalPX. Both are public utilities subject to the exclusive

10  regulatory jurisdiction of FERC under the Federal Power Act. All sales of power and

11  ancillary services[2] in the Cal ISO and CalPX markets were required to be made

12  pursuant to Tariffs filed with and approved by FERC, which prescribed the terms,

13  conditions and formulas to establish rates for all transactions in those markets.

14  Plaintiff, and the other investor owned utilities subject to AB 1890, were required to

15  meet all of their customers' needs by making purchases in the Cal ISO and CalPX

16  markets.

17          31.    The Cal ISO and CalPX Tariffs are the equivalent of federal regulations,

18  and also establish contractual obligations among the market participants, prescribing

19  the rules, requirements and pricing formulas for all transactions in the Cal ISO and

20  CalPX markets. FERC has the authority to determine and set rates under those

21  Tariffs.

22          32.    Under the terms of the Cal ISO and CalPX Tariffs, the real-time markets

23  for electric energy sales were operated by Cal ISO and CalPX generally on the basis

24  of a "single-price auction" in which, for each hour, all buyers pay, and all sellers are

25  paid, the same price, the "market clearing price." The market clearing price is set as

26  _____

27  [2] Ancillary services are services such as reserve generating capacity that are necessary
    to maintain the reliability of the transmission of electricity from generators to
28  customers.

1    the bid by the highest-bidding seller whose electric energy was needed to "clear the

2    market" or balance supply and demand. In other words, the Cal ISO or CalPX stacks

3    the bids to sell from lowest to highest and accepts bids from lowest to highest until the

4    demand is met; the price of the last bid accepted is set as the market clearing price.

5    As a result, all of the successful bidders to sell in a particular hour in the spot market,

6    including Defendants, received the same price for their sales, even if a seller had

7    offered to sell at a lower price.[3] Thus, any flaws or dysfunctions that inflated the

8    market-clearing price affected the price received by each and every seller in the

9    market, including Defendants.

10         33.    Cal ISO and CalPX acted as clearinghouses for sales of electric energy.

11    Each month during the relevant time period, Cal ISO and CalPX calculated the total

12    amount of electric power supplied and purchased by each market participant,

13    including Defendants. Cal ISO and CalPX then issued invoices indicating the amount

14    due to or from each market participant based on the market clearing price for each

15    hour.

16         34.    Under their respective Tariffs, the Cal ISO and CalPX pass through

17    liability for market shortfalls to market participants, including SDG&E, that bought or

18    sold power in the markets during the period for which there is a shortfall of funds. A

19    market shortfall may result if one market participant defaults on a payment, causing a

20    shortage of total funds collected by either the Cal ISO or CalPX for distribution to the

21    other market participants. An entity that fails to pay its bill becomes responsible for a

22    market shortfall, and is deemed an "ISO Debtor" or a "PX Debtor." An entity that is

23    owed money because of the market shortfall is deemed an "ISO Creditor" or "PX

24    Creditor," with the right to enforce its contractual right to payment against an ISO or

25

26    _____

27    [3] By FERC order, CalPX auctions discontinued on January 31, 2001. *See* CalPX's Notice of Suspension of Trading, FERC Docket No. EL00-95-000, January 30, 2001.

28    Cal ISO continues to manage the grid and operate auctions for real time electric energy.

1    PX Debtor.

2        35.    The Cal ISO and the CalPX operated as revenue-neutral clearinghouses,

3    and were not themselves counterparties to any market transactions.  SDG&E, as a

4    market purchaser, is a counterparty to sales by Defendants in the Cal ISO and CalPX

5    markets and has standing to enforce Defendants' contractual obligations under the Cal

6    ISO and CalPX Tariffs and related agreements.

7        36.    The Cal ISO and CalPX Tariffs provided the only terms and conditions

8    on which transactions in the Cal ISO and CalPX markets could lawfully be conducted.

9    The Tariffs required each participant in the Cal ISO and CalPX markets to comply

10   with all rules, conditions and provisions of the Cal ISO and CalPX Tariffs.  By selling

11   in those markets, all market participants, including Defendants, were charged with

12   knowledge and bound by the terms of the Cal ISO and CalPX Tariffs.  Further, in

13   order to sell electricity through the Cal ISO, generators were required to agree in

14   writing "to comply with all applicable provisions of this ISO Tariff as they may be

15   amended from time to time."  Cal ISO Tariff, § 5.[4]

16       37.    The Cal ISO Tariff contemplates that market participants would execute

17   a Participating Generator Agreement and/or a Scheduling Coordinator Agreement

18   with the Cal ISO.  Pursuant to the Participating Generator Agreements, a party agreed

19   in writing "that it will comply with the applicable provisions of the ISO Tariff" and

20   "fully comply with all of its obligations under . . . the ISO Tariff."  The Participating

21   Generator Agreement further provides that it "shall be subject to the ISO Tariff which

22   shall be deemed to be incorporated herein."  Similarly, parties to the Scheduling

23   Coordinator Agreement agreed to be bound by the Cal ISO Tariff, which was

24   incorporated into the Agreement.  Scheduling Coordinator Agreement, §§ 2, 8.

25       38.    The CalPX Tariff contemplates that market participants would execute a

26

27   _____

28   [4] By the terms of the Cal ISO Tariff, any amendment to the Tariff "shall be effective
     upon the date it is permitted to become effective by FERC."  Cal ISO Tariff, § 19.

1  Participation Agreement with CalPX, under which participants agreed that:

2  • "[T]he PX Tariff governs all aspects of trading in and administration of
3  the PX Market";

4  • They would "abide by, and will perform all of the obligations under the
5  "PX Tariff"; and

6  • Their "status as a PX Participant is at all times subject to the PX Tariff."
7  Form of Participation Agreement to the PX Tariff, § II.

8  39.   Thus, by electing to sell power in the Cal ISO and CalPX markets, and/or
9  by executing the agreements required by the Tariffs, Defendants agreed to be bound
10 by the provisions of the Cal ISO and CalPX Tariffs and FERC's regulation and
11 modification thereof, including FERC's orders adjusting the rates sellers could
12 lawfully charge for sales in those markets.  These obligations may be enforced by
13 market participants against one another.  SDG&E is a direct party to and an expressly
14 intended beneficiary of these contractual obligations and is entitled to seek relief from
15 Defendants.

16 40.   If the price charged by sellers was found by FERC to be unjust and
17 unreasonable or otherwise unlawful, all market sellers were contractually bound to
18 refund or credit to purchasers the difference between the price charged and the lawful,
19 corrected rate determined by FERC.  Thus, all market participants were contractually
20 bound to honor the terms and conditions of the Tariffs, as revised by FERC, and these
21 terms and conditions can be contractually enforced by the market participants against
22 one another.  Defendants' obligation to refund or credit their unlawful overcharges is
23 the same obligation owed by all sellers in the Cal ISO and CalPX markets, although
24 SDG&E's obligations for their sales of electric power and other services in the Cal
25 ISO and CalPX markets remain under FERC's exclusive jurisdiction.

26 **B.   FERC's Adjustment of Allowable Rates**

27 41.   In May 2000, prices for electricity in the Cal ISO and CalPX markets
28 rose dramatically.  By summer of 2000, spot prices for electricity were several times

1   what they had been in 1999. From May to August 2000, the Cal ISO declared system

2   emergencies 39 times. The skyrocketing costs of electricity took a huge toll on

3   California businesses and individuals. The first ratepayer impacts were felt in San

4   Diego, because SDG&E rates in the summer of 2000 provided for immediate pass-

5   through of the increased wholesale power costs to ratepayers.

6       42.   On August 2, 2000, SDG&E filed a complaint with FERC against all

7   sellers of energy and ancillary services in California into the Cal ISO and CalPX

8   markets. In response, FERC initiated proceedings to:

9              investigate whether the tariffs and institutional

10            structures and bylaws of the California ISO and PX are

11            adversely affecting the efficient operation of

12            competitive wholesale power markets in California.

13   August 23, 2000 Order, 92 FERC P61,172, at 61,603.[5] All of the Defendants here had

14   notice of and an opportunity to participate in the FERC proceedings. Indeed, each of

15   the Defendants was a party to or intervenor in the FERC proceedings. *See* December

16   19, 2001 Order, 97 FERC P61,275 at 62,257-60 (listing all parties to the proceedings).

17       43.   FERC conducted an investigation and, in a series of orders, ruled that

18   sellers of electric energy in the Cal ISO and CalPX markets had sold power at unjust,

19   unreasonable and unlawful rates. FERC ordered changes to the Cal ISO and CalPX

20   Tariffs, and adjusted the rates for spot transactions for sales of electric energy during

21   the period from October 2, 2000 to June 20, 2001 for all market participants,

22   including Defendants.

23       44.   By order of November 1, 2000, FERC, noting "the seriousness of market

24   dysfunctions and recent pricing abnormalities in California," proposed "specific

25

26

---

27   [5] All of the orders in the SDG&E FERC proceedings are titled *San Diego Gas & Electric Company v. Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange.*

28   For convenience, this title has been omitted; the orders are referred to by date.

1   remedies to address dysfunctions in California's wholesale bulk power markets and to

2   ensure just and reasonable wholesale power rates by public utility sellers in

3   California." November 1, 2000 Order, 93 FERC P61,121, at 61,349. FERC found

4   that the California market structure and rates were seriously "flawed" and that the

5   rates for electricity in the California market were unjust and unreasonable. *Id.* at

6   61,370. FERC explained that the structure of the single-price auction managed by Cal

7   ISO and CalPX contributed to high prices:

8               In times of adequate supply the single price auction

9               disciplines prices by encouraging suppliers to bid their

10              marginal costs so that they can be selected for dispatch

11              and be paid the clearing price. However, in times of

12              scarcity the single price auction can exacerbate the

13              effect of supply shortages by allowing sellers who have

14              small market shares to set the clearing price. Not only

15              is the seller transformed into a price setter rather than a

16              price taker, but the resulting price is ascribed to the

17              entire market.

18  *Id.* at 61,365.

19      45.    On July 25, 2001, FERC "establish[ed] the scope of and methodology for

20  calculating refunds to transactions in the spot markets operated by" Cal ISO and

21  CalPX. July 25, 2001 Order, 96 FERC P61,120, at 61,499. In place of the auction

22  prices, which had resulted in unlawful rates, FERC established corrected rates, known

23  as the Mitigated Market Clearing Price ("MMCP"). FERC ordered the rates under the

24  Cal ISO and CalPX Tariffs modified to reflect the MMCP for spot sales during the

25  period from October 2, 2000 through June 20, 2001 (the "Refund Period"), and

26  ordered Cal ISO and CalPX to recalculate charges for electric energy during that

27  period using the adjusted rates. Pursuant to FERC's orders, Cal ISO and CalPX have

28  recalculated the accounts of all sellers and buyers in the Cal ISO and CalPX markets

1    to reflect the corrected rates for the Refund Period.

2        46.    In order to maintain the reliability of the State's electric grid, the ISO

3    was sometimes required to obtain emergency electric power, known as "out-of-

4    market" or "OOM" electric power, to meet the State's demand for electric power.

5    The Cal ISO procured OOM electric power at whatever price it was offered, even if

6    that price exceeded its price caps, and then charged market participants, including

7    Plaintiff for these products and services.  OOM purchase prices are included in the

8    mitigated prices calculated by FERC for the Refund Period.

9        47.    Although FERC found that the markets had been flawed and

10    dysfunctional prior to October 2, 2000, it ruled that it did not have jurisdiction to

11    order refunds for periods prior to that date, from May 1 through October 1, 2000 (the

12    "Summer Period").  *Id.* at 61,499.

13        48.    FERC also refused to correct the rates for certain non-spot sales, *i.e.*

14    "energy exchange" transactions (in which blocks of electric power were sold to the

15    ISO for payment in-kind) and sales to Cal ISO or CalPX of greater than twenty-four

16    hours ("multi-day" sales under FERC's definition) made during the Refund Period.

17    *Id.*; March 26, 2003 Order, 102 FERC P61,317 at 62,083-84, 62,075-76; October 16,

18    2003 Order, 105 FERC P61,066, at 61,365-66.  SDG&E has appealed FERC's

19    decisions to limit refunds to the Refund Period and to exclude certain non-spot

20    transactions, and the appeal is currently pending before the Ninth Circuit.

21        49.    FERC made clear that sales by all market participants would be subject

22    to the refund order, including "sales by public and non-public utilities into these

23    markets."  July 25, 2001 Order, 96 FERC P61,120, at 61,499.  FERC explained that

24    both "[n]on-public utility sellers [i.e., governmental entities] as well as public utility

25    sellers of electric energy in those California markets contributed to and benefited from

26    the dysfunctions that offered the possibilities for the market abuse under certain

27    conditions."  *Id.* at 61,511.  FERC acknowledged that "non-public utility sellers . . .

28    are not subject to our direct jurisdiction under FPA section 206."  *Id.* at 61,511-12.

1    But FERC concluded that refund liability was nevertheless appropriate:

2                    Under the specific circumstances presented, . . . such

3                    jurisdiction may properly be asserted over non-public

4                    utility sellers of energy.  Under the single price auction

5                    mechanism that operated in the centralized ISO and

6                    [CalPX] spot markets, all sellers agreed to accept the

7                    same clearing price for any given sale. . . . All sellers

8                    into those markets were on notice that those clearing

9                    prices, and the market rules that set the clearing prices,

10                   were subject to change if they were found to be unjust

11                   and unreasonable.

12   *Id.* at 61,512; *see also* December 19, 2001 Order, 97 FERC P61,275 (ruling on

13   petitions for rehearing filed by several parties).

14       50.    Several of the Defendants, which acted as buyers as well as sellers of

15   power in the Cal ISO and CalPX markets during the relevant time periods have

16   claimed refunds pursuant to FERC's rulings.

17       51.    The Defendants are contractually and legally obligated to charge no more

18   than the rates established by FERC under the Cal ISO and CalPX Tariffs.  Because

19   FERC's orders corrected the Tariff terms controlling pricing, for the Refund Period,

20   Defendants were obligated to charge only those rates established by FERC, and must

21   return to Plaintiff any amounts charged in excess of the corrected lawful rates

22   established by FERC.

23       52.    Further, the rates charged by Defendants for the Summer Period, from

24   May 1 through October 1, 2000, and the rates charged in certain non-spot sales during

25   the Refund Period, *i.e.* "energy exchange" and "multi-day" transactions, were

26   comparable to and the result of the same flaws and dysfunctions as the rates that

27   prevailed in the Cal ISO and CalPX markets that were the subject of FERC's refund

28   order.  If FERC grants relief for Summer Period sales and/or for energy exchange and

COMPLAINT FOR BREACH OF CONTRACT, ETC.

1    multi-day transactions, Plaintiff will be entitled to recover from Defendants the

2    difference between the rates charged by Defendants and the lawful rates as ultimately

3    determined by FERC for such transactions.

4          **C.**    **The Ninth Circuit Proceedings**

5         53.    Defendants appealed FERC's orders to the Ninth Circuit, arguing that

6    FERC did not have jurisdiction to order governmental entities to pay refunds. On

7    September 6, 2005, the Ninth Circuit issued an opinion ruling that, although FERC

8    had jurisdiction to establish the appropriate rates for sales into the Cal ISO and CalPX

9    markets, FERC did not have jurisdiction to order "non-public" utilities to pay refunds.

10    *Bonneville Power Admin. v. FERC*, 422 F.3d 908 (2005).[6] The Court explained that

11    FERC had done "more than simply reset the market-clearing price for power in the

12    FERC-jurisdictional ISO and CalPX markets." *Id.* at 919. Rather, FERC ordered

13    non-public utilities to pay refunds, which, the Ninth Circuit ruled, it did not have the

14    power to do under the Federal Power Act. The Court explained, "the remedy, if any,

15    may rest in a contract claim, not a refund action. Such an approach is not novel . . . ."

16    *Id.* at 925 (citing *Alliant Energy v. Neb. Pub. Power Dist.*, 347 F.3d 1046, at 1050-51

17    (8th Cir. 2003)). The Ninth Circuit quoted with approval the Eighth Circuit's holding

18    in *Alliant Energy* that "when a contract provides that its terms are subject to a

19    regulatory body, all parties to that contract are bound by the actions of the regulatory

20    body . . . . As a result, we are not enforcing the FERC order; instead, we are

21    enforcing an agreement, which [the non-public utility] freely entered." *Id.* at 926

22    (quoting *Alliant Energy*, 347 F.3d at 1050).

23         54.    On October 17, 2005, the Ninth Circuit granted the motion by SDG&E

24    and others to extend the time to seek rehearing and/or rehearing en banc of the Ninth

25    Circuit's opinion, and to delay issuance of the mandate. Under the order, the parties

26

27    _____

28    [6] All of the Defendants, as governmental entities, are considered "non-public utilities" under the Federal Power Act. *See Bonneville*, 422 F.3d at 910; 16 U.S.C. § 824(f).

1   will have until 45 days after a ruling in *Public Utils. Comm'n of Cal. v. FERC*, Case

2   No. 01-71051, et al., to seek rehearing.  Thus, the mandate has not yet issued in the

3   *Bonneville* case, and the Ninth Circuit's opinion is not yet final.

4       55.    SDG&E and others have petitioned the Ninth Circuit for review of FERC

5   orders on the ground that, inter alia, FERC was required to correct the rates for sales

6   made during the Summer Period.  That petition for review has been briefed and

7   argued and is now pending for decision in the Ninth Circuit.  SDG&E and others have

8   also sought review of FERC's orders on the ground that FERC was required to correct

9   the rates for energy exchange transactions and multi-day sales.  These petitions are

10  pending in the Ninth Circuit in Case No. 01-71051.

11      **D.     Presentment of Claims**

12      56.    On December 2, 2005, SDG&E complied with state claims presentment

13  statutes by serving copies of written claims on all California defendants and on the

14  Salt River Project, providing them with notice of SDG&E's present claims for relief.

15  Cal. Gov't Code § 910; Ariz. Rev. Stat. 12-821.01.  On the same date, the SDG&E

16  also served claims on Eugene Water & Electric Board, the City of Seattle, and Grant

17  County PUD, in light of ambiguity as to whether the California Parties were required

18  to present these claims under Oregon and Washington law.  Ore. Rev. Stat. § 30.275;

19  Rev. Code. Wash. 4.96.010-020.  The Arizona claims presentment statutes do not

20  apply to RUS-financed cooperatives; consequently, no notice of claim was presented

21  to AEPCO.

22      57.    The waiting periods prescribed by the applicable claims presentment

23  statutes have elapsed.  The Cities of Anaheim, Azusa, Banning, Burbank, Glendale,

24  Pasadena, Riverside, Santa Clara, Los Angeles, Seattle and Vernon, and Los Angeles

25  Department of Water and Power, Modesto Irrigation District, Turlock Irrigation

26  District, Northern California Power Agency, and Sacramento Municipal Utility

27  District have denied SDG&E's claims.  SDG&E's claims presented to Grant County

28  PUD and Salt River Project are deemed denied by operation of law because the

1  statutory period for a decision by these entities has expired.  SDG&E's claims against

2  Eugene Water & Electric Board remain unsatisfied, and Oregon law does not require

3  any formal action by Eugene Water & Electric Board prior to filing suit.

4      58.    FERC was the exclusive forum for SDG&E's refund claims, including

5  claims for refunds from Defendants.  No claim accrued and no limitations period

6  commenced to run until, at the earliest, September 6, 2005, when the Ninth Circuit in

7  *Bonneville*, reversing FERC's holdings, ruled, for the first time, that FERC did not

8  have jurisdiction to order Defendants to pay refunds.

9      59.    Alternatively, to the extent that any limitations period began to run

10 before the issuance of the *Bonneville* opinion, the limitations period was tolled from

11 August 2, 2000, when SDG&E initiated refund proceedings with FERC, through at

12 least the time the Ninth Circuit issued its decision in *Bonneville* on September 6,

13 2005.

14     60.    This action is based on the same facts that were at issue in the FERC

15 proceedings and in the various Ninth Circuit appeals from those proceedings:

16 Defendants' receipt and retention of rates for sales of wholesale electric power in the

17 Cal ISO and CalPX markets that are unlawful and unauthorized under the Cal ISO

18 and CalPX Tariffs.  SDG&E acted promptly, reasonably, and in good faith in seeking

19 relief from FERC against all sellers in the California markets, including Defendants.

20 Defendants were parties to the FERC proceedings, and had notice throughout the

21 FERC proceedings of the need to gather and preserve relevant evidence.  In fact,

22 Defendants actively participated in the FERC proceedings.  SDG&E acted

23 expeditiously to present claims to Defendants and to commence this action following

24 the *Bonneville* decision.

25 **V.    CLAIMS FOR RELIEF**

26                    **FIRST CLAIM FOR RELIEF**

27            **(For Breach of Contract Against All Defendants)**

28     61.    Plaintiff incorporates by reference and re-alleges each and every

1  allegation of prior paragraphs as if fully set forth herein.

2      62.     Plaintiff is a party to and intended beneficiary of the Cal ISO and CalPX

3  Tariffs. Defendants are parties to and agreed to abide by the Cal ISO and CalPX

4  Tariffs in connection with the sale of power on the wholesale market through Cal ISO

5  and CalPX by participating in the Cal ISO and CalPX markets, and by executing

6  written agreements stating that they would be so bound, including Participating

7  Generator Agreements, Scheduling Coordinator Agreements and Participation

8  Agreements, among others ("Agreements"). Defendants understood and agreed that

9  the Tariffs were subject to regulation by FERC, including FERC decisions to adjust

10  the terms of the Tariffs.

11      63.     By voluntarily choosing to sell electric power at wholesale in the Cal

12  ISO and CalPX markets, and/or by executing the Agreements, PX Defendants

13  contractually agreed to be bound by the provisions of the Cal ISO and CalPX Tariffs,

14  which incorporate FERC's power to correct prices that it determines to be unjust,

15  unreasonable or unlawful.

16      64.     Pursuant to its authority under the Federal Power Act, FERC revised the

17  Tariffs and corrected the prices that market participants were entitled to receive for

18  their sales during the Refund Period by adopting the MMCP. Upon FERC's

19  correction of the rates charged and received by sellers, including Defendants, in the

20  Cal ISO and CalPX markets, the corrected rates became the only lawful and

21  authorized rates for those sales under the applicable tariffs.

22      65.     Plaintiff fulfilled all of its obligations under the Cal ISO and CalPX

23  Tariffs.

24      66.     Defendants are contractually obligated to reimburse SDG&E for the

25  difference between the rates Defendants initially charged for their sales in the Cal ISO

26  and CalPX markets during the Refund Period and the MMCP determined by FERC.

27  Defendants breached their contractual obligations under the Tariffs by failing to

28  return to Plaintiff amounts paid by Plaintiff in excess of the rates set by FERC for the

1  Refund Period.  As a result, Plaintiff incurred losses in an amount to be proven at

2  trial.

3      67.    As stated above, Plaintiff has complied with the applicable government

4  claim presentation requirements.

5      68.    Plaintiff has filed this Complaint within the applicable statute of

6  limitations or, in the alternative, that statute was tolled and/or equitably tolled during

7  the pendency of the FERC refund and related proceedings, including the pendency of

8  the *Bonneville* case, making this action timely.

9                    **SECOND CLAIM FOR RELIEF**

10                    **(For Anticipatory Breach)**

11     69.    Plaintiff incorporates by reference and re-alleges each and every

12  allegation of prior paragraphs as if fully set forth herein.

13     70.    If it is determined that the date by which Defendants would be obligated

14  under the applicable contracts to refund to Plaintiff the amounts they received in

15  excess of the lawful rates set by FERC for the Refund Period has not yet occurred,

16  Defendants have nonetheless become obligated to make such refunds immediately,

17  and in advance of such date, because they have wrongfully denied and repudiated any

18  legal duty to make such payments.  Defendants have repudiated, in FERC

19  proceedings, in appeals from FERC orders, and by their denial of Defendants' duly-

20  presented claims, their contractual obligations to Plaintiff, including their obligation

21  to comply with the revised Tariff provisions by refunding their unlawful overcharges.

22     71.    Defendants' conduct constitutes an anticipatory breach of their

23  contractual obligations to Plaintiff, entitling Plaintiff to judgment against each of the

24  Defendants for all amounts they received in excess of the lawful rates for sales during

25  the Refund Period, plus associated interest.

26     72.    As stated above, Plaintiff has complied with the applicable government

27  claim presentation requirements.

28     73.    Plaintiff has filed this Complaint within the applicable statute of

1   limitations or, in the alternative, that statute was tolled and/or equitably tolled during

2   the pendency of the FERC refund and related proceedings, including the pendency of

3   the *Bonneville* case, making this action timely.

4                           **THIRD CLAIM FOR RELIEF**

5                 **(For Unjust Enrichment Against All Defendants)**

6           74.    Plaintiff incorporates by reference and re-alleges each and every

7   allegation of prior paragraphs as if fully set forth herein.

8           75.    Defendants were enriched by receiving payment from Plaintiff in excess

9   of the lawful rates set by FERC under the Cal ISO and CalPX Tariffs for power sold

10  in the Cal ISO and CalPX markets.  By accepting and retaining prices that are now

11  unlawful under the Cal ISO and CalPX Tariffs, and by denying their obligations to

12  refund or credit overcharges to buyers in the Cal ISO and CalPX markets, Defendants

13  have unjustly enriched themselves at the expense of market purchasers, including

14  SDG&E and ultimately, SDG&E's customers, who paid inflated and unlawful prices

15  for electric power.  Defendants' retention of those unlawful prices also violates their

16  contractual duty to abide by the provisions of the Cal ISO and CalPx Tariffs.

17          76.    Further, Defendants received these overcharges under circumstances that

18  make it unjust for Defendants to retain the benefits they received.  For transactions in

19  which they were buyers, certain Defendants are seeking refunds from other sellers of

20  prices they paid in excess of the lawful, corrected rates.  By contrast, for transactions

21  in which they were sellers, certain Defendants deny any obligation to pay refunds, and

22  seek to retain the windfall benefits of the original, unlawful prices they charged other

23  market participants.

24          77.    Accordingly, Defendants have been unjustly enriched and are obligated

25  to return the overcharged amounts to Plaintiff.

26          78.    As stated above, Plaintiff has complied with the applicable government

27  claim presentation requirements.

28          79.    Plaintiff has filed this Complaint within the applicable statute of

COMPLAINT FOR BREACH OF CONTRACT, ETC.

1   limitations or, in the alternative, that statute was tolled and/or equitably tolled during

2   the pendency of the FERC refund and related proceedings, including the pendency of

3   the *Bonneville* case, making this action timely.

### FOURTH CLAIM FOR RELIEF

### (Common Count For Money Had and Received Against All Defendants)

80.     Plaintiff incorporates by reference and re-alleges each and every
allegation of prior paragraphs as if fully set forth herein.

81.     By accepting or retaining prices during the Refund Period that are
unlawful under the Cal ISO and CalPX Tariffs, Defendants have accepted benefits of
unlawful profits that rightfully belong to purchasers in the Cal ISO and CalPX
markets, including SDG&E. Any overcharges accepted or retained by Defendants
from SDG&E rightfully belong to and should be returned to SDG&E.

82.     Accordingly, Defendants are obligated to return the overcharges in
excess of the lawful rates to Plaintiff.

83.     As stated above, Plaintiff has complied with the applicable government
claim presentation requirements.

84.     Plaintiff has filed this Complaint within the applicable statute of
limitations or, in the alternative, that statute was tolled and/or equitably tolled during
the pendency of the FERC refund and related proceedings, including the pendency of
the *Bonneville* case, making this action timely.

### FIFTH CLAIM FOR RELIEF

### (For Declaratory Relief Concerning Sales During The Refund Period Against All Defendants)

85.     Plaintiff incorporates by reference and re-alleges each and every
allegation of prior paragraphs as if fully set forth herein.

86.     An actual controversy exists between Plaintiff and Defendants
concerning Defendants' obligation to pay to Plaintiff amounts paid by Plaintiff to
Defendants in excess of the rates set by FERC under the Cal ISO and CalPX Tariffs

1   for power purchased in the Cal ISO and CalPX markets from October 2, 2000 through

2   June 20, 2001. Defendants deny any such obligation.

3       87.   Plaintiff seeks a declaration that Defendants are obligated to return to

4   Plaintiff amounts charged in excess of the rates set by FERC for the Refund Period.

5       88.   As stated above, Plaintiff has complied with the applicable government

6   claim presentation requirements.

7       89.   Plaintiff has filed this Complaint within the applicable statute of

8   limitations or, in the alternative, that statute was tolled and/or equitably tolled during

9   the pendency of the FERC refund and related proceedings, including the pendency of

10  the *Bonneville* case, making this action timely.

11                          **SIXTH CLAIM FOR RELIEF**

12  **(For Declaratory Relief Concerning Sales During the Summer Period Against All**

13                                  **Defendants)**

14      90.   Plaintiff incorporates by reference and re-alleges each and every

15  allegation of prior paragraphs as if fully set forth herein.

16      91.   An actual controversy exists between Plaintiff and Defendants

17  concerning Defendants' obligation to pay to Plaintiff amounts paid by Plaintiff to

18  Defendants for power purchased in the Cal ISO and CalPX markets from May 1, 2000

19  through October 1, 2000.  Defendants deny any such obligation.

20      92.   The rates charged by Defendants during the Summer Period were

21  comparable to, and a result of, the same market flaws and dysfunction, as  the rates

22  that prevailed in the Cal ISO and CalPX markets during the Refund Period.

23      93.   Plaintiff seeks a declaration that, if FERC finds that the rates charged by

24  sellers during the Summer Period were unlawful, Defendants will be obligated to

25  return to Plaintiff the difference between the rates charged by Defendants and the

26  lawful rates as ultimately determined by FERC for sales of electric energy during the

27  Summer Period.

28      94.   As stated above, Plaintiff has complied with the applicable government

1  claim presentation requirements.

2      95.    Plaintiff has filed this Complaint within the applicable statute of

3  limitations or, in the alternative, that statute was tolled and/or equitably tolled during

4  the pendency of the FERC refund and related proceedings, including the pendency of

5  the *Bonneville* case, making this action timely.

6  **SEVENTH CLAIM FOR RELIEF**

7  **(For Declaratory Relief Concerning Energy Exchanges and Multi-Day Sales**

8  **Against All Defendants)**

9      96.    Plaintiff incorporates by reference and re-alleges each and every

10  allegation of prior paragraphs as if fully set forth herein.

11      97.    An actual controversy exists between Plaintiff and Defendants

12  concerning Defendants' obligation to pay to Plaintiff amounts paid by Plaintiff to

13  Defendants for power purchased in energy exchange and multi-day sales transactions,

14  in the Cal ISO and CalPX markets.  Defendants deny any such obligation.

15      98.    Plaintiff seeks a declaration that, at such time that FERC finds that the

16  rates charged by sellers for such sales were unlawful, Plaintiff will be entitled to

17  recover from Defendants the difference between the rates charged by Defendants for

18  power purchased in energy exchange and multi-day sales and the lawful rates as

19  ultimately determined by FERC for such sales.

20      99.    As stated above, Plaintiff has complied with the applicable government

21  claim presentation requirements.

22      100.   Plaintiff has filed this Complaint within the applicable statute of

23  limitations or, in the alternative, that statute was tolled and/or equitably tolled during

24  the pendency of the FERC refund and related proceedings, including the pendency of

25  the *Bonneville* case, making this action timely.

26  **EIGHTH CLAIM FOR RELIEF**

27  **(For Declaratory Relief And Contractual And Equitable Indemnification Against**

28  **All Defendants)**

101.   Plaintiff incorporates by reference and re-alleges each and every allegation of prior paragraphs as if fully set forth herein.

102.   An actual controversy exists between Plaintiff and Defendants concerning Defendants' obligation to pay to Plaintiff any amount assessed against Plaintiff's Cal ISO and CalPX accounts, as well as for all additional costs incurred by Plaintiff, as a result of Defendants' refusal to honor their repayment obligations.

103.   Because the Cal ISO and CalPX are revenue-neutral entities, Defendants' refusal to honor their repayment obligations will result in a shortfall of funds needed to settle the accounts of Cal ISO and CalPX participants.  Under the terms of the Cal ISO and CalPX Tariffs, other market participants, including Plaintiff, may therefore be required to indemnify Cal ISO and CalPX for the resulting shortfall.

104.   Any reductions in Plaintiff's account to indemnify Cal ISO and CalPX for Defendants' refusal to honor their repayment obligations will constitute amounts due and owing by Defendants, as ISO Debtors and PX Debtors, to Plaintiff as an ISO and PX Creditor.  Plaintiff, as a market participant, is entitled under the Cal ISO and CalPX Tariffs to bring proceedings directly against Defendants to recover the amounts owed.

105.   Plaintiff seeks a declaration that Defendants will be liable to Plaintiff on grounds of contractual and equitable indemnification for any amount assessed against Plaintiff's account, as well as for all additional costs incurred by Plaintiff, as a result of Defendants' refusal to honor their repayment obligations.

106.   As stated above, Plaintiff has complied with the applicable government claim presentation requirements.

107.   Plaintiff has filed this Complaint within the applicable statute of limitations or, in the alternative, that statute was tolled and/or equitably tolled during the pendency of the FERC refund and related proceedings, including the pendency of the *Bonneville* case, making this action timely.

## NINTH CLAIM FOR RELIEF

### (For Declaratory Relief Concerning Cal ISO And CalPX Accounts Against All Defendants)

108.   Plaintiff incorporates by reference and re-alleges each and every allegation of prior paragraphs as if fully set forth herein.

109.   An actual controversy exists between Plaintiff and Defendants concerning Defendants' obligation to refund to Plaintiff overcharges associated with sales during the Refund Period and Defendants' liability to Plaintiff concerning overcharges for Summer Period sales and non-spot transactions if FERC corrects the prices for those transactions.

110.   Plaintiff seeks a declaration that Defendants are contractually obligated to permit their accounts at the Cal ISO and CalPX to be adjusted to reflect all pricing changes resulting from FERC's determination of the corrected, maximum rates under the Cal ISO and CalPX Tariffs and the recalculation by Cal ISO and CalPX, pursuant to FERC's direction, of the prices charged under the Cal ISO and CalPX Tariffs during the relevant time periods, and are contractually obligated to pay any refunds and to otherwise honor the invoices reflecting the refunds associated with such transactions.

111.   As stated above, Plaintiff has complied with the applicable government claim presentation requirements.

112.   Plaintiff has filed this Complaint within the applicable statute of limitations or, in the alternative, that statute was tolled and/or equitably tolled during the pendency of the FERC refund and related proceedings, including the pendency of the *Bonneville* case, making this action timely.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    On the First Claim for Relief:

   For damages according to proof at trial.

2.  On the Second Claim for Relief:

For damages according to proof at trial.

3.  On the Third Claim for Relief:

a.  For restitution according to proof at trial.

b.  For constructive trust.

4.  On the Fourth Claim for Relief:

a.  For damages according to proof at trial.

5.  On the Fifth Claim for Relief:

For a declaration that Defendants are obligated to return to Plaintiff amounts charged in excess of the rates set by FERC for the Refund Period.

6.  On the Sixth Claim for Relief:

For a declaration that, if FERC finds that the rates charged by sellers during the Summer Period were unlawful, Defendants will be obligated to return to Plaintiff the difference between the rates charged by Defendants and the lawful rates as ultimately determined by FERC for sales of electric energy during the Summer Period.

7.  On the Seventh Claim for Relief:

For a declaration that, at such time that FERC finds that the rates charged by sellers for such sales were unlawful, Plaintiff will be entitled to recover from Defendants the difference between the rates charged by Defendants for power purchased in energy exchange and multi-day sales and the lawful rates as ultimately determined by FERC for such sales.

8.  On the Eighth Claim for Relief:

For a declaration that Defendants will be liable to Plaintiff on grounds of contractual and equitable indemnification for any amount assessed against Plaintiff's account, as well as for all additional costs incurred by Plaintiff, as a result of Defendants' refusal to honor their repayment obligations.

9.    On the Ninth Claim for Relief:

For a declaration that Defendants are contractually obligated to permit their accounts at the Cal ISO and CalPX to be adjusted to reflect all pricing changes resulting from FERC's determination of the corrected, maximum rates under the Cal ISO and CalPX Tariffs and the recalculation by Cal ISO and CalPX, pursuant to FERC's direction, of the prices charged under the Cal ISO and CalPX Tariffs during the relevant time periods, and are contractually obligated to pay any refunds and to otherwise honor the invoices reflecting the refunds associated with such transactions.

10.    And, On All Causes of Action:

a.    An award of all costs incurred by Plaintiff herein;

b.    An award of prejudgment interest as authorized by law; and

c.    Such other and further relief as the Court deems just and proper.


DATED:  March 21, 2006               HENNIGAN BENNETT & DORMAN LLP
                                      J. Michael Hennigan
                                      Laura Lindgren
                                      Robert W. Mockler


                                      By _____ /s/ Laura Lindgren _____
                                                   Laura Lindgren


                                      Attorneys for Plaintiff
                                      San Diego Gas & Electric Company

COMPLAINT FOR BREACH OF CONTRACT, ETC.

534317