# EXHIBIT 4

ORIGINAL

# UNITED STATES OF AMERICA
## BEFORE THE
## FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| San Diego Gas & Electric Company | ) | Docket No. EL00-95-045 |
| | ) | |
| v. | ) | |
| | ) | |
| Sellers of Energy and Ancillary Services | ) | |
| Into Markets Operated By the | ) | |
| California Independent System | ) | |
| Operator Corporation and the | ) | |
| California Power Exchange | ) | |
| | ) | |
| Investigation of Practices of the | ) | Docket No. EL00-98-042 |
| California Independent System | ) | |
| Operator and the California Power | ) | |
| Exchange | ) | |

## REQUEST FOR REHEARING OF PUBLIC UTILITY DISTRICT
## NO. 2 OF GRANT COUNTY, WASHINGTON

Pursuant to Rule 713 of the Commission's Rules of Practice and Procedure, 18 CFR

§385.713, and §313 of the Federal Power Act ("FPA"), 16 U.S.C. §825l, Public Utility

District No. 2 of Grant County, Washington ("Grant") hereby requests rehearing of the

Commission's March 26, 2003 "Order on Proposed Findings on Refund Liability," 102

FERC ¶61,317 ("March 26th Order"). Contrary to court precedent and basic principles of

fairness, the March 26th Order fails to address the jurisdictional evidence and arguments that

Grant presented to both the Presiding Administrative Law Judge ("ALJ") and the

Commission. In ignoring the jurisdictional issue raised by Grant, the Order also improperly

subjects Grant's transactions to price mitigation in this proceeding without a jurisdictional

basis for doing so. In addition, the Order improperly denies Grant an evidentiary forum for

establishing that its transactions do not constitute out of market ("OOM") sales that are subject to price mitigation. Finally, the Order inappropriately accepts Commission Staff's recommendation that indexed gas prices should be replaced with producing basin prices in calculating the mitigated market clearing prices ("MMCPs") without adequate quantification of the effect of non-manipulation factors (such as scarcity and transmission constraints) on California natural gas prices during the refund period.

## SPECIFICATIONS OF ERROR

The March 26th Order errs in the following respects:

(1)    The Order fails to address the jurisdictional evidence and arguments presented to the Presiding ALJ and the Commission by Grant;

(2)    The Order improperly subjects the transactions of Grant to price mitigation when there is no jurisdictional nexus for doing so under the Commission's precedent in this proceeding;

(3)    The Order fails to provide an evidentiary forum for Grant to present evidence that its sales to the California Independent System Operator Corporation ("ISO") do not constitute OOM transactions under the Commission's orders; and

(4)    The Order improperly accepts the Staff recommendations in the Initial and Final Reports in Docket No. PA02-2-000 that indexed natural gas prices be replaced by producing basin natural gas prices in the calculation of the MMCPs.  (PP 59 and 61).

# SUMMARY OF THE ARGUMENT

In its July 25th and December 19th Orders,[1] the Commission established specific parameters for mitigating the prices of energy transactions in the California markets for the refund period of October 2, 2000 to June 20, 2001. At pages 61,511-13 of the July 25th Order and pages 62,181-85 of the December 19th Order, the Commission explicitly based its authority to order refunds by non-jurisdictional entities on the <u>active</u> participation of such entities in the organized California markets, as evidenced, *inter alia*, by the existence of contractual agreements between these entities and the ISO or California Power Exchange Corporation ("PX").

While Grant does not subscribe to the legal basis for the Commission's general assertion of jurisdiction over the transactions of non-jurisdictional entities in those Orders, Grant is not challenging the Commission's jurisdictional theory in this request for rehearing. Rather, through its testimony and pleadings, Grant has sought to demonstrate that the narrow theory upon which the Commission based its authority to compel refunds from non-jurisdictional entities in those orders simply does not fit the factual circumstances of Grant's sales to the ISO. Grant's testimony, which was proffered in phase 2 of this proceeding, stricken by the Presiding ALJ, and submitted as an offer of proof as OP-GRT-1, establishes the following undisputed facts:

(1)  Grant did not make sales of any type to the ISO prior to November 17, 2000.

(2)  Between November 17 and December 13, 2000, Grant sold more than 23,000 MWh of energy to the ISO, at prices totalling more than $18 million.

---

[1]  *San Diego Gas & Electric Company v. Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator Corporation and the California Power Exchange*, 96 FERC ¶61,120 (2001) ("July 25[th] Order"), *Order on Rehearing*, 97 FERC ¶61,275 (2001) ("December 19[th] Order").

official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

(3)    These sales were made at negotiated prices under the Western Systems Power Pool ("WSPP") Agreement.

(4)    In most instances, the ISO contacted Grant to request energy and specified an offering price for that energy.

(5)    At no time before, during, or after this period did Grant have any sort of contractual agreement with the ISO, including either a Scheduling Coordinator Agreement ("SCA") or a Participating Generator Agreement ("PGA").

(6)    Grant never submitted any bids into any of the ISO's single price auction markets.

No party challenged the factual accuracy of the statements enumerated above,

These facts, on their face, clearly demonstrate that Grant's transactions with the ISO do not meet the specific criteria enumerated in the Commission's July 25th and December 19th Orders for subjecting the transactions of non-jurisdictional entities to refund liability. Grant did not "agree[] to accept the same clearing price for any given sale."[2] Quite obviously, Grant accepted a negotiated price, albeit dictated by the ISO, for its sales. Grant did not "enter[] into various arrangements that explicitly acknowledged the Commission's jurisdiction regarding [its] sales in the PX and the ISO."[3] The only agreement governing Grant's transactions with the ISO was the WSPP, which contains a specific provision indicating that parties do <u>not</u> relinquish their jurisdictional rights by transacting under its authority. In fact, none of the elements of the "specific limited factual scenario" on which the Commission relies to assert jurisdiction over the transactions of certain non-jurisdictional sellers applies to the transactions of Grant.

---

[2] 96 FERC at 61,512.

[3] 97 FERC at 62,182.

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

Despite proffering testimony to support its position and repeatedly arguing its case before the Commission (through pleadings and interlocutory appeal), both the Presiding ALJ and the Commission itself have heretofore refused to address Grant's jurisdictional argument. As noted in Section I, Grant explicitly articulated the jurisdictional relevance of its testimony in the oral arguments on the motions to strike testimony on short-term bilateral transactions. The ALJ struck a wide swathe of testimony by numerous parties without specifically addressing the jurisdictional arguments raised by Grant. The Presiding ALJ's sole statement on the jurisdictional issue—that "[b]eing a governmental entity doesn't take you out of the ballgame"[4]—does not respond to Grant's demonstration that being a governmental entity that did not transact in the centralized California markets should take you out of the ballgame based on the Commission's own delineation of the rules. The Presiding ALJ does not reference the jurisdictional issue in his "Certification of Proposed Findings of California Refund Liability" ("Proposed Findings"), 101 FERC ¶63,026 (2002), and the Commission has not responded to the evidence or arguments submitted by Grant on the jurisdictional issue in both its interlocutory appeal and its Comments on the Proposed Findings. The Commission is legally obliged to address Grant's contentions and to provide a reasoned explanation if it does not agree with Grant.

In its July 25th and December 19th Orders, the Commission concluded that short-term bilateral transactions, other than OOM transactions, are not subject to refund in this

---

[4] Tr. at 3719.

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

proceeding.[5]  As with its jurisdictional argument, Grant submitted testimony establishing that even if its transactions with the ISO can be subjected to price mitigation under the Commission's jurisdictional theory, those transactions do not meet the ISO's or the Commission's definition of OOM transactions that are subject to mitigation.  While the Presiding ALJ did address the merits of this argument in granting motions to strike relevant portions of the testimony of Grant and others, the Commission's March 26th Order ignores Grant's Comments arguing that the Presiding ALJ's ruling was incorrect and prevents parties from introducing evidence on a legitimately disputed factual issue.  Again, the Commission has an obligation to address this argument.

Finally, the Commission has improperly adopted Commission Staff's recommendation to substitute producing basin prices for published index prices in the calculation of the MMCPs.  The Staff report on which its recommendations are based contains a vast amount of evidence that high natural gas prices in California during the refund period resulted from numerous factors, including high demand, scarcity, transmission constraints, and pipelines outages.  However, without quantifying *any* of the factors that caused higher natural gas prices, Staff attributes the higher prices primarily to one factor, the misreporting of gas prices to the published indices, and concludes that the current proxy gas prices should be replaced with producing basin prices that indisputably have no relationship to prices in the California market during the refund period.  Assuming that misreporting and manipulation of gas prices occurred as concluded by Staff, a revised gas price methodology

---

[5] *See* 97 FERC at 62,196-97 (Commission affirming that non-202(c) OOM transactions are subject to refund but holding that "[w]e are not convinced that any other short-term bilateral contracts may be made subject to refund under the July 25th Order").

nevertheless must be based on a more studied analysis and must more accurately reflect the particular attributes of the California markets. As Grant has suggested, using actual gas prices is the only apparent way to accomplish these goals.

## ARGUMENT

### I.   The March 26th Order's Failure to Address the Jurisdictional Evidence and Arguments Properly Presented to it by Grant Constitutes Reversible Error and a Derogation of the Commission's Decision Making Responsibilities

As discussed more fully in Section II below, the Commission's July 25th and December 19th Orders do not by their terms justify any assertion of jurisdiction over Grant's transactions with the ISO. In Phase 2 of this proceeding, Grant submitted testimonial evidence to establish the factual predicate for its argument that the ISO had improperly mitigated Grant's transactions. The California Parties, the ISO, and Commission Staff filed motions to strike the portions of Grant's testimony dealing with the jurisdictional issue.[6] The Presiding ALJ broadly granted the motions to strike, stating merely, with regard to the jurisdictional issue, that "[b]eing a governmental entity doesn't take you out of the ballgame, *per se*, if we're talking about governmental entities, regardless of how the transaction was effected."[7] That observation totally misconstrues and fails to respond to Grant's showing, which did not rely upon a general exemption for governmental entities but instead focused on the specific factual bases for the Commission's assertions of jurisdiction over entities not

---

[6] The motions to strike covered the testimony of numerous parties and a wide range of issues, including Grant's testimony pertaining to both the jurisdictional issue and the "OOM" transaction issue discussed in greater detail in Section III below.

[7] Tr. at 3719.

generally subject to the Commission's jurisdiction.  Grant's evidence was submitted as an offer of proof as OP-GRT-1.

On September 5, 2002, following the Presiding ALJ's denial of its motion for a certification of interlocutory appeal, Grant filed an interlocutory appeal with the Commission, arguing that prompt review of the ALJ's ruling was necessary and appropriate to avoid detriment to the public interest.[8]  In its Order of September 12, 2003, the Commission denied Grant's interlocutory appeal, finding that Grant had not made the necessary showing of "extraordinary circumstances."  In his Proposed Findings, the Presiding ALJ, at paragraphs 19 and 468-470, simply noted his rulings on the motions to strike "certain short-term bilateral transactions," without addressing the substance of the evidence presented on this issue.  In its January 13, 2003 Comments on the Proposed Findings, Grant demonstrated that its sales to the ISO did not have the characteristics relied upon by the Commission to assert refund authority over non-jurisdictional sellers.  In its March 26th Order adopting the ALJ's Proposed Findings, not only does the Commission not address the jurisdictional arguments proffered by Grant, it does not even adopt the portions of the Proposed Findings in which the Presiding ALJ discussed striking Grant's testimony.

While Grant may be a relatively minor actor in the larger drama of the California refund proceeding, it is owed roughly $18 million by the ISO, more than $7 million of which would be lost if the ISO's improper mitigation of its transactions is ultimately affirmed.[9]  Quite simply, the Commission has a legal obligation to address Grant's arguments, and

---

[8] "Interlocutory Appeal on Behalf of Public Utility District No. 2 of Grant County, Washington," September 5, 2002.

[9] Proposed Findings Appendix at 3.

- 8 -

fficial FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

failing to address them constitutes reversible error. As the court found in *Moraine Pipeline Co. v. FERC*, 906 F.2d 5, 9 (D.C. Cir. 1990), "by failing to respond to [a party's] arguments and to articulate its decision based on evidence in the record, the Commission breache[s] its obligation to engage in reasoned decision making." Furthermore, by failing to address Grant's evidence and arguments, the Commission has deprived Grant of due process and violated the Administrative Procedure Act ("APA"), 5 U.S.C. §557(c)(3)(A). To satisfy the APA's requirement that an administrative agency provide an adequate statement of reasons on all issues of law, "a summary affirmance of all or part of an ALJ's opinion must leave no guesswork regarding what the agency has adopted." *Armstrong v. Commodity Futures Trading Comm'n*, 12 F.3d 401, 404 (3d Cir. 1993).[10] Since neither the ALJ nor the Commission has addressed Grant's jurisdictional issue, the Commission's summary affirmance of specific parts of the Proposed Findings creates impermissible "guesswork" and uncertainty as to what it has actually affirmed and what its rationale is for doing so.

Moreover, while courts have found that agencies have the authority to summarily affirm the findings of ALJs, the summary affirmation must rely on reasoning from the ALJ's findings sufficient to enable meaningful review by an appellate court. *Bethany v. FERC*, 727 F.2d 1131, 1144 (D.C. Cir. 1984). The Presiding ALJ's Proposed Findings in this proceeding offer no substantive discussion of why Grant's jurisdictional evidence was rejected, and the March 26th Order does not even discuss the ALJ's decision to exclude the evidence, much less Grant's substantive jurisdictional arguments. At this stage in the

---

[10] Courts have found that the underlying purpose of the APA is to provide parties with a reasoned explanation for decisions while allowing for effective judicial review. *See, e.g., Wensel v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 888 F.2d 14, 16 (3d Cir. 1989).

proceeding, despite Grant's numerous attempts to obtain a decision on the jurisdictional

propriety of the ISO's mitigation of Grant's transactions, neither the Presiding ALJ nor the

Commission has provided any reasoned explanation for rejecting Grant's evidence and

arguments. In fact, the Commission has provided no decision at all, violating its duty under

the APA to provide a record that allows for meaningful appellate review.[11]

Even if the Commission did not have a legal obligation under the APA and court

precedent to address Grant's jurisdictional issue, it should do so for purposes of judicial

fairness and finality. Grant has been an active participant in this proceeding since its

intervention in August of 2001. It has expended substantial public resources for the primary

purpose of establishing that it is not subject to the jurisdiction of this Commission under the

terms established by the Commission itself in its July 25th and December 19th Orders. It is

manifestly unjust for the Commission to continue to deny Grant a response to its well-

founded contention that it does not even belong in these proceedings. If the Commission

continues to ignore Grant's evidence and arguments on its jurisdictional status, the appellate

record on this issue will consist only of Grant's offer of proof and numerous pleadings and

will be devoid of any determination of this Commission on the issues raised by those

documents.

---

[11] Agencies are permitted to adopt the entirety of an ALJ's decision. *See City of Frankfort v. FERC*, 678 F.2d 699, 708 (7th Cir. 1982). Here, however, the Commission has adopted selected portions of the ALJ's Proposed Findings (albeit in many cases with little or no discussion) and completely ignored other portions. A reviewing court could therefore only speculate as to why the Commission explicitly adopted certain findings while ignoring others, creating the type of "guesswork" that the court disapproved in *Armstrong, supra*.

II.    **The March 26ᵗʰ Order, by Implicitly Accepting the ALJ's Proposed Findings, Improperly Subjects the Transactions of Non-Jurisdictional Entities Such as Grant That Did Not Participate in the ISO's Markets to Price Mitigation**

In its orders to date in this proceeding, the Commission has asserted jurisdiction to mitigate the prices for sales by non-jurisdictional, governmental entities such as Grant only under specific factual circumstances. The first order in which the Commission asserted authority to mitigate the prices for sales by governmental entities was the July 25ᵗʰ Order. At pages 61,511-512 of that Order the Commission stated:

> The Commission has determined that all sellers of energy in the California ISO and PX spot markets should be subject to refund liability for the period beginning October 2, 2000. 53/

> *  *  *

> At issue is whether the Commission can assert jurisdiction over the California ISO and PX wholesale electricity markets in a manner that encompasses non-public utility sellers that are not subject to our direct jurisdiction under FPA Section 206. Under the specific circumstances presented, we conclude that such jurisdiction may properly be asserted over non-public utility sellers of energy. Under the single price auction mechanism that operated in the centralized ISO and PX spot markets, all sellers agreed to accept the same clearing price for any given sale.

> _____
> 53/ While the Commission in other orders and in other contexts has stated that it does not have jurisdiction over non-public utilities under Sections 205 and 206 of the FPA, we have re-examined our authority in the particular circumstances presented here: a centralized single clearing price auction that sets wholesale prices for both public utilities and non-public utilities, pursuant to market rules set by this Commission and administered by public utilities subject to this Commission's jurisdiction (the California ISO and PX). [Emphasis added.]

The July 25ᵗʰ Order also emphasized at page 61,513 that "[n]on-public utility sellers in the California market entered into various arrangements that acknowledged the Commission's authority over the centralized transactions. For example, . . . a FERC-authorized, *pro-forma* Scheduling Coordinator Agreement." [Citations omitted.]

The Commission's December 19th Order further emphasized the Commission's reliance on specific, factual circumstances in asserting jurisdiction to require mitigation of the prices for sales by governmental entities and elaborated on the particular circumstances relied upon:

> The exemption for governmental entities in FPA Section 201(f) does not require a different result regarding sales by governmental entities in the PX and ISO spot markets. While that provision exempts governmental entities generally from Commission jurisdiction under Part II of the FPA, it does not do so under the specific circumstances here. Here, governmental entities and others sold energy in a centralized, single clearing price auction market under which all sellers received the same price for a given sale, pursuant to market rules set by this Commission and administered by public utilities (the California PX and ISO) subject to this Commission's jurisdiction.
>
> * * *
>
> Governmental entities or their agents entered into various arrangements that explicitly acknowledged the Commission's jurisdiction regarding their sales in the PX and the ISO. For example, many governmental entities accepted a FERC-approved *pro-forma* Scheduling Coordinator Agreement that explicitly acknowledges their obligation "to comply with the terms and conditions of the ISO Tariff and ISO Protocols."
>
> We reiterate our finding that, by participating in the FERC-regulated centralized PX and ISO spot markets, all sellers, including governmental entities, agreed to accept the same clearing price for any given sale under the single price auction mechanism approved by FERC.
>
> * * *
>
> In short, we have been consistent in our approach regarding the activities of governmental entities as they affect matters subject to our jurisdiction, and have applied it to the specific limited factual scenario presented here. * * * December 19th Order at 62,181 through 62,185. [Emphasis added.]

The testimony submitted in phase 2 of this proceeding (stricken by the Presiding ALJ and submitted to the Commission as an offer of proof at OP-GRT-1) establishes that Grant's bilateral sales to the ISO did not have any of the characteristics relied upon by the

Commission to assert jurisdiction over sales by governmental entities.[12]  Grant's offer of

proof demonstrates that Grant (1) did not at any time submit bids into the ISO's organized

markets, (2) did not at any time participate in the ISO's organized, single price auction

markets or otherwise agree to accept any prices established through those markets, (3) was

not a Scheduling Coordinator with the ISO, (4) was not a Participating Generator with the

ISO, (5) did not at any time have any on-going contractual relationship with the ISO, (6) is

not within the ISO Control Area, and (7) did not have a legal obligation to supply energy to

the ISO at the time of its sales.[13]  In short, Grant's offer of proof establishes that the "specific

circumstances" under which the Commission took the unprecedented action of subjecting

non-jurisdictional sales to refund liability are not present as to Grant, leaving no valid bases

to subject Grant's sales to price mitigation.

Grant's evidence also demonstrates that Grant's sales to the ISO during November

and December 2000 were bilateral sales under the WSPP Agreement.  The thrust of the

Commission's rationale for subjecting the transactions of non-jurisdictional entities to refund

liability in its July 25th and December 19th Orders is that these entities waived the non-

jurisdictional exemption by knowingly entering into agreements that allowed them to

participate in jurisdictional markets.  However, the WSPP Agreement, which constitutes the

only agreement under which Grant made sales to the ISO, contains the following "non

waiver" provision:

> 13.1    This Agreement is subject to valid laws, orders, rules and regulations of duly
> constituted authorities having jurisdiction.  Nothing contained in this Agreement shall

---

[12] As noted above, no party challenged the factual accuracy of the statements in Grant's offer of proof.

[13] See OP-GRT-1, Direct Testimony of Tim Culbertson, at 4-6.

> give FERC jurisdiction over those Parties not otherwise subject to such jurisdiction or
> be construed as a grant of jurisdiction over any Party by any state or federal agency
> not otherwise having jurisdiction by law. WSPP Agreement, Rate Schedule FERC
> No. 6, Original Sheet No. 25 (Effective July 1, 2001).

Therefore, the Commission cannot construe Grant's transactions, which were conducted

entirely under the auspices of the WSPP Agreement, to constitute the same type of

jurisdictional "waiver" that it found with respect to specific *pro forma* agreements in the

centralized California markets. Therefore, the "specific limited factual scenario" presented

by entities that actively participated in the centralized California markets clearly does not

apply to Grant.[14]

Since the Commission has not and cannot justify subjecting Grant's transactions with

the ISO to price mitigation under the "specific limited factual scenario" described in its July

25th and December 19th Orders, it must grant rehearing of its March 26th Order to exclude

Grant's transactions from such mitigation. If the Commission fails to grant rehearing on this

issue, it will eliminate the critical nexus that the Commission established between market

participation and refund liability in those two orders.

III.    **The March 26th Order, by Implicitly Accepting the ALJ's Proposed Findings,
        Improperly Subjects All Short-Term Bilateral Transactions Other Than DOE
        and DWR Transactions to Price Mitigation**

In its July 25th and December 19th Orders, the Commission explicitly held that

bilateral sales entered into by DWR  and made pursuant to the DOE Orders <u>are not</u> subject to

---

[14] In a 2003 decision, the Commission affirmed Grant's non-jurisdictional status, finding in *Yakama Nation v. Grant*, 103 FERC ¶61,073 at P 11, that "because Grant County is a municipality which has been expressly granted self-regulatory authority by the State of Washington, the Commission has no rate jurisdiction over the county under FPA Sections 19 and 20."

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

price mitigation in this proceeding. The Commission also explicitly held that all OOM transactions are subject to price mitigation. The Commission did not, however, find that other, non-OOM short-term bilateral transactions should be subjected to price mitigation. In fact, the Commission in its December 19th Order stated that "[w]e are not convinced that any other short-term bilateral contracts may be made subject to refund under the July 25 Order."[15] However, by implicitly accepting the Presiding ALJ's Proposed Findings on short-term bilateral transactions, the Commission has incorrectly determined that all sales to the ISO of a duration of 24 hours or less are by definition OOM and thereby subject to price mitigation.[16] This determination is not only facially illogical, it is contradicted by the Commission's orders in this and other proceedings and the ISO's own operating procedures, which were stricken from the evidentiary record by the Presiding ALJ's rulings.

In its July 25th Order, the Commission held that OOM transactions should be subject to mitigation, stating that "[t]o the extent the ISO made spot market OOM purchases (*i.e.* 24 hours or less and that were entered into the day of or day prior to delivery), such purchases are no different than purchases through its markets."[17] However, the December 19th Order explicitly concluded that bilateral transactions other than OOM purchases are not subject to mitigation.[18] The Proposed Findings, portions of which the Commission has now adopted, essentially adopt the ISO's position that there are only two varieties of short-term bilateral transactions—OOM transactions, which are subject to mitigation, and DWR and DOE

---

[15]  97 FERC at 62,197.

[16]  Proposed Findings at P 19.

[17]  96 FERC at 61,515.

[18]  97 FERC at 61,275.

transactions, which are not. Accepting these findings limits "any other short-term bilateral contracts" referenced in the December 19th Order[19] to DWR and DOE transactions, even though there is nothing in the context of the Commission's finding that supports this interpretation.[20]

Mitigating the vast number of transactions that occurred outside of the ISO's centralized markets simply because the ISO has labeled them as OOM is also inconsistent with the Commission's definition of OOM in other proceedings and with the ISO's own operating procedures. For example, in *California Independent System Operator Corporation*, 90 FERC ¶61,006 at 61,010-11 (2000), the Commission recognized that the OOM designation is based on the ISO's ability to compel suppliers to provide energy:

> For example, if the output available from generators bidding into the imbalance and ancillary services markets is inadequate to serve load and manage congestion, the ISO can direct an idle Participating Generator to start up and deliver energy to meet the ISO's needs. These are described as OOM calls. [Emphasis added.]

Similarly, in *El Segundo Power*, 95 FERC ¶61,159 at 61,516 (2001), the Commission found that "the ISO's OOM authority only applies to participating generators, *i.e.*, generators that have agreed to be bound by the terms of the ISO Tariff." These orders plainly contradict the more expansive definition of OOM transactions that the Presiding ALJ relied upon to strike the portions of Grant's testimony proffered to establish that certain transactions are not in fact OOM.

---

[19] 97 FERC at 61,275.

[20] In discussing its exclusion of DWR transactions from price mitigation in the July 25th Order, the Commission also concluded that "[w]e believe that imposing after-the-fact refund liability on California transactions outside of the centralized ISO and PX markets is unjustified." 96 FERC at 61,515. As discussed in Section II above, this definition would apply to all of the negotiated transactions between the ISO and Grant during the refund period.

Another document stricken by the Presiding ALJ's rulings and designated as OP-TID-1—ISO Operating Procedure S-318 entitled "Energy or Capacity Purchases from Non-Scheduling Coordinators" —further demonstrates why there are legitimate issues of material fact as to what constitutes an OOM transaction under the Commission's orders in this proceeding. Pages 1-2 of this document, which sets out the ISO's procedures for obtaining energy in emergency conditions and was in effect during the entire refund period, contains the following two definitions:

> **Out of Market:** refers to capacity and/or Energy managed by a Scheduling Coordinator, but for which there is no bid in the relevant Day Ahead or Hour Ahead market. Out of Market instructions are made through the Scheduling Coordinator. Settlement is made according to the terms of the ISO Tariff and the Scheduling Coordinator Agreement.
>
> **Non-Scheduling Coordinator:** refers to capacity and/or Energy obtained through sources other than Scheduling Coordinators or to an Entity that is not a Scheduling Coordinator. Non-Scheduling Coordinator purchases are from Entities with which the ISO has no Scheduling Coordinator Agreement and with which, therefore, the ISO might have no prior understanding for settlement.[21]

Subsequent versions of this procedure developed after the refund period, including the current version available on the ISO's web site,[22] eliminated this Out of Market/Non-Scheduling Coordinator distinction.

The Commission orders and stricken evidence cited demonstrate that there is a legitimate factual dispute between the ISO and numerous sellers regarding whether certain transactions are properly characterized as OOM and are, consequently, subject to price mitigation. If the definition of OOM in the *California Independent System Operator* and *El*

---

[21] OP-TID-1 (pages 1-2 of the stricken exhibit TID-7).

[22] <http://www.caiso.com/docs/1998/12/02/1998120218060111015.pdf>

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

*Segundo* cases or the ISO's S-318 procedure is applied, Grant's transactions during the refund period cannot be subject to price mitigation, since Grant does not have a SCA or PGA with the ISO, and the ISO has no authority to compel production from its generation resources. Based on his improper determination that "spot market OOM purchases" are defined broadly as all purchases by the ISO arranged 24 hours or less prior to delivery, the Presiding ALJ struck all of Grant's testimony on the issue of short-term bilateral transactions and deprived Grant and others of the opportunity to develop an evidentiary record on the disputed issue of what transactions are in fact properly characterized as OOM. However, the Commission cannot simply ignore the fact that the ISO's characterization of OOM is unsupported in its own Tariff and contradicted by numerous orders and stricken evidence.

In contrast to the basic facts establishing that Grant's sales were non-jurisdictional discussed in Section II, the determination of which transactions properly were characterized as OOM cannot reasonably be decided on the record developed by evaluating the stricken evidence in the offers of proof. If it does not find that Grant's transactions should not be subject to price mitigation for the reasons discussed in Section II, Grant urges the Commission to reopen the record regarding short-term bilateral transactions and instruct the Presiding ALJ to conduct an evidentiary hearing to resolve disputed issues of material fact as to whether certain transactions are in fact properly treated as OOM transactions under the Commission's Orders.

**IV.    The March 26th Order Inappropriately Adopts Commission Staff's
Recommendation to Substitute Indexed Gas Prices with Producing Basin Prices
Without Adequate Consideration or Quantification of Other Factors That
Contributed to Higher Gas Prices in California**

At paragraphs 56 through 63 of its March 26th Order, the Commission discusses and

adopts Commission Staff's recommendation that producing basin natural gas prices be

substituted for reported indexed prices in the calculation of the MMCPs.  Like the two Staff

reports on which is it based, this determination is factually and analytically inadequate.  The

Commission has determined that, due to unquantifiable market manipulation and

misreporting of gas prices to published indices, it must take the drastic measure of adopting

the artificially low producing basin prices as a proxy for California gas prices without any

showing that the manipulation and misreporting identified are a substantial (much less

primary) cause of inflated prices in California.  More surprisingly, the Commission makes

this determination while acknowledging the existence of other factors such as scarcity and

transmission constraints that are significant, alternate causes of high prices.  The Commission

concludes, in essence, that because it is too difficult to delineate the multiple causes of high

prices, it will adopt Staff's recommendation on the implied assumption that manipulation and

misreporting must be significant causes of the disparity between the indexed prices and the

producing basin prices.  The Commission thus imposes a substantially increased refund

liability on all sellers without any attempt to quantify the competing causes of higher gas

prices and without any showing that its adopted proxy gas prices have any relationship to the

California market, functional or otherwise.

In adopting Staff's recommendation, the Commission points out that Staff

"recognizes that market manipulation was not the sole cause of high California spot gas

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

prices" but "does not believe that the effects of scarcity can be separated from those of market dysfunction and price manipulation."[23] In fact, throughout its "Final Report on Price Manipulation in Western Markets" (Docket No. PA02-2-000) ("Final Report"), Staff identifies *numerous* alternative causes for high natural gas prices in California. At page I-2 of its Final Report, Staff notes that natural gas demand increased by 44% in May through October of 2000 over the same time frame in 1999. Staff also recognizes that "[h]igher demand intensified transmission congestion, which in turn contributed to higher wholesale electric prices."[24] In addition, Staff concludes that insufficient transportation capacity was a significant cause of price disparity between California and the producing basins.[25] Similarly, Staff finds that California spot gas prices reached "extraordinary levels" due to, *inter alia,* pipeline capacity shortages.[26] Finally, Staff also acknowledges that the Carlsbad pipeline explosion "contributed significantly to the extraordinarily high California spot gas prices."[27]

Staff rationalizes its decision to not attribute higher California gas prices to any of these factors by finding that these factors merely "created the opportunity for manipulation, which did occur and did influence prices."[28] Staff rejects without analysis the possibility that these factors were much more prominent in *causing* higher gas prices than the market manipulation that they facilitated. Staff finds that the anecdotal misreporting behavior that it

---

[23] Order at P 60.

[24] Final Report at I-11.

[25] *Id.* at I-15.

[26] *Id.* at IV-2.

[27] *Id.* at IV-6.

[28] *Id.* at IV-18.

official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

has identified "cast[s] a cloud over the gas market and taint[s] the reported indices."[29]  Staff

then concludes that the Commission need not find "that *all* of the price differential between

producing-area and California pricing points was due to manipulation to accept Staff's

recommended alternate mitigation proposal."[30]  In truth, much short of establishing that *all* of

the price differential is attributable to market manipulation, Staff's analysis does not even

demonstrate that *most*, or even a substantial part of, the differential can be so attributed.  In

addition, Staff inconsistently suggests that manipulation-related causes can and should be

remedied even if they are not quantifiable while non-manipulation causes should be

discounted completely if they cannot be quantified.  For example, the Final Report concludes

that although pipeline outages have "an element of legitimate scarcity, there is no way to

isolate these scarcity costs."[31]

Appellate courts have held that an administrative agency's findings will be

disregarded by reviewing courts when the agency "ignores relevant evidence without

explaining and justifying its decision to do so."[32]  While the Commission has identified

---

[29] *Id.*

[30] *Id.* [Emphasis in original.]

[31] *Id.* at IV-6.  In discussing the pipeline outages, Staff finds that there is no "compelling reason to include costs related to such an abnormal event in the clearing prices for an entire electric spot market." Final Report. *Id.* at IV-6-7.  Ironically, the same could be said of the misreporting of gas prices to the compilers of published indices.

[32] *NLRB v. E-Systems, Inc.*, 103 F.3d 435, 439 (5th Cir. 1997).  In *Florida Power & Light Co. v Lorion*, 470 U.S. 729, 744 (1985), the Supreme Court held that an agency decision will be remanded "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it." Since the Staff reports on which its determination is based inadequately evaluate alternative causes of high natural gas prices, the Commission has not provided an adequate record for appellate review.

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

plausible alternatives to market manipulation for explaining the discrepancies between

California indexed prices and the producing basin prices, it has failed to adequately consider

and quantify those alternatives. In *Burlington Truck Lines, Inc. v. United States*, 371 U.S.

156, 168 (1962), the Supreme Court overturned an agency determination where, as here, the

agency made "no findings specifically directed to the choice between two vastly different

remedies with vastly different consequences." The Commission has apparently gone beyond

the task of simulating a functional, competitive market in its proxy price approach and

undertaken the creation of a purely hypothetical perfect market, free of scarcity, pipeline

outages, and transmission constraints. If, as Commission Staff suggests, misreporting and

manipulation make it impossible to accurately recreate a functional market, then the

Commission should, as Grant suggested in its Comments on Staff's Initial Report, use actual

gas prices to calculate the MMCPs. This approach, although difficult, would be infinitely

more fair than an approach that categorically dismisses the impact of legitimate market

forces such as scarcity and penalizes energy importers in the process.

Official FERC-Generated PDF of 20030428-0008 Received by FERC OSEC 04/24/2003 in Docket#: EL00-95-045

## CONCLUSION

Wherefore, for the foregoing reasons, Grant respectfully urges the Commission to grant rehearing of its March 26th Order and find that Grant's transactions with the ISO cannot be subject to price mitigation because they do not fall within the jurisdictional parameters established by the Commission in its prior orders. Alternatively, Grant requests that the Commission grant rehearing on the issue of short-term bilateral transactions and allow parties an evidentiary forum for establishing that certain sales are not OOM transactions subject to price mitigation. Finally, Grant requests that the Commission grant rehearing to find that Commission Staff's Final Report does not provide a sound basis for adopting producing basin natural gas prices for the MMCP calculation.

Respectfully submitted,

*Bonnie S. Blair*

Bonnie S. Blair
Mark L. Parsons
Attorneys for Public Utility District No. 2 of
Grant County, Washington

Law Offices of:

Thompson Coburn LLP
Suite 600
1909 K Street, N.W.
Washington, D.C. 20006-1167
202-585-6900

April 24, 2003

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 24th day of April, 2003, caused a copy of the
foregoing document to be sent by first-class mail to all parties on the Restricted Service
List in this proceeding.

Mark L. Parsons
Attorney for Public Utility District No. 2 of
Grant County, Washington

Law Offices of:

    Thompson Coburn LLP
    Suite 600
    1909 K Street, N.W.
    Washington, D.C.  20006-1167
    202-585-6900