# Exhibit 4

**ORIGINAL**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**FILED**

DEC 2 2 2003

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

In re

PACIFIC GAS AND ELECTRIC COMPANY,
a California corporation,

                Debtor.

Federal I.D. No. 94-0742640

Case No. 01-30923 DM

Chapter 11 Case

**ORDER CONFIRMING PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR PACIFIC GAS AND ELECTRIC COMPANY PROPOSED BY PACIFIC GAS AND ELECTRIC COMPANY, PG&E CORPORATION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED JULY 31, 2003, AS MODIFIED**

The Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Dated July 31, 2003 As Modified By Modifications Dated November 6, 2003 and December 19, 2003, proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors, in the form attached hereto as Exhibit A, as supplemented by the Composite Plan Supplement in the form attached hereto as Exhibit B (such Plan of Reorganization as so supplemented by such Composite Plan Supplement being hereafter referred to as the "Plan"), having been filed with this Court by Pacific Gas and Electric Company, the debtor and debtor in possession herein and one of the Plan proponents (the "Debtor" or

ENTERED IN BANKRUPTCY DOCKET    DEC 2 2 2003

14272

"PG&E");[1] and the Disclosure Statement for the Plan having been approved by the Disclosure

Statement Order dated July 31, 2003 as containing "adequate information" as such term is defined

under section 1125 of the Bankruptcy Code; and certificates of service and certifications of

publication having been filed with the Court attesting to compliance with the service and publication

requirements of the Disclosure Statement Order; and acceptances and rejections of the Plan by those

holders of Claims that voted thereon having been duly received and tabulated by Innisfree M&A

Incorporated ("Innisfree"), the voting agent appointed in this Chapter 11 Case; and certifications by

Innisfree of ballots accepting or rejecting the Plan having been filed with the Court; and the Court

having considered all objections to confirmation of the Plan; and all such objections to confirmation

of the Plan having been voluntarily withdrawn, overruled or denied by the Court; and upon all of the

evidence presented and the arguments of counsel made at the hearing commencing November 10,

2003 and continuing thereafter to consider, *inter alia*, confirmation of the Plan (the "Confirmation

Hearing"); and upon the entire record of this Chapter 11 Case, and after due deliberation, and

sufficient cause appearing therefor; and the Court having determined that it has jurisdiction to enter

a Final Order with respect to the confirmation of the Plan, and that all requirements of the

Bankruptcy Code for confirmation of the Plan have been satisfied,

   Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that:

   1. The Court has jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§157

and 1334.

   2. Venue is proper before the Court pursuant to 28 U.S.C. §§1408 and 1409.

   3. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§157(b)(2)(L).

---

 [1] Capitalized terms not otherwise defined herein shall have the meanings given such terms in
the Plan.

ORDER CONFIRMING PLAN OF REORGANIZATION
-2-

4.    The Modifications Dated November 6, 2003 to the Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code For Pacific Gas And Electric Company Dated July 31, 2003 and the Modifications Dated December 19, 2003 to the Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code For Pacific Gas And Electric Company Dated July 31, 2003 (collectively, the "Modifications"), which are incorporated into the Plan, are deemed accepted by the parties who voted to accept the Plan as filed on July 31, 2003, because the Modifications do not adversely change the treatment of the Claim of any creditor or the interest of any equity security holder. No holder of a Claim against the Debtor that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications. The Modifications incorporated into the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no additional disclosure, solicitation or voting is required.

5.    Each objection to the Plan and any response or request for continuance regarding confirmation of the Plan not resolved by the terms of this Order, by a separate order entered contemporaneously herewith, or by a statement announced on the record of the Confirmation Hearing and not otherwise withdrawn, waived or settled, is overruled and denied.

6.    The record of the Confirmation Hearing is closed.

7.    The Plan is confirmed. The Debtor is hereby authorized and directed to take all actions required of it thereunder.

8.    Written findings of fact, conclusions of law and an amended Memorandum Decision in support of this Confirmation Order shall be entered shortly hereafter.

9.    This Court hereby approves in all respects the proposed Commission Settlement Agreement to be entered into by the Debtor, PG&E Corporation (the "Parent"), and the California Public Utilities Commission (the "Commission"). The Commission Settlement Agreement and the Settling Parties' respective rights and obligations thereunder shall be fully

ORDER CONFIRMING PLAN OF REORGANIZATION
-3-

1    enforceable by the Bankruptcy Court as material provisions of the Plan the same as if they were set

2    forth verbatim in the Plan.

3            10.    Subject to the occurrence of the Effective Date, the Court hereby orders

4    PG&E, the Parent, and the Commission to perform each and every one of their respective duties and

5    obligations pursuant to the Commission Settlement Agreement including, without limitation, the

6    following:

7

8            (i)    Regulatory Asset. The Commission shall establish a regulatory asset

9    of $2,210,000,000 as a new, separate and additional part of PG&E's rate base (the "Regulatory

10    Asset").

11            (A)    The Regulatory Asset shall be amortized in PG&E's Retail

12    Electric Rates on a "mortgage-style" basis over nine years starting on January 1, 2004, with the

13    details and mechanics of the amortization and earnings of the Regulatory Asset as set forth in

14    Appendix A, Technical Appendix, to the Commission Settlement Agreement, which Appendix was

15    jointly prepared by the Commission and PG&E.

16    

17            (B)    The Regulatory Asset shall earn PG&E's authorized return on

18    equity ("ROE") on the equity component of PG&E's capital structure as set in PG&E's annual cost

19    of capital proceedings, provided that the ROE on the Regulatory Asset shall be no less than 11.22%

20    per year for the life of the Regulatory Asset and that, once the equity component of PG&E's capital

21    structure reaches 52%, the authorized equity component for the Regulatory Asset shall be no less

22    than 52% for the life of the Regulatory Asset.

23    

24            (C)    The Commission will use its usual methodology for tax-

25    effecting the ROE component for purposes of setting PG&E's revenue requirements associated with

26    the unamortized portion of the Regulatory Asset. The Commission will apply the same method of

27

28
                            ORDER CONFIRMING PLAN OF REORGANIZATION
                                                -4-

tax-effecting to the scheduled amortization of the Regulatory Asset, as more fully set forth in

Paragraph 2c of the Commission Settlement Agreement.

(D)    PG&E shall continue to cooperate with the Commission and

the State in seeking refunds from generators and other energy suppliers. The net after-tax amount of

any refunds, claim offsets or other credits from generators or other energy suppliers relating to

PG&E's PX, ISO, QF or ESP costs that PG&E actually realizes in Cash or by offset of Claims in the

Chapter 11 Case shall be applied by PG&E to reduce the outstanding balance of the Regulatory

Asset dollar for dollar, as more fully set forth in Paragraph 2d of the Commission Settlement

Agreement and Appendix A, Technical Appendix, thereto.

(E)    Balances in PG&E's TCBA (as defined in the Commission

Settlement Agreement), determined in accordance with Commission Decision No. 01-03-082, as of

January 1, 2004 shall have no further impact on PG&E's Retail Electric Rates and shall be subject to

no further review by the Commission except for verification of recorded balances, and PG&E's

current Retail Electric Rates will be replaced as of January 1, 2004 by the Retail Electric Rates

resulting from the Commission Settlement Agreement, the Plan and this Confirmation Order.  This

is not intended to affect PG&E's pending application (Application No. 00-07-013) to recover

electric restructuring costs booked into the Electric Restructuring Cost Account pursuant to Public

Utilities Code section 376 or to otherwise affect recovery of QF and other nonbypassable costs

going forward.

(F)    As set forth in Paragraph 2f of the Commission Settlement

Agreement, the URG Rate Base for PG&E already established by the Commission in D.02-04-016

shall be deemed by the Commission to be just and reasonable and not subject to modification,

adjustment or reduction, except as necessary to reflect capital expenditures and any change in

authorized depreciation.  (This shall not preclude the Commission from determining the

ORDER CONFIRMING PLAN OF REORGANIZATION
-5-

1    reasonableness of any capital expenditures made on URG after the Effective Date.)  The

2    Commission shall not in any way reduce or impair the value of the Regulatory Asset or the URG

3    Rate Base by taking the Regulatory Asset or the URG Rate Base, their amortization or earnings into

4    account when setting other revenue requirements and resulting rates for PG&E.  Nor shall the

5    Commission take the Commission Settlement Agreement or the Regulatory Asset into account in

6    establishing PG&E's authorized ROE or capital structure.

7

8                    (G)    The Commission shall act to facilitate and maintain Investment

9    Grade Company Credit Ratings for PG&E in accordance with Paragraph 2g of the Commission

10   Settlement Agreement.

11                    (H)    As part of ensuring that PG&E has the opportunity to recover

12   all its prudently incurred costs of providing service, including return of and return on utility

13   investment, the Commission shall timely act upon PG&E's applications to collect in rates its

14   prudently incurred costs (including return of and return on) of any new, reasonable investment in

15   utility plant and assets.

16

17                    (I)    The Commission shall promptly adjust PG&E's rates

18   consistent with AB 57/SB 1976 and the Commission-DWR Rate Agreement to ensure that PG&E's

19   collection of the following is not impaired:  (1) Fixed Transition Amounts to service existing Rate

20   Reduction Bonds; (2) Regulatory Asset amortization and return; and (3) base revenue requirements

21   (e.g., electric and gas distribution, URG, gas commodity procurement, existing QF contract costs

22   and associated return).

23

24                    (J)    As set forth in Paragraph 2j of the Commission Settlement

25   Agreement, the Commission shall not discriminate against PG&E by reason of the Chapter 11 Case,

26   the Rate Recovery Litigation, the Commission Settlement Agreement, the Regulatory Asset or any

27   other matters addressed or resolved by the Commission Settlement Agreement.

28
                    ORDER CONFIRMING PLAN OF REORGANIZATION
                                        -6-

1    (ii)    Ratemaking Matters.

2    (A)    The Commission shall maintain PG&E's Retail Electric Rates

3  at current levels through December 31, 2003.  As of January 1, 2004, the Commission may adjust

4  the Reorganized Debtor's Retail Electric Rates prospectively consistent with the Commission

5  Settlement Agreement, the Plan, this Confirmation Order and California law.

6    (B)    The Commission shall set PG&E's capital structure and

7  authorized ROE in PG&E's annual cost of capital proceedings in its usual manner; provided that,

8  from January 1, 2004 until either S&P confers on PG&E a Company Credit Rating of at least "A-"

9  or Moody's confers on PG&E a Company Credit Rating of at least "A3," the authorized ROE shall

10  be no less than 11.22% per year and the authorized equity ratio for ratemaking purposes shall be no

11  less than 52%, except for a transition period as provided below.  As set forth in Paragraph 3b of the

12  Commission Settlement Agreement, for 2004 and 2005, the authorized equity ratio shall equal the

13  Forecast Average Equity Ratio (as defined in the Commission Settlement Agreement), but in no

14  event shall it be less than 48.6%.  PG&E shall not pay any dividend on common stock before July

15  1, 2004.

16    (C)    Nothing in the Commission Settlement Agreement, the Plan or

17  this Confirmation Order shall be construed to create a rate freeze or rate cap for PG&E's electric or

18  gas businesses.

19    (iii)    Implementation of Ratemaking.  As set forth in Paragraph 4 of the

20  Commission Settlement Agreement, as soon as practicable after the issuance of the Commission

21  decision approving the Commission Settlement Agreement, PG&E shall file an advice letter to

22  implement all the rate and tariff changes necessary to implement the Plan.  The Commission shall

23  act promptly on the advice filing and revised rates and tariffs.  The Commission shall also review

24

25

26

27

28

ORDER CONFIRMING PLAN OF REORGANIZATION
-7-

1  and issue a decision promptly on the merits of any application for rehearing of the approval of the

2  advice filing.

3          (iv)    Timely Decisions on Ratemaking Matters.  As set forth in Paragraph 5

4  of the Commission Settlement Agreement, the Commission shall promptly act on the pending

5  PG&E ratemaking proceedings listed in Appendix B to the Commission Settlement Agreement.

6

7          (v)    DWR Contracts.  If the Commission desires it, PG&E shall accept an

8  assignment of or assume legal and financial responsibility for the DWR Contracts, provided that (A)

9  PG&E's Company Credit Rating, after giving effect to such assignment or assumption, shall be no

10  less than "A" from S&P and "A2" from Moody's; (B) the Commission shall first have made a

11  finding that, for purposes of assignment or assumption, the DWR Contracts to be assigned or

12  assumed are just and reasonable; and (C) the Commission shall have acted to ensure that PG&E will

13  receive full and timely recovery in its Retail Electric Rates of all costs of such DWR Contracts over

14  their life without further review.  The Commission shall not require PG&E to assume or accept an

15  assignment of legal or financial responsibility for the DWR Contracts unless conditions (A), (B) and

16  (C) in the preceding sentence are all met.  Nothing in this paragraph shall be construed to limit the

17  discretion of the Commission to review the prudence of PG&E's administration and dispatch of the

18  DWR Contracts, consistent with applicable law.

19          (vi)    Headroom Revenues.

20          (A)    As set forth in Paragraph 8a of the Commission Settlement

21  Agreement, the Headroom (as defined in the Commission Settlement Agreement), surcharge and

22  base revenues accrued or collected by PG&E through and including December 31, 2003 are property

23  of the Debtor's chapter 11 estate, have been or will be used for utility purposes, including to pay

24  creditors in the Chapter 11 Case, have been included in PG&E's Retail Electric Rates consistent

25  with state and federal law, and are not subject to refund.

26

27

28

ORDER CONFIRMING PLAN OF REORGANIZATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(B)    The Headroom revenues accrued by PG&E during calendar year 2003 shall not exceed $875 million and shall not be less than $775 million, both on a pre-tax basis. If the amount of Headroom PG&E accrues in 2003 is greater or less than these amounts, the Commission shall take such action in 2004 as is necessary to require PG&E to refund any Headroom accrued in excess of $875 million or, if the accrued Headroom is less than $775 million, to allow PG&E to collect in rates the difference between the Headroom accrued and $775 million.

(vii)    Dismissal of the Rate Recovery Litigation and Other Litigation. On or as soon as practicable after the later of the Effective Date or the date on which the Commission's approval of the Commission Settlement Agreement is no longer subject to appeal, PG&E shall dismiss with prejudice the Rate Recovery Litigation, forgoing any recovery from ratepayers of costs sought in such litigation not otherwise provided for in the Commission Settlement Agreement and the Plan; withdraw the PG&E Plan; dismiss other pending proceedings, as specified in the Commission Settlement Agreement; and provide the other consideration described in the Commission Settlement Agreement. In exchange, on or before January 1, 2004, the Commission shall establish and authorize the collection of the Regulatory Asset and the URG Rate Base, and on or as soon as practicable after the Effective Date, the Commission shall resolve Phase 2 of the presently pending ATCP Application with no adverse impact on PG&E's cost recovery as filed, and provide the other consideration described in the Commission Settlement Agreement. PG&E's motion to dismiss the Rate Recovery Litigation shall be in form and substance satisfactory to the Commission.

(viii)    Dismissal of Other Proceedings. On or as soon as practicable after the later of the Effective Date or the date on which the Commission's approval of the Commission Settlement Agreement is no longer subject to appeal, PG&E and PG&E Corporation, on the one hand, and the Commission, on the other, will execute full mutual releases and dismissals with

ORDER CONFIRMING PLAN OF REORGANIZATION

-9-

prejudice of all claims, actions or regulatory proceedings arising out of or related in any way to the

energy crisis or the implementation of AB 1890 listed on Appendix C to the Commission Settlement

Agreement.  All such releases and dismissals with prejudice shall be in form and substance

satisfactory to PG&E, PG&E Corporation and the Commission.

(ix)    <u>Withdrawal of Certain Applications</u>.

(A)    Promptly upon the Effective Date, PG&E shall withdraw all of

its applications previously filed with the FERC, the NRC, the SEC and elsewhere in connection with

the PG&E Plan.  A full and complete list of such applications is set forth in Appendix D to the

Commission Settlement Agreement.  Upon execution of the Commission Settlement Agreement,

PG&E and PG&E Corporation shall move to obtain or otherwise request a stay of all actions before

the FERC, NRC, SEC or a similar agency initiated by PG&E and/or PG&E Corporation to

implement the PG&E Plan.  In addition, upon execution of the Commission Settlement Agreement

by all Parties, PG&E and PG&E Corporation shall suspend all actions to obtain or transfer licenses,

permits and franchises to implement the PG&E Plan.  On the Effective Date or as soon thereafter as

practicable, PG&E and PG&E Corporation shall withdraw or abandon all such applications for

licenses, permits and franchises.

(B)    In addition to withdrawing its pending applications at FERC,

PG&E and PG&E Corporation, for the life of the Regulatory Asset, shall not, nor shall any of their

affiliates or subsidiaries, make any filing under Sections 4, 5 or 7 of the Natural Gas Act to transfer

ownership of or ratemaking jurisdiction over PG&E's intrastate natural gas pipeline and storage

facilities, and such parties shall keep such natural gas pipeline and storage facilities subject to the

regulation of the Commission.  In addition, PG&E and PG&E Corporation agree that the

Commission has jurisdiction under existing Public Utilities Code section 851 to review and approve

ORDER CONFIRMING PLAN OF REORGANIZATION<br>-10-

1  any proposal by PG&E to dispose of property necessary or useful in the performance of PG&E's

2  duties to the public.

3      (x)    Interest Rate Hedging.  As set forth in Paragraph 12 of the

4  Commission Settlement Agreement, the actual reasonable cost of PG&E's interest rate hedging

5  activities with respect to the financing necessary for the Plan shall be reflected and recoverable in

6  PG&E's retail gas rates and electric rates without further review.

7

8      (xi)    Financing.

9          (A)    All financing shall be arranged and placed by a financing team

10  led by PG&E that includes representatives of the Commission and PG&E and shall be duly

11  authorized by the Commission and subject to the authority and duty of the boards of directors of

12  PG&E and PG&E Corporation to approve such financing.  The financing shall be designed and

13  accomplished so as to minimize the cost to PG&E's ratepayers consistent with achieving an

14  appropriate and financially flexible capital structure.

15

16          (B)    All documents used or prepared by PG&E in connection with

17  the financing, including prospectuses, indentures and notes, shall be in form and substance

18  reasonably satisfactory to the Commission.

19          (C)    The cost of the financing, including principal, interest, any fees

20  or discounts payable to investment bankers, capital markets arrangers or book runners, including the

21  fees to be paid to UBS Warburg LLC and Lehman Brothers pursuant to Paragraph 13d of the

22  Commission Settlement Agreement, as well as any past or future call premiums on reacquired debt,

23  shall be fully recoverable as part of the cost of debt to be collected in PG&E's retail gas and electric

24  rates without further review.

25

26      (xii)    Fees and Expenses.  PG&E shall reimburse the Commission for all of

27  its professional fees and expenses incurred in connection with the Chapter 11 Case (such fees and

28

ORDER CONFIRMING PLAN OF REORGANIZATION
-11-

1    expenses being hereinafter collectively referred to as the "Reimbursable Fees and Expenses," and

2    such fees and expenses of the Commission to include those of Paul, Weiss, Rifkind, Wharton &

3    Garrison LLP, UBS Warburg LLC and Chanin Capital Partners), to the extent determined to be

4    reasonable by the Court and approved by the Court pursuant to a separate motion and order thereon

5    (the "separate motion proceeding"). In such separate motion proceeding, the Court shall determine

6    what provision or provisions of the Bankruptcy Code govern the approval of the Reimbursable Fees

7    and Expenses. To the extent the Court in such separate motion proceeding determines that the

8    reasonableness of the Reimbursable Fees and Expenses must be determined pursuant to sections 330

9    or 503(b) of the Bankruptcy Code, the movants in such separate motion proceeding, before the

10   Court rules on such motion, shall be afforded a reasonable time to file with the Court such additional

11   pleadings and documentation respecting the requested Reimbursable Fees and Expenses as any such

12   movant deems necessary or appropriate. The commencement and outcome of the separate motion

13   proceeding are independent of this Confirmation Order, and the effectiveness of this Confirmation

14   Order is in no way subject to or conditioned upon such commencement or outcome. As provided in

15   Paragraph 15 of the Commission Settlement Agreement, the Commission shall authorize PG&E to

16   recover the amounts so paid or reimbursed to the Commission in retail rates over a reasonable period

17   of time, not to exceed four years.

18           (xiii)    Preservation and Environmental Enhancement of PG&E Land. PG&E

19   is authorized and directed (i) to comply with the Land Conservation Commitment described in

20   Paragraph 17 of the Commission Settlement Agreement and set forth in Appendix E thereto and the

21   Stipulation Resolving Issues Regarding the Land Conservation Commitment (the "Land

22   Conservation Commitment Stipulation") filed herein as Exhibit A to the Stipulation Resolving

23   Objections of California Hydropower Reform Coalition to Plan of Reorganization Under Chapter 11

24   of the Bankruptcy Code for Pacific Gas and Electric Company Proposed by Pacific Gas and Electric

ORDER CONFIRMING PLAN OF REORGANIZATION
-12-

1  Company, PG&E Corporation and the Official Committee of Unsecured Creditors Dated July 31,

2  2003; and Order Thereon, and (ii) to execute all documents, make all payments, and take all other

3  actions that may be necessary to fully perform its obligations in respect thereof.

4           (xiv)  Clean Energy Technology Commitment.  PG&E is authorized and

5  directed to execute all documents, make all payments, and take all other actions that may be

6  necessary to fully perform its obligations under Paragraph 18 of the Commission Settlement

7

8  Agreement, which relates to the support of research and investment in clean energy technologies

9  primarily in PG&E's service territory.

10          (xv)  Cooperation.  The Settling Parties are directed to cooperate fully and

11  in good faith to effectuate the transactions contemplated by the Commission Settlement Agreement

12  and the Plan.  The Settling Parties further are directed to support the Commission Settlement

13
    Agreement, the Plan and this Confirmation Order in all judicial, administrative and legislative
14
    forums.  PG&E, PG&E Corporation and the Commission shall cooperate in all presentations to
15
    credit rating agencies in connection with the consummation of the Plan.
16

17          (xvi)  Termination.  The Commission Settlement Agreement shall terminate

18  at the end of nine (9) years from the Effective Date, provided that all rights of the Settling Parties

19  under the Commission Settlement Agreement that vest on or prior to such termination, including any

20
    rights arising from any default under the Commission Settlement Agreement, shall survive such
21
    termination for the purpose of enforcing such vested rights.
22

23          (xvii)  Specific Performance.  Pursuant to Paragraph 23 of the Commission

24  Settlement Agreement, each of the Settling Parties has agreed that money damages would not be a

25  sufficient remedy for any material breach of any provision of the Commission Settlement

26  Agreement by any Settling Party, and each non-breaching Settling Party shall be entitled to specific

27

28

ORDER CONFIRMING PLAN OF REORGANIZATION
-13-

1    performance and injunctive or other equitable relief as a remedy for any such breach, without the

2    necessity of securing or posting a bond or other security in connection with such remedy.

3            11.    In connection with any action or proceeding concerning the enforcement of

4    the Commission Settlement Agreement, the Plan or this Confirmation Order or other determination

5    of the Settling Parties' rights under the Commission Settlement Agreement, the Plan or this

6    Confirmation Order, the Commission has knowingly and expressly waived all existing and future

7    rights of sovereign immunity, and all other similar immunities, as a defense.  As set forth in

8    Paragraph 20 of the Commission Settlement Agreement, the Commission has consented to the

9    jurisdiction of any court or other tribunal or forum for such actions or proceedings including, but not

10    limited to, the Bankruptcy Court.  Such waiver is irrevocable and applies to the jurisdiction of any

11    court, with respect to any suit, judgment, attachment in aid of execution of a judgment, attachment

12    prior to judgment, set-off or any other legal process with respect to the enforcement of the

13    Commission Settlement Agreement, the Plan or this Confirmation Order or other determination of

14    the Settling Parties' rights under the Commission Settlement Agreement, the Plan or this

15    Confirmation Order.  As set forth in Paragraph 20 of the Commission Settlement Agreement, neither

16    the Commission, nor any other California entity acting on the Commission's behalf, may assert

17    immunity in an action or proceeding concerning the Settling Parties' rights under the Commission

18    Settlement Agreement, the Plan or this Confirmation Order.

19            12.    As set forth in Paragraph 21 of the Commission Settlement Agreement, none

20    of the Settling Parties shall contest the validity and enforceability of the Plan, the Commission

21    Settlement Agreement, this Confirmation Order, or any order entered by the Bankruptcy Court as

22    contemplated by or required to implement the Plan and the Commission Settlement Agreement.

23            13.    The Commission Settlement Agreement is consistent with state law.  Any

24    order entered by the Bankruptcy Court contemplated or required to implement the Plan or the

ORDER CONFIRMING PLAN OF REORGANIZATION

-14-

Commission Settlement Agreement upon the Plan and the Commission Settlement Agreement becoming effective, shall be enforceable under federal law.

14.    The Plan, the Commission Settlement Agreement, and the orders to be entered by the Bankruptcy Court as contemplated under the Commission Settlement Agreement and the Plan, upon becoming effective, shall be irrevocable and binding upon the Settling Parties and their successors and assigns, notwithstanding any future decisions and orders of the Commission.

15.    The Bankruptcy Court shall retain jurisdiction to enforce the Commission Settlement Agreement, the Plan and this Confirmation Order.

16.    The obligations of the Debtor and/or the Reorganized Debtor entered into pursuant to Sections 7.2, 7.3 and 7.5 of the Plan are valid obligations, binding upon and enforceable against the Debtor and/or the Reorganized Debtor, as applicable, by the counterparty or counterparties to such obligations in accordance with the terms and conditions of such obligations.

17.    Except as otherwise expressly provided in the Plan, to the fullest extent permitted by applicable law (including, without limitation, section 105 of the Bankruptcy Code), the occurrence of the Effective Date as to the Debtor shall discharge and release the Debtor, the Reorganized Debtor, and their respective successors and assigns, and the assets or properties of any of the foregoing, as of the Confirmation Date, from any and all Claims, debts, liens, security interests, encumbrances and interests that arose prior to the Confirmation Date, including, without limitation, any Claim of the kind specified in sections 502(g), (h) or (i) of the Bankruptcy Code, and any Claim for interest earned or accrued after the Petition Date.

18.    On or as soon as practicable after the later of the Effective Date or the date on which the Commission approval of the Commission Settlement Agreement is no longer subject to appeal, the Debtor, the Debtor in Possession, the Reorganized Debtor and the Parent shall execute full releases of the Commission, its present and former Commissioners and employees, and the

ORDER CONFIRMING PLAN OF REORGANIZATION
-15-

advisors, consultants and professionals of or to the Commission, in each case in their respective

capacities as such, from any and all Causes of Action held by or assertable on behalf of the Debtor

or the Parent or derivative of the Debtor's or the Parent's rights, that are expressly released, resolved

or dismissed pursuant to Paragraphs 9 and 10 of the Commission Settlement Agreement and

Sections 11.4(a) and (b) of the Plan.

19.    On or as soon as practicable after the later of the Effective Date or the date on

which the Commission approval of the Commission Settlement Agreement is no longer subject to

appeal, the Commission, its present and former Commissioners and employees, as well as the

advisors, consultants and professionals of or to the Commission, in each case in their respective

capacities as such, shall execute full releases of the Debtor, the Debtor in Possession, the

Reorganized Debtor and the Parent, in each case in any capacity, from any and all Causes of Action

held by or assertable on behalf of the Commission or derivative of the Commission's rights, that are

expressly released, resolved or dismissed pursuant to Paragraphs 9 and 10 of the Commission

Settlement Agreement and Sections 11.4(a) and (b) of the Plan.

20.    As of the Effective Date, and subject to the release by the Releasees set forth

in Section 11.6 of the Plan, the releases by the Debtor, the Debtor in Possession and the Reorganized

Debtor, of the Releasees as set forth in Section 11.5 of the Plan shall become effective subject to the

terms and conditions set forth in that section.

21.    In consideration of the release of the Releasees and other valuable

consideration, as of the Effective Date, each of the Releasees, at its option, shall release the Debtor,

the Debtor in Possession, the Reorganized Debtor, the Parent, and their respective subsidiaries and

affiliates, in each case in any capacity, from any and all Causes of Action held by, assertable on

behalf of or derivative from such Releasee, in any way relating to the Debtor, the Debtor in

Possession, the Chapter 11 Case, the Plan, negotiations regarding or concerning the Plan, and the

ORDER CONFIRMING PLAN OF REORGANIZATION
-16-

ownership, management and operation of the Debtor and Debtor in Possession.  The release by the Debtor, the Debtor in Possession and the Reorganized Debtor in Section 11.5 of the Plan shall be provided only to Releasees who execute and deliver to the Debtor, the Debtor in Possession and the Reorganized Debtor a release as provided in Section 11.6 of the Plan and in a form acceptable to the Debtor, the Debtor in Possession and the Reorganized Debtor.

22.    Nothing contained in the Plan or this Confirmation Order shall release or discharge any Causes of Action that do not belong to the Debtor or the estate or that may be asserted directly by third parties against non-debtors, including but not limited to the respective law enforcement actions filed against PG&E Corporation and its officers and directors by the California Attorney General and the City and County of San Francisco seeking injunctive relief and penalties for violations of California Business and Professions Code section 17200 (the "17200 Actions"). Further, in the event it is finally determined, after exhaustion of all federal and state appellate recourse, if any, that the remedy of restitution prayed for in the aforementioned 17200 Actions may be obtained by the California Attorney General and/or the City and County of San Francisco notwithstanding the bankruptcy of Debtor, the release and discharge provisions in the Plan or Commission Settlement Agreement shall not apply to the restitution remedy prayed for in the respective 17200 Actions.  Notwithstanding the foregoing, the release provisions in Section 11.4 of the Plan shall include the mutual releases of any and all Causes of Action of the Parent against the Commission (and/or its related parties as stated therein) and any and all Causes of Action of the Commission against the Parent (and/or its related parties as stated therein) as set forth in the Commission Settlement Agreement and the Plan.   The Court's approval under section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 of the releases in the Plan and Commission Settlement Agreement does not amount to an adjudication of the underlying merits of the claims being released.

ORDER CONFIRMING PLAN OF REORGANIZATION
-17-

23.    Nothing contained in the Plan, the Land Conservation Commitment described in Paragraph 17 of the Commission Settlement Agreement and set forth in Appendix E thereto, the Land Conservation Commitment Stipulation or this Confirmation Order shall adversely affect the rights and interests of the City of Santa Clara with respect to the Grizzly Project, the related Federal Energy Regulatory Commission Project 619 License (known as the "Bucks Creek License"), as described in the Grizzly Development and Mokelumne Settlement Agreement dated March 8, 1990, and as provided for in all related agreements between the parties with respect thereto, including, but not limited to: (a) Amendment Number Four to the Grizzly Development and Mokelumne Settlement Agreement by and between Pacific Gas and Electric Company and City of Santa Clara dated June 5, 2002; (b) Grizzly Operation and Maintenance Agreement by and between Pacific Gas and Electric Company and City of Santa Clara dated June 5, 2002; and (c) Grizzly Billing Dispute Settlement Agreement dated August 26, 2003.  Further, PG&E shall use its best efforts to cause the Stewardship Council to serve all notices provided for in paragraph 11c of the Land Conservation Commitment Stipulation (i.e., of meetings of the Stewardship Council (as defined in the Land Conservation Commitment Stipulation) and of consideration of the disposition of any individual parcel to implement the Land Conservation Commitment) by mail or other effective manner on the City of Santa Clara addressed as follows:  City Manager, City of Santa Clara, 1500 Warburton Avenue, Santa Clara, CA 95050, or at such other address as designed by the City of Santa Clara by written notice to Pacific Gas and Electric Company and the Stewardship Council.

24.    The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets or properties.  Except as otherwise provided in the Plan, (a) as of the Confirmation Date, all such Claims against and Equity

ORDER CONFIRMING PLAN OF REORGANIZATION

-18-

1   Interests in the Debtor shall be satisfied, discharged and released in full and (b) all Persons and

2   Governmental Entities shall be precluded from asserting against the Debtor, its successors, or its

3   assets or properties any other or further Claims or Equity Interests based upon any act or omission,

4   transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

5          25.    Except as otherwise expressly provided in the Plan and in accordance with

6   section 1141(d)(1) of the Bankruptcy Code, to the fullest extent permitted by applicable law

7

8   (including, without limitation, section 105 of the Bankruptcy Code), all Entities who have held, hold

9   or may hold Claims against or Equity Interests in the Debtor, are enjoined, on and after the

10  Confirmation Date, from (a) commencing or continuing in any manner any action or other

11  proceeding of any kind with respect to any such Claim or Equity Interest, (b) the enforcement,

12  attachment, collection or recovery by any manner or means of any judgment, award, decree or order

13  against the Reorganized Debtor on account of any such Claim or Equity Interest, (c) creating,

14

15  perfecting or enforcing any Lien of any kind against the Reorganized Debtor or against the property

16  or interests in property of the Reorganized Debtor on account of any such Claim or Equity Interest,

17  (d) asserting any right of setoff or recoupment of any kind against any obligation due to (or asserting

18  any right of subrogation with respect to any type of claim against) the Reorganized Debtor or against

19  the property or interests in property of the Reorganized Debtor on account of any such Claim or

20  Equity Interest, to the extent and only to the extent such right of setoff, recoupment and/or

21  subrogation is not permitted under applicable law, and (e) commencing or continuing in any manner

22  any action or other proceeding of any kind with respect to any Claims or Causes of Action which are

23

24  extinguished, dismissed or released pursuant to the Plan.  This injunction shall also enjoin all parties

25  in interest, including, without limitation, all entities who have held, hold or may hold Claims against

26  or Equity Interests in the Debtor, from taking any action in violation of this Confirmation Order.

27  Such injunction shall extend to successors of the Reorganized Debtor and their respective properties

28

ORDER CONFIRMING PLAN OF REORGANIZATION
-19-

and interests in property. Except as provided by Sections 11.4, 11.6 and 11.7 of the Plan, this paragraph shall not enjoin, bar or otherwise impair the commencement or prosecution of direct personal claims against any Person other than the Reorganized Debtor.

26. As of the Confirmation Date, none of the Debtor, the Debtor-in-Possession, the Parent, the Committee (including present and former members), the Commission (including its present and former Commissioners), or any of the foregoing's respective members, officers, directors, employees, advisors, professionals and agents, shall have or incur any liability to any holder of a Claim or Equity Interest or other party in interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtor, the Debtor-in-Possession, the Parent, the Committee, the Commission and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided that nothing in this paragraph shall effect a release in favor of any Person other than the Debtor with respect to any debt owed to any Governmental Entity for any liability of such Person arising under (x) the Tax Code, or any state, city or municipal tax code, or (y) the environmental laws of the United States, or any state, city or municipality.

27. All executory contracts and unexpired leases that exist between the Debtor and any Person or Governmental Entity shall be deemed assumed by the Debtor upon the occurrence of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to a Final Order entered prior to the Confirmation Date, (ii) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and

ORDER CONFIRMING PLAN OF REORGANIZATION
-20-

served prior to the Confirmation Date that results in a Final Order or (iii) that is set forth in Schedule 6.1 to the Plan, as contained in the Plan Supplement, as of the Confirmation Date.

28.    Subject to the occurrence of the Effective Date, entry of this Confirmation Order shall constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 6.1 of the Plan; (b) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume or reject the unexpired leases of non-residential property specified in Section 6.1 of the Plan; and (c) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 6.1 of the Plan.

29.    Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 6.1 of the Plan must be properly filed in the Chapter 11 Case and served upon the Debtor no later than thirty (30) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease; (b) notice of entry of the Confirmation Order, and (c) notice of an amendment to Schedule 6.1 of the Plan (as contained in the Plan Supplement). All such Claims not filed within such time shall be forever barred from assertion against the Debtor, its estate and its property.

30.    Except as may otherwise be agreed by the parties, the Debtor shall cure or provide adequate assurance that the Debtor will promptly cure, as provided in Section 6.4 of the Plan, any and all defaults within thirty (30) days after the Effective Date with respect to executory contracts and unexpired leases assumed by the Debtor pursuant to Section 6.1 of the Plan, in accordance with section 365(b)(1) of the Bankruptcy Code. Within thirty (30) days after the Effective Date, the Debtor shall pay, in Cash, (i) all such cure amounts arising prior to the filing of the Chapter 11 Case and (ii) all such cure amounts arising from and after the Petition Date up to (but

1  not including) the date which is sixty (60) days prior to the Effective Date. All such cure amounts

2  arising on or after sixty (60) days prior to the Effective Date shall be treated as Ordinary Course

3  Liabilities. The counterparty shall not be required to file an Administrative Expense Claim or any

4  other Claim with respect to such cure payments. In the event that the counterparty disputes the

5  sufficiency of the cure amount tendered by the Debtor, the notice and dispute resolution procedures

6

7  set forth in Section 6.4 of the Plan shall apply.

8          31.    Except as otherwise provided herein with respect to the Commission, all

9  holders of Professional Compensation and Reimbursement Claims as to which fee applications are

10  required shall file and serve their respective final fee applications, as to all fees and expenses

11  incurred in connection with this Chapter 11 Case prior to the Confirmation Date, no later than 90

12  days after the Confirmation Date. No fee applications shall be required for any professional services

13  rendered after the Confirmation Date, and the Debtor may pay the charges that it incurs after the

14  Confirmation Date for professional fees, disbursements, expenses or related support services without

15

16  application to the Bankruptcy Court.

17          32.    Except as otherwise provided herein or as otherwise subsequently ordered by

18  the Court, all objections to Claims (except for Administrative Expense Claims) shall be filed and

19  served on the applicable claimant no later than the Effective Date, or, if a Claim is permitted to be

20  filed thereafter, within thirty (30) days after such Claim has been filed. Except as to applications for

21  allowance of Professional Compensation and Reimbursement Claims under sections 330 and 503 of

22  the Bankruptcy Code, the Reorganized Debtor shall, on and after the Effective Date, have the

23  exclusive right to make and file objections to Administrative Expense Claims and Claims. Except

24  for Professional Compensation and Reimbursement Claims, and except for claims for cure amounts

25  owed in respect of executory contracts and unexpired leases assumed by the Debtor, all requests for

26

27  allowance and payment of any Administrative Expense Claim arising on or before the Confirmation

28

ORDER CONFIRMING PLAN OF REORGANIZATION
-22-

Date shall be filed no later than 30 days after the Confirmation Date, and all requests for allowance and payment of any Administrative Expense Claim arising after the Confirmation Date and on or before the Effective Date shall be filed no later than 30 days after the Effective Date.

33.    Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any notes or the issuance of any securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan ("Exempt Transactions") shall not be subject to any stamp, real estate transfer, documentary transfer, mortgage recording or other similar tax. All filing or recording officers, wherever located and by whomever appointed, are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, any documents relating to such Exempt Transactions without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by federal, state or local law.

34.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain jurisdiction of all matters arising out of, or related to, this Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.    to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of cure amounts and Claims resulting therefrom;

b.    to hear and determine any and all adversary proceedings, applications and contested matters;

c.    to hear and determine any objection to Administrative Expense Claims or, except as provided in Section 4.15(c) of the Plan, to Claims;

ORDER CONFIRMING PLAN OF REORGANIZATION
-23-

1          d.    to enter and implement such orders as may be appropriate in the event

2    this Confirmation Order is for any reason stayed, revoked, modified or vacated;

3          e.    to issue such orders in aid of execution and consummation of the Plan, to

4    the extent authorized by section 1142 of the Bankruptcy Code;

5          f.    to consider any amendments to or modifications of the Plan, to cure any

6    defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court,

7

8    including, without limitation, this Confirmation Order;

9          g.    to hear and determine all applications for compensation and

10   reimbursement of expenses of professionals under sections 330, 331, 503(b) and 1129(a)(4) of the

11   Bankruptcy Code;

12         h.    to hear and determine disputes arising in connection with the

13   interpretation, implementation or enforcement of the Commission Settlement Agreement, the Plan

14   and/or this Confirmation Order;

15

16         i.    to hear and determine proceedings to recover assets of the Debtor and

17   property of the Debtor's estate, wherever located;

18         j.    to hear and determine matters concerning state, local and federal taxes in

19   accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

20         k.    to hear and determine matters concerning the escrow(s), if any,

21

22   established pursuant to Section 5.4(g) of the Plan;

23         l.    to hear any other matter not inconsistent with the Bankruptcy Code; and

24         m.    to enter a final decree closing this Chapter 11 Case.

25         35.    All Persons holding Claims or Equity Interests which are dealt with under the

26   Plan are hereby directed in accordance with the terms of the Plan to execute, deliver, file, or record

27   any document, and to take any action necessary to implement, effectuate and consummate the Plan

28

ORDER CONFIRMING PLAN OF REORGANIZATION
-24-

1   in accordance with its terms, and all such entities shall be bound by the terms and provisions of all

2   documents to be executed by them in connection with the Plan.

3       36.    In the event of any conflict or inconsistency between the terms of (a) the Plan,

4   the Commission Settlement Agreement, or the Disclosure Statement, on the one hand, and (b) this

5   Confirmation Order, on the other, the terms of this Confirmation Order shall control.  In the event of

6   any conflict or inconsistency between the Plan and the Disclosure Statement, the terms of the Plan

7

8   shall control.  The Commission Settlement Agreement and its appendices, including the

9   Commission's Decision No. 03-12-035 (the "Commission Decision"), are to be considered part of

10  the Plan and this Order, and further, PG&E, the Parent and the Commission each explicitly agrees

11  that the Commission Settlement Agreement and its appendices, including the Commission Decision,

12  the Plan and the Order, when read together, reflect their understanding of the Commission

13
    Settlement Agreement.
14

15      37.    To the extent provided by the Plan, the Debtor shall continue to exist on the

16  Effective Date, as the Reorganized Debtor, with all the rights and powers of such corporations under

17  applicable law.  Except as otherwise provided in the Plan, on or after the Effective Date, any and all

18  assets and properties of the estate, and any and all assets and properties acquired by the Debtor or

19  the Reorganized Debtor under any provision of the Plan, shall vest in the Reorganized Debtor, free

20  and clear of any and all Claims, Liens, charges or other encumbrances.  Except as otherwise

21  provided by the Plan, on and after the Effective Date, the Reorganized Debtor may operate its

22  business and may use, acquire and dispose of assets and properties and compromise or settle any

23  claims against it without supervision or approval by the Bankruptcy Court and free of any

24  restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly

25  imposed by the Plan, this Confirmation Order, any other agreement to which the applicable

26  Reorganized Debtor is a party and which survives the Effective Date, or applicable law.

27

28
                        ORDER CONFIRMING PLAN OF REORGANIZATION
                                            -25-

38.     On the Effective Date, the Committee shall be deemed dissolved and the members of the Committee shall be deemed released and discharged from all rights and duties arising from or related to this Chapter 11 Case; provided that counsel for the Committee and Committee professionals shall retain standing, where applicable, and be entitled to recover all reasonable and necessary costs incurred for services rendered and expenses incurred in connection with the following:  (i) any applications for allowance of compensation and reimbursement of expenses incurred prior to the Confirmation Date pending on the Effective Date or filed after the Effective Date pursuant to Section 2.2 of the Plan or requested pursuant to this Confirmation Order; (ii) responding to inquiries from creditors in Class 5, Class 6 or Class 8 regarding the Plan; (iii) analyzing, researching, filing documents, or making appearances, where necessary, to protect the interests of creditors in Class 5, Class 6 or Class 8 or to address implementation of the Plan as it pertains to such creditors; and (iv) any action taken at the request of the Reorganized Debtor.

39.     Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the Exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Confirmation Order shall be binding upon (a) the Proponents, (b) the Reorganized Debtor, (c) the respective subsidiaries and affiliates of the Proponents and the Reorganized Debtor, (d) all holders of Claims against or Equity Interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan, (e) all Settling Parties, (f) any other party in interest, and (g) each of the foregoing's respective successors and assigns.

40.     The Debtor is authorized and empowered (a) to execute, deliver, modify (to the extent such modification does not materially and adversely affect the rights of another Person unless the Debtor obtains the written consent of such Person) and/or file all Exhibits to the Plan and

ORDER CONFIRMING PLAN OF REORGANIZATION

-26-

the documents and agreements introduced into evidence at the Confirmation Hearing (including all exhibits and attachments thereto) and any and all other documents and agreements necessary to consummate and implement the Plan and (b) to perform any and all corporate acts and/or actions in implementing the Plan.  No modifications shall be made to the Commission Settlement Agreement, however, except as provided by Paragraph 27 thereof.

41.    The Amended And Restated Indenture Of Mortgage Between Pacific Gas And Electric Company And BNY Western Trust Company, in substantially the form marked as "PG&E/OCC Exhibit 142" and admitted into evidence in the Confirmation Hearing (the "Indenture"), under which the New Mortgage Bonds will be issued if none of the New Money Notes are secured, is hereby approved.   If none of the New Money Notes are secured as of the Effective Date, BNY Western Trust Company, in its capacity as trustee under the Indenture, is hereby directed to execute the Indenture no later than the Effective Date, to be effective upon the Effective Date.

42.    The chairman of the board, the president or any vice president and the secretary, the chief financial officer, the treasurer or any assistant secretary or assistant treasurer of the Reorganized Debtor shall cause the Articles of Incorporation and Bylaws of the Reorganized Debtor to contain the provisions necessary to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, and the chairman of the board, the president, any vice president, the chief financial officer, the controller, the secretary, the treasurer, any assistant treasurer and any assistant secretary, jointly or severally, shall exercise the power and authority of the Debtor and/or the Reorganized Debtor to effectuate the provisions of the Plan.

43.    If this Confirmation Order is vacated because, *inter alia*, the Effective Date does not occur, then (a) no distributions under the Plan shall be made, (b) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though this Confirmation Order had never been entered and (c)

ORDER CONFIRMING PLAN OF REORGANIZATION
-27-

the Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained in this Confirmation Order shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other Person or Governmental Entity or prejudice in any manner the rights of the Debtor or any other Person or Governmental Entity in any further proceeding involving the Debtor; provided, however, that the amounts paid pursuant to Section 4.2(a) of the Plan on account of Post-Petition Interest may be recharacterized as a payment upon the applicable Allowed Claims, in the sole discretion of the PG&E Proponents, but the Debtor will not otherwise seek to recover such amounts.

44.    This Confirmation Order is and shall be deemed to be a separate Order with respect to the Debtor for all purposes. The Clerk is directed to file and docket this Confirmation Order in the Chapter 11 Case.

45.    The Chapter 11 Case shall not qualify as "fully administered" within the meaning of section 350 of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure, and a final decree shall not be entered in the Chapter 11 Case, until the later of (i) nine (9) years after the Effective Date, and (ii) the date the Regulatory Asset shall have been fully amortized in the Reorganized Debtor's Retail Electric Rates.

//

//

//

//

//

//

//

ORDER CONFIRMING PLAN OF REORGANIZATION
-28-

1         46.    The failure specifically to include or reference any particular provision of the

2  Plan or of the Commission Settlement Agreement in this Confirmation Order shall not diminish or

3  impair the effectiveness of such provision, it being the intent of the Court that the Plan be

4  confirmed, and the Commission Settlement Agreement be approved, in their entirety.

5  Dated: *December 22, 2003*

6

7                          _____

8                             HONORABLE DENNIS MONTALI
                       UNITED STATES BANKRUPTCY JUDGE

9

10

11  APPROVED AS TO FORM AND SUBSTANCE:

12  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

13

14  By _____
             Alan W. Kornberg

15         COUSEL TO CALIFORNIA
       PUBLIC UTILITIES COMMISSION

16   UNITED STATES BANKRUPTCY COURT
Northern District of California

17  I certify that this is a true, correct and **full copy**
of the original document on file in my **custody.**

18  Dated   *Aug. 25, 2004*

19  by _____
Deputy Clerk

20

21

22

23

24

25

26

27

28  WD 122103/1-1419968/1114842/v9

              ORDER CONFIRMING PLAN OF REORGANIZATION