1 | Peter G. McAllen (State Bar No. 107416)
JONES DAY
2 | 555 S. Flower St., 50th Floor
Los Angeles, CA 90071
3 | Telephone:   (213) 489-3939
Facsimile:    (213) 243-2539
4 | E-mail:       pmcallen@jonesday.com

5 | Tobias S. Keller  (State Bar No. 151445)
JONES DAY
6 | 555 California Street, 26th Floor
San Francisco, CA  94104-1500
7 | Telephone:   (415) 626-3939
Facsimile:    (415) 875-5700
8 | E-mail:       tkeller@jonesday.com

9 | Attorneys for Plaintiff
PUBLIC UTILITY DISTRICT NO. 2 OF
10 | GRANT COUNTY, WASHINGTON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, WASHINGTON<br><br>Plaintiff.<br><br>vs.<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Defendant. | Case No. C 07-03243 JSW<br><br>Chapter 11 Case<br><br>Bankr. Case No. 01-30923 DM<br><br>**PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY WASHINGTON'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR (I) WITHDRAWAL OF REFERENCE OF PROOF OF CLAIM AND (II) TRANSFER OF VENUE THEREOF**<br><br>Date:         October 12, 2007<br>Time:         9:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge:        Hon. Jeffrey S. White |

LAI-2899118v4

**REPLY TO OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1
II. ISSUES PRESENTED ........................................................................................... 3
III. STATEMENT OF FACTS ..................................................................................... 3
IV. ARGUMENT .......................................................................................................... 3
    A. Nothing in the Plan or Related Documents Precludes this Court from Withdrawing the Reference ........................................... 3
        1. Section 4.15 of the Plan does not require FERC to liquidate the Grant Claim ............................................................. 3
        2. The discharge injunction in Section 9.6 of the Plan does not prevent the withdrawal of the reference or transfer of venue ............................................................................. 4
        3. Grant did not waive its right to seek a withdrawal of the reference ....................................................................................... 7
        4. The Motion was procedurally proper .......................................... 8
    B. Ample Cause Exists for the Withdrawal of the Reference ................... 9
        1. Courts may withdraw the reference with respect to core matters ........................................................................................... 9
        2. There is no efficiency in allowing FERC to determine the amount of the Grant Claim because it lacks jurisdiction ................................................................................... 10
    C. Transfer of Venue to the Washington District Court is Proper .......... 13
V. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## **CASES**

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
  24 Cal. 4th 83 (2000) ..................................................................................................15

*Bonneville Power Admin. v. Fed. Energy Regulatory Comm'n*,
  422 F.3d 908 (9th Cir. 2005)...................................................................................passim

*Carlton v. Baww, Inc.*,
  751 F.2d 781 (5th Cir. 1985)...........................................................................................6

*Columbia Gas Transmission Corp. v. FERC*,
  404 F.3d 459 (D.C. Cir. 2005) ..................................................................................11, 12

*Douglas v. United States District Court*,
  ___ F.3d ___, 2007 WL 2069542
  (No. 06-75424, 9th Cir. June 7, 2007) ...............................................................................15

*Dulworth v. U.S. Office Products Co. (In re U.S. Office
  Products Co. Securities Litigation)*,
  313 B.R. 73 (D.D.C. 2004) .............................................................................................7

*Fed. Trade Comm'n v. First Alliance Mortg. Co. (In re First
  Alliance Mortg. Co.)*,
  282 B.R. 894 (C.D. Cal. 2001)..............................................................................5, 6, 9, 10

*In re U.S. Airways Group, Inc.*,
  296 B.R. 673 (E.D. Va. 2003).........................................................................................8

*Internal Rev. Serv. v. CM Holdings, Inc. (In re CM Holdings, Inc.)*,
  221 B.R. 715 (D. Del. 1998). .........................................................................................8

*O'Hara Corp. v. F/V North Star*,
  212 B.R. 1 (D. Me. 1997)..............................................................................................6

*Urban Box Office Network, Inc. v. Interfase Managers, LP
  (In re Urban Box Office Network, Inc.)*,
  2003 WL 22971510 (S.D.N.Y. Dec. 18, 2003). ..................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

### **STATUTES**

28 U.S.C. § 157(a) .................................................................................................... 5

28 U.S.C. § 157(b)(2)(B) ........................................................................................... 9

28 U.S.C. § 157(d) ......................................................................................... 5, 6, 8, 9

28 U.S.C. § 1334(b) ................................................................................................... 5

Fed. Powers Act § 205, 16 U.S.C. § 824d ......................................................... 11, 12

Fed. Powers Act § 206, 16 U.S.C. § 824e .......................................................... 11, 12

### **MISCELLANEOUS**

Rule 5011-2(a) of the Local Bankruptcy Rules for the Northern
   District of California ............................................................................................ 8

## I.     INTRODUCTION

This Memorandum is filed by Plaintiff Public Utility District No. 2 of Grant County, Washington ("Grant") in reply to the opposition (docket no. 16) (the "Opposition") of Defendant Pacific Gas and Electric Company (the "Debtor") to Grant's Motion for (I) Withdrawal of the Reference of Proof of Claim and (II) Transfer of Venue Thereof to the United States District Court for the Eastern District of Washington (docket no. 1) (the "Motion").

Grant's Motion seeks relatively simple relief: it seeks to liquidate its proof of claim (the "Grant Claim") – which was filed in the Debtor's chapter 11 case pending in the United States Bankruptcy Court for the Northern District of California (the "California Bankruptcy Court") – in the forum where it would be most efficient and convenient to do so. That most convenient forum is the United States District Court for the Eastern District of Washington (the "Washington District Court"), where Grant initiated a civil action more than three years ago against certain third parties relating to the electricity sales underlying the Grant Claim.

The Debtor advances two meritless and almost desperate arguments against the Motion. First, the Debtor misconstrues its own plan of reorganization (the "Plan") and the effect of the Plan on this Court's jurisdiction over bankruptcy matters, to argue incorrectly that granting the Motion would violate the Plan. Second, the Debtor substitutes its wishful and mischievous misreading of the Ninth Circuit's decision in *Bonneville Power Admin v. Fed. Energy Regulatory Comm'n*, 422 F.3d 908 (9th Cir. 2005) for that Court's plainly stated and unequivocal holding, in order to argue incorrectly that the Federal Energy Regulatory Commission ("FERC") can lawfully, and should, adjudicate the prices of Grant's electricity sales to the Debtor.

The Debtor's first argument is that the Motion is procedurally improper and would violate the Plan because Grant is seeking to liquidate its claim "in a forum

LAI-2899118v4                                          -1-

**REPLY TO OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE**

1  other than the Bankruptcy Court or FERC." (Opposition at 11, ln. 25). The
2  argument is completely without merit. Indeed, as set forth below, the Plan
3  specifically contemplates that claims such as the Grant Claim may be resolved
4  outside of FERC "to the extent the Debtor has an objection based on a matter that is
5  not the subject matter of the FERC Refund Proceedings."

6  Because the Ninth Circuit in *Bonneville* specifically found that the claims of
7  government entities such as Grant were no longer subject to FERC jurisdiction, and
8  thus the FERC Refund Proceedings, the Grant Claim can no longer be resolved by
9  FERC. Accordingly, under the terms of the Plan, the resolution of the Grant Claim
10 reverts back to the California Bankruptcy Court.

11 In addition, because a bankruptcy court derives its jurisdiction by referral
12 from the district court, the district court always remains free to withdraw such
13 reference of jurisdiction with respect to any bankruptcy matter, such as the Grant
14 Claim, notwithstanding any contrary language in a plan. As a result, this Court
15 remains free to withdraw the reference from the California Bankruptcy Court with
16 respect to the Grant Claim without any violation of or modification to the Plan.

17 The Debtor's second argument is that Grant fails to justify the withdrawal of
18 the reference and the transfer of venue for the liquidation of the Grant Claim to the
19 Washington District Court because it would be more efficient to allow FERC to
20 determine the proper amount of the claim. This argument, too, completely misreads
21 the import of the Ninth Circuits' decision in *Bonneville*. Despite the clear language
22 of *Bonneville*, the Debtor argues that "FERC has not been deprived of the authority
23 to calculate the California market participants' refund liabilities by" *Bonneville*.
24 (Opposition at 2, lns. 12-13). This is simply wrong. *Bonneville* states plainly that
25 "FERC's rate jurisdiction under § 205 and its refund jurisdiction under § 206
26 expressly apply only to public utilities, again reinforcing the definitional and scope
27 provisions of the statutory scheme." 422 F.3d at 918. FERC does not have
28 jurisdiction to adjust rates or order refunds with respect to government entities such

as Grant. Accordingly, the liquidation of the Grant Claim at FERC is simply not an option, and this Court should withdraw the reference and transfer the liquidation of the claim to the Washington District Court, where proceedings involving all other relevant parties are currently pending.

## II.    ISSUES PRESENTED

The relevant issues presented to this Court are set forth in the Memorandum in Support of the Motion (docket no. 6) (the "Memorandum"), and Grant hereby incorporates these issues into this Reply.

## III.    STATEMENT OF FACTS

The relevant facts for this Court to decide the Motion are set forth in the Memorandum, and Grant hereby incorporates these facts into this Reply.

## IV.    ARGUMENT

### A.    Nothing in the Plan or Related Documents Precludes this Court from Withdrawing the Reference.

As indicated above, the Debtor argues that the withdrawal of the reference for the liquidation of the Grant Claim would violate two separate provisions in the Plan, and thus would require an impermissible modification to the Plan. Withdrawal of the reference, however, is routinely granted by district courts, even after a plan is confirmed, and does not require any modification to the Plan or relief from the discharge injunction set forth in the Plan.

#### 1.    Section 4.15 of the Plan does not require FERC to liquidate the Grant Claim

The Debtor cites a portion of Section 4.15 of the Plan for the proposition that the "Debtor agrees that for purposes of determining the amount of Allowed ISO, PX and Generator Claims . . . , the Debtor will prosecute the FERC Refund Proceedings only before FERC . . . ." (Plan, § 4.15). The Debtor argues that the quoted language precludes liquidation of the Grant Claim anywhere but at FERC. If any part of Section 4.15 is relevant here, however, it is the second part – the part

conveniently not quoted by the Debtor – which expressly provides that the Debtor may seek the allowance of ISO, PX and Generator Claims, such as the Grant Claim, in the California Bankruptcy Court "to the extent the Debtor has an objection based on a matter that is not the subject matter of the FERC Refund Proceedings." (Plan, § 4.15). As explained in the Memorandum, the Ninth Circuit unequivocally held in *Bonneville* that FERC does not have jurisdiction over claims of governmental entities such as Grant. *Bonneville*, 422 F.3d at 918 ("FERC's rate jurisdiction under § 205 and its refund jurisdiction under § 206 expressly apply only to public utilities, again reinforcing the definitional and scope provisions of the statutory scheme."). Because the Grant Claim is not within the subject matter of the FERC Refund Proceedings,[1] objections to the Grant Claim may be pursued in the California Bankruptcy Court pursuant to Section 4.15 of the Plan.

Moreover, by its plain language, Section 4.15 of the Plan only restricts the *Debtor's* choice of forum for objecting to ISO, PX or Generator Claims. That section places no apparent restriction on a claimant's choice of forum for liquidating its claim. For instance, Section 4.15 says that "the *Debtor* agrees that . . . the *Debtor* will prosecute the FERC Refund Proceedings only before FERC . . . ." (Plan, § 4.15) (emphasis added). Accordingly, nothing in Section 4.15 of the Plan prohibits Grant from seeking to have the Grant Claim liquidated in forum other than FERC (or the California Bankruptcy Court).

    2.  **The discharge injunction in Section 9.6 of the Plan does not prevent the withdrawal of the reference or transfer of venue**

The Debtor argues, in the alternative, that the discharge injunction set forth in Section 9.6 of the Plan, which prohibits holders of claims against the Debtor from pursuing their claims "except as otherwise expressly provided [in the Plan], the

---

[1] Indeed, under seven decades of settled law interpreting and applying the Federal Power Act, FERC has never had jurisdiction over rates charged by governmental entities such as Grant. FERC's contrary holding, which was rejected by the Ninth Circuit in *Bonneville*, is and always was a dead letter.

Confirmation Order or a separate order of the Bankruptcy Court," (Plan, § 9.6) bars withdrawal of the reference and transfer of venue for the liquidation of the Grant Claim. But, (i) nothing in the Plan even purports to preclude withdrawal of the reference with respect to the Grant Claim; and (ii) under settled law, even if the Plan contained such a provision it would not be effective.

Under the terms of Section 9.6 of the Plan, Grant is permitted to prosecute the Grant Claim in compliance with the Plan. Even assuming that the restrictions set forth in Section 4.15 of the Plan apply to Grant, Grant is certainly permitted to prosecute the Grant Claim in the California Bankruptcy Court (since FERC has no jurisdiction as a result of the *Bonneville* decision). In turn, because Grant is permitted to liquidate the Grant Claim in the California Bankruptcy Court, it can also seek withdrawal of the reference for the liquidation of the Grant Claim without violating the discharge injunction. Grant is not seeking to assert the Grant Claim in a brand new forum, but is simply asking this Court to withdraw its reference for the Grant Claim currently pending in California Bankruptcy Court from the bankruptcy court back to the district court. A district court always remains free to withdraw the reference with respect to any matter in a bankruptcy case, and nothing in the Plan prevents this Court from doing so for the Grant Claim.

Bankruptcy courts derive their power from district courts. Pursuant to 28 U.S.C. § 1334(b), district courts rather than bankruptcy courts have original jurisdiction over all bankruptcy matters. *See, e.g., Fed. Trade Comm'n v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.)*, 282 B.R. 894, 901 (C.D. Cal. 2001). Pursuant to 28 U.S.C. § 157(a), each district court may provide that any or all cases under the Bankruptcy Code shall be referred to the bankruptcy judges for the district. *See id.* ("the district courts may automatically 'refer' all bankruptcy matters to the bankruptcy court").[2] Finally, 28 U.S.C. § 157(d) provides a

---

[2] In fact, all bankruptcy matters in the Northern District of California have been automatically referred from this Court to the California Bankruptcy Court pursuant to Northern Dist. General Order No. 24.

mechanism whereby matters pending in a bankruptcy court may be transferred back to the district court. *See id.*

Because the original jurisdiction over bankruptcy matters belongs to the district court, the district court remains free to withdraw the reference at any time pursuant to section 157(d) with respect to any bankruptcy case or any matter within the bankruptcy case. *See, e.g. Carlton v. Baww, Inc.*, 751 F.2d 781, 788 (5th Cir. 1985) (holding that "a referral from the district court to a bankruptcy judge does not forever divest the district court of original subject matter jurisdiction").

In effect, by preserving jurisdiction over the allowance of claims for itself pursuant to the Plan, the California Bankruptcy Court was not precluding this Court from exercising jurisdiction over such claims. Rather, it was preserving the jurisdiction of this Court, from which the California Bankruptcy Court derives its jurisdiction, to hear such claims also. In *Urban Box Office Network, Inc. v. Interfase Managers, LP (In re Urban Box Office Network, Inc.)*, 2003 WL 22971510 (S.D.N.Y. Dec. 18, 2003), a party argued that a plan provision that reserved jurisdiction in the bankruptcy court for certain matters was not sufficient to give the district court jurisdiction over such matters. The district court disagreed, explaining:

> any jurisdiction exercisable by the bankruptcy court is necessarily derived from the jurisdiction of the district court. Since a district court has jurisdiction of all matters of which the bankruptcy court has jurisdiction, this court has jurisdiction of UBO's breach of contract action notwithstanding the withdrawal of the reference to the bankruptcy court. The Plan's provision for the retention of jurisdiction [by the bankruptcy court] of this civil proceeding is effective to support the contiued exercise of jurisdiction over the matter in this [district] court.

*Id*. at *3. *See also O'Hara Corp. v. F/V North Star*, 212 B.R. 1, 4 (D. Me. 1997) (noting that "'the bankruptcy court is merely a unit of the district court' and 'has no jurisdictional authority independent of this [district] court'") (citations omitted).

1   Moreover, nothing in a plan or confirmation order can preclude the District
2   Court from withdrawing the reference when appropriate under section 157(d).  For
3   example, in *Dulworth v. U.S. Office Products Co. (In re U.S. Office Products Co.*
4   *Securities Litigation)*, 313 B.R. 73 (D.D.C. 2004), a district court was required to
5   interpret provisions in a debtor's plan of reorganization and confirmation order that
6   gave the bankruptcy court "exclusive jurisdiction" over certain matters, including
7   the allowance of claims.[3]  The court found that the plan and confirmation order
8   could not divest the district court of jurisdiction, noting that multiple circuit court
9   "conclusions have been uniform and unambiguous: district courts cannot be
10  divested of jurisdiction by subsequent bankruptcies even if subsequent bankruptcy
11  plans grant bankruptcy courts jurisdiction over the matters in questions." *Id.* at 80
12  (citations omitted).

13              3.    **Grant did not waive its right to seek a withdrawal of the**
14                    **reference**

15  The Debtor also argues that Grant somehow waived its right to seek
16  withdrawal of the reference by the insertion of a reservation of rights in an order of
17  the California Bankruptcy Court extending the deadline for the Debtor to object to
18  certain claims.  (Opposition at 11, lns. 14-23).  But when viewed in context (i.e., an
19  insert into a claim objection extension order), it is clear that the purpose of this
20  provision was simply to reserve Grant's rights to seek an earlier resolution of the
21  Grant Claim rather than await the possibly distant outcome of FERC Refund
22  Proceedings.  It was not meant to lock the Grant Claim into a particular forum.
23  Moreover, implicit in the resolution of the Grant Claim at the California
24  Bankruptcy Court is the ability to seek a withdrawal of the reference of that matter

---

[3] Nothing in the Debtor's Plan purports to give the California Bankruptcy Court exclusive jurisdiction over the Grant Claim or prohibits Grant from seeking to withdraw the reference.  For example, the "Retention of Jurisdiction" section in Article X of the Plan provides that the California Bankruptcy Court retains jurisdiction over certain matters, including the allowance of claims, but not exclusive jurisdiction.

LAI-2899118v4                           -7-
**REPLY TO OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE**

from the California Bankruptcy Court to this Court under appropriate circumstances pursuant to 28 U.S.C. § 157(d).

### 4. **The Motion was procedurally proper**

The Debtor says that the Motion was procedurally improper because it violates the Plan provisions cited above. But as described above, this Court remains free to withdraw the reference pursuant to its powers under section 157(d). Ironically, under Rule 5011-2(a) of the Local Bankruptcy Rules for the Northern District of California, the Motion was originally filed in the California Bankruptcy Court, but then transferred to this Court. If this procedure really was improper as the Debtor suggests, apparently a party would need to seek relief from the discharge injunction or a modification of the plan, in the bankruptcy court, before filing a motion to withdraw the reference in the very same bankruptcy court. That would be nonsense and simply is not the procedure followed by courts. *See, e.g., In re U.S. Airways Group, Inc.*, 296 B.R. 673, 676 (E.D. Va. 2003) (district court considered motion to withdraw reference filed by claimant after plan confirmation without requiring relief from discharge injunction or plan modification); *Internal Rev. Serv. v. CM Holdings, Inc. (In re CM Holdings, Inc.)*, 221 B.R. 715, 717 (D. Del. 1998) (same).

Also ironic is the fact that even the Debtor has implicitly recognized that as a result of the Ninth Circuit's decision in *Bonneville*, it must seek a resolution of the issues underlying the Grant Claim in a forum outside of FERC. Rather than going to the California Bankruptcy Court, as the Debtor claims that Grant must do, the Debtor chose to sue Grant in the Los Angeles County Superior Court. The Debtor certainly does not complain of improper procedure in its own conduct in initiating that lawsuit.

In sum, it is up to this Court to exercise its powers under 28 U.S.C. § 157(d) to determine whether withdrawal of the reference with respect to the Grant Claim is appropriate. Nothing in the Plan purports to or could prohibit this Court from

exercising that power to determine the most efficient and appropriate forum for such matters.

### B. Ample Cause Exists for the Withdrawal of the Reference.

The Debtor alleges that Grant has not justified a withdrawal of the reference for the liquidation of the Grant Claim, principally because the resolution of the Grant Claim is a "core" proceeding under 28 U.S.C. § 157(b)(2)(B) and because it would be more efficient to have the claim liquidated by FERC. Both of these arguments fail. In fact, courts routinely withdraw the reference even with respect to core matters when the other relevant factors support withdrawal. In addition, as described throughout the Memorandum and this Reply, *FERC does not have jurisdiction to determine the amount of the Grant Claim.* Despite the Debtor's wishful interpretation of *Bonneville* set forth in the Opposition, FERC cannot liquidate the Grant Claim, and thus the Washington District Court is the most appropriate forum to determine the amount of the claim.

#### 1. Courts may withdraw the reference with respect to core matters

The Debtor claims that because the liquidation of the Grant Claim is a core matter under 28 U.S.C. § 157(b)(2)(B), it should stay in the California Bankruptcy Court. The Debtor's simple analysis goes astray because it ignores the more complex realities of this case.

It is true that district courts will often first look to whether a matter is a core or non-core proceeding in determining whether to withdraw the reference pursuant to 28 U.S.C. § 157(d). It is also true that courts will typically withdraw the reference with respect to non-core matters because of concerns regarding jury trials or the ability of bankruptcy courts to make final judgments. The reverse, however, is not always true. That is, district courts do not always deny the withdrawal of the reference for core matters and, in fact, routinely withdraw the reference if the other factors in the court's analysis support a withdrawal. *See, e.g., First Alliance*,

1  282 B.R. at 902 (withdrawing reference for proofs of claim filed by government
2  entities "as a matter of efficiency and judicial economy").

3      In this case, there is absolutely no reason to keep the liquidation of the Grant
4  Claim in the California Bankruptcy Court.  The California Bankruptcy Court has
5  taken no steps to liquidate the Grant Claim or, to Grant's knowledge, any other
6  electric generator claim filed in the Debtor's chapter 11 case, and it has no
7  specialized knowledge regarding the issues surrounding the Grant Claim.[4]  By
8  contrast, a lawsuit involving these issues has been pending in the Washington
9  District Court for over three years, and the court there has recently entered an order
10 allowing the proceedings in that case to proceed to trial. (McAllen Decl., Ex. F).
11 Thus, that forum would be the most efficient place to liquidate the Grant Claim.

12     2.    **There is no efficiency in allowing FERC to determine the**
13         **amount of the Grant Claim because it lacks jurisdiction**

14     The Debtor argues in its Opposition that the reference for the liquidation of
15 the Grant Claim should not be withdrawn because the claim should stay at the
16 California Bankruptcy Court where FERC can liquidate the claim.  The Debtor
17 argues that this would be most efficient because "FERC's expertise and intimate
18 familiarity with these claims amply justify the Bankruptcy Court's decision to have
19 FERC liquidate them." (Opposition at 15, lns. 14-15).  The Debtor further explains
20 that "*Bonneville* does nothing to remove the Grant Claim from this complex mass
21 of millions of intertwined transactions. . . . nor did it divest FERC of authority to
22 determine the amounts properly due under [the ISO Tariff]." (Opposition at 15-16,
23 lns. 22-1).

24     Once again, however, the Debtor is reading *Bonneville* as it wishes and
25 ignoring what *Bonneville* plainly says.  As described in detail in the Memorandum,
26 *Bonneville* conclusively determined that Grant, as a government entity, is not

---

[4] Even the Debtor acknowledges that the Grant Claim should be liquidated outside the California Bankruptcy Court.  It argues that the claim should be liquidated either by FERC or by a California state court.

subject to FERC's price mitigation authority. (Memorandum at 5, lns. 11-12). Accordingly, FERC simply does not have jurisdiction to determine the amount due to Grant under any scenario, no matter the Debtor's assertions to the contrary.

In spite of the Ninth Circuit's binding holding in *Bonneville* enforcing the express Congressional limitations on FERC's jurisdiction under the Federal Power Act, the Debtor now argues that Grant is somehow contractually obligated nevertheless to abide by FERC's *ultra vires* orders and accept FERC's retroactive regulation of Grant's rates <u>just as if FERC actually did have §§ 205 and 206 jurisdiction over Grant</u>. The Debtor asserts that in *Bonneville*, "the Ninth Circuit recognized the broad and continuing scope of FERC authority to re-set prices under those tariffs and otherwise regulate the markets, and that such exercise of authority could indeed be enforced against even governmental entities." (Opposition at 7, lns. 22-25). In other words, the Debtor contends that by participating in the ISO and PX markets, Grant has contractually conferred upon FERC authority to determine retroactively its rates and require Grant to pay refunds – authority which Congress expressly <u>withheld</u> from FERC under the Federal Power Act.

It is well established that private parties <u>cannot</u> confer jurisdiction on FERC beyond what was conferred by Congress. *See Columbia Gas Transmission Corp. v. FERC*, 404 F.3d 459, 461 (D.C. Cir. 2005). In *Columbia Gas*, the D.C. Circuit explained its holding as follows:

> But jurisdiction cannot arise from the absence of objection, or even from affirmative agreement. To the contrary, "as a statutory entity, the Commission cannot acquire jurisdiction merely by agreement of the parties before it." *American Mail Line Ltd. v. FMC*, 164 U.S. App.D.C. 66, 503 F.2d 157, 170 (D.C. Cir. 1974); *see California Ind. Sys. Operator Corp. v. FERC*, 362 U.S.App.D.C. 28, 372 F.3d 395, 298 (D.C. Cir. 2004). As the Supreme Court has explained, "parties cannot confer jurisdiction; only Congress can." *Weinberger v. Bentex Pharms., Inn.*, 412 U.S. 645, 652, 37 L.Ed.2d 235, 93 S.Ct. 2488, (1973). In this case, Congress has clearly declined to do so.

404 F.3d at 463. Similarly, in *Bonneville,* the Ninth Circuit expressly rejected the argument posited by the Debtor here that, by "having participated in the California markets and sold power under the relevant Tariffs," Grant waived any immunities and agreed to abide by FERC refund orders:

> The fact is that FERC's regulatory authority is bound by statute, and utilities can neither waive that authority to opt in or out of FERC's jurisdiction…. FERC cannot exercise jurisdiction or authority unless authorized by statute, regardless of whether the jurisdiction is exercised without objection or even with the consent of the relevant parties.

*Bonneville,* 422 F.3d at 923-25.

Since sections 205 and 206 of the Federal Power Act do not give FERC authority over non-public utilities, it is not now and never was legally possible for Grant, by contract or otherwise, to give FERC the authority to set, much less adjust, the rates at which Grant sells electricity retroactively. The Debtor's reliance on the Tariffs for such an expansion of FERC's jurisdiction over Grant is unavailing and should be rejected by this Court.

In explaining its recent order lifting the stay of the lawsuit pending there, the Washington District Court agreed that the FERC proceedings had no bearing on the claim asserted by Grant in light of the *Bonneville* decision:

> In sum, "the retroactive imposition of a market price that effects a refund responsibility is a regulatory action that falls outside of FERC's jurisdiction with respect to non-public utilities and government entities." [*Bonneville*] at 920. The Defendant opposes lifting the stay until the Ninth Circuit rules on Grant's appeal and FERC acts on Grant's request for relief, but never disputes that after *Bonneville* FERC is without jurisdiction over non-public and governmental entities such as Grant, and therefore cannot resolve the state-law contract dispute at issue in this action.

(McAllen Decl., Ex. F at 5, lns. 15-22). The Washington District Court concluded that "it would be reasonable to assume that Grant will be

dismissed [from the FERC action] because 'non-public' utilities and government entities, such as Grant, are not subject to FERC's price mitigation authority under *Bonneville*." (McAllen Decl., Ex. F at 6, lns. 1-4). In other words, the one federal district court that has considered the effect of *Bonneville* on Grant's claims has found that FERC has no authority to determine the claims, contrary to the Debtor's allegations. Accordingly, it is clear that the most appropriate and efficient venue to resolve the issues surrounding the Grant Claims is not FERC, but rather the Washington District Court.

### C.  Transfer of Venue to the Washington District Court is Proper.

The Debtor opposes the transfer of venue for the liquidation of the Grant Claim from this Court to the Washington District Court on two primary grounds. First, it argues that the "interests of justice" are served by retaining the claim in the California Bankruptcy Court where the claim has been referred to FERC for liquidation. For the reasons stated above, FERC cannot liquidate the Grant Claim as a result of *Bonneville*, so that argument is without merit.

Second, the Debtor asserts that the liquidation of the Grant Claim may not be transferred to the Washington District Court because, pursuant to the FERC's November 23, 2004 Order, Grant is bound by the ISO Tariff, which requires that any action relating to it be brought in the State of California. Once again, however, *Bonneville* trumps the Debtor's argument. *Bonneville* expressly holds that "the provisions of subchapter II . . . do not apply to governmental entities," 422 F.3d at 911, and on that basis *Bonneville* expressly requires FERC to vacate all of its orders purporting to assert refund authority over Governmental Entities. ("[W]e grant the petition and set aside FERC's orders related to the 2000 and 2001 spot market to the extent the orders subject the governmental entities . . . to FERC's refund authority under FPA chapter II." *Id.*) Obviously, when FERC implements these directives, the November 23, 2004 Order will be included in those vacated. The

November 23, 2004 Order's *ultra vires* misapplication of contract law in finding that Grant is contractually bound to the ISO tariff is, accordingly, a dead letter.

Grant also did not consent to the jurisdiction of a California court or contractually agree to California as a forum. The Debtor argues that Grant is subject to jurisdiction in California because Grant was a party to the ISO Tariff, even though it never signed a written agreement to be bound by the Tariff, under an "implied-in-fact" contract theory, by virtue of having participated in the California markets and having sold power under the relevant Tariffs. (Opposition at 8, lns. 1-2). The Debtor relies on a provision in the ISO Tariff which states that actions arising out of or relating to the Tariff:

> shall be brought in any court of the State of California or any federal court of the United States of America located in the State of California. **Market participants** irrevocably waive any objection that they may have now or in the future to said courts…

(ISO Tariff, § 20.7) (emphasis added). However, these assertions are simply false with respect to Grant.

Grant has never signed nor otherwise agreed to be bound by a Participating Generator Agreement or Scheduling Coordinator Agreement nor expressly or implicitly agreed to be bound by the terms of the ISO and/or CalPX tariffs.[5] (Culbertson Decl., ¶¶ 7, 8, 19.) As the ISO tariff provision relied upon by the Debtor makes clear, these tariffs govern "market participants" in the ISO and/or CalPX wholesale electric energy markets. And, despite the Debtor's best efforts to lump Grant in with a number of other governmental entities who may or may not be market participants, one fact cannot be disputed by the Debtor: Grant is not a market participant. (*Id*., ¶¶ 7, 8.) As such, the Debtor's assertion that Grant

---

[5] It should also be noted that Grant has never signed or executed any sales agreement that contains a forum selection clause or similar terms. (Culbertson Decl., ¶ 10.)

consented to personal jurisdiction and agreed to California as the forum to resolve disputes based on the ISO or CalPX tariffs fails.[6]

## V. CONCLUSION

For all of the foregoing reasons, Grant respectfully requests that this Court grant the relief requested in the Motion.

Dated: August 31, 2007

Respectfully submitted,

By: /s/ Peter G. McAllen
Peter G. McAllen, CA SB#107416

Attorneys for Claimant
PUBLIC UTILITY DISTRICT NO. 2
OF GRANT COUNTY
WASHINGTON

---

[6] At bottom, the Debtor's theory of jurisdiction by consent boils down to the claim that Grant is bound by a one-sentence written waiver of constitutional rights buried in a document hundreds of pages long, identified on its face as a "Tariff," not a "contract," which nowhere mentions Grant, which was never presented to Grant, which Grant never signed, and to which Grant never contemplated or understood it was agreeing. Such a waiver would plainly be unenforceable as both procedurally and substantively unconscionable. *See, e.g., Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113-114 (2000) (describing general principles of unconscionability under California law). *See also Douglas v. United States District Court*, ___ F.3d ___, ___, slip. op. at 6, 2007 WL 2069542*2 (No. 06-75424, 9th Cir. June 7, 2007) (enforcement of provision added to contract without notice to party "reflects fundamental misapplication[ ] of contract law").

LAI-2899118v4                                    -15-

**REPLY TO OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE**