# **Exhibit A**

121 FERC ¶ 61,067
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION


Before Commissioners:  Joseph T. Kelliher, Chairman;
                       Suedeen G. Kelly, Philip D. Moeller,
                       and Jon Wellinghoff.


| | |
|---|---|
| San Diego Gas & Electric Company | Docket No.  EL00-95-164 |
| v. | |
| Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange | |
| Investigation of Practices of the California Independent System Operator Corporation and the California Power Exchange | Docket No.  EL00-98-184 |


ORDER ON REMAND

(Issued October 19, 2007)

1.     This case is before the Commission on remand from the United States Court of Appeals for the Ninth Circuit (Ninth Circuit).[1]  At issue is whether the Commission has refund authority over wholesale electric energy sales made by governmental entities and other non-public utilities participating in Commission-regulated, organized energy markets administered by public utilities.  The Commission originally extended refund liability to governmental entities and non-public utility sellers, for the period of October 2, 2000 to June 20, 2001.  The Commission based this decision on the participation of these entities in the California Independent System Operator Corporation (CAISO) and California Power Exchange Corporation (PX) centralized single clearing price auction markets pursuant to market rules approved by the Commission and administered by

---

[1] *Bonneville Power Admin. v. FERC*, 422 F.3d 908 (9th Cir. 2005) (*Bonneville*).

Commission-jurisdictional entities.[2]  Numerous non-public utilities petitioned the Ninth Circuit for review of the Commission's determination that ordered both public and non-public utilities to make refunds.  The Ninth Circuit granted the petition, setting aside the Commission's orders related to the 2000 and 2001 energy spot market to the extent that the orders subject governmental entities and non-public utilities to the Commission's refund authority under Federal Power Act (FPA) section 206.[3]  The Ninth Circuit remanded to the Commission for proceedings consistent with its findings.

2.     In light of the Ninth Circuit's decision, we vacate each of the Commission's California refund orders to the extent that they subject non-public utility entities to the Commission's FPA section 206 refund authority.  We further direct the CAISO/PX to complete their refund calculations including all entities that participated in the CAISO/PX markets for the period October 2, 2000 through June 20, 2001.

3.     While we sympathize with the equitable concerns raised by some parties that, unlike public utilities, we have no authority under FPA section 206 to order non-public utility entities to pay refunds associated with their sales into the CAISO and PX spot markets during the refund period, we must nonetheless follow the Ninth Circuit's remand decision in *Bonneville*.  However, the Commission's inability to order non-public utility entities to pay refunds under FPA section 206 does not preclude such parties from seeking a remedy in state/federal courts.[4]

I.    **Background**

      A.    **Refund Order**

4.     On July 25, 2001, the Commission issued an order that established the scope and methodology for calculating refunds related to transactions in spot markets operated by the CAISO and PX during the period of October 2, 2000 through June 20, 2001.[5]  The Commission found that it could, under the specific circumstances of this case, assert FPA section 206 refund authority over non-public utility sellers of energy in the CAISO/PX

---

[2] *See San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 96 FERC ¶ 61,120 at 61,499 (Refund Order), *order on reh'g*, 97 FERC ¶ 61,275 (2001) (Refund Rehearing Order).

[3] 16 U.S.C. § 824e (2000).

[4] *See Bonneville*, 422 F.3d at 925.

[5] Refund Order, 96 FERC at 61,499.

markets.[6]  It stated that, under the single price auction mechanism operated in the centralized CAISO and PX spot markets, all sellers, including non-public utilities, agreed to the same clearing price for any given sale.  Furthermore, the Refund Order stated that California cannot regulate out-of-state sellers and has declined to regulate California non-public utilities' sales in the CAISO and PX spot markets.  As a result, absent Commission jurisdiction, a regulatory gap for these sales could exist.

## B.    Refund Rehearing Order

5.      The Refund Rehearing Order responded to the requests for rehearing of several governmental entities and other non-public utilities arguing that the Commission erred in making refunds applicable to sales by governmental entities and other non-public utilities.  These entities asserted that the Commission's rate and refund authority under FPA sections 205[7] and 206[8] applies only to public utilities and that FPA section 201(f)[9] expressly exempts governmental entities and other non-public utilities from Commission jurisdiction unless the statute specifically provides otherwise.  These entities further argued that the Commission does not have subject matter jurisdiction over governmental entities and other non-public utilities' sales into the Commission-regulated CAISO and PX markets because section 201(f) overrides the more general statutory provision in section 201(b)[10] and the refund holding here nullifies FPA section 201(f).

6.      The Refund Rehearing Order denied the governmental entities and other non-public utilities' requests for rehearing of the Commission's determination that refunds are applicable to sales by all sellers, including governmental entities.  The Commission found that the governmental entities and others sold energy in a centralized, single clearing price auction market under which all sellers received the same price for a given sale, pursuant to market rules set by the Commission and administered by public utilities, the CAISO and PX, subject to Commission jurisdiction.  The Commission found that the involvement of the CAISO and PX, along with the interstate nature of the wholesale sales, gave it subject matter jurisdiction entirely independent of the jurisdictional nature of the entities.

---

[6] *Id.* at 61,511-13.

[7] 16 U.S.C. § 824d (2000).

[8] 16 U.S.C. § 824e.

[9] 16 U.S.C. § 824(f) (2000).

[10] 16 U.S.C. § 824(b) (2000).

### C.    <u>Remand</u>

7.    On September 6, 2005, the Ninth Circuit issued an opinion granting a petition for review of the Commission's determination making both public and non-public utilities subject to refunds. As noted by the court, the petitioners[11] are non-public utilities each of whom received the single price for its electric energy sales regardless of whether it was the last and highest bid that cleared the market.

8.    The court first considered whether the FPA clearly addresses the Commission's authority to order refunds from governmental entities and other non-public utilities that sold energy in the CAISO and PX markets. The court found that the dispute centers on whether the general applicability of the FPA to "the sale of electric energy at wholesale in inter-state commerce," contained in FPA section 201(b)(1), overrides the more specific FPA provisions, such as FPA sections 205 and 206, that exclude governmental entities from the Commission's authority to enforce just and reasonable rates and to order refunds.[12]

9.    The court stated that FPA section 201(f) provides that governmental entities and other non-public utilities are not subject to the provisions of subchapter II of the FPA unless specifically stated in the relevant provisions.[13] The court held that each of the petitioners, with the exception of Arizona Electric,[14] falls within the general exclusion of

---

[11] The petitioners are Bonneville Power Administration (Bonneville); Cities of Anaheim, Azusa, Banning, Colton, and Riverside, California (Southern Cities); Sacramento Municipal Utility District (SMUD); City of Los Angeles Department of Water and Power (LADWP); and Arizona Electric Power Cooperative, Inc. (Arizona Electric). The petitioner-intervenors are the Cities of Burbank, Palo Alto, Pasadena, Redding, and Santa Clara, California; Imperial, Modesto, and Turlock Irrigation Districts; State Water Contractors/the Metropolitan Water District of Southern California (State Water Contractors/Metropolitan); M-S-R Public Power Agency; Northern California Power Agency; and Transmission Agency of Northern California.

[12] *Bonneville*, 422 F.3d at 914-15.

[13] *Id.* at 914-15.

[14] Arizona Electric is a non-profit rural electric generation and transmission cooperative that obtained some of its financing through the Rural Utilities Service (RUS) and is subject to a RUS mortgage under the federal Rural Electrification Act of 1936. The court agreed with the D.C. Circuit's conclusion in *City of Paris v. Fed. Power Comm'n*, 399 F.2d 983, 986 (D.C. Cir. 1968), that the Rural Electrification Administration (now RUS)-financed cooperatives are not government instrumentalities

(continued…)

"governmental entities." The court stated that subchapter II of the FPA does not include a specific reference to the Commission's jurisdiction over governmental entities for refund purposes. It stated that the Commission's argument that the identity of the sellers should be ignored and instead the court should look at the subject matter ignores a basic principle of statutory construction: that a specific provision controls a general provision.

10.     The court found that Bonneville, as a federal entity, is clearly exempt under section 201(f). According to the court, the Commission acknowledged that it does "not have direct regulatory rate authority over power sales by non-public utilities."[15] The court rejected the Commission's claims that it could still reach the sales of public entities because these transactions were wholesale sales of electric energy in interstate commerce and were governed by Commission-approved rules and a Commission-jurisdictional CAISO and PX. The court also disagreed that the Commission was only resetting the market-clearing price to a just and reasonable level. Instead, the court found that the Commission was ordering governmental and other non-public utilities to pay refunds, an action that lies outside Congress' clearly expressed intent that FPA section 206 only apply to public utilities.[16]

11.     The court cited *Mid-Continent Area Power Pool*[17] and noted that the remedy in this case may lie in a contract claim rather than a refund proceeding. The court held that Mid-Continent Area Power Pool (MAPP) is a power pool including public and non-public utilities. The court stated that the Commission found that part of the MAPP tariff violated FPA section 205 and ordered refunds.[18] The court stated that, although the Commission, in *MAPP I*, determined that it could not order Nebraska Public Power District (Nebraska District), a governmental entity/non-public utility, to pay refunds, the Commission suggested that a contract action might provide a remedy for public utility members of MAPP against the Nebraska District. The court found that additional proceedings in federal court demonstrated that, while the Commission could not order refunds from a governmental entity, parties to the MAPP agreement could bring a

_____

for the purposes of FPA section 201(f). The court treated Arizona Electric as a non-public utility in these proceedings, but without prejudice to reclassification by the Commission in a different proceeding.

[15] *Bonneville*, 422 F.3d at 910.

[16] *Id.* at 920.

[17] *Mid-Continent Area Power Pool*, 89 FERC ¶ 61,135 (1999) (*MAPP I*).

[18] *Bonneville*, 422 F.3d 908 at 925 (citing *MAPP I*, 89 FERC ¶ 61,135).

contract action that could "result in the equivalent refund relief from Nebraska District."[19]

### D.    **Procedural Section**

12.    On April 2, 2007, California Parties[20] filed a motion for procedures following the remand in *Bonneville*.  Indicated Public Entities,[21] the CAISO, LADWP, Nevada Companies,[22] Bonneville/Western,[23] PX, Avista Energy, Inc. (Avista) filed answers to California Parties' motion.  California Parties filed an April 30, 2007 answer to the answers/motions of Indicated Public Entities, Bonneville/Western, and LADWP. Indicated Public Entities, Bonneville/Western, and State Water Contractors/Metropolitan filed answers to California Parties' April 30, 2007 answer.

13.    On May 10, 2007, Nevada Companies filed a motion regarding the remand proceedings.  The CAISO filed a response to Nevada Companies' motion.  Nevada Companies filed a motion for leave to reply to the CAISO's answer to Nevada Parties' motion.

14.    On April 18, 2007, LADWP filed a motion for an order directing disbursement of amounts owed to governmental entities.  The City of Pasadena, the CAISO, and Indicated Public Entities filed answers to LADWP's motion.  The City of Burbank, the City of

---

[19] *Id.* at 925 (citing *Alliant Energy, Inc. v. Neb. Pub. Power Dist.*, 2001 U.S. Dist. LEXIS 17802 (D. Minn. 2001) (*Alliant I*), aff'd, 347 F.3d 1046 (8th Cir. 2003) (*Alliant II*)).

[20] The California Parties include the People of the State of California, *ex rel.* Edmund G. Brown Jr., Attorney General, the California Electricity Oversight Board, the California Public Utilities Commission, Pacific Gas and Electric Company, San Diego Gas & Electric Company, and Southern California Edison Company.

[21] Indicated Public Entities include Arizona Electric, SMUD, Modesto Irrigation District, Turlock Irrigation District, Northern California Power Agency, Metropolitan Water District of Southern California, Public Utility District No. 2 of Grant County, Washington, and the California Cities of Anaheim, Banning, Burbank, Glendale, Pasadena, Redding, Riverside, Santa Clara, and Vernon.

[22] Nevada Companies include Nevada Power Company and Sierra Power Company.

[23] Bonneville/Western include Bonneville Power Administration and Western Area Power Administration.

Glendale, and Turlock Irrigation District also jointly filed an answer to LADWP's motion.

15.    Pinnacle West[24] filed a motion for modification of refund procedures and an answer to LADWP's motion.  LADWP, Nevada Companies, Indicated Public Entities, and Bonneville/Western filed answers to Pinnacle West's motion.  The City of Santa Clara, the City of Redding, and Modesto Irrigation District also jointly filed an answer to Pinnacle West's motion.  Salt River Project Agricultural Improvement and Power District (Salt River Project) filed an answer to the motions of Pinnacle West and Nevada Companies.

16.    On May 25, 2007, California Parties filed an answer to Nevada Companies and to pleadings of LADWP, Bonneville/Western, and Indicated Public Entities.  Indicated Public Entities filed a reply to California Parties' May 25, 2007 answer.

I.    **Discussion**

    A.    **Application of Commission refund jurisdiction to governmental entities / non-public utilities**

        **Comments**

17.    California Parties state that the Commission should ensure that the CAISO and PX complete their calculations of wholesale transactions using the mitigated market-clearing price methodology (MMCP), without regard to whether transactions involved governmental entities.  They assert that the Commission should order those governmental entities that wish to offset their potential liability overcharges to make cost filings.[25] California Parties assert that *Bonneville* did not invalidate the Commission's finding that all transactions in the CAISO and PX markets during the refund period were overpriced or that all tariff rates for all such transactions should be revised using the MMCP

---

[24] Pinnacle West includes Pinnacle West Capital Corporation and Arizona Public Service Company.

[25] California Parties note that the Commission ordered this in its August 8, 2005 order.  *See San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 112 FERC ¶ 61,176 (2005) (August 8th Order), *reh'g pending*; *see also San Diego Gas & Elec. Co v. Sellers of Energy and Ancillary Servs.*, 114 FERC ¶ 61,070 (2006), *reh'g pending*.

methodology.[26]  They state that the Commission revised the pricing formulations contained in the CAISO/PX tariffs for the period to which the MMCP applies.[27] California Parties contend that these issues were the subject of the *CPUC* appeal, in which the Ninth Circuit rejected all efforts by sellers to limit the scope of transactions subject to the MMCP methodology, not *Bonneville*.  They state that because the *CPUC* mandate has not issued yet, these issues remain within the exclusive jurisdiction of the Ninth Circuit, and are not subject to question before the Commission.

18.     California Parties note that the Ninth Circuit, in *Bonneville*, states that the most likely remedy for the governmental entities' overcharges is "in a contract claim, not a refund action."[28]  They explain that, based upon the Ninth Circuit's opinion, they have initiated civil litigation against the governmental entities in federal and state courts, just as other power pool members sued Nebraska District in federal district court in *Alliant I*. California Parties state that, in the *MAPP* proceeding, the Commission found that members of the power pool, both public utilities and governmental entities, had overcharged for transmission services.[29]  Similarly, they assert that the Commission found, in the instant case, that both public utilities and governmental entities overcharged for power sold through the CAISO and PX markets.[30]  California Parties contend that the Commission ordered the MAPP to re-calculate transmission charges,[31] just as it has ordered here that the CAISO and PX re-calculate energy and ancillary services charges.[32] They state that one of the governmental entities in MAPP, Nebraska District, refused to refund overcharges, stating that the Commission could not order refunds because it was not a public utility.  California Parties assert that other members of MAPP brought a civil

---

[26] California Parties note that they believe that, as a result of the Ninth Circuit's opinions in *Lockyer v. FERC*, 383 F.3d 1006 (9th Cir. 2004) (*Lockyer*), and *Pub. Utils. Comm'n of the State of Cal. v. FERC*, 462 F.3d 1027 (9th Cir. 2006) (*CPUC*), the Commission must also order the CAISO and PX to apply the MMCP to rates charged during the summer period.

[27] California Parties Apr. 2, 2007 Motion for Procedures Following Remand, Docket No. EL00-95 at 13 (California Parties Motion for Remand Procedures).

[28] *Id.* at 9 (citing *Bonneville*, 422 F.3d at 925).

[29] *Id.* at 11 (citing *Alliant II*, 347 F.3d at 1049; *Bonneville*, 422 F.3d at 925).

[30] *Id.* (citing Refund Order, 96 FERC at 61,512).

[31] *Id.* (citing *Alliant I*, 2001 U.S. Dist. LEXIS 17802 at *7-8).

[32] *Id.* (citing Refund Order, 96 FERC at 61,512).

action against Nebraska District for failing to abide by its contractual obligations under the Commission-filed tariff. In the instant proceedings, California Parties note that they have brought a similar civil suit against governmental entities for failing to abide by their contractual obligations under the CAISO and PX tariffs. The district court ruled that Nebraska District was contractually obligated to abide by the Commission's refund order because the MAPP Agreement – like the CAISO and PX tariffs – was subject to Commission jurisdiction "regardless of whether FERC has regulatory authority over [Nebraska District] itself."[33]

19.    California Parties contend that, in the *MAPP* proceeding, the Commission did not order MAPP to cease calculating the amount of Nebraska District's overcharge, even after the Commission found that it did not have the authority to compel Nebraska District to refund its overcharges. Rather, they assert, MAPP completed its calculations and then billed Nebraska District.[34] They state that, here, as in the *MAPP* proceeding, the completion of the CAISO and PX's recalculations of all sellers' accounts will facilitate the speedy resolution of court actions to enforce the governmental entities' repayment liabilities.

20.    Nevada Companies state that the *Bonneville* decision left in place the netting requirement pertaining to refunds jurisdictional utilities owe. They note that the court stated that the issue was that the Commission cannot require governmental entities to pay refunds, not the Commission's decision to include governmental entities in refund calculations. They contend that the Commission should complete refund calculations without regard to the jurisdictional status of transacting parties. They request that the fundamental attribute of the MMCP methodology, that refunds be calculated only on the basis of hourly net positions, be left in place. They state that this will ensure that jurisdictional utilities retain the ability to net the refunds they owe against the overcharges they already paid, both to jurisdictional and non-jurisdictional entities.[35]

21.    LADWP states that there is no precedent for the California Parties' request that the Commission delay implementation of *Bonneville* by ordering the CAISO and PX to

_____

[33] *Id.* at 12 (quoting *Alliant I*, 2001 U.S. Dist. LEXIS 17802 at *14).

[34] *Id.* at 14 (citing *Alliant I*, 2001 U.S. Dist. LEXIS 17802, at *8).

[35] Nevada Companies May 10, 2007 Motion, Docket No. EL00-95 at 10-11 (Nevada Companies May 10, 2007 Motion) (citing *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 812 (D.C. Cir. 1998) (court held that the company was not required to refund money because it "had not garnered a windfall in the process"); *Distrigas of Mass. v. FERC*, 751 F.2d 20 (1st Cir. 1984) (court held that the utility could not refund more money than its rate change brought in)).

continue their refund calculations and to delay payments to governmental entities as if
*Bonneville* never issued. It asserts that the *MAPP/Alliant* case precedent does not support
the California Parties' request. It contends that, initially, the Commission did not order
MAPP to include Nebraska District's refunds in its refund calculations for the purpose of
providing a measure of damages for complainants against Nebraska District. LADWP
states that the Commission did not order MAPP to refrain from paying amounts due to
Nebraska District pending a judicial determination of Nebraska District's contractual
liability. LADWP states that MAPP collected the amounts owed to Nebraska District
from other MAPP members and placed them in escrow pending resolution of the issues
related to Nebraska District's non-payment of refunds.

22.     LADWP states that *Bonneville* renders cost recovery offset filings by
governmental entities moot. LADWP asserts that the Commission has found that a cost
offset filing would be moot if the seller does not have a refund liability.[36] In their
answer, Indicated Public Entities agree with this assertion.

23.     Indicated Public Entities assert that the Commission must dismiss all claims for
refunds asserted against non-jurisdictional sellers and vacate each of its orders to the
extent that it purports to order non-jurisdictional sellers to pay refunds in the proceeding.
Indicated Public Entities state that the Commission did not amend the CAISO and PX
tariffs to reset market prices – it ordered refunds. They contend that the Commission

---

[36] LADWP Apr. 17, 2007 Answer, Docket No. EL00-95 at 13 & n.46 (citing *San Diego Gas & Elec. Co.*, Docket No., EL00-95, Notice of Extension of Time, at 2 n.4 (2007)) (LADWP Apr. 17, 2007 Answer). LADWP noted that the Commission has stated:

> Note that *Bonneville* held that the Commission lacks refund authority over wholesale electric energy sales made by governmental entities. *See Bonneville*, 422 F.3d at 911. The Commission has determined that an entity that ultimately has no refund liability has no liability to offset, *see San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 114 FERC ¶ 61,070 (2006), *reh'g pending*, and, therefore, *a cost filing to obtain a cost offset would be moot in such circumstance*. (Emphasis added).

*San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Servs.*, 114 FERC ¶ 61,070 at P 130 (2006) ("If a party does not have a refund liability, then there is no need to determine an appropriate cost offset at this time").

expressly ruled that it was not determining that all sales were made at unjust and unreasonable prices.[37]

24.     Bonneville/Western state that the mandate specifically exempts the governmental entities from refund liability.  As such, they assert that the Commission has no authority to order the CAISO and PX to continue refund calculations including the governmental entities.  They contend that the Commission cannot compel governmental entities to make cost filings.

25.     Bonneville/Western state that the refund methodology did not amend the tariff, but instead established the MMCP methodology for the calculation of refunds. Bonneville/Western state that FPA section 206 proceedings do not retroactively amend a tariff, but merely give a legal mechanism for the Commission to impose refunds on jurisdictional entities as a matter of discretion.  They assert that California Parties are attempting to have the Commission interpret the *CPUC* decision in a vacuum without regard to *Bonneville*.

26.     Bonneville/Western state that the Commission's role for public utilities is to determine if rates are just and reasonable.  Under the Northwest Power Act, they note that the Commission reviews Bonneville's rates only to ensure that these rates are sufficient to ensure repayment of the federal investment and based on total system costs, the criteria imposed by section 7(a) of the Act.[38]  They contend that, after the Commission approves Bonneville's rates, these rates take effect with no opportunity for the Commission to later reconsider them.  They state that, under separate authorities,[39] the process and the results

---

[37] Indicated Public Entities Apr. 17, 2007 Answer, Docket No. EL00-95 at 22 & n.23 (Indicated Parties Apr. 17, 2007 Answer) (citing *San Diego Gas & Elec. Co.*, 93 FERC ¶ 61,294, at 61,998 (2000)).

[38] Bonneville/Western Apr. 17, 2007 Answer, Docket No. EL00-95 at 18 (citing *Aluminum Co. of Am. v. Bonneville Power Admin.*, 903 F.3d 585, 592 (9th Cir. 1989), *cert. denied*, 498 U.S. 1024 (1991) (contrasting Commission role under the FPA to that under the Northwest Power Act); *Cent. Lincoln People's Util. Dist. v. Johnson*, 735 F.2d 1101, 1113 n.6 (9th Cir. 1984) (expressly rejecting the argument that the "substantive provisions of the FPA are meant to govern the rate review under section 7(k)"); *S. Cal. Edison Co. v. Jura*, 909 F.2d 339, 343-44 (9th Cir. 1990) (same)).

[39] *Id.* (citing sections 301 (b), 302(a) and 644 of the Department of Energy Organization Act, Pub. L 95-91 (42 U.S.C. § 7101, *et seq.*); section 5 of the Flood Control Act of 1944 (16 U.S.C. § 825s); the Reclamation Projects Act of 1902 (43 U.S.C. § 372, *et seq.*) as amended and supplemented by subsequent enactments, particularly

(continued…)

are the same with respect to Western.  Further, they state that the Commission's review of Western's rates is also limited to sufficiency of repayment and it cannot adjust those rates (only send them back to Western for further consideration).  Bonneville/Western assert that, in the event that the Commission continues the calculation of refunds for Bonneville or Western, the Commission would have no jurisdiction under the Northwest Power Act, Western's authorities, or the FPA to put into effect any such recalculated rate.

27.    In their answer, California Parties respond that governmental entities have failed to provide any reason why the Commission should not apply *MAPP* case precedent to this proceeding.  They assert that *Bonneville* did not hold anything other than the fact that the Commission cannot require governmental entities to repay their overcharges. California Parties state that the *CPUC* decision, which was decided after *Bonneville*, proves that the court did not give the governmental entities a free pass to avoid any future Commission proceedings.[40]

28.    Further, California Parties state that they did not request that the Commission force governmental entities to make cost filings.  California Parties state that the cost filings are a benefit to sellers that allows them to seek cost offsets to protect them from revenue shortfall.  California Parties add that the Northwest Power Act is irrelevant because they are not asking the Commission to put into effect any recalculated rate with regard to Bonneville or Western.  Instead, they note that their requests are all directed to the CAISO and PX.

29.    In their response to California Parties Apr. 30 Answer, Indicated Public Entities state that California Parties' assertion that cost filings are optional is disingenuous.  They contend that, if non-jurisdictional sellers fail to submit cost filings, and the Commission orders the CAISO and PX to proceed with the calculation of refunds attributable to non-jurisdictional sellers, as though *Bonneville* never issued, then California Parties would contend in the contract litigation that the non-jurisdictional seller that declined to submit a cost filing to the Commission waived its right to mitigation of its potential refunds.

---

section 9(c) of the Reclamation Project Act of 1939 (43 U.S.C. § 485h(c)) and the Acts specifically applicable to individual projects or power systems; and which have been codified at 10 C.F.R. Part 903).

[40] California Parties Apr. 30, 2007 Answer, Docket No. EL00-95, at 8 (citing *CPUC*, 462 F.3d at 1061) (California Parties Apr. 30 Answer).

30.    In their answer,[41] Indicated Public Entities state that, in the *MAPP* proceeding, the non-jurisdictional entity, Nebraska District, had already been paid, and the Commission found it could not require Nebraska District to provide refunds. They state that the Commission did not find that it could withhold refunds from Nebraska District while the contract litigation went forward in a different forum.

31.    The CAISO states that it takes no position as to California Parties' requests. It asserts, however, that the most time-intensive method of recalculating the refunds to remove the amounts attributable to the governmental entities would be the recalculation all of the CAISO and PX calculations from the last four years. The CAISO opposes this approach and, if ordered today, states that the recalculation could take more than two years to complete. The CAISO notes there are a number of ways that *Bonneville* could be implemented. It states that one option is a simplified financial clearing where the total amount of refunds that otherwise would have been collected from governmental entities would be reflected by a *pro rata* reduction to refund recipients based upon their overall share of the CAISO load during the refund period. Avista filed comments in support of the CAISO's response to California Parties Motion for Remand Procedures.

32.    Nevada Companies filed a motion contending that the Commission should determine the refunds owed by each non-governmental entity net seller and promptly order money flows based on those findings.

33.    The CAISO, in responding to Nevada Companies May 10, 2007 Motion, states that it takes no position on Nevada Companies' argument, but is concerned regarding the practical implications of the proposed approach. The CAISO states that it is concerned that there will be a situation in which it cannot balance its Clearing Account[42] because it is unable to make up amounts that otherwise would have been paid as refunds by non-jurisdictional entities. It asserts that the Commission needs to adopt a mechanism for implementing *Bonneville* that allows the CAISO to match credits with debits on an equal basis or a shortfall will be an unavoidable problem.

34.    Nevada Companies responded to the CAISO to clarify their position. They state that they propose a straight path to finality, with the Commission keeping separate non-

---

[41] Bonneville/Western and State Water Contractors/Metropolitan support and adopt each of the arguments made by the Indicated Public Entities in their pleading filed in response to the answer by the California Parties.

[42] The Clearing Account is the account through which the CAISO receives payments from debtors and makes payments to creditors. CAISO May 25, 2007 Answer, Docket EL00-95 at 4 & n.3.

jurisdictional litigation from the refund proceedings.  They state that, under their
proposal, net purchasers would not receive refunds from the governmental entities.  They
state no shortfall would exist because the Commission cannot make the CAISO or
jurisdictional sellers responsible for refunding additional monies in order to make up for
the Commission's lack of refund jurisdiction over the governmental entities.

35.     California Parties respond to Nevada Companies' motion by stating that they
disagree with Nevada Companies' assertion that the Commission should determine the
refunds owed by each non-governmental entity net seller and to promptly order money
flows based on those findings, and then close the books as to those net sellers, exempting
them from any potential liability for shortfalls if the governmental entities do not pay
their refunds.  They state that, until the courts have determined the governmental entities'
liability for overcharge damages, it is premature to begin liquidating refund obligations.
They assert that *Bonneville* said nothing about the disposition of funds that the
CAISO/PX are holding in trust for consumers who were overcharged.  California Parties
state that the Nevada Companies' shortfall allocation proposal is premature.  They
contend that, since the governmental entities' liability is still unknown, it is currently
impossible to assess shortfall issues.  California Parties further assert that the CAISO/PX
cannot settle their markets until they have completed the Commission-ordered
recalculations.[43]

### Commission Determination

36.     California Parties assert that the Commission revised the pricing formulations
contained in the CAISO/PX tariffs for the period to which the MMCP applies.[44]  We
disagree.  The *Bonneville* court found that the Commission had ordered refunds rather
than amending the CAISO/PX tariffs to reset the market clearing price during the refund
period.[45]  The court further found that the Commission had acted outside its jurisdiction
when ordering non-public utility entities to pay these refunds.  Therefore, we vacate each

---

[43] California Parties May 25, 2007 Answer, Docket No. EL00-95 at 16 (citing
*Constellation Power Source, Inc.*, 100 FERC ¶ 61,124 (2002), *reh'g denied*, 100 FERC
¶ 61,380 (2002), *reh'g denied*, 111 FERC ¶ 61,148 (2005), *aff'd*, *Constellation Energy
Commodities Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006); *PG&E Energy
Trading-Power, L.P.*, 102 FERC ¶ 61,119 (2003); *Powerex Corp*, 102 FERC ¶ 61,328,
*reh'g denied*, 104 FERC ¶ 61,119 (2003), *aff'd*, *Constellation Energy Commodities
Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006); *La Paloma Gen. Co., LLC*,
110 FERC ¶ 61,386 (2005), *reh'g denied*, 118 FERC ¶ 61,189 (2007)).

[44] *See* California Parties Motion for Remand Procedures at 13.

[45] *Bonneville*, 422 F.3d at 919-20.

of the Commission's orders in the California refund proceeding to the extent that they order non-public utility entities to pay refunds.

37.    While we sympathize with the equitable concerns raised by some parties that, unlike public utilities, we have no authority under FPA section 206 to order non-public utility entities to pay refunds associated with their sales into the CAISO and PX spot markets during the refund period, we must nonetheless follow the Ninth Circuit's remand decision in *Bonneville*.  However, the Commission's inability to order non-public utility entities to pay refunds under FPA section 206 does not preclude such parties from seeking a remedy in state/federal courts.[46]

38.    While we recognize the court's finding that the Commission, in the context of this proceeding, has no authority to order non-public utility entities to pay refunds under FPA section 206, we conclude that the CAISO/PX should complete their refund calculations including all entities that participated in the CAISO/PX markets.[47]  We believe that halting the refund calculation process would be detrimental to the public interest.  We agree with the CAISO that it would be time intensive and unreasonable to recalculate all of the refund calculations in order to remove the non-public utility entities.

39.    However, as a result of the court's finding, the total amount of refunds that otherwise would have been paid by non-public utility entities for their sales into the CAISO and PX spot markets during the refund period must be reflected in reduced refund amounts that buyers will receive.  This shortfall in refunds must be allocated somehow among buyers.  We agree with the CAISO that a reasonable approach to allocate this shortfall is to implement a simplified financial clearing in which refund recipients receive a *pro rata* reduction in their refunds.  The CAISO further suggests that the *pro rata*

---

[46] *See id.* at 925.

[47] We note that the Energy Policy Act of 2005 amended FPA section 206 to make certain entities that fall under FPA section 201(f) subject to the Commission's refund jurisdiction if they:

> voluntarily make a short-term sale of electric energy through an organized
> market in which the rates for the sale are established by Commission-
> approved tariff (rather than by contract) and the sale violates the terms of
> the tariff or applicable Commission rules in effect at the time of the sale,
> the entity shall be subject to refund authority of the Commission under this
> section with respect to the violation.

Energy Policy Act of 2005, Pub. L. No. 109-58, § 1286, 119 Stat. 594, 981 (2005) (to be codified as 16 U.S.C. § 824e(e)(2)).

reduction could be based on refund recipients' "overall share of CAISO load during the [r]efund [p]eriod."[48] While this option appears to be simple and expedient, we find that it may not be the most equitable, because refund recipients would not share the burden of the shortfall in proportion to their exposure to the CAISO and PX spot markets. Instead we find that the *pro rata* reduction to refund recipients based on their final net refund position in relation to total net refunds is a closer approximation to their exposure to the CAISO and PX spot markets. Under this approach, all net refund recipients, both public utilities and non-public utility entities, will receive an allocation of the shortfall in proportion to their refunds. When faced with similar issues earlier in this proceeding on the allocation of the interest shortfall among PX participants, the Commission examined several alternatives. We find that our approach here is consistent with how the Commission decided to allocate the interest shortfall.[49] In both situations, the shortfall is allocated in a fair and proportional manner.

40.     We disagree with governmental entities' argument that their inclusion in the CAISO/PX refund calculations is a violation of the *Bonneville* mandate. The *Bonneville* court found that the Commission lacked the jurisdiction to order governmental entities or other non-public utilities to pay refunds. Here, we are not ordering non-public utility entities to pay refunds. Instead, we are directing Commission-jurisdictional entities, the CAISO and PX, to complete refund calculations as to the level of any potential refund shortfalls so that we may properly order refunds by public utilities.

41.     Further, our approach is consistent with the *MAPP* proceeding, in which the Commission did not order the power pool to stop calculating Nebraska District's refund obligations even after the Commission found that it lacked jurisdiction to order Nebraska District to pay refunds.[50] Therefore, we direct the CAISO/PX to continue their refund calculations with all entities that participated in the CAISO/PX markets. We also direct the CAISO to allocate the refund shortfall, discussed above, by implementing a *pro rata*

---

[48] CAISO Apr. 17, 2007 Answer, Docket No. EL00-95 at 5.

[49] *See San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 110 FERC ¶ 61,336, at P 41, 56, *reh'g denied*, 112 FERC ¶ 61,226 (2005) (allocating the interest shortfall based upon the final net interest position for each participant in relation to the total amount of the interest shortfall).

[50] California Parties Motion for Remand Procedures at 14-15 (citing *Alliant I*, 2001 U.S. LEXIS 17802 at *8).

reduction to refund recipients based upon their final net refund position in relation to total net refunds.[51]

42.     In the case of the non-public utility entities, the court has determined that those parties have no refund obligations under FPA section 206.  Therefore, we order below the disbursement of past due amounts owed to non-public utility entities for sales made in the CAISO/PX spot markets from October 2, 2000 through June 20, 2001.[52]  Here, however, final refund calculations with respect to jurisdictional entities have yet to be completed.  Until these calculations are completed, we will not know the jurisdictional entities' final refund obligations.  Therefore, we find that it is premature to discuss disbursement of monies to jurisdictional entities until their refund obligations are determined.

43.     Because we are vacating each of the Commission's California refund orders to the extent that they make non-public utility entities liable for refunds, we will not require those entities to make cost filings.  The purpose of cost filings is to prevent a confiscatory result for sellers required to make refunds.  Here, however, non-public utility entities do not have FPA section 206 refund liability.  Therefore, there is no need for them to make cost filings.  We are aware of Indicated Public Entities' concern that California Parties could potentially contend in state/federal contract claim proceedings that the non-public utility entities, which do not make cost filings, have waived their rights to mitigation of their potential refunds.  However, such assertions are merely speculation.  The Commission will not interfere in state/federal contract claims and therefore we will not speculate as to how such courts will view the potential absence of cost filings by non-public utility entities.

44.     Finally, because we are not ordering non-public utility entities to pay refunds, we do not find it necessary to address the merits of Bonneville/Western's claims regarding the Commission's ability to review their rates.

---

[51] We note that the disbursement of refunds to non-jurisdictional sellers will occur after a final accounting of who owes what to whom in this proceeding to ensure the accuracy of the *pro rata* allocation.

[52] Past due amounts are monies held in escrow for sales that generators and other sellers made during the refund proceeding but have not received payment.

**B.**    **Disbursement of Past Due Amounts to Non-Public Utility Entities**

   **LADWP Motion**

45.    On April 18, 2007, LADWP filed a motion requesting disbursement of amounts owed to governmental entities for sales made in the CAISO/PX spot markets from October 2, 2000 through June 20, 2001.[53]  It contends that the Commission has a duty to promptly correct the harm that the Commission has caused.[54]  LADWP further states that the expedited payment of principal and interest is also required by the public interest by stopping the running of interest on past due amounts owed to the governmental entities under *Bonneville*.  It requests that the Commission direct the CAISO to update its calculations owed to each governmental entity for sales into the CAISO and PX markets during the refund period and disburse the total amount of past due principal amounts and interest owed.

46.    The CAISO states that it takes no position on LADWP's request regarding the distribution of past due funds owed to governmental entities.  However, the CAISO contends that it will have no part to play in collecting or disbursing funds to governmental entities other than as provided in the CAISO's tariff or the confirmed plan of reorganization of PX.  It asserts that any unpaid amounts owed to governmental entities related to activities in the CAISO's markets must come from  PX or other market participants.  It further notes that the obligation to collect amounts still owed by PX is on the Scheduling Coordinators, not the CAISO.  It states that the Commission must be clear, in directing any disbursement of past due funds to governmental entities, that the CAISO will not be responsible for collecting and disbursing any such funds.

---

[53] The City of Pasadena and Indicated Public Entities both filed answers in support of LADWP's motion.  The Cities of Burbank and Glendale, along with Turlock Irrigation District, also jointly filed an answer in support of LADWP's motion.

[54] LADWP Apr. 18, 2007 Motion, Docket No. EL00-95, at 5 (LADWP Apr. 18, 2007 Motion) (citing *Exxon Co., U.S.A. v. FERC*, 182 F.3d 30, 49 (D.C. Cir. 1999) ("As we have stated, 'when the Commission commits legal error, the proper remedy is one that puts the parties in the position they would have been in had the error not been made'") (citing *Pub. Utils. Comm'n of the State of Cal. v. FERC*, 988 F.2d 154, 168 (1993)); *see also Panhandle Eastern Pipeline Co. v. FERC*, 907 F.2d 185, 189 (D.C. Cir. 1990); *Office of Consumers Counsel, State of Ohio v. FERC*, 826 F.2d 1136, 1139 (D.C. Cir. 1987)).

47.    The CAISO also states that it takes no position regarding LADWP's request that the governmental entities receive interest at the Commission rate on all past due amounts. The CAISO asserts that any interest amounts will have to come from the PX or other market participants.  It further contends that there may be an issue with respect to LADWP's request because the PX has been earning interest on the funds in its Settlement Trust Account at a rate less than the Commission interest rate.

48.    The CAISO states that it assumes that LADWP intends that any Commission order directing the disbursement of unmitigated past due amounts, relating to transactions in the CAISO/PX spot markets during the refund period, to governmental entities would take into account the adjustments performed as part of the CAISO's preparatory rerun process.  If this is the case, the CAISO states that it has two comments.  First, it asserts that, if the Commission accepts the LADWP motion, any disbursement of unpaid amounts to governmental entities likely would be made prior to the CAISO invoicing the results of the preparatory rerun.  The CAISO states that, in order to accurately reflect the amounts owed to governmental entities, current CAISO balances would need to be adjusted based on the preparatory rerun data.  Second, the CAISO contends that several claims that could affect the amounts owed by the PX are being pursued by various market participants in alternative dispute resolution pursuant to CAISO tariff section 13, and that the resolution of these disputes may impact the preparatory rerun.

49.    Pinnacle West filed an answer opposing LADWP's motion and asking the Commission to deny governmental entity purchasers refunds to the extent that they refuse to provide refunds based on mitigated prices for their sales into the CAISO and PX markets.[55]  It contends that the CAISO and PX should continue to calculate refund amounts for all sellers, including non-jurisdictional entities and that the Commission should follow the *MAPP* proceeding precedent.  It asserts that the governmental entity sellers can make such claims, presumably under contract law, in other fora appropriate to their positions and claims.  Pinnacle West states that, to the extent governmental entities make such claims against the CAISO/PX, those entities can then pursue any relevant

---

[55] In a responsive brief, California Parties state that they:

> support the basic proposition that the Commission has the authority to direct the ISO and PX to offset amounts associated with overcharges in determining amounts to be paid by the ISO and PX to Governmental Entities.  Given that, as of yet, there are no shortfalls, the Commission need not address this issue at this time.

California Parties May 25, 2007 Answer, Docket No. EL00-95 at 14 n.27.

counterclaims based on the parties' contractual commitments, as envisioned by the court in *Bonneville* and more recently by the Commission.[56]

50.     Pinnacle West asserts that the plain language of FPA section 206 and its legislative history show that the Commission's refund authority is discretionary.  It states that the Commission has found that Congress clearly intended to provide the Commission with discretion under FPA section 206 to determine if public utilities should refund amounts paid in excess of just and reasonable rates in individual instances.[57]  Pinnacle West contends that the discretionary nature of refunds has also been repeatedly confirmed by the courts.[58]

51.     Due to the *Bonneville* decision, Pinnacle West states that this proceeding resembles the situation faced by the Commission in its investigation of the Pacific Northwest energy markets in *Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale* (*Puget Sound*).[59]  It states that, in *Puget Sound*, the Commission found that it was inequitable to allow governmental entities to receive refunds for their high-priced purchases where they are exempt from providing refunds for

---

[56] Pinnacle West May 3, 2007 Motion, Docket No. EL00-95 at 5 (citing *Bonneville*, 422 F.3d at 925-26; *Cal. Indep. Sys. Operator Corp.*, 119 FERC ¶ 61,076 at P 556 (2007)).

[57] *Id.* at 6 (citing *Canal Elec. Co.*, 47 FERC ¶ 61,275 at 61,960 (1989) (citing S. Rep. No. 100-491, 100th Cong., 2d Sess. 6 (1988))).

[58] *Id.* (quoting *Towns of Concord v. FERC*, 955 F.2d 67, 75 (D.C. Cir. 1992) ("Customer refunds are a form of equitable relief, akin to restitution, and the general rule is that agencies should order restitution only when 'money was obtained in such circumstances that the possessor will give offense'"); *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 816 (D.C. Cir. 1998) (citing *Columbia Gas Transmission Corp. v. FERC*, 750 F.2d 105, 109 (D.C. Cir. 1984); *Ariz. Elec. Power Coop. v. FERC*, 631 F.2d 802, 809 (D.C. Cir. 1980)) ("the difficult problem of balancing competing equities and interest has been given by Congress to the Commission with full knowledge that this judgment requires a great deal of discretion"); *Laclede Gas Co.*, 997 F.2d 936, 944 (D.C. Cir. 1993) (citing *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 159 (D.C. Cir. 1967)) ("FERC's discretion is at its zenith when the action assailed relates primarily … to the fashioning of … remedies and sanctions").

[59] *Id.* at 7 (citing *San Diego Gas & Elec. Co.*, 93 FERC ¶ 61,294 (2001), *order on reh'g*, 103 FERC ¶ 61,348, *reh'g denied*, 105 FERC ¶ 61,183 (2003), *reviewed sub nom. Port of Seattle v. FERC*, 2007 U.S. App. LEXIS 20217 (9th Cir. 2007)).

any high-priced sales they may have made.[60]  Pinnacle West states that many
governmental entities, which are seeking immediate distribution of unmitigated
receivables, also purchased in the markets at issue and, under the current refund
mechanism, may be eligible for refunds from other, jurisdictional sellers.  This situation
is inequitable and is similar to the proposition rejected by the Commission in *Puget
Sound*.  Pinnacle West asserts that the Commission has already found that it is only fair
that non-public utilities seeking refunds of excessive charges paid in the CAISO and PX
markets be willing to pay refunds related to any excessive amounts charged for power
sold to the CAISO and PX.[61]  It states that, because refunds are "restitutionary" relief,[62]
governmental entities have no incontrovertible right to receive them.  It notes that, in the
past, the Commission has implemented a policy of ordering refunds except where there
are equitable considerations to the contrary.[63]

52.    In their answer to Pinnacle West, Nevada Companies state that the Ninth Circuit
has held that non-jurisdictional entities cannot voluntarily submit to Commission rate
regulation.[64]  They state that Pinnacle West's suggestion that, in order to receive refunds
from public utilities, governmental entities pay refunds under FPA section 206 is a back
door approach to regulating the rates charged by governmental entities.  Nevada
Companies assert that the failure to order refunds to non-jurisdictional entities would
depart from Commission practice.  They cite *MAPP II*[65] to support their assertion, stating
that the Commission ordered refunds from jurisdictional entities, including a public
power district even though the Commission lacked jurisdiction over that district which
also owed refunds.  They further cite *FPC v. Tennessee Gas Co.*[66] where the Commission
ordered refunds in certain rate zones before it decided cost allocation among the zones.

---

[60] *Id.* (citing *Puget Sound*, 103 FERC ¶ 61,348 at P 39).

[61] *Id.* at 8 (citing *San Diego Gas & Elec. Co.*, 96 FERC at 61,513 n. 56).

[62] *Id.* (citing *San Diego Gas & Elec. Co.*, 97 FERC at 62,185).

[63] *Id.* (citing *San Diego Gas & Elec. Co.*, 97 FERC at 62,185 (citing *W. Res., Inc. v. FERC*, 9 F.3d 1568, 1581 (D.C. Cir. 1993); *Estate of L.D. French v. FERC*, 603 F.2d 1158, 1162-63 (5th Cir. 1979))).

[64] Nevada Companies May 18, 2007 Answer to Pinnacle West's Motion, Docket No. EL00-95, at 3 (citing *Bonneville*, 422 F.3d at 925).

[65] *Mid-Continent Area Power Pool*, 91 FERC ¶ 61,353 (*MAPP II*), *reh'g denied*, 92 FERC ¶ 61,229 (2000).

[66] *FPC v. Tennessee Gas Co.*, 371 U.S. 145 (1962).

Nevada Companies state that the Supreme Court held that the Commission could order refunds on a portion of a rate and found this procedure proper because the company had separate rates for each zone. Thus, any losses in one zone could not offset refunds in another. They state that the same policy applies here. They contend that the Commission used an hourly refund period. They assert that the Commission tying refunds for net sales in one hour to refunds in another hour is equivalent to tying refunds in one rate zone to the outcome of refunds proceedings in other zones.

53.     Salt River Project filed an answer to the motions of Pinnacle West and Nevada Companies. It agrees with Nevada Companies that the CAISO and PX should continue rerunning the bills. It objects to Pinnacle West's request that the Commission deny refunds to governmental entities to the extent that they refuse to provide refunds based upon mitigated prices for their sales into the CAISO/PX markets. It asserts that it paid refunds through offsets in the settlements filed in this proceeding. It states that, until the settlement process is completed, Pinnacle West is premature in concluding that governmental entities are not voluntarily paying refunds.

54.     LADWP states that, contrary to Pinnacle West's claims, its motion did not request the immediate disbursement of refunds, if any, that the Commission may determine would be due to governmental entities for purchases in the CAISO and PX markets during the refund period. It further states that, after receiving the money owed to it for sales during the refund period, it would consider any proposal that could bring about the prompt and equitable resolution of the remaining ancillary issues in this proceeding.

55.     SVP/Redding/Modesto state that the courts have found that a governmental entity cannot be excluded from refunds ordered by the Commission for purchases from jurisdictional sellers on the basis that the governmental entity sales are exempt from Commission jurisdiction.[67] SVP/Redding/Modesto assert that the Commission, in *Puget Sound*, based its decision on numerous factors when dismissing the proceeding. They further state that *Puget Sound* can be distinguished from the instant proceeding because the Commission was determining whether refunds should be ordered from any jurisdictional sellers for all buyers. Based on all of the factors considered, the Commission found that it would be inequitable to order refunds from any sellers.[68] They, therefore, contend that, if the Commission followed this logic, then it would deny refunds to all parties in California.

---

[67] SVP/Redding/Modesto May 18, 2007 Answer, Docket EL00-95 at 4 (citing *Cal. Elec. Power Co. v. FPC*, 199 F.2d 206, 208-09 (9th Cir. 1952); *U.S. v. Pub. Utils. Comm'n*, 345 U.S. 295, 312-13 (1953)).

[68] *Id.* at 5 (citing *Puget Sound*, 103 FERC ¶ 61,348 at P 35, 28-39).

56.     Bonneville/Western state that the Pinnacle West seeks to change the nature of this proceeding by having the Commission interject itself into private litigation. They state that, with the issue of the mandate, the refund proceeding has been terminated with respect to the governmental entities and the Commission should disburse these funds. They state that there is no reason for the Commission to rule on whether or not the governmental entities receive refunds in the remand order.

## Commission Determination

57.     We grant in part and deny in part LADWP's motion requesting disbursement of past due amounts, plus interest, owed to governmental entities for sales they made in the CAISO/PX spot markets during the refund period. Based upon the *Bonneville* remand, the governmental entities have no further FPA section 206 refund liabilities. We agree with LADWP that they should receive the monies that they are owed for sales they made into the CAISO/PX markets during the refund period, and therefore we will grant their motion regarding the disbursement of principal amounts. As stated by the CAISO, any disbursement of unpaid amounts first must be adjusted based upon preparatory rerun data, as finalized upon the completion of alternative dispute resolution matters that are currently pending. Further, as noted below, we are requiring each party that seeks designation as a non-public utility entity for purposes of the California refund proceeding to file a designation request with the Commission in this docket, within 60 days of the date of this order. Once the Commission has ruled on these filings, we will direct the disbursement on past due amounts owed to non-public utility entities for sales they made in the CAISO/PX spot markets from October 2, 2000 through June 20, 2001.

58.     However, we deny LADWP's motion to the extent that it requests the expedited release of interest associated with the principal amounts that they are owed on their past due amounts. As the Commission has stated in multiple orders, we are concerned about a potential interest shortfall.[69] The Commission's regulations require a specific rate of interest to be paid to participants for amounts owed, the PX has not earned that rate on the participants' funds that it is holding. The Commission has held that the interest shortfalls should be allocated on a *pro rata* basis. In the instant case, we believe it would be very difficult to determine the governmental entities' *pro rata* share of the interest shortfalls prior to the completion of the refund calculations and disbursement. Therefore, we direct PX to retain any potential interest payments on past due amounts to the governmental entities until the refund calculations are complete and the CAISO/PX can calculate the *pro rata* allocation of the interest shortfalls.

---

[69] *See San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 109 FERC ¶ 61,218 (2004), *order on reh'g*, 110 FERC ¶ 61, 336, *order on reh'g*, 112 FERC ¶ 61,226 (2005).

59.    We deny Pinnacle West's request to offset the governmental entity purchasers' refunds to the extent that they refuse to provide refunds based on the mitigated prices for their sales into the CAISO/PX markets.  Courts have found that the Commission's refund authority is discretionary.[70]  However, as the court, in *Bonneville*, noted, parties can pursue any refund amounts that may be owed by non-public utility entities as a contract claim in the appropriate court.  Thus, there is no inequity as Pinnacle West argues.  Accordingly, in exercising its refund discretion, the Commission finds that it would not be appropriate to offset refunds owed to non-public utility entities in this proceeding.  As a result, we will deny Pinnacle West's request.

## C.    Collateral Issues

### Comments

60.    California Parties state that the Commission should require the CAISO and PX to continue to retain the collateral of all market participants, including the governmental entities, until they have completed their calculations and market participants' accounts have been adjusted and settled accordingly.[71]  They contend that the PX tariff defines a

---

[70] *See Niagara Mohawk Power Corp*. v. *FPC*, 379 F.2d 153, 159 (D.C. Cir. 1967) ("Finally, we observe that the breadth of agency discretion is, if anything, at [its] zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies and sanctions, including enforcement and voluntary compliance programs in order to arrive at maximum effectuation of Congressional objectives"); *Town of Concord* v. *FERC*, 955 F.2d 67, 75 (D.C. Cir. 1992) (citing *Moss* v. *Civil Aeronautics Bd.*, 521 F.2d 298, 308-09 (D.C. Cir. 1975)  ("Because the 'equitable aspects of refunding past rates are . . . inextricably entwined with the [agency's] normal regulatory responsibility,' . . . absent some conflict with the explicit requirements or core purposes of a statute, we have refused to constrain agency discretion by imposing a presumption in favor of refunds")).

[71] California Parties cite to a series of cases where the Commission has interpreted the CAISO and PX tariffs to require sellers to maintain their collateral until such time as their accounts have been both billed and settled.  *See Constellation Power Source, Inc. v. Cal. Power Exch. Corp.*, 100 FERC ¶ 61,124, *reh'g denied*, 100 FERC ¶ 61,380 (2002), *reh'g denied*, 111 FERC ¶ 61,147 (2005), *aff'd, Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006) (*Constellation*); *PG&E Energy Trading-Power, L.P. v. Cal. Power Exch. Corp.*, 102 FERC ¶ 61,091 (2003); *Powerex Corp. v. Cal. Power Exch. Corp.*, 102 FERC ¶ 61,328, *reh'g denied*, 104 FERC ¶ 61,119 (2003), *aff'd, Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006); *La Paloma Generating Co., LLC*, 110 FERC ¶ 61,386 (2005), *reh'g denied*, 118 FERC ¶ 61,189 (2007).

PX Participant as "[a]n entity that is authorized to buy or sell Energy or Ancillary Services through the PX, and any agent authorized to act on behalf of such entity."[72] California Parties assert that governmental entities were PX Participants and, as such, they must maintain with the PX "sufficient collateral to cover [their] aggregate outstanding liabilities . . .to and from the PX. . .during the period in which [their] liabilities are incurred and when payment is billed and settled."[73] They state that *Bonneville* does not alter the applicability of the CAISO and PX tariffs. They note that the CAISO tariff section 19 provides for amendment of prices by the Commission and, in section 11.6.3, provides for reruns and re-issuance of settlement statements when prices have been revised. They contend that the PX tariff has similar provisions.[74] California Parties state that rebilling with revised prices established by the Commission may proceed as a contractual matter, regardless of the Commission's ability to order governmental entities to pay refunds. They note that the governmental entities' lack of willingness to abide by such revised invoices is the subject of the federal and state court litigation. As such, they state that, because the court process is not complete yet, the transactions from that period are not yet finally "billed and settled."

61.    California Parties state that, the Commission has held (absent settlement with the California Parties), the PX Participants' account cannot be billed and settled until the refund proceeding is complete.[75] California Parties assert that the Commission recently

---

[72] PX Tariff, Appendix B, Master Definitions Supplement, First Revised Sheet No. 229.

[73] *See* PX Tariff, Schedule 2, § 2.2.

[74] PX Tariff section 13 (providing for amendment of prices by the Commission); PX Operating Manual section 5.3.1-5.3.5 (providing for reruns and re-issuance of settlement statements).

[75] *See Constellation Power Source, Inc.*, 100 FERC ¶ 61,124 at P 27 (finding that, due to "numerous ongoing contested proceedings regarding the transactions that occurred in the PX markets," the "final billing and settlement has not yet taken place [and] the trades made in the PX markets are not yet fully resolved"); *PG&E Energy Trading-Power, L.P.*, 102 FERC ¶ 61,091 at P 15 (refusing to release collateral because accounts are not billed and settled and holding that the PX Tariff also "requires that market participants maintain sufficient collateral to cover the estimated potential Cal ISO real-time aggregate outstanding liability to and from the CalPX") (citing Sched. 2, § 2.2 and App. B, Master Definitions Supplement, Real-Time Market Definition); *Powerex Corp.*, 102 FERC ¶ 61,328 at P 26 (refusing to release collateral because, as a result of the Hundred Days Evidence, it would be premature to release Powerex's collateral and that until recalculation is complete "the process of final billing and settling . . . cannot

(continued...)

affirmed this holding stating that "the Commission will not be able to determine [the final amount of refund liabilities] until the conclusion of the refund proceeding."[76]  They state that the D.C. Circuit upheld the Commission's interpretation of the PX tariff.[77]  They further assert that the governmental entities' collateral should be maintained because the amount they owe is likely to go up based upon the *Lockyer* court's holding that the Commission must reconsider whether refunds should also be available for sales made during the summer period.[78]

62.    Indicated Public Entities assert that non-jurisdictional sellers have no refund obligations that the Commission can enforce and, therefore, there is no lawful purpose for requiring non-jurisdictional sellers to maintain collateral with the CAISO or PX in terms of transactions related to the refund period.  They state that *Constellation Power Source, Inc. v. FERC*[79] does not address, much less suggest, that the Commission has the authority to require non-jurisdictional sellers to maintain collateral to cover liability refunds.  They counter that it is Commission policy that, absent extraordinary circumstances, it will not require even jurisdictional utilities to post bond to assure their ability to pay refunds.[80]  They cite several cases in which the Commission has authorized

---

take place because its outstanding liabilities have not yet fully been resolved");
*La Paloma Generating Co., LLC*, 110 FERC ¶ 61,386 at P 12-13, (refusing to release ISO collateral because, *inter alia*., "the Refund Proceeding has not yet been completed and . . only after its completion will the liabilities of each supplier be determined").

    [76] *La Paloma Generating Co*., LLC, 118 FERC ¶ 61,189 at P 17 (2007) (*La Paloma*).  California Parties state that, while the D.C. Circuit case and many of the Commission collateral orders relate to the PX, the collateral at issue in *La Paloma* was held in the CAISO.  They assert that the same considerations that apply to PX collateral apply to CAISO collateral.

    [77] *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14, 21 (D.C. Cir. 2006) (referring to *Distrigas of Mass. Corp*., 33 FERC ¶ 61,406 at 61,776 (1985)).

    [78] *See Lockyer*, 383 F.3d at 1018.

    [79] *Constellation Power Source, Inc. v. FERC*, 100 FERC ¶ 61,124, at P 27.

    [80] Indicated Public Entities cite to *Columbia Gas Transmission Corp.*, 57 FERC ¶ 61,271, at 61,869 (1991); *Transcontinental Gas Pipe Line Corp.*, 61 FERC ¶ 61,074 at 61,303 (1992).  Indicated Public Entities Apr. 17, 2007 Answer, Docket No. EL00-95 at 7.

the release of collateral when a seller resolves its refund obligations through settlement.[81] They state that, for non-jurisdictional sellers, the refund obligation was resolved by the Ninth Circuit as a matter of law. They further state that California Parties continue to falsely assert that the Ninth Circuit opinions in *Lockyer* and *CPUC* require the CAISO and PX to apply the refund calculation methodology to all rates charged during the summer of 2000. They note that the Commission need not address this assertion given that the mandate has not issued in either *Lockyer* or *CPUC*. Indicated Public Entities state that, in both proceedings, the court determined that the Commission should have considered remedies under FPA section 309,[82] but did not require such remedies.

63.     LADWP states that provisions of the CAISO and PX tariffs pertaining to collateral apply only to obligations enforceable by the Commission. LADWP disputes California Parties' interpretation of the PX tariff stating that collateral needs to be maintained until a seller's liabilities are billed and settled under the tariff and the Commission's orders, not in litigation outside the scope of the Commission's jurisdiction. Further, it asserts that the state court will protect California Parties' financial interests if they prevail in that court. It contends that the distribution of governmental entities collateral is now appropriate.[83]

64.     Nevada Companies state that the Commission has allowed the CAISO and PX to hold security posted by or impounded from jurisdictional sellers, but only as a direct surety as to refund obligations of the particular jurisdictional sellers for their own refund obligations.[84] They cite *Coral Power* as an example of how impounded security may

---

[81] *See, e.g.*, *San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 118 FERC ¶ 61,168 at P 91 (2007) (approving Enron motion for release of collateral); *San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Servs.*, 111 FERC ¶ 61,017 at P 43 (2005) (authorizing PX to release collateral to Mirant after amounts are retained for refund liability).

[82] 16 U.S.C. § 825h (2000).

[83] LADWP Apr. 17, 2007 Answer, Docket EL00-95 at 15 (citing *San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Servs.*, 110 FERC ¶ 61,086, at P 9 (2005) (finding that distribution of PX collateral for refund period transactions was appropriate after some parties settled their refund period claims against jurisdictional sellers, because non-settling parties' financial interests were protected by their right to continue to litigate their claims for refunds against the sellers under the refund period orders)).

[84] Nevada Companies May 10, 2007 Motion on Remand Proceeding, Docket No. EL00-95 at 15 (Nevada Companies May 10, 2007 Motion) (citing *Constellation Power Source, Inc. v. Cal. Power Exchange Corp.*, 100 FERC ¶ 61,124, *order on reh'g*,

(continued…)

only be held in relation to the particular obligations of a specific seller and not as a means to satisfy the obligations of other market participants.  Nevada Companies further note that the Commission has found that the agency may not use FPA section 206 as a proxy to order refunds that a cooperative utility might owe to an ultimate consumer.[85]

65.     Nevada Companies further state that, even in those situations where the Court of Appeals have broadly read FPA section 309, these courts have not read it to state that this section gives the Commission authority to contravene other FPA sections.[86]  Nevada Companies state that FPA section 309 cannot override the prohibition in FPA section 206 against retroactive application of refunds.  According to Nevada Companies, the *CPUC* court described refunds under section 206 as making customers whole for having paid an unjust and unreasonable rate; section 309 considers tariff violations.[87]  As a result, they state that refunds under the Commission's rate-setting authority in section 206 cannot start prior to October 2, 2000.

66.     California Parties answer that the governmental entities signed contracts agreeing to be bound to the terms of the CAISO and PX tariffs, including the collateral provisions, and, therefore, the *Bonneville* court's holding that the Commission cannot force governmental entities to pay refunds is irrelevant to the collateral issue.  They respond that LADWP asserts that the California Parties would be fully protected if the collateral

---

100 FERC ¶ 61,380 (2002); *Constellation Power Source, Inc. v. Cal. Power Exch. Corp.*, 111 FERC ¶ 61,147 at 61,778 (2005); *Powerex Corp. v. Cal. Power Exch. Corp.*, 102 FERC ¶ 61,328 at 62,121 (2003); *Coral Power, LLC v. Cal. Power Exch. Corp.*, 110 FERC ¶ 61,288 (2005) (*Coral Power*)).

[85] *Id.* at 17 (citing *N. Star Steel Co. v. Az. Pub. Serv. Co.*, 116 FERC ¶ 61,022 (2006) (holding that a retail customer could not seek refunds from the wholesale seller and bypass the retail utility because the customer had no contractual relationship with the wholesale sellers).

[86] Nevada Companies Apr. 17, 2007 Answer, Docket No. EL00-95 at 5 (Nevada Companies Apr. 17 Answer) (citing *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 158 (D.C. Cir. 1967); *Mobile Oil Corp. v. FPC*, 483 F.2d 1238, 1257 (D.C. Cir. 1973); *City of Chicago v. FPC*, 458 F.2d 731 (D.C. Cir. 1971); *Gulf Oil Corp. v. FPC*, 563 F.2d 588, 607 (3rd Cir. 1977) ("The substantive provisions of the Act contemplate certain procedures as incident to the functions provided.  The range of permissible procedures must be derived from these sections. . . ."); *Mesa Petroleum v.* FPC, 441 F.2d 182 (5th Cir. 1971) (analogous section in Natural Gas Act gives the FERC added remedies, not additional jurisdiction); *Murphy Oil Corp. v. FPC*,431 F.2d 805, 810 (8th Cir. 1970) (same)).

[87] *Id.* at 6 (citing *CPUC*, 462 F.3d at 1048).

would be released. However, they state that the D.C. Circuit has held that a party is injured by the premature release of another party's collateral because the first party loses valuable security.[88] They believe that the Nevada Companies are asking for a premature ruling on issues related to future Commission proceedings concerning relief for the summer 2000 period. The California Parties ask that the Commission indicate only that these issues will arise in the future, but not to try to resolve any issues now, especially since the *Lockyer* and *CPUC* decisions are still pending.

67.     In their response to the California Parties' answer, the Indicated Public Entities note that requiring non-jurisdictional sellers to maintain collateral in the face of the *Bonneville* mandate amounts to a de facto form of rate regulation that *Bonneville* does not allow. Indicated Public Entities state that requiring the release of monies unlawfully held does not prejudice anyone in the contract litigation.

### Commission Determination

68.     We deny California Parties' request that the Commission direct the CAISO and PX to retain the collateral of governmental entities until the CAISO and PX have completed their calculations and market participants' accounts have been billed accordingly. California Parties cite a series of cases in which the Commission ordered the retention of collateral until entities' outstanding liabilities have been billed and settled, as required by the tariff.[89] However, the *Bonneville* court ruled that the Commission has no authority to impose refund obligations upon governmental entities. The court's ruling indicates that the governmental entities have no refund liabilities under FPA section 206, but may have some liability related to a contract dispute. As noted above, California Parties have filed contract claims against governmental entities in state and federal courts. These contract claims are not before the Commission and, as a result, we will not interfere in those proceedings. As far as the Commission's jurisdiction is concerned, the governmental entities have no refund liabilities under FPA section 206, therefore, we direct the CAISO and PX to release the governmental entities' collateral. Parties that oppose the release of the governmental entities' collateral may seek relief from the courts, in the state and federal contract proceedings, to determine whether it would be appropriate for the CAISO and PX to retain the collateral in question until those proceedings are completed.

---

[88] Id. at 13 (quoting *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d at 20).

[89] *See, e.g.*, *Constellation Power Source, Inc. v. Cal. Power Exch. Corp.*, 100 FERC ¶ 61,124 at P 27.

69.    We will not consider California Parties' claims that the refund period should encompass the summer of 2000.  We find that this issue is outside the scope of the *Bonneville* remand proceeding.

### D.    Contract Issue

### Comments

70.    California Parties state that they are pursuing claims in federal and state courts to enforce contractual obligations against governmental entities.  They request that the Commission defer for now the treatment of any shortfall or allocation issues that may arise as a result of implementation of *Bonneville*.

71.    Indicated Public Entities state that the contract issues are not before the Commission.  They assert that the Commission should not serve as a data source for the California Parties' contract disputes because weighing the merits of state law contract claims is not within the Commission's authority.  They assert that the so-called precedent established by *MAPP I*[90] and *Alliant I*[91] "simply does not exist."  They state that the California Parties have conflated two distinct cases.  They also contend that the California Parties have ignored the *MAPP* case, which makes clear that there is no shortfall issue for the Commission to resolve.

72.    Bonneville/Western contend that the Commission should not interfere in a legal proceeding over which it has no jurisdiction.  They state that no market shortfall will result from the dismissal of the governmental entities.  They assert that the concept of a market shortfall is premised on the idea that all transactions in the CAISO and PX markets have been adjusted by the Commission.  They dispute this assertion, stating that *Bonneville* specifically rejects the concept that this proceeding has adjusted the prices for all transactions in the CAISO and PX markets.  Therefore, they contend that removing the governmental entities does not result in a market shortfall, but only a smaller pool of refunds to be distributed to buyers.

73.    California Parties, in their answer, state that there will be shortfalls if governmental entities refuse to refund their overcharges.  They further state that the governmental entities raised the issue of whether the Commission amended the CAISO and PX tariffs in order to re-set prices so that the governmental entities can claim that

---

[90] *MAPP I*, 89 FERC ¶ 61,135.

[91] *Alliant I*, 2001 U.S. Dist. Lexis 17802.

their contractual obligation to abide by the terms of the CAISO and PX tariffs does not require the governmental entities to abide by the re-set prices.

74.    In their response to California Parties' answer, Bonneville/Western state that the California Parties misrepresent the nature of this proceeding.  First, Bonneville/Western assert that the Ninth Circuit specifically rejected the notion that this proceeding involved resetting the CAISO and PX rates.  Second, the rates at issue are market-based rather than formula rates of the jurisdictional sellers not the rates of the CAISO or PX.

75.    In their response to California Parties' answer, Indicated Public Entities state that, by the express terms of the *Bonneville* decision, governmental entities do not have FPA obligations with which they have not complied.

## Commission Determination

76.    We find that, while the *Bonneville* court clearly limited Commission authority to order non-public utility entities to pay refunds under FPA section 206, the court left the door open for parties to bring contract disputes in state and federal court against these non-public utility entities.  It is our understanding that California Parties have filed state and federal contract claims against non-public utility entities.  However, we also find that those contract claims are not before the Commission, and therefore, we will not interfere in those proceedings.  Amounts owed and payments thereof by non-public utility entities, if any, as a result of those contractual claims are a matter to be resolved by the relevant court.  We deny California Parties' request that the Commission wait until the outcome of the state and federal court proceedings to distribute refunds.  We will not delay refunds any further based upon the uncertain timeline of contract litigation.

### E.    Miscellaneous

77.    PX states that it has completed the modifications of its database necessary to remove the governmental entities from PX's day-ahead and day-of markets, but not yet the California PX Trading Service (CTS) market.[92]  In order to begin this work, it asserts that it needs Commission direction as to what, if any, calculation process is necessary for mitigation or if the Commission will order mitigation at all.  PX states that it will need confirmation from the Commission as to who is a governmental entity in order to remove them from any of its markets.  It also wants Commission direction on how to treat resources jointly-owned by governmental and non-governmental entities.

---

[92] The CTS provided an exchange for purchase and sale of energy on a monthly forward basis by matching bids to buy power with offers to sell power.  Ninety percent of CTS transactions were delivered through the PX day-ahead market and later mitigated under the Commission's refund methodology.

### Commission Determination

78.     We agree with PX that there is some confusion about which entities constitute non-public utility entities for purposes of the refund orders.  Therefore, we direct all entities remaining in this proceeding that believe they should be classified as a non-public utility entity to make a filing in this docket, within 60 days of the date of this order, so designating themselves.  These filings should include a detailed explanation for their classification as a non-public utility entity.  After reviewing these filings, the Commission will make a ruling on the jurisdictional status of filing entities for purposes of this proceeding.

79.     The PX seeks Commission guidance regarding how to account for non-public utility sellers in the CTS market "if mitigation is ordered".[93]  We find that the Commission has already determined that the transactions through PX's CTS market were exempt from mitigation, except for nine percent of the transactions that were not delivered through PX's day-ahead and day-of markets as part of the CTS obligations.[94] Given Commission precedent on this issue, it is unclear why PX requires further guidance on this issue and therefore we deny its request as unnecessary.

80.     On the issue of how to treat resources jointly-owned by governmental and non-governmental entities, the Commission has generally held that refund liability in this proceeding attaches to the Scheduling Coordinator of the transaction.[95]  Therefore, we direct PX to consider the jurisdictional status of the Scheduling Coordinator for the transaction in determining how to treat resources that are jointly owned by governmental and non-governmental entities.

The Commission orders:

    (A)     The Commission hereby vacates each of the Commission's orders in the California refund proceeding to the extent that they order non-public utility entities to pay refunds, as described in the body of this order.

---

[93] PX Apr. 17, 2007 Answer, Docket No. EL00-95 at 2.

[94] See San Diego Gas and Electric Co., 102 FERC ¶ 61,317, order on reh'g, 105 FERC ¶ 61,066 (2003), order on reh'g, 107 FERC ¶ 61,165 (2004).

[95] See, e.g., San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Serv., 107 FERC ¶ 61,166 at P 18, clarified, 108 FERC ¶ 61,219, reh'g denied and partial clarification granted, 108 FERC ¶ 61,311 (2004); see also San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Serv., 116 FERC ¶ 61,167, at P 45 (2006).

(B)    The Commission hereby orders the CAISO and PX to complete their refund calculations including all entities that participated in the CAISO/PX markets, as described in the body of this order.

(C)    The Commission hereby directs the CAISO to allocate the refund shortfall by implementing a *pro rata* reduction to refund recipients based upon their final net refund position in relation to total net refunds, as described in the body of this order.

(D)    The Commission hereby grants LADWP's motion to disburse past due amounts owed to non-public utility entities for sales made in the CAISO/PX spot markets during the refund period, as described in the body of this order.

(E)    The Commission hereby denies LADWP's motion for the expedited release of interest associated with the principal past due amounts owed, as described in the body of this order.

(F)    The Commission hereby denies Pinnacle West's motion that governmental entities refunds be offset to the extent that those entities do not provide refunds based on the mitigated prices for their sales into the CAISO/PX markets, as described in the body of this order.

(G)    The Commission hereby directs the CAISO and PX to release the non-public utility entities' collateral, as described in the body of this order.

(H)    The Commission hereby denies California Parties motion that the Commission wait until the outcome of state and federal court proceedings to distribute refunds, as described in the body of this order.

(I)    The Commission hereby directs all entities seeking designation as a non-public utility entity for purposes of the California refund proceedings to make a filing in this docket, within 60 days of the date of this order, so designating themselves, as described in the body of this order.

(J)    The Commission hereby denies, as unnecessary, PX's request for it further guidance on the issue of how to account for non-public utility sellers in the CTS market if mitigation is ordered, as described in the body of this order.

(K)    The Commission hereby directs PX to consider the jurisdictional status of the Scheduling Coordinator for the transaction in determining how to treat resources that are jointly owned by governmental and non-governmental entities, as described in the body of this order.

By the Commission.  Commissioner Spitzer not participating.

( S E A L )


                    Nathaniel J. Davis, Sr.,
                    Acting Deputy Secretary.