# Exhibit A

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| San Diego Gas & Electric Company, | ) | |
| Complainant, | ) | |
| v. | ) Docket No. | EL00-95-164 |
| Sellers of Energy and Ancillary Services Into | ) | |
| Markets Operated by the California | ) | |
| Independent System Operator Corporation and | ) | |
| the California Power Exchange, | ) | |
| Respondents. | ) | |
| | ) | |
| Investigation of Practices of the California | ) Docket No. | EL00-98-184 |
| Independent System Operator and the | ) | |
| California Power Exchange | ) | |
| | ) | |

**CALIFORNIA PARTIES' EXPEDITED REQUEST FOR
CLARIFICATION OR LIMITED REHEARING OF
PARAGRAPH 36 OF THE OCTOBER 19, 2007 ORDER ON REMAND
AND REQUEST FOR SHORTENED RESPONSE TIME AND FOR A
COMMISSION ORDER NO LATER THAN NOVEMBER 19, 2007**

Pursuant to Section 313 of the Federal Power Act ("FPA"),[1] Rules 212 and 713 of the

Federal Energy Regulatory Commission's ("FERC" or the "Commission") Rules of Practice

and Procedure[2] and the Administrative Procedure Act,[3] the California Parties[4] respectfully

submit this Expedited Request for Clarification or Limited Rehearing of Paragraph 36 of the

October 19, 2007 Order on Remand and Request for Shortened Response Time and for a

---

[1] 16 U.S.C. § 825*l*(a) (2000).

[2] 18 C.F.R. §§ 385.212 & 385.713 (2007).

[3] 5 U.S.C. § 706 (2000).

[4] The California Parties are the People of the State of California *ex rel.* Edmund G.
Brown Jr., Attorney General, the California Electricity Oversight Board, the Public Utilities
Commission of the State of California, Pacific Gas and Electric Company ("PG&E"),
Southern California Edison Company, and San Diego Gas & Electric Company.

Commission Order No Later Than November 19, 2007.[5]  The California Parties request the Commission's expedited action on this motion because certain unnecessary and erroneous language in Paragraph 36 of the October 19, 2007 Order, which in light of other statements in the Order appears to have been inadvertent, may soon be misinterpreted by the courts hearing the California Parties' contract claims for refunds from the Governmental Entities,[6] and—contrary to the Commission's own stated intent—may cause irreversible harm to the California Parties' pending contract actions as early as November 30, 2007 if the Commission does not act to clarify that language.  Specifically, the California Parties suggest that answers should be due November 5, 2007, and request a ruling by November 19, 2007.

## I.    Introduction and Summary

In this motion, the California Parties do not challenge any of the actions the Commission took in its October 19, 2007 Order.  All other substantive objections or concerns about the Order are reserved and will be raised in a later supplemental rehearing request.  This motion and request for expedited relief focuses exclusively on Paragraph 36 of the Order, and ask only that the Commission strike, clarify, or revise certain unnecessary and inaccurate language in that paragraph, italicized below:

---

[5] *San Diego Gas & Elec. Co.*, 121 FERC ¶ 61,067 (2007) ("October 19, 2007 Order" or "Order").

[6] The term "Governmental Entities" means all sellers of electric power that are not "public utilities" as defined by 16 U.S.C. § 824 (Supp. 2006).  For convenience in this pleading, we include rural electric cooperatives receiving Rural Utilities Service financing, whether or not such entities are affiliated with a state or local government.

36.     California Parties assert that the Commission revised the pricing
formulations contained in the CaISO/PX tariffs for the period to which the
MMCP applies.  *We disagree.*  The *Bonneville* court found that the
Commission had ordered refunds *rather than amending the CaISO/PX tariffs
to reset the market clearing price during the refund period.*  The court further
found that the Commission had acted outside its jurisdiction when ordering
non-public utility entities to pay these refunds.  Therefore, we vacate each of
the Commission's orders in the California refund proceeding to the extent that
they order non-public utility entities to pay refunds.  (Footnotes omitted;
italics added.)

That language in Paragraph 36—which implies that the Commission did not reset the

market clearing prices under the tariffs—is inconsistent with the Commission's own prior

statements, and also misconstrues the portion of the Ninth Circuit's decision in *Bonneville

Power Admin. v. FERC*, 422 F.3d 908 (9th Cir. 2005) ("*Bonneville*") that is cited in that

Paragraph.

Both the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit"), in the

*Bonneville* opinion, and the Commission, in its October 19, 2007 Order, have acknowledged

that *Bonneville* preserves customers' rights to bring contract actions in court to seek from

Governmental Entities the refunds that FERC lacks jurisdiction to order, citing the

*MAPP/Alliant Energy* line of cases.[7]  A *MAPP*-based contract claim requires two

components.  The first is a Commission order that corrects the rates sellers may charge

---

[7]    *See Bonneville*, 422 F.3d at 925-26, discussing *Alliant Energy, Inc. v. Neb. Pub.
Power Dist.*, 347 F.3d 1046 (8th Cir. 2003), *aff'g* No. 00-2139 ADM/FLN, 2001 WL
1640132 (D. Minn. Oct. 18, 2001) ("*Alliant Energy*"); *see also* October 19, 2007 Order at P
11; *San Diego Gas & Elec. Co.*, 119 FERC ¶ 61,296 at P 27 & n.41 (2007) (Commission
noted that even when "the Commission does not have the authority to order non-
jurisdictional entities . . . to pay refunds into the California markets . . . [those entities] may
still have to litigate whether [they] owe[] funds to the CAISO, the CalPX, and [customers],
in an appropriate venue, such as in state court.  . . .  Whether a party 'owes' funds is
distinguishable from whether the Commission can require that party to pay those funds").

under a FERC-jurisdictional tariff to just and reasonable levels, and directs jurisdictional entities to refund their share of the overcharges.  Second, the court, in a breach of contract action by market participants, determines whether Governmental Entities that sold under the applicable tariff are contractually bound to the other market participants to abide by the prices as modified by FERC.  As the Ninth Circuit explained in *Bonneville*, the court in *Alliant Energy* "held that [the Governmental Entity] was contractually liable to pay refunds as a result of FERC's orders that changed MAPP's FERC-jurisdictional tariff and the MAPP agreement."  *Bonneville*, 422 F.3d at 926, citing *Alliant Energy*, 2001 WL 1640132, at *4. The California Parties' pending contract actions are premised on the exact theory recognized by the Commission and the Ninth Circuit:  (1) the Governmental Entities contractually agreed to abide by the tariffs of the California Independent System Operator ("ISO") and the California Power Exchange ("PX"), which contain terms allowing FERC to reset prices to just and reasonable levels; (2) FERC did reset the prices; and (3) the Governmental Entities are thus contractually bound to other market participants to retain no more than the reset prices.   As the *Alliant Energy* district court held, "after the FERC-ordered revisions, the [MAPP] Agreement lacks authority for the tariff monies [the governmental entity] collected after March 1, 1997. . . . *Absent authority for collecting the tariff charges in the first place, [the Governmental Entity] must pay the refunds*."  2001 WL 1640132, at *4 (emphasis added).

The California Parties are presently litigating issues relating to their contract remedies in several different courts.  The Governmental Entities will likely argue in those pending actions that the language in Paragraph 36 renders the California Parties' contract

claims moot, because it suggests that the first element of a *MAPP*-based claim—the Commission's resetting of prices under the tariff—did not occur. That is, Governmental Entities may argue that it makes no difference that they agreed to abide by FERC's corrected rates for sales made pursuant to the ISO and PX tariffs—which they clearly did by signing written contracts to that effect in almost all instances—because, in Paragraph 36, the Commission has held that it did not revise the prices set under the ISO and PX tariffs for the refund period. If this argument were accepted by a court in any of the several hearings that are presently pending in those cases, it might irreversibly prejudice the California Parties' ability to pursue the very contract remedies that the Commission has repeatedly acknowledged exist even after *Bonneville*.

Because the Commission's October 19, 2007 Order repeatedly recognizes the California Parties' right to pursue court actions against the Governmental Entities and states FERC's intent not to interfere with them, the California Parties believe the Commission's statement in Paragraph 36 was inadvertent, as well as incorrect for the reasons explained below, and request that the Commission revise the October 19, 2007 Order to strike the statement. However, if the Commission truly intended in Paragraph 36 to say that the Commission never reset the market clearing prices under the ISO and PX tariffs, then that statement is in error and the California Parties urge the Commission to reconsider and correct it.

The Commission has ruled, beginning in July 2001, that the mitigated market-clearing price ("MMCP") formula sets the maximum prices that may be charged to customers under the ISO and PX tariffs during the relevant period: "Our action thus revises

5

the market clearing prices that all market participants previously agreed to accept for their sales."[8]  As the *MAPP* cases make clear, even in a market in which both jurisdictional public utilities and Governmental Entities are selling power pursuant to a FERC-jurisdictional tariff, the Commission has the authority and duty to determine the just and reasonable rates that may be charged under that tariff.  *Bonneville* did not hold differently; in fact, *Bonneville* went to great lengths to endorse the *MAPP* line of cases.  Once FERC determines the just and reasonable rate, as Section 206 requires it to do, it is then up to the courts to determine whether the Governmental Entities are required, as a matter of contract with the other market participants, to repay their overcharges, as FERC ordered jurisdictional sellers to do.

The *Bonneville* court never found that FERC had not or should not have revised the tariffed pricing formulations by resetting prices market-wide.  To the contrary, what the *Bonneville* court criticized in the passage cited in the footnote to Paragraph 36 is not that the Commission reset the prices under the tariffs on a market-wide basis (which the Commission clearly did); rather, what the court held improper is that the Commission did "***more than*** *simply reset the market-clearing price for power in the FERC-jurisdictional ISO and CalPX*" in that the Commission *also* ordered non-jurisdictional entities to pay refunds based on those reset prices.  *Bonneville*, 422 F.3d at 919-20 (emphasis added).  In other words, *Bonneville* recognized that the Commission both reset prices ***and*** then ordered the Governmental Entities to pay refunds based on those prices.  It was that further action beyond resetting prices—i.e., ordering refunds from Governmental Entities based on the reset prices—that *Bonneville* found exceeded FERC's authority.  *Id*. at 920.  Indeed, it

---

[8] July 25, 2001 Order at 61,512.

makes no sense to conclude that in the very same decision where the Ninth Circuit explicitly suggested the availability to the California Parties of a *MAPP*-based contract action, the Court also intended to direct the Commission to vacate the portion of its prior orders that supplied one of the elements of such an action against the Governmental Entities.[9]

If the Commission does not quickly clarify Paragraph 36, its erroneous language— implying that prices were never reset under the tariffs—will be used to argue that customers such as the California Parties do not, in fact, have contract remedies available to them.  Such a use of the Order would be inconsistent with the Commission's own intent stated throughout the October 19, 2007 Order to respect and not interfere with those actions.  *See* October 19, 2007 Order at PP 3, 11, 37, 41, 43, 59, 68, 76.  Paragraph 36 also frustrates the Ninth Circuit's explicit suggestion that contract actions are the proper remedy for buyers in the ISO and PX markets to obtain "the equivalent refund relief" from the Governmental Entities, even though it found that the Commission lacks jurisdiction to order them to pay refunds.[10]  The California Parties are pursuing precisely the claims the Ninth Circuit expressly referenced, and those actions currently are the *only* means of obtaining an equitable result from the refund proceeding by ensuring that the Governmental Entity sellers receive no more than the same just and reasonable prices that all sellers agreed to accept for their sales.

---

[9] Importantly for purposes of the contract claims that the Ninth Circuit expressly validated in the same opinion, nothing in the *Bonneville* language cited in Paragraph 36 indicates that the Ninth Circuit believed the Commission had not reset prices on a market-wide basis (as the second sentence of Paragraph 36 suggests).

[10]  *Bonneville*, 422 F.3d at 925-26.

The referenced language in Paragraph 36 is also at odds with the Commission's powers and duties under the FPA. It appears to disavow the Commission's power and obligation under the FPA to review prices charged to wholesale customers in markets operated by jurisdictional public entities—the ISO and PX—and to reset prices to just and reasonable levels. Paragraph 36's mistaken language can be corrected without affecting any of the Commission's substantive actions in the October 19, 2007 Order. But if these statements are not corrected swiftly, the Commission may inadvertently cause irreparable injury to the rights and claims asserted in the pending contract actions, and thereby undermine the relief that both the *Bonneville* court and the Commission have indicated would be available in the absence of Commission-directed refunds. That is a result that the California Parties do not believe the Commission ever intended.

For these reasons, the California Parties request that the Commission clarify or grant rehearing of Paragraph 36 to make explicit that the Commission did not intend to reverse its prior rulings that the MMCP formula sets the market-wide maximum prices that may be charged to wholesale customers under the ISO and PX tariffs during the refund period. It will remain for the courts to decide whether the Governmental Entities have a contractual duty to other market participants to refund their share of the overcharges.

## II.    Statement of Issue on Which Rehearing Is Sought and Specification of Error

If the Commission declines to grant clarification as sought herein, the California Parties in the alternative seek immediate rehearing of the following issue:

1.    The Commission erred in Paragraph 36 of the October 19, 2007 Order by finding that the Commission did not revise the pricing formulations under the ISO and PX

8

tariffs, i.e., did not reset the maximum prices that may be charged under the ISO and PX tariffs during the period to which the MMCP applies.  This determination is not supported by *Bonneville*, is inconsistent with the Ninth Circuit's determinations in *Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027 (9th Cir. 2006) ("*CPUC v. FERC*"), which are still pending before the Ninth Circuit, is inconsistent with the Commission's prior statements as well as other statements in the October 19, 2007 Order, and undermines the Commission's legitimate authority to review and enforce rates for sales governed by tariffs subject to its jurisdiction.  *Bonneville*, 422 F.3d at 920, 925-26; *CPUC v. FERC*, 462 F.3d at 1052; *San Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 at 61,512 (2001) ("July 25, 2001 Order"); 16 U.S.C. § 824e(b) (2000) (FPA "Section 206").  The referenced statement is arbitrary and capricious, is not a result of reasoned decision making, violates the California Parties' right to due process, and is otherwise inequitable and unlawful.  16 U.S.C. § 825l(a) (2000); U.S. Const. amend. V; 5 U.S.C. § 706 (2000).

## III.    Motion for Expedited Treatment

Expedited action is urgently needed, because motions bearing on the California Parties' contract claims are pending in a number of courts.  If the language in Paragraph 36 is raised to challenge the merits of the California Parties' claims, it could affect briefing due to be submitted in the coming few weeks and courts' decisions as little as a month from now.  The Los Angeles Superior Court, for example, has scheduled a hearing for November 30, just over one month away, on the Governmental Entities' motion to dismiss the California Parties' contract action in that court.  The Governmental Entities are likely to rely on Paragraph 36 in their reply briefs in support of their dismissal motions, which are due to

be filed in the Los Angeles action on November 8.  If Paragraph 36 is not corrected, the court may accept the Governmental Entities' interpretation of Paragraph 36, and dismiss the contract action.  Similarly, on November 30, the federal Governmental Entities (the Bonneville Power Administration and Western Area Power Administration) are due to file their motion to dismiss the California Parties' contract action against them in the U.S. Court of Federal Claims.  The merits of the contract claims also will likely be discussed in briefs to be filed November 26, 2007 and early December in the actions between the California Parties and Public Utility District No. 2 of Grant County, Washington ("Grant") in the U.S. District Court for the Eastern District of Washington, and the parties are now awaiting the court's decision in a fully-briefed related action between Grant and PG&E in the U.S. District Court for the Northern District of California.  In fact, Grant immediately lodged a copy of the October 19, 2007 Order with the court in the Northern District of California proceeding.  Paragraph 36 is likely to feature prominently in the briefs and arguments, and potentially the courts' decisions, in all these actions unless it is clarified and corrected very soon.

In order to provide all parties a fair opportunity to incorporate the Commission's clarifications in their briefs and arguments in these various actions, the California Parties therefore request that the Commission require responses from the Governmental Entities not later than November 5, 2007, and issue an order clarifying Paragraph 36 not later than November 19, 2007.

**IV.    Argument**

**A.    Nothing in *Bonneville* Precluded the Commission from Resetting the Prices Charged Under the Tariffs; *Bonneville* Reversed Only the Commission's Orders to the Governmental Entities to Pay Refunds.**

Paragraph 36, which could be read to mean that the Commission never reset prices in the ISO and PX markets, is inconsistent with the record in this proceeding and mischaracterizes what *Bonneville* actually held.  As the Commission said at the time, it *did* reset the market clearing price under the ISO and PX tariffs—which the Commission must do in order to mandate refunds even from jurisdictional sellers—and the Ninth Circuit did not find fault with that action or suggest in any way that it did not occur.  The court held only that the Commission lacked jurisdiction to *also* order the Governmental Entities to pay the refunds resulting from the reset prices.

In *Bonneville*, the Ninth Circuit considered the Commission's jurisdictional rationale for its July 25, 2001 Order—that the Commission had not actually ordered the Governmental Entities to pay refunds (which might violate FPA Section 201(f)), but had merely "reset [the] market clearing price for . . . sales under the ISO and CalPX tariffs," which the Commission has power to do.  *See Bonneville*, 422 F.3d at 919.  The court disagreed with the Commission's characterization, but only because it found that the Commission had actually done both:

> FERC's order ***does more than*** *simply reset the market-clearing price* for power in the FERC-jurisdictional ISO and CalPX markets.  *FERC specifically ordered governmental entities/non-public utilities to pay refunds, an action that lies outside Congress's clearly expressed intent* that FERC's § 206 refund authority should apply only to public utilities.

*Id*. at 919-920 (emphasis added). The court added that, while the Commission had regulatory jurisdiction to enforce its reset prices against Governmental Entities prospectively, Section 201(f) deprived the Commission of jurisdiction to enforce its reset prices retrospectively against Governmental Entities by ordering them to pay refunds for prior periods. *Id*. at 920 (holding that the "retroactive imposition of a market price that effects a refund responsibility" on the Governmental Entities is outside the Commission's jurisdiction).

Thus, while *Bonneville* held that the Commission lacks jurisdiction to *enforce* the Governmental Entities' refund liabilities, the court did not disapprove of the Commission's resetting of prices set under the ISO and PX tariffs. Indeed, the Ninth Circuit explicitly acknowledged that the ISO and PX are public utilities subject to the Commission's jurisdiction and authority under FPA Sections 205 and 206.[11] *See id.* at 919. The Court disagreed only with FERC's *next* step, when, after resetting prices under the ISO and PX tariffs, FERC "decided to extend refund liability to public *and* non-public utility sellers." *Id.* (citation omitted and emphasis added).

Because the Ninth Circuit recognized that the Commission had validly reset the prices under the Tariffs as a general matter, pursuant to its authority over the ISO and PX

_____

[11] The Ninth Circuit repeatedly reinforced its view that FERC has the power to regulate public utilities like the ISO and PX, noting that FERC's rate jurisdiction under Sections 205 and 206 extends under the FPA to "public utilities," a term that "reinforce[es] the definitional and scope provisions of the statutory scheme." *Bonneville*, 422 F.3d at 918. The court's narrow conclusion that "FERC does not have *refund authority* over wholesale electric energy sales made by governmental entities and non-public utilities" leaves untouched FERC's clear statutory authority to regulate the ISO and PX tariffs—including the price-setting provisions of those tariffs. *Id.* at 911 (emphasis added).

tariffs, the court went on to expressly recognize and extensively discuss federal case law indicating that *such reset prices could supply the basis for a contractual remedy* by which the California Parties could recover refunds from the Governmental Entities in a court action, even though it found that the Commission itself lacked jurisdiction to enforce that obligation. The court observed:

> . . . FERC and intervenor California Parties emphasize that the Public Entities entered into agreements with ISO and CalPX that obligated them to abide by the ISO and CalPX tariffs. They argue that these agreements made it obvious to the Public Entities that the tariffs setting the prices in the ISO and CalPX markets would be subject to FERC regulation under §§ 205 and 206. *All of this is true.* . . . The focus on the agreements between the Public Entities and the ISO and CalPX only serves to demonstrate that the remedy, if any, may rest in a contract claim, not a [FERC] refund action.

*Bonneville,* 422 F.3d at 925 (emphasis added).[12] The Ninth Circuit's reasoning reflected prior decisions of the Commission and the United States Court of Appeals for the Eighth Circuit in the *MAPP* litigation, in which the Commission ordered revised prices and disallowed certain charges in a power pool agreement, the members of which included both public utilities and governmental entities. *Id.* at 925-26, citing *Alliant Energy,* 2001 WL 1640132.

In the *MAPP* litigation, when the Commission concluded it could not itself order a Governmental Entity to refund the disallowed charges, the other members of the power pool successfully sued the governmental member on grounds that it was contractually obligated,

---

[12] If Paragraph 36 were correct, then the italicized language above from page 925 of the *Bonneville* decision would make no sense. If the Ninth Circuit believed the Commission either had not reset prices under the tariffs, or had no authority to do so, the court would not have commented that the Governmental Entities should have been aware of that possibility and could now be subject to contractual liability in light of those tariff revisions.

under the power pool agreement, to refund its overcharges to the other members.  In

*Bonneville*, the Ninth Circuit quoted with approval the Eighth Circuit's holding that the

Commission's modification of the MAPP agreement could be enforced by other members of

the agreement, even if the Commission lacked jurisdiction to do so:  "When a contract

provides that its terms are subject to a regulatory body, all parties to that contract are bound

by the actions of the regulatory body.  As a result, we are not enforcing the FERC order;

instead, we are enforcing an agreement which [the Governmental Entity] freely entered."

*Bonneville,* 422 F.3d at 926, quoting *Alliant Energy*, 347 F.3d at 1050.[13]  The Ninth

Circuit's analysis of the *MAPP* decisions followed from, and only makes sense in light of,

its conclusion that the Commission has the power to modify prices under the ISO and PX

tariffs, even though it may lack jurisdiction to enforce the resulting refund liability against

the governmental participants.  Otherwise the Ninth Circuit's language in *Bonneville* quoted

above, 422 F.3d at 925, might be rendered a nullity by the Commission's October 19, 2007

Order, an impermissible result.

     The interpretation of the Ninth Circuit's meaning in *Bonneville* on this point is

reinforced by its later opinion in *CPUC v FERC*, which also interprets and reviews FERC's

actions in connection with mitigation of ISO and PX markets.  In that decision, the Court

rejected challenges to the Commission's July 25, 2001 decision to reset prices on a market-

wide basis during the Refund Period:  "In its July 25, 2001 Order, FERC adopted the

MMCP to calculate just and reasonable rates for Cal-ISO and CalPX."  The Ninth Circuit

---

[13] The October 19, 2007 Order itself summarizes the Ninth Circuit's analysis of the
holdings in the *MAPP* proceedings.  October 19, 2007 Order at P 11.

found that the Commission had erred only in those instances where it had crafted exceptions to the market-wide relief. *CPUC v. FERC*, 462 F.3d at 1052. Of course, *CPUC v FERC* is still pending before the Ninth Circuit on rehearing, so it is not within the jurisdiction of the Commission to modify the market-wide price determination upheld in *CPUC v FERC*.

**B.      Paragraph 36 May Be Misconstrued as Undermining the Contract Claims, Which Allege That the Commission's July 25, 2001 Order Effectively Modified the Tariffs' Pricing Terms.**

Consistent with the *Bonneville* court's suggestion, the California Parties brought contract actions alleging that, as a condition of selling energy in the ISO and PX markets, the Governmental Entities entered into contracts to be bound by the terms of the ISO and PX tariffs. The contract claims specifically allege that the Governmental Entities agreed, purely as a matter of contract, that they would abide by modifications to the sale price set under the tariffs for any transaction if the Commission determined the price originally charged was unjust, unreasonable, or otherwise unlawful.

As explained in the following section, the Commission itself has acknowledged that it reset the prices under the tariffs for the refund period. The California Parties allege that the Governmental Entities are therefore *contractually* bound to other market participants to accept the adjusted prices, and to refund any resulting overcharges, even if the Commission itself cannot require them to pay refunds as a regulatory matter. As the Commission explicitly recognizes elsewhere in the October 19, 2007 Order, "the Commission's inability to order non-public utility entities to pay refunds under FPA section 206 *does not preclude* [parties] from seeking a [refund] remedy in state/federal courts." October 19, 2007 Order at P 37 (emphasis added). Because Paragraph 36 implies that no modification of the tariff

pricing ever occurred, it could improperly be construed as undermining the factual basis of those contract claims, and is at odds with the *Bonneville* opinion.

**C.    The Commission Had to Revise the Market Clearing Prices in the ISO and PX Markets in Order to Impose Refund Liability Even on Jurisdictional Sellers.**

There is no question that the Commission revised the market clearing prices in the ISO and PX markets in its July 25, 2001 Order.  That order unambiguously stated that it "revises the market clearing prices that all market participants previously agreed to accept for their sales."  July 25, 2001 Order at 61,512.  The Commission reinforced the point in its briefing in the *Bonneville* appeal, in which it stated that, in its July 25, 2001 Order, it had "order[ed] revision of the market clearing prices for all sales in the FERC-jurisdictional Cal PX and CaISO single-clearing price spot markets."[14]

If the language in Paragraph 36 were correct—that is, if the Commission had never modified the clearing prices in the ISO and PX markets—then the Commission would have had no legal basis for ordering refunds at all, even from jurisdictional sellers.  Under Section 206, FERC may order refunds from public utilities of amounts paid "in excess of those which would have been paid under the just and reasonable rate, charge, classification, rule, regulation, practice or contract which the Commission orders to be thereafter observed and in force."  16 U.S.C. § 824e(b) (2000).  Thus, a key predicate for the ordering of refunds is a Commission determination of the just and reasonable rate—a determination that was accomplished in this proceeding when FERC reset the market clearing price during the

---

[14] Brief of Respondent FERC on the Jurisdictional Cases at 17, filed in Case Nos. 02-70262, *et al.* (January 31, 2005).

refund period. In other words, the Commission does not have authority to order refunds from anyone if it has not reset prices under the FPA to just and reasonable levels. 16 U.S.C. § 824e (2000). The distinction that the Governmental Entities sought to draw in their briefing on these remand issues, between modification of the tariffs and the establishment of just and reasonable rates, does not exist. Rather, the resetting of rates is a predicate for ordering refunds, and it necessarily modifies the tariff "rate, charge, classification, rule, regulation, practice or contract" that the Commission has found to be unjust and unreasonable. Because the impact of this action was for a locked-in refund period, filing of revised tariff sheets to reflect the modified pricing was not required. *See, e.g., Cities Service Gas Co.,* 5 FERC ¶ 61,092 (1978) (finding unnecessary the filing of revised tariff sheets relating to locked-in period). In any case, the contractual impact of the Commission's action will be decided in the contract actions in various courts and should be left to those courts. The issue here is that the Commission did in fact revise the pricing formulations in the ISO and PX tariffs for the Refund Period, as the Commission has itself previously held and explained.

###### D.   Paragraph 36 Is Inconsistent with the Commission's Stated Intent Not to Interfere with the Contract Actions.

The erroneous language in Paragraph 36 is inconsistent with the Commission's repeated statements elsewhere in the October 19, 2007 Order that it is aware of the contract actions, understands their genesis in the *Bonneville* opinion, and does not intend to interfere with those actions in any way. October 19, 2007 Order at PP 3, 11, 37, 41, 43, 59, 68, 76. In fact, the October 19, 2007 Order repeatedly recognizes that the California Parties' contract actions may serve to cure the inequity inherent in permitting Governmental Entities

17

to avoid refund liability for the sales they made at prices the Commission has found were unjust and unreasonable.  *See, e.g.*, *id*. at PP 3, 37, 59.[15]  The Commission should therefore clarify Paragraph 36 to eliminate what appears to be an inadvertent inconsistency between that Paragraph and the Commission's stated intent.

### E.  Paragraph 36 Should Be Corrected to Avoid Surrendering the Commission's Power and Obligation to Review and Reset Prices Established Pursuant to FERC-Jurisdictional Tariffs.

To the extent Paragraph 36 could be read to imply that the Commission does not have authority to reset certain prices charged in the jurisdictional ISO and PX markets, that determination appears inconsistent with the Commission's obligation, under Sections 205 and 206 of the FPA, to ensure that all prices are just and reasonable in jurisdictional markets.  *See, e.g.*, 16 U.S.C. § 824d(a) (mandating that "all rates and charges made, demanded or received by any public utility, for or in connection with the . . . sale of electric energy subject to the jurisdiction of the Commission, . . . shall be just and reasonable and any such rate or charge that is not just and reasonable is hereby declared to be unlawful").  The Commission has found that the ISO and PX are public utilities, and that their markets are jurisdictional.  Nothing in *Bonneville* contradicts that finding.  *See, e.g., Pac. Gas & Elec. Co.*, 77 FERC ¶ 61,204 at 61,818 n.108 (1996) (noting that ISO and PX are public utilities subject to the Commission's jurisdiction under the FPA); *see also Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027, 1038 (9th Cir. 2006) (same).

---

[15] As the Commission recognized in its July 25, 2001 Order, there is no reason in fairness or equity that Governmental Entity sellers, who agreed to abide by the tariffs, should receive a different and higher price than the just and reasonable price determined by the Commission.  96 FERC at 61,512.

Subsequent case law supports that conclusion.  In the decisions by the United States Court of Appeals for the D.C. Circuit concerning the transmission rates charged through the ISO tariff for the facilities of the City of Vernon, the court ultimately followed *Bonneville* and concluded that the Commission could not compel refunds from Vernon.  Nevertheless, the Court also found that the Commission could review costs of Vernon's facilities, and that the Commission was obligated to review those costs under a just and reasonable standard, because those costs were then passed through to customers pursuant to a FERC-approved tariff.  *Transm. Agency of N. Cal. v. FERC*, 495 F.3d 663, 672-673 (D.C. Cir. 2007); *see also Pac. Gas & Elec. Co. v. FERC*, 306 F.3d 1112 (D.C. Cir. 2002).  These D.C. Circuit cases highlight the Commission's right and obligation under the FPA to review and set rates within the jurisdictional ISO market, even if the Commission could not then enforce those rates to the extent that they involved Governmental Entities.

That the Commission actually does set prices in the ISO and PX markets is illustrated by Paragraph 58 of the October 19, 2007 Order.  In Paragraph 58, the Commission recognized that questions exist about how interest should be calculated for the Governmental Entities, and reserved for the Commission's later determination the issue of how much interest is owed to those parties.  In other words, where a question of amounts owed for sales pursuant to the tariffs presented itself, even as to Governmental Entities, the Commission recognized that it (not a court) is the appropriate arbiter of the question.  This is entirely consistent with the FPA, which requires the Commission to review and establish rates charged under FERC-jurisdictional tariffs—but it is inconsistent with Paragraph 36,

19

which seems to suggest that FERC cannot reset prices in those markets, or that its ability to do so extends only to some of the sellers in those jurisdictional markets.

**F.    Correction of Paragraph 36 Will Not Affect Any Commission Decision or Action in the October 19, 2007 Order.**

Remedying the erroneous language in Paragraph 36 will have no effect on any of the Commission's actions in the October 19, 2007 Order.  That language is no more than a mistaken description of one aspect the *Bonneville* decision.  It cannot change the fact that the Commission did modify and reset the prices under the tariffs, as the Commission itself has previously acknowledged.  Moreover, it is unnecessary to the Commission's *correct* conclusion in Paragraph 36 that *Bonneville* held it had "acted outside its jurisdiction when ordering non-public utility entities to pay . . . refunds," and that it must therefore vacate its prior orders to the extent they order non-public utility entities to pay refunds.

**V.    Conclusion**

WHEREFORE, the California Parties respectfully request that the Commission strike the identified language from Paragraph 36 or provide other clarification in order to avoid any confusion as to the fact that the Commission found that the MMCP formula established the market-wide maximum prices that may be charged to wholesale customers under the ISO and PX tariffs during the refund period.  They also respectfully request that the Commission require answers to this pleading to be filed no later than

November 5, 2007,  and that the Commission issue the requested clarification by November

19, 2007.  In the alternative, the California Parties seek rehearing.

Respectfully submitted,

|  |  |
|---|---|
| /s/ Richard L. Roberts | /s/ Stan Berman |
| Richard L. Roberts | Stan Berman |
| Catherine M. Giovannoni | Heller Ehrman  LLP |
| Steptoe & Johnson LLP | 701 Fifth Ave., Suite 6100 |
| 1330 Connecticut Avenue, N.W. | Seattle, WA 98104 |
| Washington, D.C.  20036 |  |
|  | Paul B. Mohler |
| Michael D. Mackness | Joseph H. Fagan |
| Southern California Edison Company | Heller Ehrman LLP |
| 2244 Walnut Grove Avenue | 1717 Rhode Island Ave. N.W. |
| Rosemead, CA  91770 | Washington, D.C.  20036 |
|  |  |
| *Attorneys for* | |
| *Southern California Edison Company* | /s/ Kermit Kubitz |
|  | Mark D. Patrizio |
|  | Kermit R. Kubitz |
|  | Pacific Gas and Electric Company |
|  | 77 Beale Street, B30A |
|  | Post Office Box 7442 |
|  | San Francisco, CA  94120 |
|  |  |
|  | *Attorneys for the* |
|  | *Pacific Gas and Electric Company* |

 /s/ Steven B. Russo
Erik N. Saltmarsh, Chief Counsel
Steven B. Russo, Senior Staff Counsel
California Electricity Oversight Board
770 L Street, Suite 1250
Sacramento, CA  95814

*Attorneys for the*
*California Electricity Oversight Board*


 /s/ Elizabeth M. McQuillan
Randolph L. Wu
Mary F. McKenzie
Elizabeth M. McQuillan
Public Utilities Commission of the State
 of California
505 Van Ness Avenue
San Francisco, CA  94102

*Attorneys for the*
*Public Utilities Commission of the State of*
*California*

 /s/ Don Garber
Don Garber
San Diego Gas & Electric Company
101 Ash Street
San Diego, CA 92101

*Attorney for*
*San Diego Gas & Electric Company*


Dated: October 25, 2007

 /s/ David M. Gustafson
Edmund G. Brown, Jr.
Attorney General of the State of
California
Richard M. Frank
Chief Deputy Attorney General
Tom Greene
Senior Assistant Attorney General
1300 I Street, Suite 125
Sacramento, CA  95814

David M. Gustafson
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550

 /s/ Kevin J. McKeon
Kevin J. McKeon
Lillian S. Harris
Craig R. Burgraff
Hawke McKeon Sniscak & Kennard
LLP
Harrisburg Energy Center
100 North Tenth Street
P.O. Box 1778
Harrisburg, PA  17101

*Attorneys for the*
*People of the State of California ex rel.*
*Edmund G. Brown, Jr., Attorney*
*General*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing document upon each person designated on the official service list in this proceeding in accordance with the requirements of Rule 2010 of the Commission's Rules of Practice and Procedure.  I also hereby certify that I have this day served an electronic copy of the foregoing document upon each person designated on the ListServ established in Docket Nos. EL00-95, et al.

Dated at Washington, D.C., this 25th Day of October, 2007.

*/s/ Thomas C. Orvald*
Thomas C. Orvald
Heller Ehrman LLP
1717 Rhode Island Ave., NW
Washington, DC 20036
Phone:  (202) 912-2145
Fax:  (202) 912-2020
email:  thomas.orvald@hellerehrman.com

Submission Contents

CA Parties' Expedited Request for Clarification or Limited Rehearing
CAPMotReh.pdf·················································  1-23