# Exhibit B

MARIE L. FIALA (Bar No. 79676)
RUSSELL P. COHEN (Bar No. 213105)
BRIAN D. McDONALD (Bar No. 224201)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
marie.fiala@hellerehrman.com
russell.cohen@hellerehrman.com
brian.mcdonald@hellerehrman.com

Attorneys for Plaintiffs
PACIFIC GAS AND ELECTRIC COMPANY

[ADDITIONAL PARTIES AND COUNSEL SHOWN ON SIGNATURE PAGE]

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

Pacific Gas and Electric Company,
Southern California Edison Company,
San Diego Gas & Electric Company, and California Electricity Oversight Board,

    Plaintiffs,

v.

Arizona Electric Power Cooperative, Inc.;
City of Anaheim; City of Azusa; City of Banning;
City of Burbank; City of Glendale;
City of Los Angeles; City of Pasadena;
City of Riverside; City of Santa Clara;
City of Seattle; City of Vernon;
Los Angeles Department of Water and Power;
Modesto Irrigation District;
Northern California Power Agency;
Public Utility District No. 2 of Grant County;
Sacramento Municipal Utility District; and
Turlock Irrigation District,

    Defendants.

Case No.: BC 369141

Included action within Judicial Council Coordination Proceeding No. 4512 (Electric Refund Cases)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' DEMURRERS, VOLUME 2 OF 2 (DETAILED ARGUMENT)**

Complaint Filed: April 9, 2007

Judge: Hon. Wendell Mortimer, Jr.
Hearing: November 30, 2007
Time: 9:00 a.m.
Department: 307

...

# TABLE OF CONTENTS

Page

FACTS .................................................................................................................................... 1

THE CALIFORNIA WHOLESALE ELECTRICITY MARKETS ........................................ 1

    Creation of the ISO and PX Markets ............................................................................ 1

    Roles of the ISO and PX Markets ................................................................................. 2

    ISO and PX Market Participants Agreed to Abide by the ISO and PX Tariffs. ........................................................................................................................ 2

FERC'S EXCLUSIVE AUTHORITY OVER THE WHOLESALE MARKETS ................... 3

    FERC's Regulatory Responsibility over Wholesale Electric Power Sales .................... 3

    FERC's Exclusive Jurisdiction over the ISO and PX Tariffs ........................................ 4

    FERC May Amend the Tariffs, Including Re-Pricing Market Transactions.................................................................................................................. 5

DEFENDANTS' PARTICIPATION IN THESE MARKETS ................................................ 5

    Defendants Executed Written Contracts Agreeing to Abide by the ISO and PX Tariffs. ........................................................................................................................ 6

THE ISO AND PX AUCTION MARKET MECHANISMS ................................................. 7

    The ISO and PX Operated as Revenue-Neutral Clearinghouses. ................................. 7

    Market Clearing Price .................................................................................................... 8

    Settlement and Billing ................................................................................................... 8

    The ISO and PX Were Empowered to Re-Run Settlements to Reflect Pricing Changes............................................................................................................ 9

    Market Participants' Liability for Shortfalls ................................................................. 9

    Market Participants Have the Right, Under the Tariffs, to Bring Actions Directly Against Other Market Participants. ................................................................ 10

MAY 2000 TO JUNE 2001: THE ENERGY CRISIS ......................................................... 11

THE CALIFORNIA PARTIES SEEK RELIEF FROM FERC

    The California Parties Initiate the Remedy Proceeding. ............................................. 12

    Defendants Participate in the Remedy Proceeding. .................................................... 14

    The Discovery of Market Manipulation ..................................................................... 14

FERC REMEDIATES THE UNLAWFUL MARKET PRICES .......................................... 16

    November 1, 2000 Order ............................................................................................. 16

    December 15, 2000 Order ........................................................................................... 16

    April 26, 2001 Order ................................................................................................... 16

# TABLE OF CONTENTS
## (Continued)

| | Page |
|---|---|
| June 19, 2001 Order | 17 |
| July 25, 2001 Order | 17 |
| Subsequent Orders Clarifying the MMCP Methodology | 18 |
| ALL MARKET TRANSACTIONS OCCURRED UNDER THE ISO AND PX TARIFFS | 19 |
| APPEAL FROM FERC'S ORDERS | 20 |
| Relief for the Summer Period and Excluded Transactions—*Lockyer v. FERC* and *CPUC v. FERC* | 20 |
| FERC's Authority to Order Defendants to Pay Refunds—The *Bonneville* Decision | 20 |
| THE CALIFORNIA PARTIES PURSUE THEIR CONTRACT CLAIM AND DEFENDANTS REPUDIATE THEIR CONTRACTUAL OBLIGATIONS | 21 |
| Claims Presentments and Denials | 21 |
| Repudiation by Defendants | 22 |
| Lawsuits in the Eastern District of California | 23 |
| ARGUMENT | 24 |
| I. LEGAL STANDARDS GOVERNING THESE DEMURRERS | 24 |
|    A. The Court Must Take As True the Complaint's Factual Allegations, All Reasonable Inferences from These Allegations, and Plaintiffs' Interpretation of Any Ambiguous Contract Provision. | 24 |
|    B. The Court May Consider the Exhibits, But Only for Limited Purposes. | 25 |
|    C. Defendants May Not Collaterally Attack FERC Orders on These Demurrers. | 26 |
| II. CONTRACT CLAIM OVERVIEW. | 27 |
|    A. Whether or Not FERC May Exercise Regulatory Jurisdiction Over These Defendants Is Irrelevant to the Contract Theory. | 29 |
|    B. The Ninth and Eighth Circuits Validated This Same Contract Theory in the *Bonneville* and *Alliant Energy* Cases. | 30 |
| III. THE COMPLAINT PLEADS FACTS DEMONSTRATING THAT THE CALIFORNIA PARTIES' CLAIMS ARE TIMELY. | 34 |
|    A. The Breach of Contract Claim Has Not Yet Accrued. | 34 |

# TABLE OF CONTENTS
## (Continued)

Page

    1. There Was No Breach of Contract at the Time Defendants' Sales Were Made Because Prices Had Not Yet Been Reset and No Obligation To Pay Refunds Had Arisen. .................................... 34

    2. The California Parties Were Not Required to Bring Suit After FERC Reset the Prices Because Their Contract Claim Had Not Yet Accrued—and Still Has Not Accrued Today. .................................... 36

B. The California Parties Are Entitled To Sue Now Because Defendants Have Anticipatorily Repudiated Their Contract Obligations. .................................... 39

C. The California Parties' Efforts to Pursue Refunds from Defendants at FERC Equitably Tolled Any Limitations Period That Might Have Applied to Commencement of This Action. .................................... 41

    1. The Court May Not Go Beyond the Allegations of the Complaint to Decide the Applicability of the Equitable Tolling Doctrine. .................................... 42

    2. The Complaint Properly Alleges That Equitable Tolling Applies. .................................... 43

        a. Legal Standards Governing Equitable Tolling. .................................... 43

        b. Tolling Applies to the One Year Period for Presenting Government Code Claims. .................................... 44

        c. Each of the Elements of Equitable Tolling Is Satisfied Here. .................................... 45

D. The California Parties' Declaratory Relief Claims Are Indisputably Timely. .................................... 53

IV. THE CALIFORNIA PARTIES HAVE SUFFICIENTLY ALLEGED THAT THEY HAVE STANDING TO SUE ON THE CONTRACT. .................................... 55

A. The IOUs Have Standing to Sue Defendants Under the ISO and PX Tariffs, as Parties to the Same Multi-Party Contracts. .................................... 55

    1. Each Defendant, as a Party to a Multi-Party Contract, Is in Contractual Privity with Each IOU, Even Though They Did Not Sign the Same Documents. .................................... 55

    2. The Tariffs Expressly Allow the IOUs to Bring Suit to Enforce Defendants' Refund Obligations Under the Tariffs. .................................... 62

# TABLE OF CONTENTS
## (Continued)

Page

B. At a Minimum, the IOUs Have Standing as Third-Party Beneficiaries of Defendants' Agreement to Abide by the ISO and PX Tariffs. ........ 64

    1. Whether the IOUs Are Third-Party Beneficiaries Is a Question of Fact That Cannot Be Decided on Demurrer. ........ 64

    2. In Any Event, the Tariffs Clearly Manifest An Intent to Benefit Market Participants Such as the IOUs. ........ 65

    3. Defendants' Authorities Do Not Contradict the California Parties' Intended Beneficiary Status. ........ 66

C. The EOB Has Standing to Participate in This Lawsuit. ........ 68

    1. The EOB Is Statutorily Authorized to Participate as a Plaintiff in This Action. ........ 68

    2. The EOB Independently Has Standing to Pursue the Declaratory Relief Sought in the Complaint. ........ 70

    3. The EOB's Intervention Is Also Proper. ........ 72

V. THE COMPLAINT ALLEGES FACTS DEMONSTRATING THAT DEFENDANTS ARE CONTRACTUALLY BOUND TO REFUND THEIR OVERCHARGES. ........ 74

A. The Complaint Sufficiently Alleges That Defendants Are Contractually Bound to Pay Refunds as Required Under the Tariffs. ........ 74

    1. The Complaint Adequately Alleges That Defendants Contractually Bound Themselves to the Terms of the ISO and PX Tariffs. ........ 75

    2. The Complaint Adequately Alleges the Terms of a Contract That Requires Defendants to Refund Overcharges. ........ 78

    3. Defendants' Efforts to Offer Alternative Readings of the Contract Are Unavailing. ........ 81

B. Defendants' Affirmative Factual Allegations Relating to FERC's Refund Proceeding and the IOUs Performance Under the Contracts Plainly Cannot Be Resolved on Demurrer. ........ 88

    1. Defendants May Not Collaterally Attack FERC's Rulings or the Procedural Regularity of the Remedy Proceeding. ........ 88

    2. These Arguments Are Also Irrelevant. ........ 89

    3. Defendants' Factual Defenses Are Also Simply Wrong. ........ 90

# TABLE OF CONTENTS
## (Continued)

| | | | Page |
|---|---|---|---|
| VI. | THE IOUs MAY PURSUE CLAIMS FOR UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED. | | 93 |
| | A. | Defendants Are Liable to the IOUs for Unjust Enrichment and Money Had and Received Because These Claims Arise From Contract, Not Tort. | 93 |
| | B. | The IOUs' Claims for Unjust Enrichment and Money Had and Received Can Proceed Regardless of the Outcome of Their Contract Claims. | 95 |
| VII. | THE ARGUMENTS SPECIFIC to AEPCO ARE MERITLESS. | | 97 |
| | A. | The California Parties Can Pursue Relief Against AEPCO in This Court. | 97 |
| | B. | Judicial Estoppel Bars AEPCO's Argument. | 99 |
| CONCLUSION | | | 100 |

Heller Ehrman LLP

a public entity's contractual obligations." *L.A. Equestrian Ctr. Inc. v. City of Los Angeles*, 17 Cal. App. 4th 432, 449 (1993) (citation omitted).

Consistent with this limitation, *all* of the cases cited by Defendants involved a plaintiff who provided goods or services to a government entity *without properly forming an express contract with that government entity*, and then sought recovery from the governmental entity for the value of the goods or services provided. *See Lundeen Coatings Corp.*, 232 Cal. App. 3d 816 (plaintiff seeking compensation for construction work); *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089 (2004) (plaintiff seeking compensation for improvements to public property); *Miller v. McKinnon*, 20 Cal. 2d 83 (1942) (plaintiff suing on behalf of county to recover money spent by county on services); *North Bay Constr., Inc. v. Petaluma*, 143 Cal. App. 4th 552, 563 (2006) (plaintiff seeking compensation for work performed on city land). Each of these cases affirms the strong public policy rationale to protect public funds from "waste and dissipation" that might occur as a result of "fraud, corruption and carelessness" if parties were permitted to foist unwanted or improper contracts on governmental agencies, and courts scrupulously enforce compliance with such requirements. *See, e.g., Miller*, 20 Cal. 2d at 88.

None of those cases has any application to the facts here. Since Defendants were voluntary *sellers*, not buyers, who entered into express contracts to sell power into the ISO and PX markets, there is no corresponding reason to protect them from "fraud, corruption, and carelessness" or worry about "waste and dissipation," and none of the foregoing policy arguments are implicated. Accordingly, the "general rule" does not apply at all, and under these facts, *Utility Audit* establishes that the IOUs' claims for unjust enrichment and money had and received are not barred.[79]  112 Cal. App. 4th at 958.

---

[79] As against PG&E, there is yet another reason why Defendants' assertion of sovereign immunity is flawed: by filing claims against PG&E in its bankruptcy, Defendants have waived their sovereign immunity defenses. 11 U.S.C. § 106(b); *Ocean Servs. Corp. v. Ventura Port Dist.*, 15 Cal. App. 4th 1762, 1779 (1993). Under the bankruptcy code, any government entity that files a proof of claim in bankruptcy waives sovereign immunity as to any claims the bankrupt entity has against it to the extent the parties' claims against each other arise out of the same transaction or occurrence. *Id.* Here, each Defendant filed proofs of claim in the PG&E bankruptcy concerning (Footnote Continued)

**B. The IOUs' Claims for Unjust Enrichment and Money Had and Received Can Proceed Regardless of the Outcome of Their Contract Claims.**

Similarly, there is no merit to Defendants' contention that the California Parties' claims for unjust enrichment and money had and received are barred because the parties' rights are otherwise defined by an express contract. JD Br. at 49-50. These rules apply only when the unjust enrichment claim is *inconsistent with an express contract between the parties*, and here there is no inconsistency. *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1387 (1999) ("There cannot be a valid express contract and an implied contract, each embracing the same subject, but compelling different results."). The rule simply reflects courts' unwillingness to rewrite the express terms of the parties' bargained-for exchange: "'[W]here the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability . . . .'" *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996) (quoting *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975)). But it does not apply where, as in this case, "there is no readily ascertainable conflict between [the] implied contract theory and the express terms" of a written agreement. *Hillsman v. Sutter Cmty. Hosps. of Sacramento*, 153 Cal. App. 3d 743, 755 (1984).[80]

Here, the relevant contract does *not* preclude the remedy that the IOUs are seeking by their unjust enrichment and money had and received claims. Indeed, it is the very same remedy they are seeking on their breach of contract claims—refunds for amounts charged in excess of the MMCP. Thus, the unjust enrichment and money had and received claims do not require inconsistent interpretations with the contract claims nor do they "compel[] different results." Accordingly, the

---

PG&E's failure to pay for purchases of electric energy. *See* Compendium of Defendants' Proofs of Claim Filed in PG&E Bankruptcy (RJN Exh. 25). In this case, PG&E, with the other IOUs, seeks refunds for these same transactions. Accordingly, Defendants have waived any sovereign immunity defense they may have had as to PG&E's claims against them for refunds.

[80] *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California*, 94 Cal. App. 4th 151 (2001), a case relied upon by Defendants, is fully consistent with this rule. In *California Medical*, the court rejected plaintiff's quasi-contract claim because it sought relief *expressly prohibited* by the contract between the parties. *Id.* at 172-173.